# EXHIBIT B

Brent O. Hatch (5715)
Tyler V. Snow (12668)
HATCH LAW GROUP PC
22 East 100 South, Suite 400
Salt Lake City, UT 84111
Telephone: (801) 869-1919
hatch@hatchpc.com
snow@hatchpc.com

*Counsel for Blockchain United Mining Services, Inc., Connect United, Inc., Wright Thurston, and Block Brothers, LLC*

**IN THE THIRD JUDICIAL DISTRICT COURT
SALT LAKE COUNTY, STATE OF UTAH**

| | |
|---|---|
| CODEX UNITED, LLC, *et al.*,<br><br>     *Plaintiffs*,<br><br>vs.<br><br>PROFIT VAULT VC1, LLC, *et al.*,<br><br>     *Defendants*. | **MEMORANDUM IN OPPOSITION TO BLOX LENDING, LLC'S MOTION FOR ORDER TO SHOW CAUSE AND TO SANCTION THE THURSTON PARTIES**<br><br>**(Hearing Requested)**<br><br>Civil No. 210903079<br><br>Judge Barry Lawrence |
| *Additional parties/claims as reflected in the pleadings | |

Pursuant to Utah Rule of Civil Procedure 7, Plaintiffs and/or Counterclaim Defendants Blockchain United Mining Services, Inc. ("Blockchain United"), Connect United, Inc. ("Connect"), Wright Thurston ("Thurston"), and Block Brothers, LLC ("Block Brothers") (collectively "Plaintiff Side"), by and through counsel, file this Opposition to Blox Lending, LLC's ("Blox") Motion for Order to Show Cause and to Sanction the Thurston Parties (the "Motion").

## **RELIEF REQUESTED AND GROUNDS FOR RELIEF**

To be clear, the **<u>Plaintiff Side has complied</u>** with the Court's Order: (1) the data on Thurston's phone and iPad have been imaged, and (2) that data is available for inspection by Blox. (The Plaintiff Side indicated to Blox months ago that they do not have any other devices available for inspection.[1]) The **sole reason** that Blox has not received any documents or information therefrom is that Blox has repeatedly refused to propose any search terms to Plaintiff Side in order to conduct the inspection it requested, despite Plaintiff Side's clear invitations for it to do so; in fact Blox appears more interested in trying to score points than it is in actually inspecting the data.

As demonstrated below, Blox seeks to dictate conditions and requirements that are nowhere contained within the Court's February Order (Dkt. 525). (*See, e.g.,* Mot. p. 1 ("[T]he Thurston Parties refuse to turn over their devices ***to . . . Salt Lake Legal***. . . ." (emphasis added).) It should go without saying that conditions not contained within the February Order cannot be the legitimate basis of any motion for OTSC/sanctions. Because the Plaintiff Side has complied with the Court's Order, Blox's motion should be denied.

Moreover, Blox's misleading claim that "[a]t no time did Blox agree to use the Puerto Rico company for the inspection of the Thurston Parties' devices" (Mot. p. 3) ignores the fact that Blox was aware **<u>for months</u>** that the Plaintiff Side intended to use an independent company located where the devices were located, and Blox never objected to that, despite several opportunities, until **<u>after</u>**

---

[1] *See, e.g.,* Dkt. 657 PDF p. 19 ("[T]he entities subject to the Court's inspection order (Block Brothers, Blockchain United Mining Services, and Connect United) do not have any devices."). Blox claims this is "very difficult to believe" (Mot. p. 6), but it only feigns disbelief. Blox has known for months that the contractors for the Plaintiff Side entities were using their personal devices. (*See* Dkt. 382 p. 15.) Thurston has stated that the last computer he owned was an Apple computer, which was damaged by an unfortunate spill in 2020 or 2021; it was unable to be repaired.

1

the imaging was performed. (*See* Dkt. 657 PDF p. 18-19 (indeed, rather than object, Blox asked, "**Can you please give us the name of the Puerto Rico company?**" (emphasis added).) Thurston stated expressly/up front his intention to use an independent company in the same geographic area where he lives for the imaging, which was the only practicable way to proceed given that he lives in Puerto Rico.[2] The inconvenience of being without his phone for days or weeks while it is being shipped to and from Utah, and imaged by Salt Lake Legal, are obvious and extremely disruptive.

By not only remaining silent but failing to object despite multiple opportunities—until after Thurston's devices had already been imaged at the cost of $8,000 (paid by Thurston)—Blox is estopped and should not be heard to complain now, after the imaging has been completed. Instead, if Blox wants to inspect the data on the devices, it should provide its proposed search terms as soon as possible, allow the vendor to conduct the search, and then Thurston's counsel can begin his review of the documents for privilege and responsiveness.

