# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JOHN SOUZA, in his capacity as custodian of ELEVATE, INC., <br><br> Movant, <br> v. <br><br> W. WRIGHT THURSTON, <br><br> Respondent. | ORDER GRANTING [2] MOTION TO COMPEL <br><br> Case No. 2:18-mc-00023-DB-BCW <br><br> District Judge Dee Benson <br><br> Magistrate Judge Cecilia M. Romero |

This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A)(ECF 25). Before the court is Movant, Mr. Souza's, Motion to Compel (ECF 2). Having considered the Motion (ECF 2), the response (ECF 13), the reply (ECF 14), two intervening orders denying the Motion (ECF 16, 17), a mandate from the Tenth Circuit Court of Appeals (ECF 26), the argument presented at the status conference on September 29, 2020 (ECF 29), the supplemental brief in support of the motion to compel (ECF 30), the supplemental response (ECF 31), and the supplemental reply (ECF 33), the court finds the Motion to Compel should be GRANTED.

## I. BACKGROUND

This motion has an unusual procedural history. The original action, filed in the District of Nevada, Case No. 2:17-cv-01924, is an action to compel the production of corporate records for a dissolved company, Elevate, Inc.[1] *See* Petition for Appointment of Custodianship, *Souza v. Elevate, Inc.*, No. 2:17-cv-01924 (D. Nev. July 14, 2017). The company, Elevate, Inc. is a revoked Nevada Corporation that developed products related to solar energy for residential and commercial

---

[1] The court can take judicial notice of court filings in underlying court proceedings, including those filed in separate but related cases. *E.g.*, *Leek v. Androski*, No. 21-3165, 2022 WL 1134967 (10th Cir. April 18, 2022) (citing *Gee v. Pacheco*, 627 F.3d 1178, 1191 (10th Cir. 2010).

use. *Id.* at 1–2. The former Chief Executive Officer of Elevate, Inc. is W. Wright Thurston. *Id.* at 3. According to the petition pending in Nevada, four employees of Elevate, Inc. left the company in 2015 and joined a competitor company. *Id.* Elevate, Inc. filed several civil actions against the employees regarding alleged theft of proprietary information. All of those actions were filed in the District of Utah. *Id.* Plaintiff John Souza is a citizen of the State of Georgia. *Id.* at 2. Mr. Souza owns approximately 4 million shares of Elevate, Inc.'s approximately 29 million shares of common stock. *Id.* Mr. Souza was retained to assist Elevate, Inc. to raise funds to either relist the company or secure investment to continue the Utah litigation against the former employees. *Id.* at 3. However, according to Mr. Souza's petition in the District of Nevada, Elevate, Inc. has refused to share any information about the Utah litigation. *Id.* Mr. Souza filed an action in Nevada to (1) appoint a custodian for the Nevada corporation and (2) to compel disclosure of corporate records. *Id.* at 3–5. Mr. Souza was appointed by the court in the Nevada action as custodian of Elevate, Inc., and he was authorized to pursue the company's books and records. *See* Order Granting Johns Souza's Petition for Custodianship, *Souza v. Elevate, Inc.*, No. 2:17-cv-01924 (Sept. 19, 2017).

This ancillary action was filed in Utah when Mr. Souza, now as custodian of Elevate, Inc., served a subpoena to Mr. Thurston (the former CEO of Elevate) to produce various books and records (ECF 2-1). Mr. Souza served the subpoena by certified mail (ECF 2). The delivery was refused, and the envelope was returned to the sender. Mr. Souza then filed a motion to compel (ECF 2). The motion was initially denied by a magistrate judge who held personal service could have been attempted since Mr. Souza had Mr. Thurston's residential address (ECF 16). Mr. Souza filed an objection to the magistrate judge's order (ECF 17). The district court judge affirmed the magistrate judge's decision over that objection (ECF 18). The matter was then appealed to the

2

Tenth Circuit Court of Appeals, which concluded that the magistrate judge erred by finding that Mr. Souza knew Mr. Thurston's residential address because Mr. Souza did not have that address until later in this litigation.[2] The Tenth Circuit held that the factual error regarding whether the residential addresses was known was clear error and an abuse of discretion. The Tenth Circuit declined to opine on whether service by certified mail is permissible or whether the subpoena was otherwise defective. The matter was reversed and remanded (ECF 26). The matter was then referred to the undersigned (ECF 25). After a status conference in September 2020, supplemental briefing was ordered (ECF 29). That briefing was timely filed (ECF 30, 31, 33).

