# EXHIBIT A

James D. Gilson (5472)
Cole P. Crowther (16432)
**DENTONS DURHAM JONES PINEGAR P.C.**
111 S. Main, Suite 2400
Salt Lake City, Utah 84111
Telephone: (801) 415-3000
Facsimile: (801) 415-3500
james.gilson@dentons.com
cole.crowther@dentons.com

> If you do not respond to this document within applicable time limits, judgment could be entered against Counterclaim Defendants as requested.

*Attorneys for Counterclaimant Blox Lending, LLC*

## IN THE DISTRICT COURT OF THE THIRD JUDICIAL DISTRICT
## IN AND FOR SALT LAKE COUNTY, STATE OF UTAH

| | |
|---|---|
| CODEX UNITED, LLC, a Utah limited liability company, BLOCKCHAIN UNITED MINING SERVICES, INC., a Wyoming corporation, and CONNECT UNITED, INC., a Wyoming corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>PROFIT VAULT VC1, LLC, aka PROFIT VAULT JV 1, LLC, a Utah limited liability company, BLOX LENDING LLC, a Utah limited liability company, TREASURY MANAGEMENT SERVICES, LLC, a Utah limited liability company, JASON R. ANDERSON, an individual, JACOB ANDERSON, an individual, GORDON ANDERSON, an individual, EMILY TABOR EADS, an individual, and DOES 1 through 10,<br><br>Defendants, | **THIRD AMENDED COUNTERCLAIM BY BLOX LENDING, LLC**<br><br>Case No. 210903079<br><br>Judge Lawrence |

BLOX LENDING, LLC, a Utah limited
liability company,

          Counterclaimant,

vs.

BLOCKCHAIN UNITED MINING
SERVICES, INC., a Wyoming corporation;
CONNECT UNITED, INC., a Wyoming
corporation; WRIGHT THURSTON, an
individual; BLOCKCHAIN GAME
PARTNERS, INC., a Wyoming corporation
dba GALA GAMES; BLOCK BROTHERS,
LLC, a Utah limited liability company, and
TRUE NORTH UNITED INVESTMENTS,
LLC, a Utah limited liability company, and
DOES 1 through 10,

          Counterclaim Defendants.

## THIRD AMENDED COUNTERCLAIM BY BLOX LENDING, LLC

Pursuant to Utah R. Civ. P. 15, and the Court's Order dated July 13, 2023,

Counterclaimant Blox Lending, LLC ("Blox"), hereby submits its Third Amended Counterclaim

against Counterclaim Defendants Blockchain United Mining Services, Inc., now known as

Blockchain United Mining Services DAO, LLC ("BUMS"), Connect United, Inc., now known as

Connect United DAO, LLC ("Connect United"), Wright Thurston, an individual ("Thurston"),

Block Brothers, LLC ("Block Brothers"), Blockchain Game Partners, Inc., doing business as

Gala Games ("Gala Games"), and True North United Investments, LLC ("True North" and

together with BUMS, Connect United, Thurston, Block Brothers, and Gala Games the

"Counterclaim Defendants"), and alleges as follows:

1

## PARTIES

1.        Blox is, and at all times material hereto has been, a limited liability company organized and existing under the laws of the State of Nevada, maintaining its principal place of business in Draper, Utah.

2.        Thurston is, and at all times material hereto has been, an individual residing in Wasatch County, State of Utah, and sometimes does business as BUMS, Connect United, Gala Games, Block Brothers, and True North (collectively, the "Thurston Entities"), and is a founder, principal, owner, and agent of the Thurston Entities.

3.        BUMS purports to be a Wyoming limited liability company, but maintains or maintained its principal place of business in Wasatch County, Utah, and was formerly known as Blockchain United Mining Services, Inc.

4.        Connect United purports to be a Wyoming limited liability company, but maintains or maintained its principal place of business in Wasatch County, Utah, and was formerly known as Connect United, Inc.

5.        Gala Games was or is a Wyoming corporation, and conducts business in Wasatch County, Utah.

6.        Block Brothers was or is an entity organized under the laws of the State of Utah and maintains or maintained its principal place of business in Wasatch County, Utah.

SLC_6242227.4

7.      True North was or is an entity organized under the laws of the State of Utah and maintains or maintained its principal place of business in Wasatch County, Utah. According to its certificate of organization, Thurston is True North's sole manager.[1]

8.      Does 1 through 10 are individuals or entities whose names and residences are presently unknown but who participated in the wrongful acts alleged in this Third Amended Counterclaim, or who are otherwise alter-egos, successors, or transferees of the existing Counterclaim Defendants. To the extent necessary, Blox will amend this Third Amended Counterclaim when further information is learned about these individuals and/or entities.

## JURISDICTION AND VENUE AND TIER

9.      This Court has personal jurisdiction over Counterclaim Defendants because Thurston is an individual residing in Utah, Block Brothers and True North are Utah companies, BUMS and Connect United have asserted claims in the same case and are or were companies that conducted business in Utah, and because Gala Games conducts business in Utah.

10.     This Court has subject matter jurisdiction over this action pursuant to Utah Code §§ 78A-5-102(1) and 78B-3-205.

11.     Venue lies in the Third Judicial District Court pursuant to Utah Code §§ 78B-3-304 and 307.

12.     This case is a Tier 3 matter as described in Rule 26(c)(3) of the Utah Rules of Civil Procedure.

---

[1] While the definitions for the terms "Thurston Entities" and "Counterclaim Defendants" includes True North and are used throughout this Third Amended Counterclaim, Blox is not asserting any direct liability against True North. Rather, consistent with the Court's Order dated July 13, 2023, at this time Blox's claims against True North are based on the allegations that it is an alter ego of Thurston and is thus jointly liable with Thurston to the full extent that Thurston is liable. Blox reserves its right to later assert that True North is also the alter ego of the other Thurston Entities.

3

## **GENERAL ALLEGATIONS**

13.     Each of the claims for relief set forth in this Third Amended Counterclaim is alleged against each Counterclaim Defendant. Each Counterclaim Defendant participated in the conduct at issue, either directly and/or through Thurston, and each is jointly and severally liable for the claims.

### ***Thurston and the Thurston Entities' Actions***

14.     Thurston is a principal, founder, owner, and agent of the each of the Counterclaim Defendant entities BUMS, Connect United, Gala Games, Block Brothers, and True North (collectively, the "Thurston Entities").

15.     In their Amended Complaint in this action, BUMS and Connect United admit and allege at paragraphs 40-41 that Thurston was an agent and/or representative of "Blockchain United and/or Connect [United]."

