John W. Huber (Utah Bar No. 7226)
Daniel J. Wadley (Utah Bar No. 10358)
Marc T. Rasich (Utah Bar No. 9279)
Alexander Baker (Utah Bar No. 17163)
**GREENBERG TRAURIG, LLP**
222 South Main Street, Suite 1730
Salt Lake City, Utah 84101
Telephone: (801) 478-6900
Email: *john.huber@gtlaw.com*
Email: *wadleyd@gtlaw.com*
Email: *marc.rasich@gtlaw.com*
Email: *bakera@gtlaw.com*

*Attorneys for Defendants*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ERIC SCHIERMEYER, Derivatively on Behalf of Nominal Defendant, BLOCKCHAIN GAME PARTNERS, INC. D/B/A GALA GAMES,<br><br>        Plaintiff,<br><br>vs.<br><br>WRIGHT W. THURSTON and TRUE NORTH UNITED INVESTMENTS, LLC,<br><br>        Defendants,<br><br>  and<br><br>BLOCKCHAIN GAME PARTNERS, INC. D/B/A BGP GAMES,<br><br>        Nominal Defendant. | **MOTION FOR MANDATORY RESTRAINING ORDER TO MAINTAIN STATUS QUO AND REQUEST FOR IMMEDIATE HEARING**<br><br>Case No. 2:23-cv-00589-HCN-DAO<br><br>Judge Howard C. Nielsen<br><br>Magistrate Judge Daphne A. Oberg |

Defendants Wright Thurston ("Thurston") and True North United Investments, LLC ("True North") move the Court under Rule 65 of the Federal Rules of Civil Procedure for the entry of a temporary restraining order ("TRO") against Plaintiff Eric Schiermeyer ("Schiermeyer"), in his capacity as President of Blockchain Game Partners, Inc. ("BGP" or the "Company"), directing him to turn back on (or in other words reverse the suspension of) the approximately 7,000 Gala nodes (the "Nodes") that True North owns—nodes that Schiermeyer deactivated on October 10, 2023, depriving True North of millions of GALA per day in rewards.

## INTRODUCTION

Less than 24 hours after this Court denied his attempt to obtain a TRO to impair Thurston's assets, Schiermeyer resorted to more of the extra-judicial self-help the Court referenced in its order. Defendants seek this emergency relief in response to the latest in a cascade of ongoing, unilateral, punitive actions that Schiermeyer has taken against Thurston and True North—in a self-professed effort to drain value from Thurston's assets—before and during this litigation. There is no defensible justification (even considering his own self-serving and unproven complaint) to shut off the thousands of Nodes that Schiermeyer concedes are owned by True North. Given that True North had been operating the Nodes for at least four months and that Schiermeyer has been making his false accusations (as alleged in his complaint) for longer still, the clear and only explanation for this action by Schiermeyer is a petty and wanton effort at punishing Thurston for defending himself and exposing Schiermeyer's unlawful acts.

When True North's Nodes were turned on in June 2023, the Nodes were generating GALA worth millions of dollars each month. On a whim and with apparent bitterness at the Court's failure to validate his previous unilateral action, Schiermeyer has willfully foreclosed

Thurston and True North from receiving any value from these assets. Schiermeyer's punitive action has caused and will continue to cause irreparable harm because with every day, week, and month that goes by during these undoubtedly lengthy proceedings, that substantial lost value will only increase—and Thurston's and True North's ability to recover that value will concomitantly decrease over time, as Schiermeyer continues to burn through the assets of the Company and drive it into the ground with his mismanagement and fiduciary abuses. Crucially, turning back on the Nodes will not prejudice or undermine Schiermeyer's own ability to pursue his claims.

Unlike the situation referenced in Schiermeyer's own denied TRO motion, there are real exigent circumstances here and expeditious relief is warranted. Thurston requests that this Court simply preserve the status quo that existed at the time this suit was filed and prevent Schiermeyer from continuing efforts to exact extra-judicial relief against Thurston and True North.

## FACTUAL BACKGROUND[1][2]

In exchange for Thurston's and Schiermeyer's founding roles in overseeing and contributing millions of dollars (both in USD and cryptocurrency) to fund the Company's growing operations, BGP allocated 14,000 nodes between True North and Schiermeyer (split according to their shares in BGP, *i.e.*, 50/50). TN Compl. ¶ 28. Consistent with the intent of the parties, the 14,000 nodes acquired by True North and Schiermeyer were their personal property and were available to mine GALA. The nodes, together with any Gala mined by them, were

---

[1] In the interest of time, brevity, and judicial economy, Defendants incorporate by reference the factual recitations contained in their opposition and surreply briefs filed in response to Schiermeyer's TRO motion, along with those included in the Complaint filed in *True North et al. v. Schiermeyer et al.,* Case No. 23-00590. Except for key facts related to the Nodes at issue here, other background information will not be repeated in this filing.