## FACTS AND ARGUMENT

1. **The February Order Does Not Require the Handover of Devices to Blox's Preferred Vendor**

The purported "violation" of a Court order of which Blox complains is that "the Thurston Parties refuse to turn over their devices ***to . . . Salt Lake Legal***. . . ." (Mot. p. 1.) Nowhere does the

---

[2] Finanxial IT is based in Puerto Rico but its geographic area includes "the United States East Coast," and the firm has at least 20 years of expertise. (*See* https://www.fxitsoftware.com/about (last visited 6/27/23).) Finanxial IT's services have been relied upon by the U.S. District Court in Puerto Rico. *See, e.g., Rodriguez-Torres v. Gov't Dev. Bank of Puerto Rico*, 265 F.R.D. 40, 43-44 (D.P.R. 2010) ("[T]he Court ordered the parties to provide the Court with an informative motion and an ESI Report (the 'Report'). . . . The Report was provided by Gabriel Rodríguez from Finanxial IT Consulting Services ('Finanxial')."). Blox has never even tried to argue—nor could it—that Finanxial IT is not independent, or that its services would somehow be different or less than those provided by Salt Lake Legal.

2

Court's order impose such a requirement. The Court stated the following in the February Order:

- "The Court will permit the inspection of computers and cellphones" (Order p. 13);

- "[T]he Court will only allow a search of **devices owned and controlled by Plaintiff entities and/or Thurston**" (p. 13 (emphasis added)); and

- "Blox may search Plaintiff entities' electronic devices as referenced above, but Blox will bear all costs associated with those searches" (p. 16).

The Court did **not** order the Plaintiff Side to use Blox's preferred vendor, and in fact doing so would be grossly disruptive and inconvenient for Thurston. Moreover, given the privileged data and personal/sensitive information contained on those devices (which are Thurston's own, personal devices), the choice of vendor is reasonably that of the Plaintiff Side.

And, to be clear, Plaintiff Side could have been substantially less cooperative here—but never once did Plaintiff Side suggest that Blox should locate and engage a vendor in Puerto Rico, or fly some vendor of its choice to Puerto Rico, and bear the costs associated with the same. Instead, as detailed in the letter that Blox attached to its Motion, Plaintiff Side was very clear, over a period of months and in repeated communications, that *they* intended to image Thurston's devices using an independent company in Puerto Rico, which is where Thurston resides,[3] thus sparing Blox the logistical issues and cost and sparing this Court the hassle of having to resolve any such issues, which, if history tells us anything, Blox almost certainly would have run into court complaining about. Indeed, the instant motion, which asks the Court to find and sanction a violation of a Court

---

[3] In footnote 3, Blox suggests without any evidence that Thurston does not actually reside in Puerto Rico ("representations that Thurston was residing in Puerto Rico **do not appear** to have been true" (emphasis added)). The fact is that Thurston legally changed his residence to Puerto Rico months ago, and Blox cannot produce any evidence demonstrating otherwise.

order that does not exist, is case in point as to why Plaintiff Side offered to and did handle retaining the vendor for the actual imaging itself, with ample notice to Blox—which in no way runs afoul of the February Order.

**2.     Thurston's Devices Contain Highly Sensitive Personal Information, Privileged Data, and Other Irrelevant Information.**

Blox essentially makes the incredible, bold demand that Plaintiff Side 'Immediately hand over the devices to Blox's vendor,' despite any Court order requiring Plaintiff Side to do so (as explained previously). In addition to having no obligation to do so, Plaintiff Side has been very clear as to why it cannot do that:

> The reasons for having the imaging performed by an independent vendor selected by Plaintiffs are obvious, but to set them forth (in brief): **[1]** physically, Mr. Thurston is located in Puerto Rico, and delivering his devices (particularly his phone, on which he depends) to Utah is simply not possible or practicable. More fundamentally, given the fact that the data likely contains **[2]** significant amounts of privileged data (attorney-client communications, work product documents, etc.) as well as **[3]** intimately personal data (insofar as a phone is the most personal, private device an individual can own), we cannot agree to your having any possibility of access (through your hired vendor) to the imaged data prior to the time that we have performed our own review of the data for privilege, relevance, and responsiveness to previously-agreed upon search terms.