## II. DISCUSSION

The issues before the court are largely unchanged since the first motion to compel was filed in 2018. The issues are (1) whether the subpoena was served in accordance with Federal Rule of Civil Procedure 45, and (2) whether the subpoena is invalid for requesting the production of documents more than 100 miles away.

### A. Alternative Means of Service Are Recognized for Rule 45

The subpoena was served by certified mail, return-receipt requested. The envelope was refused and returned to the sender. Mr. Souza asserts service by certified mail is permissible. Mr. Thurston asserts personal service is required. Rule 45(b)(1) addresses service of a subpoena:

> Any person who is at least 18 years old and not a party may serve a subpoena. Serving a subpoena requires delivering a copy to the named person and, if the subpoena requires that person's attendance, tendering the fees for 1 day's attendance and the mileage allowed by law. Fees and mileage need not be tendered when the subpoena issues on behalf of the United States or any of its officers or agencies.

---

[2] It is no longer contested in this litigation whether Mr. Souza had Mr. Thurston's residential address at the time service was first attempted. Mr. Souza did not receive a residential address for Mr. Thurston until a later point in time, and when personal service was attempted it was discovered that address was false (ECF 30-1 at 3).

3

Fed. R. Civ. P. 45(b)(1).

The traditional rule was that service under Rule 45 was different than service pursuant to Rule 4 and that personal service of subpoenas was required. 9A Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 2454 (3d. ed. 2022 update). But in more recent years, a growing number of courts have departed from that traditional approach. *Id.* The Tenth Circuit has not yet adopted a controlling rule, and the district courts are divided. *Gutierrez v. Uni Trans, LLC*, Civ. No. 21-73 KWR/SCY, 2021 WL 4305008 (D. N.M. Sept. 22, 2021) ("District courts appear to be split on whether certified mail complies with Rule 45(b)."); *Nelson v. State Farm Fire & Cas. Co.*, Civ. No. 19-907 RB/KK, 2020 WY 7889074, at *1 (D. N.M. Sept. 9, 2020) ("[T]here is no consensus among the federal courts regarding whether Federal Rule of Civil Procedure 45 requires personal service of a subpoena on a non-party, or whether service may be accomplished by alternative means reasonably calculated to ensure receipt."). Mr. Souza relies on those cases within the Tenth Circuit and elsewhere that have allowed non-personal service (ECF 12 at 2–3, ECF 30 at 11–12, ECF 33 at 2–3). Mr. Thurston relies on cases, largely in other circuits, that predate the shift or that have not yet adopted the more expansive view of service under Rule 45 (ECF 13 at 2, ECF 31 at 4–7). The Tenth Circuit declined to resolve the division between districts when presented with the issue in this case (ECF 26).

The District of Kansas has long adopted the rule that Rule 45 does not require personal service as long as service is "made in a manner that reasonably insures actual receipt of the subpoena." *Ross v. Jenkins*, No. 17-2547-DDC-TJJ, 2019 WL 3453705, at *1 (D. Kan. July 31, 2019) (discussing Kansas and New York cases allowing alternate methods of service as early as 1997). One of the most comprehensive decisions in the Tenth Circuit was issued in the District of Colorado in 2008. In that case, a trial court addressed Rule 45 service by looking first to the United

4

States Supreme Court's discussion of the due process requirements of service—to provide notice, in a manner and within a reasonable time to afford a fair opportunity to answer, object, and present defenses. *E.A. Renfroe & Co. v. Moran*, No. 08-cv-00733-REB-MJW, 2008 WL 1806200 at *3–5 (D. Colo. April 21, 2008) (discussing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)). The *E.A. Renfroe* court also looked to the principles of statutory interpretation and determined Rule 45 does not expressly require personal service. Consistent with other courts, the conclusion was "[t]he obvious purpose of Rule 45(b) is to mandate effective notice to the subpoenaed party, rather than 'slavishly adhere to one particular type of service.'" *Id.* at *5. The court went on to say:

> The courts that have upheld service by alternative means have uniformly held that what is mandated is that service be made in a manner which reasonably insures actual receipt of the subpoena by the witness. Whether a potential deponent in the position of the petitioner was served "hand-to-hand" becomes a moot point from a practical perspective.