16.     Thurston and each of the Thurston Entities shared a common office at 125 West Main Street, #1122, Midway, Utah (the "Midway Office"), which Thurston operated, and in which he conducted business on behalf of himself and each of the Thurston Entities.

17.     In August and September of 2020, Blox acquired 672 Bitmain s-17PRO and s-19pro machines ("Bitmain Miners") that had originated from Thurston and from each of the Thurston Entities, for a total cost of $3,067,500, as follows:

        a.      On August 6, 2020, Blox purchased 226 Bitmain Miners from Thurston

        and the Thurston Entities by wiring $672,500 to Block Brothers, as directed by Thurston;

b.      On September 18, 2020, Blox purchased 246 Bitmain Miners from Profit Vault VC1, LLC by agreement to pay $738,000 in cash and $762,000 in future GALA rewards;

c.      On September 20, 2020, Blox acquired 200 Bitmain Miners from TMS by settling a debt owed by TMS to Blox for $895,000.

18.     The Bitmain Miners were fully functional and were used and owned by Blox to mine Bitcoin ("BTC") cryptocurrency, and as of October 1, 2020, were producing approximately 0.42369 BTC per day.

19.     In or around September 2020, Thurston (on behalf of himself and the Thurston Entities) represented to Jason Anderson and Jake Anderson of Blox that Thurston and the Thurston Entities had developed new and improved cryptocurrency mining equipment, which mined GREEN and GALA cryptocurrency rewards and NFTs, which equipment Thurston called a "Smart Box," which Thurston claimed were more profitable and used significantly less electricity than the Bitmain Miners owned by Blox.

20.     On September 10, 2020, Thurston met with Jason Anderson and Jake Anderson (the "September 10 Meeting") at Thurston's Midway Office. At the September 10 Meeting, Thurston showed them a purported beta test version of the Smart Box, and represented that it was fully functional, and that it had finished the development phase and was in the production phase of manufacturing hundreds of Smart Boxes.

21.     Thurston represented that each Smart Box contained five active nodes (hard drives), half that mined GREEN rewards and half that mined GALA rewards and NFTs.

5

22.     Previously in the summer of 2020, Thurston made similar representations to others, including to Gordon Anderson, that he and the Thurston Entities had Smart Boxes already operating, including 2,000 "ready to go" as of June 15, 2020, and sent photographs to Gordon Anderson dated June 4 and June 15 2020, purporting to show functioning Smart Boxes.

23.     Below is a true copy of the text messages dated June 4, 2020 and June 15, 2020 between Thurston and Gordon Anderson:



SLC_6242227.4



24.     Blox has since learned that the purported Smart Boxes Thurston showed to Jason Anderson and Jacob Anderson of Blox and others were sham devices with blinking lights meant to deceive investors into believing the Smart Boxes were fully operating, when the truth was that the devices did not perform any of the claimed functions.

25.     During the September 10 Meeting, Thurston also represented that each Smart Box had a market value at $5,000 each, but that they were willing to sell them to Blox for $2,000 each.

26.     Thurston further represented that he and the Thurston Entities would together give a $5,000 trade in value to Blox for each of its Bitmain Miners, and give a credit of $3,000 each. That credit would be applied toward monthly license fees and the balance would be refunded at the time of the Smart Box delivery.

27.     At the September 10 Meeting, Thurston showed Jason Anderson and Jacob Anderson of Blox a spreadsheet on his computer titled "Green Start Fund" that included a tab

titled "Sheet1," which stated "bitmain s-17 or better" miners would be "traded 1 for 1," with each being traded for a "smart box + 5 blockbot node licenses," and that each would receive a "credit towards lease or BTC when refinanced."

28.     Below is a true copy of the picture the Andersons took of Thurston's computer screen showing that spreadsheet:



29.     This same spreadsheet also included a tab titled "orders," which showed the delivery schedule for Smart Boxes. It shows that within 30 days (by October 15), 400 Smart Boxes would be delivered, and within 34 days (by October 31), 1,000 Smart Boxes would be delivered, with another 10,000 delivered within 60 days.

SLC_6242227.4

30.    Below is a true copy of the picture the Andersons took of Thurston's computer screen showing that spreadsheet:



31.    Thurston and the Thurston Entities offered and promised to exchange all 672 of Blox's Bitmain Miners for 672 fully functional Smart Boxes according to this timetable:  Blox to transfer and deliver its 672 Bitmain Miners to Thurston and the Thurston Entities on or about October 1, 2020; Thurston and the Thurston Entities to transfer and deliver 200 Smart Boxes to Blox within two weeks thereafter (by October 15, 2020), together with the credit of $3,000 each ($600,000 USD); Thurston and the Thurston Entities to transfer and deliver the remaining 472 Smart Boxes to Blox by December 1, 2020, together with the credit of $3,000 each, less the amount already applied to monthly licensing fees (the "Transfer and Exchange Agreement").

9

32.     These key terms of the Transfer and Exchange Agreement were discussed and agreed upon in multiple oral conversations and email messages between Thurston and his representatives and with Jason and Jacob Anderson, and in multiple drafts of a written Transfer and Exchange Agreement.

33.     The parties understood and agreed that time was of the essence in the Transfer and Exchange Agreement because each day that the mining equipment is operating it is generating valuable Bitcoin or GREEN and GALA cryptocurrency rewards and NFTs for the operator.

34.     On September 11, 2020, Thurston represented to Blox that he sold "19k smart boxes yesterday and collected funds on 600 so far" and that he could "produce 24,400 by dec 31st this year."

35.     However, Blox later learned that less than 60 Smart Boxes were ever manufactured and only 328 Smart Boxes were ever sold, excluding the 672 Smart Boxes sold to Blox.

36.     On September 20, 2020, ten days after the September 10 Meeting, Thurston represented to Jason Anderson and Jacob Anderson via text message that each Smart Box was earning $100 per day. Thus, Thurston represented that the 672 Smart Boxes, each earning $100 per day, would earn $2,016,000 per month.

37.     Below is a true copy of the September 20, 2020 text messages from Thurston to Jacob and Jason Anderson:



38.     Thurston and the Thurston Entities' representations and promises were made orally and in writing, by Thurston on behalf of himself and each of the Thurston Entities, including but not limited to at the following times and places:  Meetings at Thurston's Midway Office on August 21, 2020, September 4, 2020, and September 10, 2020, with Thurston present along with Jason Anderson and Jake Anderson.

39.     Thurston and the Thurston Entities made their material representations and promises to Blox, knowing they were false or with a reckless disregard for the truth, for the purpose of inducing Blox to transfer their 672 Bitmain Miners to Defendants.