[2] Currently pending before the Court is Defendants' Motion to Consolidate the *True North* case with the instant case. Because the cases are so inextricably intertwined, Defendants respectfully urge the Court to exercise its discretion to consolidate without the need for further briefing.

independently owned and controlled by True North and Schiermeyer as was the case with all other node owners. *See* ES TRO Opp. Br. J. Miller Decl. ¶ 4. Accordingly, Schiermeyer does not dispute the fact that True North owns outright the Nodes at issue. *See* Ex. A, Declaration of Wright Thurston ("Thurston Decl."), ¶ 3, and Exhibit 1 attached thereto, Letter from Eric Schiermeyer to Wright Thurston Dated October 10, 2023 (hereinafter, "ES Letter" or the "Letter"). Gala's Terms and Conditions—which are vaguely referenced in the Letter—memorialize the fact that "[w]hen a User purchases, earns, or receives any NFT or digital reward the Smart Contract process [including GALA tokens, as defined in § 1.3 on "GALA Rewards"], **the User owns completely and outright** the NFT and/or digital reward." Ex. B, Gala's Terms and Conditions (hereinafter, "T&C") (emphasis added).

On October 10, 2023, the very next day after his TRO motion was denied, Schiermeyer sent the Letter informing Thurston that Schiermeyer had unilaterally turned off the Nodes. *See* ES Letter. The letter cites to the self-serving and unproven claims alleged in Schiermeyer's suit as authority for this act, references old and irrelevant matters involving Blox Lending and Derrick Hope, and further justifies his shut-off by stating that Thurston's alleged "daily dumping of millions of GALA damages the Gala Games ecosystem." *Id.* at 1. Of course, there was no board proposal regarding this action, no authorization for Schiermeyer to take this step, and no effort to adhere to any type of corporate formality that would otherwise be expected and required in this situation. Rather, Schiermeyer claims that Gala's Terms and Conditions permit him to take such a tyrannical act, claiming that "the Company has full discretion to terminate node licenses if the node user has harmed Gala Games in any way." *Id*. For the reasons set forth below, Schiermeyer's manufactured rationale for his punitive unilateral action cannot justify the

3

irreparable harm that will result if Schiermeyer's shut-off of the Nodes is countenanced by the Court.

The Nodes have been operating without issue for the last several months. During that span they have generated millions of dollars' worth of GALA rewards. Thurston—like every node-owner is expressly permitted to do—has engaged in a number of transactions during those months and since the filing of this lawsuit without complaint or action by Schiermeyer or BGP. Schiermeyer has unilaterally changed the status quo and is causing significant ongoing harm to True North and Thurston by restricting their right to control and monetize the Nodes.

## LEGAL STANDARD

"The Tenth Circuit requires a movant to establish four elements as the basis for issuance of a TRO or preliminary injunction: (1) the moving party will suffer irreparable injury unless the injunction issues; (2) the threatened injury to the moving party outweighs any damage to the opposing party; (3) the injunction, if issued, will not be adverse to the public interest; and (4) a substantial likelihood exists that the moving party will prevail on the merits." *Bauchman by & Through Bauchman v. W. High Sch.*, 900 F. Supp. 248, 250 (D. Utah 1995) *aff'd*, 132 F.3d 542 (10th Cir. 1997) (*citing SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1098 (10th Cir. 1991)). A TRO is issued "only to *maintain* [*the*] *status quo* and protect the rights of the parties until a hearing could be had on the motion for a preliminary injunction." *Smotherman v. United States*, 186 F.2d 676 (10th Cir. 1950) (emphasis added). That said, as noted in Schiermeyer's own TRO motion, "[d]istrict courts have wide discretion to fashion appropriate equitable remedies," ES TRO Mot. at 12—and such discretion should certainly be extended to the very narrow and particularized relief sought here.

## LEGAL ARGUMENT

### I. Defendants Will Suffer Irreparable Injury Without a TRO

In his own Amended Complaint and TRO briefing, Schiermeyer has openly admitted to burning billions of Thurston's GALA in a brazen effort to render True North's assets worthless, and he is doubling down here by shutting off all of True North's thousands of nodes. The enormous financial harm that this has begun and undoubtedly will continue to inflict upon True North is obvious and indisputable. But it is also irreparable—as opposed to the more easily calculable and compensable monetary injury asserted in Schiermeyer's TRO motion.