(Dkt. 657 PDF p. 18.) Proximity, privilege and privacy are not just "justifiable" reasons for not using Blox's vendor—they are *compelling* reasons. And to this day, Blox has said or done nothing to even try to address those **strong** concerns. Additionally, Blox has not provided the Court or Plaintiff Side with any factual information suggesting that the vendor used somehow could not or did not properly image the devices, or cannot search them using Blox's search terms when provided—presumably because Blox cannot make such arguments.

A motion for sanctions is inappropriate and the issues easily remedied. To avoid a serious disruption for Thurston, to protect his privileges and his privacy, and to prevent irrelevant/sensitive

4

information from falling into the hands of the Plaintiff Side's competitors, Blox should immediately do as follows:

- Counsel for Blox shall submit to counsel for Thurston a practicable list of search terms that are reasonably encompassed by its relevant discovery requests submitted to date.

- Finanxial IT will search the data (which Finanxial IT imaged from Thurston's personal iPhone and iPad) using Blox's search terms and extract any and all responsive data.

- Thurston's counsel shall review the extracted data, remove any attorney-client or work product privileged information from the data set, and provide Blox with a privilege log.

- Thurston shall produce to Blox an entire set of all relevant, non-privileged data in its original form, as well as a log of any privileged data that has been removed. Appropriate confidentiality designations shall be applied pursuant to the protective order entered in this case.

This is a reasonable, fair practice under the circumstances. *See, e.g., Dorel Juvenile Group, Inc. v. DiMartinis*, 2006 WL 3240116, at *1 (S.D. Ind. Sept. 29, 2006) ("Counsel for plaintiff shall submit to defense counsel as soon as practicable a list of search terms for all information that might be relevant to the lawsuit and motion for preliminary injunction. . . . Defendant shall produce all non-privileged information responsive to the search terms. . . .").

Significantly, Blox has never suggested any protocols similar to the above which would ensure the protection of Thurston's privileges and privacy. Presumably, if it had, Blox's protocol would look similar to the one outlined here, in which case Blox's motion is meaningless—if Salt Lake Legal would follow the same protocol that Finanxial IT would be following, then it makes no

difference which vendor does the imaging and performs the searches.[4]

Blox has not and cannot establish a basis for its demands here. The Court expressly found in the February Order that "**there has not been a showing that Plaintiffs acted improperly** in not maintaining the documents (which were removed before this litigation was filed). . . ." (Dkt. 525 p. 13 (emphasis added).) Absent any finding of wrongdoing, Blox has no right to control who has access to Thurston's devices. Instead, the data has been imaged by an independent third party, and Thurston's imaged data has been available to Blox for inspection since May 26, 2023. If Blox wants to inspect the data on Thurston's devices, it should be required to follow the procedure set forth above, in order to duly respect Thurston's privacy and privilege interests and to avoid disruption for him. That is much more aligned to the spirit of the Court's February Order.

## CONCLUSION

For the foregoing reasons, Blox's motion for order to show cause should be denied.

---

[4] Unless of course Blox's intention was to use Salt Lake Legal without any protocols, and thus gain direct access to Thurston's phone without his opportunity to review the documents first for privilege, relevance, and responsiveness and to assess for appropriate protective order designations. Courts reject the attempts of litigants to gain direct access to the data on the other side's devices. *See, e.g., McCurdy Group, LLC v. Am. Biomedical Grp., Inc.*, 9 Fed.Appx. 822, 831 (10th Cir. 2001) (denying litigation opponent's request to conduct a direct inspection of hard drive(s), the owner of which had objected on the basis that "the disc drives contained 'substantial information protected by the attorney-client and trade secret privileges'"); *In re: Ford Motor Co.*, 345 F.3d 1315, 1317 (11th Cir. 2003) (reversing trial court order which had granted, without providing party the opportunity to object, the other side "unlimited, direct access to Ford's databases. The district court established no protocols for the search. The court did not even designate search terms to restrict the search. Without constraints, the order grants Russell access to information that would not—and should not—otherwise be discoverable . . . .").

RESPECTFULLY SUBMITTED this 28th day of June, 2023.

*/s/ Tyler V. Snow*
Brent O. Hatch (5715)
Tyler V. Snow (12668)
HATCH LAW GROUP PC
*Counsel for Blockchain United Mining Services, Inc., Connect United, Inc., Wright Thurston, and Block Brothers, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of June, 2023, I caused a true and correct copy of the foregoing **MEMORANDUM IN OPPOSITION TO BLOX LENDING, LLC'S MOTION FOR ORDER TO SHOW CAUSE AND TO SANCTION THE THURSTON PARTIES** to be electronically filed via GreenFiling, which sent notification of same and effectuated service on all counsel of record.

*/s/ Tyler V. Snow*