*Id.* (citation omitted).

In Utah, this line of reasoning was adopted in the 2018 decision of *Ellis-Hall Consultants, LLC v. Hoffmann IV*, No. 2:12-cv-00771, 2018 WL 4215114 (D. Utah Sept. 4, 2018). In that case, subpoenas were sent by mail to some nonparties. The nonparties asserted service by mail was inadequate. The defendants who had sent the subpoenas filed a motion to compel. *Id.* at *2. The presiding Magistrate Judge, Judge Pead, reviewed the growing shift in the law that would allow for non-personal service. *Id.* Without addressing the precise issue of whether service by mail was sufficient in all cases, Judge Pead noted it was apparent from the court filings opposing the subpoenas on the basis of service that the recipients had ultimately received the subpoenas. *Id.* at *3. That court went on to state that "[w]hile the court could certainly require Defendants to re-serve the subpoenas, to do so would elevate form over substance and fly in the face of securing

5

'the just, speedy, and inexpensive determination of every action and proceeding.'" *Id.* (discussing the mandates of Fed. R. Civ. P. 1 and case law regarding a court's wide discretion to manage discovery to achieve orderly disposition of cases).

In 2020, another court in Utah looked to the decisions of other districts in the Tenth Circuit and found non-personal service appropriate. *Fed. Trade Comm'n v. Zurixx, LLC*, No. 2:19-cv-00713-DAK-DAO, 2020 WL 9255400 at * 1–2 (D. Utah Dec. 21, 2020). In this *Zurixx* case, the parties trying to serve the subpoena believed the person they were trying to serve was avoiding service. *Id.* at * 1–2. The subpoena was delivered by certified mail, e-mail, and by leaving a copy at the address of the person to be served. *Id.* at *1. After those methods of service were used, the parties asked the court for an order affirming that such methods of service were permissible. *Id.* The *Zurixx* court found those methods of service to be permissible by looking at the same growing body of law in this area, namely in the sister districts of Kansas and Colorado, and persuasive authority in Rule 4 which allows for alternate means of service when a person is avoiding service. *Id.*

This case is similar to both *Ellis-Hall* and *Zurixx*. The court therefore finds, consistent with the precedent applied in the Districts of Utah, Kansas, and Colorado, that under the facts of this case service by certified mail is permissible and service does not need to be attempted again. The goals of service have already been achieved in this case. This determination is also consistent with the goals of Rule 1.

This Court reaches this conclusion by evaluating (1) the service that was attempted in 2017 and (2) the state of this matter since. In 2017, Mr. Thurston contested whether he actually received the envelope since it was returned. A copy of the envelope was provided to the court (ECF 2-B, ECF 30 at 3). It was not clearly marked as a subpoena. The court is not able to conclude that the

6

certified mail delivery did achieve service when it was initially attempted because the envelope was refused, unopened, and returned to the sender.

However, since that original attempt at service occurred, it is clear that Mr. Thurston has received the subpoena. He opposed the subpoena on the basis of personal service and continues to oppose it on the basis of service now several years later and after an appeal. There is no doubt from the motions practice on this isolated issue that Mr. Thurston and his counsel have the subpoena and understand its contents. Looking to the reasoning used in this district in *Ellis-Hall Consultants, LLC*, "[w]hile the court could certainly require [Mr. Souza] to re-serve the subpoena[], to do so would elevate form over substance and fly in the face of securing 'the just, speedy, and inexpensive determination of every action and proceeding.'" *Ellis-Hall Consultants, LLC*, 2018 WL 4215114, at *3 (discussing the mandates of Fed. R. Civ. P. 1 and case law regarding a court's wide discretion to manage discovery to achieve orderly disposition of cases). As in the Colorado decision of *E.A. Renfroe*, 2008 WL 1806200 at *5, whether Mr. Thurston "was served 'hand-to-hand' becomes a moot point from a practical perspective," particularly now several years later and after extensive legal briefing on the same issue.