40.     Thurston's and the Thurston Entities' material false representations and omissions include, but are not limited to, the following:

a.      Misrepresenting that Thurston and the Thurston Entities had developed new and improved fully functioning cryptocurrency mining equipment, called Smart Boxes, which operated faster and with significantly less electricity than Bitmain Miners;

11

b.      Misrepresenting that Thurston and the Thurston Entities had over 2,000 Smart Boxes ready to ship and that they could manufacture 5,000 per month as soon as orders were made;

c.      Misrepresenting that Thurston and the Thurston Entities would be able to deliver 200 fully functioning Smart Boxes to Blox by October 15, 2020, and an additional 472 by December 1, 2020;

d.      Misrepresenting that as of September 20, 2020, the Smart Boxes were earning $100 each per day, which would result in $2,016,000 in earnings per month for the 672 Smart Boxes purchased by Blox,

e.      Misrepresenting that Thurston had sold thousands of Smart Boxes and collected on 600 of those;

f.      Omitting to disclose that the so-called Smart Boxes were not functional, but instead, in reality, the sham machines that Thurston displayed to Blox were merely a fan and blinking lights that performed no functions;

g.      Omitting to disclose that the so-called Smart Boxes had not been fully developed or manufactured;

h.      Omitting to disclose that the so-called Smart Boxes would not be available for delivery to Blox in accordance with the promised timetable (200 by October 15, 2020, 472 by December 1, 2020), knowing that time was of the essence;

i.      Omitting to disclose that Thurston and the Thurston Entities were insolvent and were not willing or able to issue a $3,000 rebate payment for each Smart

12

Box, nor were they willing to apply the credit to the monthly licensing fees until the Smart Boxes were delivered;

j.      Omitting to disclose that Thurston and the Thurston Entities could not or would not pay rewards daily automatically into the Blox wallets or accurately account for rewards and NFTs earned with source documents and blockchain records for each of the GALA and GREEN nodes Blox paid activation for.

41.     In reliance on Thurston's and the Thurston Entities' false representations and promises as set forth above, Blox accepted their offer and entered into the Transfer and Exchange Agreement with Thurston and the Thurston Entities.

42.     Blox fully performed its promise under the Transfer and Exchange Agreement by transferring and delivering its 672 Bitmain Miners to Thurston and the Thurston Entities on or about October 1, 2020.

43.     To date, Thurston and the Thurston Entities have failed to perform any of its promises under the Transfer and Exchange Agreement, despite numerous demands by Blox.

44.     Defendants have not delivered any Smart Box mining equipment machines in accordance with the timetable agreed upon, or at any other time.

45.     Thurston and the Thurston Entities have not returned Blox's Bitmain Miners to Blox.

46.     Thurston and the Thurston Entities kept the cryptocurrency rewards and NFTs and failed to remit the GREEN and GALA rewards and NFTs daily into Blox's private wallet as they had promised. Only three manual deposits were made to Blox wallets in October 2020, and that was done without any accounting to support the amount of rewards earned or the supporting

13

documents, including the blockchain showing that all of the rewards Blox should have earned were actually deposited.

47.     Thurston and the Thurston Entities have not paid Blox the fair market value of its 672 Bitmain Miners that they received from Blox on October 1, 2020, or given Blox, the $3,000 credit toward monthly licensing fees as agreed, nor have they returned the Bitmain Miners to Blox. Instead, they have, on information and belief:

      a.     Utilized 672 Bitmain Miners themselves to generate over 155 BTC for themselves; and/or

      b.     Resold Blox's 672 Bitmain Miners to others and retained the proceeds from those sales for personal gain.

48.     Despite knowing that they were unable to transfer replacement mining equipment to Blox, Thurston and the Thurston Entities deprived Blox of the benefit of the use of their 672 Bitmain Miners, loss of at least 155 BTC to date, and received and utilized the significant economic benefits of the use of those machines themselves, and during a time period when the market price of BTC was significantly increasing.

49.     Had Blox retained their 672 Bitmain Miners from October 1, 2020 to the present date (calculated as of October 10, 2021), given that they were collectively producing approximately 0.42369 BTC per day, Blox would have earned 158.46006 BTC, which, at the current value of BTC of $56,527.48 (as of October 10, 2021), results in approximately **$8,957,347.87** that Thurston and the Thurston Entities have wrongfully taken from Blox.

50.     Had Thurston and the Thurston Entities been honest, Blox would not have transferred their 672 Bitmain Miners to Thurston and the Thurston Entities.

SLC_6242227.4

51.     Thurston and the Thurston Entities have wrongfully taken Blox's 672 Bitmain Miners for their personal gain and benefit.

52.     Thurston and the Thurston Entities represented that all the rewards and NFTs generated by the Smart Boxes would belong to Blox as the operator, and the rewards would be paid daily for GREEN and weekly for GALA, and deposited automatically into Blox's private account wallets and verified over blockchain, provided that Blox paid the 30 day operator licenses required to activate the GREEN and GALA rewards and NFTs, which license fees would be applied from the more than $2 million credit owed to Blox due to the transfer of Blox's 672 Bitmain Miners.

53.     On or about October 4, 2020, Blox paid to Thurston and the Thurston Entities $134,400 ($200 for each of the 672 Smart Boxes) to activate a total of 3,360 node licenses for 30 days on all 672 Smart Boxes that Defendants were to provide Blox (5 nodes per Smart Box, to wit: 1,680 GALA and 1,680 GREEN). Thurston told Blox that he would run these licenses remotely until their Smart Boxes arrived, and would apply the over $2 million rebate credit to license fees until the rebate was paid when Smart Boxes were delivered. Thus, Thurston had total control over receipt of the rewards and NFTs.

54.     On October 5, 2020, Thurston represented in a text message to Jason Anderson and Jacob Anderson that Blox would receive a daily report from GALA and deposits every Monday, and that GREEN would deliver deposits daily.

55.     Below is a true copy of the  October 5, 2020 text message between Thurston and Jacob and Jason Anderson:

SLC_6242227.4



56.     However, Blox never received any reports directly from GREEN or GALA, and never received rewards directly either.

57.     Instead, Thurston and the Thurston Entities received Blox's GALA and GREEN rewards and directed them to be deposited into Thurston's own account, and then Thurston transferred a lesser number of those rewards into accounts for Blox.

58.     Instead of receiving 5 node licenses for each of Blox's 672 Bitmain Miners as promised, which would have been a total of 3,360 node licenses, Blox only received 1,344 node licenses (672 GREEN nodes and 672 GALA nodes). Thurston's own records and reports provided to Blox confirm that no more than 672 GREEN nodes and 672 GALA nodes were running for Blox during the period of October 4 through November 3, 2020.