In Schiermeyer's TRO motion, the theft alleged to have been perpetrated by Thurston of GALA[3] occurred at a finite, retrospective moment in time, and the sale of a portion of that Gala had already been effected. As the Court emphasized, GALA is a fungible currency, and "the asserted loss [in that context] is *limited*, *specific*, and *readily ascertainable*." TRO Order at 7. That is not the case here. Although Schiermeyer's unilateral action to suspend True North's Nodes once again involves the value of GALA, the circumstances here are quite different from Schiermeyer's claims. As an initial and important matter, Schiermeyer's suspension of True North's Nodes directly affects the property interest in those Nodes, and the right to determine whether the Nodes should be turned on or off. These nodes represent $700 million in valuable assets. Schiermeyer should not be permitted to trample upon True North's property interest based on a spiteful whim. Indeed, "[t]he right to use one's property as one wishes—either to use the property to its own advantage, to exclude another from its use, or to sell, lease, license or transfer

---

[3] With regard to this action, Schiermeyer now alleges that the GALA at issue belonged to BGP, while Thurston has always held that such GALA belonged to True North.

5

such property to another—is fundamental, and being excluded from the rights inherent in one's property constitutes irreparable injury." *Port-a-Pour, Inc. v. Peak Innovations*, 49 F. Supp. 3d 841, 872 (D. Colo. 2014).[4]

What's more, at issue here is a mounting loss that is indefinite and open-ended, since—rather than being a snapshot in time of a prior event—there is no indication as to when, if ever, Thurston's Nodes will be turned back on. Moreover, given the volatility of cryptocurrency markets, the value of any GALA generated by the Nodes would fluctuate wildly on a day-by-day and even minute-by-minute basis, and discerning the loss in value would at best be a speculative endeavor that would be nearly, if not actually, impossible to calculate. *See*, *e.g.*, *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546 (4th Cir. 1994) (court holding that the plaintiff would suffer irreparable harm because, among other things, monetary damages were difficult to ascertain). In imagining the but-for world, would the assumption be that True North would liquidate all GALA generated on a daily basis? Or to adhere more to reality, would it encompass True North holding on to generated GALA and only liquidating the currency during market up-turns? It is also worth pointing out that many cases emphasize that "economic loss *usually* does not, in and of itself, constitute irreparable harm," *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (emphasis added), and exceptions to that general proposition can be made under the right circumstances—here for instance. In

---

[4] There is further a dissipation of value as these nodes produce tokens according to the Gala Blockchain distribution code. There will only ever be 50 billion GALA tokens and these are distributed daily, essentially according to how many nodes are on. If an owner's nodes are not on, they will earn no GALA that day and those tokens instead will go to owners whose nodes were on. Quite literally, Schiermeyer is giving True North's tokens away each day he keeps the Nodes off.

contrast to Schiermeyer's TRO motion, the loss that would be incurred here by Schiermeyer's improper action is neither *limited*, nor *specific*, nor *readily ascertainable*.[5]

Thurston and True North's inability to recover for these losses will inevitably and substantially increase over time. Not only will the amount of lost value from the turned-off Nodes mount every day that goes by, but as Schiermeyer's erratic and abusive mismanagement of the Company continues—including his misuse of Company funds for personal excesses and his unsustainable directive that BGP liquidate millions of dollars' worth of GALA each month—his and the Company's ability to compensate Thurston and True North for the mounting losses caused by Schiermeyer's unlawful shut-off of the Nodes will shrink over time as well. Thurston and True North simply seek a preservation of the status quo in this case. Schiermeyer's unilateral action has already caused, and will continue to cause, substantial irreparable injury. His action and conduct should be stopped, and the parties should be returned the position they were in at the outset of this action.