This case is also similar to that faced by the court in *Zurixx* when the trial court allowed non-personal service where the person to be served was evading service. Similar allegations have been sufficiently raised in this case (ECF 30, 30-1, and 33 at 5–6) and, potentially, in the underlying case in Nevada. *See* Order Granting Johns Souza's Petition for Custodianship at 2, *Souza v. Elevate, Inc.*, No. 2:17-cv-01924 (D. Nev. Sept. 19, 2017). It was due to the inability to reach Mr. Thurston, even through his counsel in Nevada, that gave rise to the service of the subpoena and then this this ancillary litigation in Utah. Prior to serving Mr. Thurston, his attorneys in the Nevada action received subpoenas and provided responses (ECF 30-1). After trying to serve

7

Mr. Thurston by mail, attempts were made to serve him personally but the residential address provided was false (ECF 30-1 at 3). Utah constables were hired to effect service on two occasions (ECF 30-1 at 5). Mr. Thurston later provided a business address that he alleged could be used for service, but that address is a UPS store. (ECF 30-1)

In conclusion, Mr. Thurston has received the subpoena. Attempts to serve him personally have occurred and have been unsuccessful. This discovery matter could have unfolded in various ways, perhaps by seeking a special order for alternate service as in *Zurixx*. But Mr. Souza was not without a good faith basis to believe that alternate service was appropriate and permissible. That position is supported by a growing body of case law. While the Tenth Circuit has yet to affirm the approach being used in several districts in this circuit and declined to evaluate the issue in the appeal in this case, courts in the District of Utah are applying this approach and this court shall do the same. To order service to occur a second time, now several years later and after ample briefing, would elevate form over function. This approach is further supported by the mandate of Rule 1 under the circumstances of this case.

**B. The Subpoena Did Not Request Production of Documents More than 100 Miles Away**

Mr. Thurston presented a second argument that the subpoena is facially invalid because he lives in Utah and Mr. Souza, who requested the documents, lives in Georgia which is more than 100 miles away. Rule 45(c)(2)(A) addresses production of documents:

> A subpoena may command:
>
> > (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person;

Fed. R. Civ. P. 45(c)(2)(A). This rule does not bar compliance with subpoenas served to distant parties. Rather, Rule 45(c), as it was adopted in the 2013 amendments to Rule 45, allows for

8

remote appearances, cost shifting if a deponent would incur a substantial expense, and electronic delivery of documents. With respect to the rule for documents, the Advisory Committee stated, "Under the current rule, parties often agree that production, particularly of electronically stored information, be transmitted by electronic means. Such arrangements facilitate discovery, and nothing in these amendments limits the abilities of parties to make such arrangements." Fed. R. Civ. P. 45(c)(2)(A) advisory committee's note to 2013 amendments.

The subpoena in this case provided explicit instructions on how to address the production of documents (ECF 2-1). The additional instructions, provided as an attachment to the subpoena, specified two options:

> To save money, the issuing attorney would prefer to receive the documents sought by mail, e-mail, or a shared cloud drive (DropBox, Google Drive, Box, etc.). However, should recipient demand that the issuing attorney appear at a physical location within 100 miles of the location of the recipient, the issuing attorney will secure a location within that area to do so.

This instruction is in alignment with Rule 43, the Advisory Committee's notes, and Rule 1. In light of the express instruction on how and where to produce the requested documents, Mr. Thurston is incorrect in his assertion that the subpoena required discovery more than 100 miles away. The subpoena requested production of documents electronically. Then, if Mr. Thurston preferred in-person delivery, then arrangements would be made to have the documents produced at a location within that 100-mile radius. In no instance was Mr. Thurston compelled to produce documents in Georgia.

**C. Time for Compliance and Attorney's Fees**

Due to the long duration of this case, and Mr. Thurston's four-years of notice that these documents would be requested, the court orders all documents requested in the subpoena to be produced within thirty days.

9

Having granted the motion to compel, Rule 37(a)(5)(A) requires the court to order Mr. Thurston, his counsel, or both, to pay the attorney's fees for Mr. Souza in making the motion after providing an opportunity to be heard. No request for fees is currently before the court. The issue of fees is therefore deferred at this time pending a motion for fees and appropriate briefing.

### III. CONCLUSION AND ORDER

For the foregoing reasons, the court hereby GRANTS Plaintiff's Motion to Compel (ECF 2). All documents requested in the subpoena shall be produced within thirty days.

IT IS SO ORDERED.

DATED this 13 May 2022.

*Cecilia M. Romero*
Magistrate Judge Cecilia M. Romero
United States District Court for the District of Utah