59.     During the period of October 4 through November 3, 2020, according to the reports given by Thurston to Blox, the 672 GREEN nodes produced 288,015 GREEN tokens each.

60.     If Thurston and the Thurston Entities had delivered the missing 2,016 node

licenses for the month of October as required (which would have been another 1,008 GALA

nodes and 1,008 GREEN nodes), Blox would have earned another 290,318,120 GREEN tokens

(as well as additional GALA tokens). The current value of these missing tokens (as of October 4,

2021) is $0.0166 for each GREEN token, resulting in a current value of approximately

**$4,819,280.79** in GREEN tokens.

61.     Further, according to GALA Games data available at

www.app.gala.games/distribution?date=1633828409864, Blox is able to see the blockchain

information and determine the GALA earned per point, which shows that 1,035,770.34 GALA

rewards per point were earned from October 4, 2020 through October 9, 2021.

62.     When multiplied by 1,680 points (5 per Smart Box), Blox should have earned

1,619,204,731.20 GALA as of October 9, 2021. Taking the October 4, 2021 value of $0.11 for

each GALA token, results in approximately **$178,112,520.43** in damages.

63.     Additionally, Blox should have earned another approximately 888,336 GALA

Game Items during the period of October 4 through November 3, 2020, which are valued at

$3.99 each.

64.     Thurston and the Thurston Entities wrongfully retained these rewards and failed

to deliver them to Blox.

65.     Thurston and the Thurston Entities also failed to deliver all the Game Items

earned by Blox. A report sent on October 19, 2020 to Blox by Thurston and the Thurston

Entities' representative Aly Austin shows that between October 4 and October 18, 2020, Blox's

GALA nodes earned 267,456 game items.

66.    Below is a true copy of the October 19, 2020 report:

| Blox Lending Node Report | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Date** | **Day** | **Gala** | **Status** | | **Game Items** | **Status** | |
| 10/4/20 | Sunday | 10,517 | Distributed | | 38 | Pending | |
| 10/5/20 | Monday | 10,280 | Distributed | 17,307,360.00   Gala | 36 | Pending | 25,536.00   Game Items |
| 10/6/20 | Tuesday | 9,595 | Distributed | | 35 | Pending | |
| 10/7/20 | Wednesday | 9,034 | Distributed | | 34 | Pending | |
| 10/8/20 | Thursday | 7,126 | Distributed | | 34 | Pending | |
| 10/9/20 | Friday | 9,427 | Pending | | 34 | Pending | |
| 10/10/20 | Saturday | 8,852 | Pending | | 35 | Pending | |
| 10/11/20 | Sunday | 8,736 | Pending | | 36 | Pending | |
| 10/12/20 | Monday | 8,217 | Pending | | 39 | Pending | |
| 10/13/20 | Tuesday | 8,922 | Pending | 57,372,672.00   Gala | 40 | Pending | 241,920.00   Game Items |
| 10/14/20 | Wednesday | 6,201 | Pending | | 34 | Pending | |
| 10/15/20 | Thursday | 7,979 | Pending | | 33 | Pending | |
| 10/16/20 | Friday | 8,612 | Pending | | 32 | Pending | |
| 10/17/20 | Saturday | 9,327 | Pending | | 38 | Pending | |
| 10/18/20 | Sunday | 9,103 | Pending | | 39 | Pending | |

67.    Yet on the Blox Lending Node Report sent by Thurston and the Thurston Entities' representative Jen Miller on November 6, 2020, it states in the yellow "Total Items" row that for the entire month of October 2020, Blox only earned 7,512 game items.

68.    Below is a true copy of the Blox Lending Node Report:



69.    The report states that these game items were worth $3.99 at the time.

18

70.     Thurston and the Thurston Entities improperly retained and failed to deliver to Blox all of the game items they earned, including the remaining 259,994 game items earned from October 4 to October 18, which have a value of approximately **$1,037,176.56**.

71.     Upon information and belief, Blox earned a similar amount of game items during the remaining 15 days from October 19 to November 3, 2020, resulting in another approximately 267,456 game items that Thurston and the Thurston entities failed to deliver, which had a value of $3.99 each, and results in damages of approximately **$1,067,149.44**.

72.     Additionally, because the agreed upon $3,000 credit for each of the 672 Bitmain Miners was never paid to Blox by Thurston or the Thurston Entities, Blox had a credit of $2,016,000 on the books with Thurston ($3,000 x 672 Bitmain Miners).

73.     Due to this credit, the monthly licensing fee of $134,400 could not have been due for at least 15 months (not before February 4, 2022), and Blox should have been earning rewards up to the present date. Given that Blox should have earned what now amounts to tens of millions of dollars for rewards and game items for only one month (October 4 to November 3, 2020), Blox's damages for the remaining eleven months and counting is, upon information and belief, many times that number.

74.     Blox has sustained and will yet sustain significant damages from Thurston and the Thurston Entities' wrongful actions, in an amount to be proven at trial, including:

a.      Not less than **$8,957,347.87** for BTC mined by the 672 Bitmain Miners that Blox delivered to Thurston and the Thurston Entities on October 1, 2020;

b.      Not less than **$3,067,500** for the value of the Bitmain Miners delivered by Blox to Thurston and the Thurston Entities;

SLC_6242227.4

c.      Not less than **$4,819,280.79** in GREEN rewards earned during the time period of October 4, 2020 through November 3, 2020 that Thurston and the Thurston Entities wrongfully retained and failed to deliver to Blox

d.      Not less than **$178,112,520.43** for GALA rewards earned during the period of October 4, 2020 through October 9, 2021, that Thurston and the Thurston Entities wrongfully retained and failed to deliver to Blox;

e.      Not less than **$3,544,460.64** for the approximately 888,336 GALA Game Items earned during the period of October 4 through November 3, 2020, which are valued at $3.99 each;

f.      Not less than **$2,104,326** for the approximately 527,450 missing game items that Blox earned that Thurston and the Thurston Entities failed to deliver and wrongfully retained; and

g.      An amount to be determined at trial for the time period from November 4, 2020 to the present (and up until February 2022), that the rewards and game items should have been accruing to Blox.

75.     Counterclaim Defendants unilaterally deleted the 672 nodes in Blox's online account with Gala Games, together with Blox's GALA rewards, shortly after Blox filed its October 18, 2021 Rule 26 disclosures in this action.

76.     In or around March of 2021, Blox once again demanded that Thurston and the Thurston Entities comply with the parties' agreement and deliver the rewards and fees owed to Blox, but Thurston failed to do so. Thurston changed the settings of his messages on March 29, 2021 to "disappear," as shown in the true copy of the text message thread below:



*Additional Alter Ego Allegations*

77.      In addition to their direct participation in the conduct at issue in performing each

of the acts and omissions alleged herein, each Counterclaim Defendant also acted as the agent of

the Counterclaim Defendant, or each ratified such acts, or both.