## II. Defendants Are Substantially Likely to Succeed on the Merits

Defendants are substantially likely to establish that Schiermeyer's shut-off was improper. In his Letter to Thurston announcing his decision to shutoff True North's Nodes, Schiermeyer refers generally to certain incidents that he claims justify his extrajudicial action against

---

[5] Moreover, as referenced above, the daily distribution of GALA to node owners (in an ever decreasing amount) is written into the GALA code and will continue to roll forward, irrespective of whether True North's nodes are turned on. Practically speaking, this means that the designated amount of GALA will be distributed on any given day, it will simply be distributed to those nodes that are operating on that day. Recovery of that GALA from those node owners would pose real and significant legal and equitable challenges, since those node owners (with the exception of Schiermeyer) who received the daily distribution would be blameless in this situation. Rather, it is Schiermeyer and, by extension, BGP, that are the cause of True North's loss of its share of the daily distribution. Nevertheless, because of the way the system is designed, recovery of the GALA that should have been distributed to True North's Nodes would be virtually impossible to recover. And for the reasons set forth above, recovery of the value of that GALA also would be challenging if not impossible, thus raising the need for injunctive action here.

Thurston and True North. True to form in this case, each of the excuses cited by Schiermeyer as a basis for taking this action allegedly occurred years ago, and have not been an issue before this matter was filed.

Schiermeyer attempts to justify his self-help by first referencing his allegation that Thurston improperly sold several hundred nodes to Blox Lending and Dereck Hope, and second claiming again that Thurston allegedly stole 8.6 billion GALA tokens from the company. Both alleged events cited for his action this week occurred over two years ago. The third basis referred to by Schiermeyer for his unilateral decision is that Thurston and/or True North is negatively affecting the value of GALA by selling the GALA that is generated on a daily basis by the operating Nodes. Interestingly, in fact it appears that BGP (at Schiermeyer's direction), not True North, is the one dumping GALA, selling off at least $1 million in GALA every day. In any event, none of these justifications can be a basis for Schiermeyer's transparently punitive actions.

As discussed in connection with Schiermeyer's own TRO request, literally years have gone by since the alleged improper actions by Thurston took place. Both the transactions referred to with Blox Lending and Dereck Hope, which in actuality did not constitute a "sale" of nodes, and the alleged "theft" of GALA by Thurston, took place more than two years ago. The Court has already rejected these dated references as a basis for immediate emergency action now, and it should do so again. Reference to these unfounded acts as justification for Schiermeyer's punitive action is nothing more than a fig leaf that cannot obscure the reality of what Schiermeyer has done here—abusing his position as President and CEO of the Company to once again exact some punishment of Thurston in retaliation for Thurston questioning Schiermeyer's improper conduct in managing the Company. At best, all Schiermeyer has done is make unsupported allegations

against Thurston. Unsupported allegations, with no basis in evidence or fact, cannot support so drastic a step as to literally shut down thousands of nodes and the millions of GALA that were being distributed to True North each day in the middle of the very lawsuit instituted to determine these very issues.

Additionally, with respect to True North's sale of its earned GALA, as stated above, True North's ownership of the Nodes is not in dispute, and neither is its ability to either retain or sell the GALA that those Nodes generate. The very Terms and Conditions Schiermeyer cites in his letter to justify his misdeeds confirm that True North owns the Nodes outright, *see* Ex. B, T&C § 1.2-1.3, and acknowledges users' ability to sell or transfer their GALA tokens via digital exchanges (involving digital platforms such as the Ethereum network, MetaMask, and Coinbase—which would also encompass trading platforms like Genesis), *see id.* § 1.5.1. As with any other node owner, True North is free to turn on or off the Nodes as it pleases, and it can hold, trade, or sell the GALA tokens that the Nodes generate. Surely, these fundamental features of node ownership cannot be disputed by Schiermeyer, as much as he would like to avoid the conclusions that those features implicate in this case.

Schiermeyer refers to certain provisions within the terms and conditions concerning unlawful and fraudulent conduct—presumably to connect his shut-off with his accusations regarding the supposedly "stolen GALA"—but neither these provisions nor Schiermeyer's referenced allegations have anything to do with the GALA that has been generated since True North turned on the Nodes in June. Moreover, Schiermeyer knows full well that True North is entitled to the GALA that its own Nodes have generated, so there is certainly no basis to claim

that transferring or transacting with its own Node-generated GALA implicates these fraud-related provisions of the Terms and Conditions.

Although Schiermeyer's letter discusses his "suspension" of True North's nodes and claims he "has full discretion to terminate node licenses if the node user has harmed Gala Games in any way," it does not specifically cite or substantively reference the actual termination/suspension provision of § 4.1 of the Terms and Conditions, which states:

> GALA may suspend or terminate the User's right to access or use GALA Services immediately and without notice if: (i) GALA determines the User's use of the GALA Services poses a security risk to GALA Services or any third party, could adversely impact GALA, GALA Services, GALA Blockchain or any other GALA users, or could subject GALA, its affiliates, or any third party to liability, or could be fraudulent; (ii) the User is in breach of these Terms & Conditions; . . . or (v) for any other reason at GALA's discretion.