78.      Thurston is a principal, founder, owner, and agent of the each of the Thurston

Entities.

79.      Thurston acknowledges in his LinkedIn bio that he is Gala Games' Co-founder

and an officer. At one point, he was the registered Secretary for Gala Games.

80.      Thurston and each of the Thurston Entities shared a common office in Midway,

Utah, which Thurston operated and in which he conducted business on behalf of himself and

each of the Thurston Entities.

SLC_6242227.4

81.     Thurston directed that Blox send payment to his entity Block Brothers (which Blox did), even for transactions that purportedly involved Thurston personally or the other Thurston Entities.

82.     BUMS, Connect United, Gala Games, Block Brothers, and True North each commingled funds with Thurston and each other through bank accounts set up in the name of Gala Games and Block Brothers.

83.     At all relevant times, BUMS and Connect United did not have a bank account but used the bank accounts in the name of Gala Games and Block Brothers.

84.     At Thurston's direction, any revenue that BUMS or Connect United were purportedly to receive, including payments made by Blox, was deposited into Block Brothers and/or Gala Games' bank accounts.

85.     BUMS and Connect United were undercapitalized and insolvent at all relevant times.

86.     At Thurston's direction, all funds deposited into the bank accounts in the name of Block Brothers or Gala Games were used to cover Block Brothers' or Gala Games' expenses or transferred to True North and/or agents of the Thurston Entities.

87.     True North used Block Brothers's bank account to hold True North's funds and then would make withdrawals to pay the Thurston Entities' employees or "independent contractors" with those funds.

88.     The Thurston Entities and agents have taken contradictory positions on whether their agents are employees or independent contractors of the Thurston Entities.

89.     In 2020 and 2021, Block Brothers relied almost exclusively on routine deposits of hundreds of thousands of dollars a month by True North, to remain in operation and was otherwise undercapitalized and insolvent.

90.     In 2020 and 2021, there were at least 167 wire transfers between True North and Block Brothers and numerous checks paid to True North from Block Brothers.

91.     In 2020 and 2021, there were also significant deposits and payments involving True North and Block Brothers from Gala Games' bank account.

92.     BUMS and Connect United are both listed as parties to draft, incomplete agreements with Blox relating to the Smart Boxes, which neither entity signed, which drafts were prepared by Thurston's counsel, and the drafts do not clearly specify the respective roles of BUMS or Connect United.

93.     BUMS was registered as a Wyoming corporation on April 1, 2019. Between on or about June 9, 2020 and August 19, 2021 (during the time of Blox's dealings with Counterclaim Defendants as alleged herein), BUMS was an inactive, administratively dissolved Wyoming corporation, without a registered agent. On March 9, 2022, BUMS converted to a Wyoming limited liability company, and on March 11, 2022 changed its name to Blockchain United Mining Service DAO, LLC.

94.     Connect United was registered as a Wyoming corporation on November 21, 2019. On the same dates as BUMS, on March 9, 2022, Connect United converted to a Wyoming limited liability company, and on March 11, 2022 changed its name to Connect United DAO, LLC. Connect United stated in a March 11, 2022 filing with the Wyoming Secretary of State that Connect United "is a decentralized autonomous organization."

95.     Gala Games was registered as a Wyoming corporation on November 21, 2019. Its only registered officer with the Wyoming Secretary of State until on or about November 10, 2020 was Utah attorney Jared Moss, with an email address of jared@blockchainjedi.com, who at times has also represented Thurston and was paid by True North from funds held in bank accounts in the name of Block Brothers.

96.     BUMS, Connect United, Gala Games, and True North use or have used the same registered Treasurer or Fiscal Agent, namely Jonathan Bextel.

97.     Block Brothers was registered as a Utah limited liability company on October 12, 2017. During 2017 and 2018, Thurston was registered as its sole manager. At some time prior to February 5, 2021, Block Brothers was administratively dissolved by the Utah Department of Commerce, Division of Corporations & Commercial Code, but was reinstated on that date.

98.     In the dealings at issue with Blox, Thurston did not maintain clear distinctions between himself and the Thurston Entities in how the responsibilities and benefits of the transactions at issue were allocated and matched. Thurston treated himself and the Thurston Entities as interchangeable.

99.     Thurston's longtime accountant, Jennifer Miller, testified in deposition that Thurston's involvement with BUMS and Connect United is through True North.

100.    True North owns and controls the other Thurston Entities and is controlled by Thurston according to its counsel, Ken Cuccinelli.

101.    True North was and is a member of BUMS.

102.     Thurston directed True North to pay employees and/or independent contractors of the other Thurston Entities with funds held in bank accounts in the name of Block Brothers and Gala Games.

103.     The Thurston Entities alleged they do not have any employees but use independent contractors.

104.     True North, at Thurston's direction, also controlled the transfer and distribution of cryptocurrency and other related rewards to the Thurston Parties' employees and/or independent contractors.

105.     On information and belief, the transfer and distribution of cryptocurrency and other related rewards to pay employees and/or independent contractors and Blox, came from a cryptocurrency wallet controlled and owned by Thurston and/or True North.

106.     The employees and/or independent contractors for the Thurston Entities do not have any agreements with True North and have not provided services to True North.

107.     Yet, the employees and/or independent contractors of BUMS, Connect United, Gala Games, and Block Brothers received 1099 Forms from True North and/or Block Brothers for the years 2018-2021.

108.     Block Brothers' purported owner and manager, Steven Waters, recently testified in deposition that Block Brothers does not have employees, but it made routine payments to roughly 30 different employees and/or independent contractors who worked for different companies, such as BUMS, Connect United, and Gala Games.

109.     However, in 2020, Block Brothers applied for and received $568,942.52 from the United States government through the Paycheck Protection Program ("PPP"), after falsely

25

representing to the bank that it has 35 employees and an average monthly payroll of $227,581.01.

110.    Block Brothers made the same misrepresentations in 2021 when it applied for and received a second PPP loan in the amount of $670,674.77.

111.    Specifically, Block Brothers represented to the bank in connection with its PPP applications that certain agents of BUMS, Connect United, Gala Games, and True North were in fact employees of Block Brothers, despite those agents: not having any agreements with Block Brothers; not having performed any work for Block Brothers; not having received a W-2 from Block Brothers; and many of those agents having testified in this action that they were not employees but were independent contractors of various Thurston Entities.