The "adverse impact" and "any other reason at Gala's discretion" language is the only thing that could conceivably apply to Schiermeyer's shut-off, but perhaps Schiermeyer shied away from specifically invoking these provisions because he recognizes how problematic it would be to try and apply them to the present circumstances.

To begin with, Schiermeyer cannot reasonably and defensibly claim that the mere act of Thurston transacting with his own GALA tokens constitutes the "adverse[] impact" referred to in subsection (i) above. The purpose of a currency such as GALA tokens is to enable holders to transact with their currency, as set forth in the Terms and Conditions (*see, e.g.*, § 1.5.1) and in the very fundamental structure of the Gala enterprise itself. Moreover, there is of course a fundamental line-drawing problem with Schiermeyer's suggestion that True North's trading somehow constitutes "dumping" that harms the Gala Games ecosystem. If trading, say, 1 GALA token is permissible, as is 10, or 100, or 1,000 tokens, then when does it become harmful? And

where in any of the applicable contractual provisions is there a reference to such a threshold? There is no such provision.

But even more of an impediment for Schiermeyer to rely upon this language is the inherent contradiction in the fact that BGP, at the direction of Schiermeyer, has been daily liquidating millions of dollars' worth of GALA tokens for many months at this point. *See* ES TRO Opp. Br. J. Miller Decl. ¶¶ 24-26. Schiermeyer does not dispute the fact of these liquidations, nor can he—and it completely undermines his ability to rely upon this "adverse[]" impact" language as a justification for shutting off True North's Nodes.

As a final point, there is the broad "any other reason at GALA's discretion" language, but even this provision cannot justify Schiermeyer's misconduct. Such incredibly broad language cannot be invoked simply because nodes are generating GALA tokens and those tokens are being sold or traded in the marketplace. Under a broad reading of this language Schiermeyer could justify suspending all community members' nodes simply because he felt like it; but an abuse of commercial power propped up by such a groundless rationale would never fly in a court of law. The same can be said of the situation now before the court: at base, Schiermeyer has shut off the Nodes—resorting to improper self-help hours after the Court foreclosed such an impairment of Thurston's and True North's assets—because *he feels like it*. He did not get his desired asset freeze, so he is trying to force a freeze of sorts on his own.

Schiermeyer theoretically could have shut off True North's Nodes at any point in the recent months in which he has been complaining about the supposedly "stolen GALA," and it is eminently revealing that he did it when he did: right after being denied his TRO by this very Court. Defendants are substantially likely to succeed on the merits of establishing that

11

Schiermeyer's Node shut-off was improper, and this Court should therefore preserve the status quo by requiring Schiermeyer to turn back on True North's Nodes.

### III. The Balance of Harms and Public Policy Factors Weigh Heavily in Favor of a TRO

Finally, there is no contest as to the balance of harms and public policy factors. Neither Schiermeyer nor BGP will suffer any harm from Thurston and True North exercising rights inherent in node ownership; in contrast, True North and Thurston will suffer significant harm from Schiermeyer preventing them from doing so. Public policy clearly favors respect for property rights and for supporting citizens' freedom to transact with their owned assets. All told, the equitable relief sought here—which, again, is simply a return to the status quo—is quite narrow and essentially cost-free for the Court to order under the circumstances.

### CONCLUSION

For the foregoing reasons, Thurston and True North respectfully request that the Court grant this Motion and order Schiermeyer to turn Defendants' Nodes back on without delay.

DATED this 17th day of October 2023.

GREENBERG TRAURIG LLP

/s/ *Marc Rasich*
Marc Rasich
John Huber
Daniel Wadley
Alexander Baker

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of October 2023, a true and correct copy of the foregoing was filed with the Court's electronic filing system and thereby served on counsel of record.

Paul W. Shakespear
Cameron Cutler
Natalie Beal
SNELL & WILMER LLP
15 West South Temple, Suite 1200
Gateway Tower West
Salt Lake City, UT 84101
pshakespear@swlaw.com
ccutler@swlaw.com
nbeal@swlaw.com

Abram L. Moore
Christian A. Zazzali
K&L GATES LLP
70 West Madison Street, Suite 3100
Chicago, IL 60602
abe.moore@klgates.com
christian.zazzali@klgates.com

GREENBERG TRAURIG, LLP

*/s/ Lindsey Wharton*