112.    Block Brothers represented to CCBank that all of the Thurston Entities operate as a single unit in order to procure the PPP funds.

113.    Block Brothers received the PPP funds in April 2020 and March 2021 and transferred those PPP funds to True North.

114.    The PPP funds Block Brothers received were commingled with Thurston and each of the Thurston Entities' funds and were used to purchase vehicles and other gifts for the Thurston Entities' employees and/or independent contractors.

115.    Blox's GALA and GREEN rewards that were due to Blox under its agreement with Thurston, were arranged by Thurston to be first deposited into his own account, and then Thurston transferred a lesser number of those rewards into an account for Blox at Gala Games and Connect United, respectively.

26

SLC_6242227.4

116.     Thurston set up this arrangement because the GREEN nodes do not actually mine GREEN and were merely used to perpetuate fraud by Thurston and the Thurston Entities. *See S.E.C. v. Green United, LLC et al.* (Case No. 2:23-CV-00159), filed on March 3, 2023, in the United States District Court, District of Utah.

117.     Thurston used True North to initiate transfers of GALA and GREEN rewards to Blox and the other Thurston Entities, as reflected in True North's accounting records.

118.     True North, through Thurston, controlled Gala Games as it relates to Gala Games' involvement with Blox.

119.     True North paid for the manufacturing of all manufactured Smart Boxes (less than 60).

120.     Thurston's control and disregard of the corporate form by all the Counterclaim Defendants was manifest by Thurston directing the transfers of nodes, licenses, and GALA and GREEN rewards, from Gala Games and Connect United, to himself, and then transferring a smaller amount of nodes, licenses, and GALA and GREEN rewards back to Gala Games and Connect United to an account for Blox, for equipment transactions also involving BUMS and Block Brothers.

121.     Thurston's control and the disregard of the corporate form by all the Counterclaim Defendants was further manifest by the Counterclaim Defendants unilaterally taking and deleting Blox's Gala nodes, and GALA rewards from Blox's online account with Gala Games shortly after Blox filed its October 18, 2021, Rule 26 disclosures in this action.

122.     Similar unauthorized withdrawals occurred by the Counterclaim Defendants in defendant Profit Vault' account with Gala Games.

SLC_6242227.4

123.    Each of the Thurston Entities were not adequately capitalized at the times applicable to this dispute.

124.    On three separate occasions between August and December 2020, Thurston sought large loans from Jason Anderson, and also from others, claiming that he and the Thurston Entities needed additional funds to pay for the development of the Smart Boxes.

125.    Thurston and the Thurston Entities failed to pay the promised rewards and failed to deliver the promised Smart Boxes.

126.    Thurston's actions in connection with the Thurston Entities and Blox were as though he were a one-man corporation.

127.    Other officers or directors of the Thurston Entities, if they existed, were absent or non-functioning, at least in regard to the transactions at issue in this action.

128.    Thurston used the Thurston Entities as a façade for his personal benefit and operations.

129.    The Thurston Entities failed to observe corporate formalities, and failed to maintain corporate records.

130.    The Counterclaim Defendants deleted emails and other regular business records and correspondence.

131.    There exists a unity of interest, ownership, and control between Thurston and the Thurston Entities such that the separate personalities of the Thurston Entities and Thurston as an individual no longer exists, such that each of the Thurston Entities is the alter ego of Thurston and each of the other Thurston Entities.

28

132.    Each of Thurston and the Thurston Entities acted with an awareness of their wrongdoing, and realized that their conduct would substantially assist in the accomplishment of their wrongful conduct.

133.    Thurston, and the Thurston Entities, are the agents, employees, or assignees of each other, and in doing the actions or inactions alleged herein, acted within the course and scope of their relationships with each other, and with the full knowledge and consent of each other.

134.    Thurston exercised control and dominion over the Thurston Entities with a disregard for the separate legal status of those entities in order to defraud Blox and to avoid accountability for complying with the terms of Transfer and Exchange Agreement as alleged herein.

135.    The Thurston Entities used shared offices, email accounts, credit cards, and bank accounts.

136.    The Thurston Entities did not hold separate meetings or keep separate records.

137.    Thurston and the Thurston Entities acted wrongfully together to Blox's detriment.

138.    Adherence to the fiction of the Thurston Entities as separate entities distinct from each other and from Thurston would permit an abuse of the corporate form, would sanction fraud, promote injustice, or an inequitable result would follow.

## FIRST CLAIM FOR RELIEF
### (Fraud/Intentional Misrepresentation)

139.    Blox realleges and incorporates the allegations contained in the foregoing paragraphs as though set forth in their entirety herein.

140.    Counterclaim Defendants' actions involving Blox as alleged herein constitute fraud and intentional misrepresentation.

29

SLC_6242227.4

141.    Among the material misrepresentations and omissions made Counterclaim Defendants are the following:

    a.    Misrepresenting that Counterclaim Defendants had developed new and improved fully functioning cryptocurrency mining equipment, called Smart Boxes, which operated faster and with significantly less electricity than Bitmain Miners;

    b.    Misrepresenting that Counterclaim Defendants had over 2000 Smart Boxes ready to ship and that they could manufacture 5000 per month as soon as orders were made;

    c.    Misrepresenting that Counterclaim Defendants would be able to deliver 200 fully functioning Smart Boxes to Blox by October 15, 2020, and an additional 472 by December 1, 2020;

    d.    Misrepresenting that as of September 20, 2020, the Smart Boxes were earning $100 each per day, which would result in $2,016,000 in earnings per month for the 672 Smart Boxes purchased by Blox,

    e.    Omitting to disclose that the so-called Smart Boxes were not functional, but instead, in reality, the sham machines that Thurston displayed to Blox were merely a fan and blinking lights that performed no functions;

    f.    Omitting to disclose that the so-called Smart Boxes had not been fully developed or manufactured;

    g.    Omitting to disclose that the so-called Smart Boxes would not be available for delivery to Blox in accordance with the promised timetable (200 by October 15, 2020, 472 by December 1, 2020), knowing that time was of the essence;

30

h.      Omitting to disclose that Counterclaim Defendants were insolvent and were not willing or able to issue a $3,000 rebate payment for each Smart Box, nor were they willing to apply the credit to the monthly licensing fees until the Smart Boxes were delivered;

i.      Omitting to disclose that Counterclaim Defendants could not or would not pay rewards daily automatically into the Blox wallets or accurately account for rewards and NFTs earned with source documents and blockchain records for each of the GALA and GREEN nodes Blox paid activation for.

142.    Counterclaim Defendants' statements and omissions were false or misleading and they knew at the time that they were false and misleading.

143.    Blox reasonably relied on these misstatements and omissions to their detriment, and to make their decisions to invest with Counterclaim Defendants.

144.    As a direct and proximate result Counterclaim Defendants' misstatements and omissions, Blox has been damaged in an amount to be proven at trial.

145.    Counterclaim Defendants' conduct was willful, intentional, or was done with a reckless disregard of Blox's rights, and they are therefore also liable to Blox for punitive damages to punish and deter defendants from such conduct, in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF
### (Negligent Misrepresentation)

72.     Blox realleges and incorporates the allegations contained in the foregoing paragraphs as though set forth in their entirety herein.

73.    In the alternative, Counterclaim Defendants' misrepresentation and omissions were made negligently.

74.    Counterclaim Defendants owed a duty to Blox to be truthful and accurate in their statements and representations to Blox, and to disclose all material information relating to the proposed transactions involving Blox's Bitmain Miners and its money.

75.    Counterclaim Defendants breached their duty to Blox by making false statements to, and omitting material information from, Blox, including but not limited to the following:

a.    Misrepresenting that Counterclaim Defendants had developed new and improved fully functioning cryptocurrency mining equipment, called Smart Boxes, which operated faster and with significantly less electricity than Bitmain Miners;

b.    Misrepresenting that Counterclaim Defendants had over 2000 Smart Boxes ready to ship and that they could manufacture 5000 per month as soon as orders were made;

c.    Misrepresenting that Counterclaim Defendants would be able to deliver 200 fully functioning Smart Boxes to Blox by October 15, 2020, and an additional 472 by December 1, 2020;

d.    Misrepresenting that as of September 20, 2020, the Smart Boxes were earning $100 each per day, which would result in $2,016,000 in earnings per month for the 672 Smart Boxes purchased by Blox,

e.    Omitting to disclose that the so-called Smart Boxes were not functional, but instead, in reality, the sham machines that Thurston displayed to Blox were merely a fan and blinking lights that performed no functions;

f.      Omitting to disclose that the so-called Smart Boxes had not been fully developed or manufactured;

g.      Omitting to disclose that the so-called Smart Boxes would not be available for delivery to Blox in accordance with the promised timetable (200 by October 15, 2020, 472 by December 1, 2020), knowing that time was of the essence;

h.      Omitting to disclose that Counterclaim Defendants were insolvent and were not willing or able to issue a $3,000 rebate payment for each Smart Box, nor were they willing to apply the credit to the monthly licensing fees until the Smart Boxes were delivered;

i.      Omitting to disclose that Counterclaim Defendants could not or would not pay rewards daily automatically into the Blox wallets or accurately account for rewards and NFTs earned with source documents and blockchain records for each of the GALA and GREEN nodes Blox paid activation for.

146.    Counterclaim Defendants either knew at the time that they were making these statements and omissions that they were false and misleading, or failed to use reasonable care to determine whether the representations were true.

147.    Counterclaim Defendants were in a better position than Blox to know the facts, and Counterclaim Defendants had a financial interest in the transaction.

148.    Counterclaim Defendants intended for Blox to rely on these statements and omissions.

149.    Blox reasonably relied on these misstatements and omissions to their detriment, and to make their decisions to invest with Counterclaim Defendants.

SLC_6242227.4

150.     As a direct and proximate result of Counterclaim Defendants' misstatements and omissions, Blox has been damaged in an amount to be proven at trial.

151.     Counterclaim Defendants' conduct was done with a reckless disregard of Blox's rights, and they are therefore also liable to Blox for punitive damages to punish and deter Counterclaim Defendants from such conduct, in an amount to be determined at trial.

**THIRD CLAIM FOR RELIEF**
**(Alternative Claim for Conversion)**

152.     Blox realleges and incorporates the allegations contained in the foregoing paragraphs as though set forth in their entirety herein.

153.     Counterclaim Defendants took Blox's 672 Bitmain Miners on the condition and trusting that they would exchange that equipment with 672 better, more efficient mining equipment called Smart Boxes. In violation of that trust, Counterclaim Defendants converted Blox's 672 Bitmain Miners to their own benefit and self-enrichment, or for other purposes not authorized by Blox.

154.     Counterclaim Defendants took Blox's $134,400 payment for monthly license fees, and failed to remit to Blox the rewards generated from those licenses.

155.     Counterclaim Defendants took and deleted Blox's GALA rewards and nodes from Blox's online account with Gala Games shortly after October 18, 2021.

156.     As a result of such acts of conversion, Blox has been damaged in an amount to be proven at trial.

157.     Counterclaim Defendants' conduct was willful, intentional, or was done with a reckless disregard of Blox's rights, and they are therefore also liable to Blox for punitive damages to punish and deter them from such conduct, in an amount to be determined at trial.

34

## FOURTH CLAIM FOR RELIEF
### (Breach of Contract)

158.     Blox realleges and incorporates the allegations contained in the foregoing paragraphs as though set forth in their entirety herein.

159.     Counterclaim Defendants entered into the Transfer and Exchange Agreement with Blox as described herein, which was a legally binding contract between the parties.

160.     Blox performed all the terms and conditions of the Transfer and Exchange Agreement.

161.     Counterclaim Defendants breached their promises and obligations as set forth herein, by, among other things, failing to deliver 200 Smart Box mining equipment machines and $600,000 in cash back rebate in accordance with the Oct 2020 timetable agreed upon, or at any other time.

162.     Counterclaim Defendants breached their promises and obligations by accepting $134,400 payment for monthly license fees and failing to deliver all the rewards on a daily basis or to account for the three days of rewards that were paid.

163.     As a result of Counterclaim Defendants' breaches, Blox has been damaged in an amount to be proven at trial.

## FIFTH CLAIM FOR RELIEF
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

164.     Blox realleges and incorporates the allegations contained in the foregoing paragraphs as though set forth in their entirety herein.

165.     Counterclaim Defendants entered into the Transfer and Exchange Agreement with Blox as described herein, which was a legally binding contract between the parties.

SLC_6242227.4

166.     The parties' agreement, like all contracts, contains the unwritten or implied promise that the parties would deal with each other fairly and in good faith and not intentionally do anything to injure each other's right to receive the benefits of the contract.

167.     Blox fully performed all the terms and conditions that it was obligated to perform under the Transfer and Exchange Agreement.

168.     Counterclaim Defendants violated the implied covenant by acting inconsistent with the agreed common purpose and justified expectations of Blox as set forth herein, and by, among other things:

a.     Failing to be open and honest with Blox about its inability to perform its obligations under the Transfer and Exchange Agreement both before and after accepting Blox's Bitmain Miners;

b.     Retaining possession of Blox's Bitmain Miners without providing the promised Smart Boxes or rewards in exchange, all during a time when the price of cryptocurrency was increasing;

c.     Accepting payment by Blox of the $134,400 Reward License Fees without disclosing that it would not account or pay Blox the rewards associated with those licenses.

d.     Failing to pay or apply the agreed upon credit of $3,000 for each Smart Box, which credit would have kept the licenses running up until February of 2022, and rewards would have continued to accrue to Blox.

169.     As a result of Counterclaim Defendants' breaches, Blox has been damaged in an amount to be proven at trial.

SLC_6242227.4

**SIXTH CLAIM FOR RELIEF**
**(Unjust Enrichment, in the alternative to Breach of Contract)**

170.    Blox realleges and incorporates the allegations contained in the foregoing

paragraphs as though set forth in their entirety herein.

171.    Blox conferred a benefit upon Counterclaim Defendants in the form of use of 672

Bitmain Miners.

172.    Counterclaim Defendants knew of and appreciated the benefit conferred upon

them by Blox.

173.    Counterclaim Defendants accepted and retained the benefit under circumstances,

which make it inequitable for them to retain the benefit without payment of its value.

174.    As a result of Counterclaim Defendants' unjust enrichment, Blox has been

damaged in an amount to be proven at trial.

**SEVENTH CLAIM FOR RELIEF**
**(Accounting)**

175.    Blox realleges and incorporates the allegations contained in the foregoing

paragraphs as though set forth in their entirety herein.

176.    Identifying the full extent of Blox's damages is dependent upon the information in

Counterclaim Defendants' possession or control.

177.    Blox is entitled to an accounting, including copies of all source documents, of the

proceeds that Counterclaim Defendants derived from the use of Blox's 672 Bitmain Miners,

either in BTC earned or proceeds from Counterclaim Defendants' resale of that equipment.

178.    Blox is further entitled to an accounting, including copies of all source

documents, relating to the Gala, Green and Gala NFT rewards that were produced in the month

37

of Oct 2020 from the 3,360 node licenses that Blox paid $134,400 to Counterclaim Defendants to activate, including how the reward deposits were calculated including the blockchain to validate the earnings.

179.    Consequently, Blox seeks an order compelling Counterclaim Defendants to provide a full accounting to Blox as to the disposition of the Bitmain Miners, the money and BTC derived therefrom, the reward deposits, including copies of all source documents relating to that accounting, and the blockchain to validate the earnings.

<u>**EIGHTH CLAIM FOR RELIEF**</u>
**(Receipt of Stolen Property, in the alternative to Breach of Contract)**

180.    Blox realleges and incorporates the allegations contained in the foregoing paragraphs as though set forth in their entirety herein.

181.    Counterclaim Defendants received, retained, disposed, withheld, concealed, or aided in the concealing or withholding of property belonging to Blox, to wit: the 672 Bitmain Miners, the bitcoin generated from those miners, the $134,400 license fee payment, and the rewards generated that should have been given to Blox, in violation of Utah Code section 76-6-408(2).

182.    Counterclaim Defendants engaged in such conduct knowing or believing that this property belonged to Blox and did not belong to Counterclaim Defendants, and intending to deprive Blox of that property.

183.    As a result of Counterclaim Defendants' receipt, retaining, disposing, withholding, and concealing of that property, Blox has been harmed in an amount to be determined at trial.

SLC_6242227.4

184.     Pursuant to Utah Code section 76-6-412(2), Counterclaim Defendants are responsible for three times the amount of actual damages sustained by Blox, and are also liable to Blox for its costs of suit and reasonable attorneys' fees.

## JURY DEMAND

Blox demands a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Blox demands judgment against Counterclaim Defendants, jointly and severally, as follows:

1.     Actual and consequential damages in an amount to be proven at trial including:

a.     Not less than **$8,957,347.87** for BTC mined by the 672 Bitmain Miners that Blox delivered to Thurston and the Thurston Entities on October 1, 2020;

b.     Not less than **$3,067,500** for the value of the Bitmain Miners delivered by Blox to Thurston and the Thurston Entities;

c.     Not less than **$4,819,280.79** in GREEN rewards earned during the time period of October 4, 2020 through November 3, 2020 that Counterclaim Defendants wrongfully retained and failed to deliver to Blox;

d.     Not less than **$178,112,520.43** for GALA rewards earned during the period of October 4, 2020 through October 9, 2021, that Counterclaim Defendants wrongfully retained and failed to deliver to Blox;

e.     Not less than **$3,544,460.64** for the approximately 888,336 GALA Game Items earned during the period of October 4 through November 3, 2020, which are valued at $3.99 each;

39

      f.       Not less than **$2,104,326** for the approximately 527,450 missing game items that Blox earned that Counterclaim Defendants failed to deliver and wrongfully retained; and

      g.      An amount to be determined at trial for the time period from November 4, 2020 to the present (and up until February 2022), that the rewards and game items should have been accruing to Blox.

2.      Pre and post judgment interest, costs, attorney fees, and any other relief available to Blox at law or in equity;

3.      Punitive damages in an amount to be determined at trial;

4.      Pursuant to Utah Code section 76-6-412(2), for three times the amount of actual damages sustained by Blox;

5.      For an accounting as to the disposition of Blox's 672 Bitmain Miners and the funds that defendants' derived from the sale and use of that equipment, including copies of all source documents relating to that accounting;

6.      For an accounting of all the rewards earned in October 2020 including copies of all source documents relating to that accounting;

7.      For an injunction to be entered that, among other things, compels Counterclaim Defendants to: 1) immediately transfer to Blox all of the GREEN and GALA rewards and NFTs earned by the 3,360 nodes operating per month from October 4, 2020 to the present; 2) return all of Blox's Bitmain Miners and the proceeds from the use or sale of that equipment, back to Blox; and 3) prohibit Counterclaim Defendants from spending, transferring, secreting, or depositing of Blox's funds paid to defendants or that was gained by the use of Blox's 672 Bitmain Miners;

8.      For an injunction to be entered that, among other things, each of the Thurston Entities is the alter ego of Thurston and each of the other Thurston Entities; and

9.      Such other relief as the court deems appropriate under the circumstances.

DATED this 27th day of July 2023.

                              DENTONS DURHAM JONES PINEGAR P.C.


                    By:  /s/ *James D. Gilson*
                         James D. Gilson
                         Cole P. Crowther
                         *Attorneys for Counterclaimant*



                    <u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 27th day of July 2023, a true and correct copy of the foregoing was filed with the Court's electronic filing system and thereby served on counsel of record.



                         /s/ *Angie Stettler*


41

SLC_6242227.4