John W. Huber (Utah Bar No. 7226)
Daniel J. Wadley (Utah Bar No. 10358)
Marc T. Rasich (Utah Bar No. 9279)
Alexander Baker (Utah Bar No. 17163)
**GREENBERG TRAURIG, LLP**
222 South Main Street, Suite 1730
Salt Lake City, Utah 84101
Telephone: (801) 478-6900
Email: *john.huber@gtlaw.com*
Email: *wadleyd@gtlaw.com*
Email: *marc.rasich@gtlaw.com*
Email: *bakera@gtlaw.com*

*Attorneys for Defendants, Counterclaimant, and Crossclaim Plaintiff*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ERIC SCHIERMEYER, Derivatively on Behalf of Nominal Defendant, BLOCKCHAIN GAME PARTNERS, INC. D/B/A GALA GAMES,<br>　　　Plaintiff,<br>vs.<br>WRIGHT W. THURSTON and TRUE NORTH UNITED INVESTMENTS, LLC,<br>　　　Defendants,<br><br>　and<br>BLOCKCHAIN GAME PARTNERS, INC. D/B/A BGP GAMES,<br>　　　Nominal Defendant. | **MOTION FOR MANDATORY RESTRAINING ORDER TO MAINTAIN STATUS QUO AND REQUEST FOR IMMEDIATE HEARING**<br><br>Case No. 2:23-cv-00589-HCN-DAO<br><br>Judge Howard C. Nielson<br><br>Magistrate Judge Daphne A. Oberg |
| TRUE NORTH UNITED INVESTMENTS, LLC, Derivatively on Behalf of Nominal Defendant, BLOCKCHAIN GAME PARTNERS, INC. D/B/A GALA GAMES,<br>　　　Counterclaimant,<br>vs.<br>ERIC SCHIERMEYER,<br>　　　Counterdefendant, | |

|  |  |
|---|---|
| and<br>BLOCKCHAIN GAME PARTNERS, INC.<br>D/B/A BGP GAMES,<br>      Nominal Counterdefendant. |  |
| TRUE NORTH UNITED INVESTMENTS, LLC,<br>      Crossclaim Plaintiff,<br>vs.<br>BLOCKCHAIN GAME PARTNERS, INC.<br>D/B/A BGP GAMES,<br>      Crossclaim Defendant. |  |

Counterclaimant and Crossclaim Plaintiff True North United Investments, LLC ("True North") moves the Court under Rule 65 of the Federal Rules of Civil Procedure for the entry of a temporary restraining order against Eric Schiermeyer and Blockchain Game Partners, Inc. ("BGP" or the "Company"), directing them to restore the status quo by reversing the suspension of (*i.e.*, turning back on), and restoring True North's account access to, True North's 7,000 Gala nodes (the "Nodes"). On October 10th, after filing his lawsuit and in an evident "self-help" response to the Court's denial of the requested asset freeze the day before, Schiermeyer and BGP unilaterally deactivated and converted the Nodes. This self-help has and will irreparably injure True North through the loss of its unique property right in the Nodes and in millions of GALA per day in rewards that may never be recouped absent immediate judicial intervention. What's worse, in a brazen BGP announcement on October 30, 2023, Schiermeyer and BGP strongly implied that BGP is preparing to unlawfully redistribute the Nodes to BGP employees which could permanently deprive True North of its property.

## INTRODUCTION

Less than 24 hours after this Court denied his attempt to obtain a TRO to impair the assets of True North and Wright Thurston (True North's manager and one of two BGP Directors), Schiermeyer resorted to more of the extra-judicial self-help the Court referenced in its order dated October 9, 2023. With the two cases between the Parties now consolidated and the ownership and control of the subject nodes and resultant rewards (among other things) properly before this Court, True North seeks this emergency relief in response to the latest in a cascade of ongoing, unilateral, punitive actions that Schiermeyer has taken against Thurston and True North—in an admitted effort to drain value from True North's assets. There is no defensible justification (even considering his own self-serving and unproven Amended Complaint) to shut off and effectively steal the thousands of Nodes that Schiermeyer concedes are owned by True North. True North has been operating the Nodes in the same fashion for at least four months and Schiermeyer has been making his false accusations (as alleged in his Amended Complaint) for longer still but took no action until after his motion to freeze was denied. The clear and only explanation for the suspension is a petty and wanton effort to punish Thurston (and his family) because Thurston had the gall to defend himself and expose Schiermeyer's unlawful acts. This willful act breaches both the Founder's Agreement and BGP's Terms and Conditions. It must not be permitted.

When they were turned on in June 2023,[1] True North's Nodes were generating GALA worth millions of dollars each month. With apparent bitterness at the Court's denial of his TRO,

---

[1] Several times between June 2023 and the filing of this lawsuit, Thurston sought resolution of the Parties' current disputes via mediation or arbitration. Schiermeyer rejected each

Schiermeyer has now foreclosed Thurston and True North from continuing to receive the value ("rewards") from these operating assets (the Nodes). Schiermeyer's punitive action has caused and will continue to cause irreparable harm (1) by depriving True North of its property rights in the Nodes and (2) because with every day, week, and month that goes by during these no doubt lengthy proceedings, the substantial lost value (in rewards the Nodes would otherwise generate) will only increase—and the ability to accurately measure that lost value and actually recover that value will concomitantly decrease or disappear over time, as Schiermeyer evidently is making no effort to sequester or safeguard the rewards that rightfully belong to True North (and the True North beneficiaries—Thurston and his family members). Instead, Schiermeyer simply turned them off, removed them from True North's Gala account, and now threatens to distribute the Nodes without compensation to BGP employees. The result of these acts, is to deprive True North of its property right in the Nodes and deprive it forever of the rewards the Nodes would otherwise earn.

      Exigent circumstances warrant immediate intervention to return the status quo to where it stood the day before the Court denied Schiermeyer's TRO. The Court should reject Schiermeyer's latest self-help gambit and order Schiermeyer and BGP to (1) reverse the suspension of True North's Nodes and (2) refrain from distributing the Nodes without authorization to BGP employees.

---

of these requests and, tellingly, never mentioned the then-ongoing operation of True North's Nodes. *See* Ex. A, Declaration of Wright Thurston ("Thurston Decl."), ¶ 2.

## FACTUAL BACKGROUND[2]

In exchange for Thurston's and Schiermeyer's founding roles in overseeing and contributing millions of dollars (both in USD and cryptocurrency) to fund the Company's growing operations, BGP allocated 14,000 nodes between True North and Schiermeyer (split according to their shares in BGP, *i.e.*, 50/50). TN Answer and Counterclaims ¶ 29. Consistent with the intent of the Parties, the 14,000 nodes acquired by True North and Schiermeyer were their personal property and were available to mine GALA. The nodes, together with any GALA mined by them, were independently owned and controlled by True North and Schiermeyer like all other node owners. *See* ES TRO Opp. Br. J. Miller Decl. ¶ 4. Schiermeyer thus does not dispute that True North owns the Nodes at issue. *See* Thurston Decl., ¶ 3, and Exhibit 1 attached thereto, Letter from Eric Schiermeyer to Wright Thurston Dated October 10, 2023 (hereinafter, "ES Letter" or the "Letter"). BGP's Terms and Conditions—which are vaguely referenced in the Letter—memorialize the fact that "[w]hen a User purchases, earns, or receives any NFT or digital reward the Smart Contract process [including GALA tokens, as defined in § 1.3 on "GALA Rewards"], ***the User owns completely and outright*** the NFT and/or digital reward." Ex. B, BGP's Terms and Conditions (hereinafter, "T&C") (emphasis added).

On October 10, 2023, the very next day after his TRO motion was denied, Schiermeyer sent the Letter informing Thurston that Schiermeyer had unilaterally turned off the Nodes. *See*

---

[2] In the interest of brevity and judicial economy, True North incorporates by reference the factual recitations contained in Defendant's opposition and surreply briefs filed in response to Schiermeyer's TRO motion, along with those included in Thurston and True North's Answer and Counterclaim. Except for key facts related to the Nodes at issue, other background information will not be repeated in this filing.

ES Letter. But not only had the Nodes been "suspended," they were removed from True North's account, in a blatant act of conversion. The Letter cites the self-serving and unproven claims alleged in Schiermeyer's suit as authority for this act, references old and irrelevant matters involving Blox Lending and Derrick Hope, and further justifies his shut-off by stating that Thurston's alleged "daily dumping of millions of GALA damages the Gala Games ecosystem." *Id.* at 1. Of course, there was no Board proposal for this action, no authorization for Schiermeyer to take this step, and no effort to adhere to any type of corporate formality that would otherwise be expected and required in this situation. Rather, Schiermeyer claimed that under BGP's Terms and Conditions "the Company has full discretion to terminate node licenses if the node user has harmed Gala Games in any way." *Id*. For the reasons below, Schiermeyer's manufactured rationale for his punitive unilateral action cannot justify the irreparable harm that will result if Schiermeyer's shut-off and theft of True North's Nodes is countenanced by the Court.

The Nodes have been operating without issue for over four months (both Schiermeyer and True North independently elected to turn on their nodes in June of this year). *See* Thurston Decl. ¶ 10. During that span they have generated millions of dollars' worth of GALA rewards. *Id*. True North—like every node-owner is expressly permitted to do—has engaged in various transactions during those months and since the filing of this lawsuit without complaint or action by Schiermeyer or BGP. With this recent action, Schiermeyer and BGP have unilaterally shut off and stolen True North's nodes and are causing significant ongoing harm to True North and Thurston by restricting their right to control and monetize the Nodes. *Id*. ¶¶ 10-11.

Shortly before announcing the improper, unlawful suspension of True North's Nodes, Schiermeyer announced a proposed distribution of 8,000 nodes to BGP employees. *Id.* ¶ 3. This

5

number is uncannily the same number of Nodes held by True North (approximately 7,000 Nodes) and Connect (another Thurston-related entity owning approximately 1,000 nodes). *Id.* These acts are eerily like the self-help action Schiermeyer employed in unilaterally burning and destroying millions of dollars of True North's and others' assets. And like the burn, the proposed distribution—which, at the going rate of approximately $100,000 per node amounts to giving away $800 million of potential income for BGP, *id.* ¶ 10—is being taken without Board or shareholder approval. To the extent that this gesture presages an upcoming termination of True North's and Connect's 8,000 total nodes, it would constitute a devastating, tortious act against True North's and Thurston's holdings.[3] *See id.* ¶ 14.

## LEGAL STANDARD

"The Tenth Circuit requires a movant to establish four elements as the basis for issuance of a TRO or preliminary injunction: (1) the moving party will suffer irreparable injury unless the injunction issues; (2) the threatened injury to the moving party outweighs any damage to the opposing party; (3) the injunction, if issued, will not be adverse to the public interest; and (4) a substantial likelihood exists that the moving party will prevail on the merits." *Bauchman by & Through Bauchman v. W. High Sch.*, 900 F. Supp. 248, 250 (D. Utah 1995) *aff'd*, 132 F.3d 542 (10th Cir. 1997) (*citing SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1098 (10th Cir.

---

[3] Alternatively, to the extent that this "gift" does not correspond with the termination of True North and Connect's 8,000 nodes, it would constitute an increase in the total number of nodes (without BGP benefiting from fair and adequate compensation) that would depreciate the value of the nodes held by existing node holders—all of whom provided substantial value for their nodes. More importantly, it would require BGP and Schiermeyer to breach the smart contract governing BGP as that agreement limits the number of nodes to 50,000, and upon information and belief there are fewer than 8,000 unclaimed nodes remaining. *See* Thurston Dec. ¶ 3.

1991)). A TRO is issued "only to *maintain* [*the*] *status quo* and protect the rights of the parties until a hearing could be had on the motion for a preliminary injunction." *Smotherman v. United States*, 186 F.2d 676 (10th Cir. 1950) (emphasis added). That said, as noted in Schiermeyer's own TRO motion, "[d]istrict courts have wide discretion to fashion appropriate equitable remedies," ES TRO Mot. at 12—and such discretion should extend to the narrow and particularized relief sought here.

## ARGUMENT

### I.  True North Will Suffer Irreparable Injury Without a TRO

In his own Amended Complaint and TRO briefing, Schiermeyer openly admits to burning billions of Thurston and True North's GALA in a scheme to render True North's assets worthless. He and BGP are doubling down here by shutting off and effectively stealing all True North's Nodes. The enormous financial harm that this has caused, and no doubt will continue to inflict upon True North, is obvious and indisputable. It is also irreparable—unlike the easily calculable and compensable monetary injury asserted in Schiermeyer's TRO motion.

In Schiermeyer's TRO motion, the alleged theft of a specific amount of GALA occurred at a finite, retrospective moment in time, and the sale of a portion of that GALA already had been completed. As the Court emphasized, GALA is a fungible currency, and "the asserted loss [in that context] is *limited*, *specific*, and *readily ascertainable*." TRO Order at 7. That is not the case here. Although Schiermeyer's unilateral action to suspend True North's Nodes once again involves GALA, the circumstances here are quite different from Schiermeyer's claims. To begin, because each node is unique (represented by a unique alphanumeric identifier) and limited in number by the smart contract, Schiermeyer's suspension and effective stealing of True North's

7

Nodes affects the property interest in the Nodes. *See* Thurston Decl. ¶ 3. The Nodes represent $700 million in valuable assets. *Id.* ¶ 10. Schiermeyer should not be permitted to trample upon True North's property interest based on a spiteful whim. Indeed, "[t]he right to use one's property as one wishes—either to use the property to its own advantage, to exclude another from its use, or to sell, lease, license or transfer such property to another—is fundamental, and being excluded from the rights inherent in one's property constitutes irreparable injury." *Port-a-Pour, Inc. v. Peak Innovations*, 49 F. Supp. 3d 841, 872 (D. Colo. 2014).[4]

      What's more, at issue here is a mounting loss that is indefinite and open-ended, since—rather than being a snapshot in time of a prior event—there is no indication as to when, if ever, True North's Nodes will be turned back on. Moreover, given the volatility of cryptocurrency markets, the value of any GALA generated by the Nodes would fluctuate wildly on a day-by-day and even minute-by-minute basis, and discerning the loss in value would at best be a speculative endeavor that would be nearly impossible to calculate. *See, e.g., Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546 (4th Cir. 1994) (holding that the plaintiff would suffer irreparable harm because, among other things, monetary damages were difficult to ascertain); *see also* Thurston Decl. ¶¶ 11-12. In imagining the but-for world, would the assumption be that True North would liquidate all GALA generated daily? Or to adhere more to reality, would it encompass True North holding on to generated GALA and only liquidating

---

[4] There is also another continuous dissipation of value as the Nodes produce tokens according to the Gala Blockchain distribution code. There will only ever be 50 billion GALA tokens and these are distributed daily, according to a complex and dynamic algorithm. If an owner's nodes are not on, they will earn no GALA that day and those tokens instead will go to owners whose nodes were on. Schiermeyer is giving True North's tokens away each day he keeps the Nodes off.

the currency during market up-turns? It is also worth pointing out that many cases emphasize that "economic loss *usually* does not, in and of itself, constitute irreparable harm," *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (emphasis added), and exceptions to that general proposition can be made under the right circumstances—here for instance. Unlike Schiermeyer's TRO motion, the loss that would be incurred here by Schiermeyer's improper action is neither *limited*, nor *specific*, nor *readily ascertainable*.

True North's inability to recover for these losses will inevitably and substantially increase over time. Not only will the amount of lost value from the turned-off Nodes mount every day that goes by, but as Schiermeyer's erratic and abusive mismanagement of the Company continues—including his misuse of Company funds for personal excesses and his unsustainable directive that BGP liquidate millions of dollars' worth of GALA each month—his and BGP's ability to compensate Thurston and True North for the mounting losses they caused by unlawfully shutting-off and stealing of the Nodes will shrink over time too. Thurston Decl. ¶ 12. Concerns for BGP's increasingly precarious position are exacerbated by the fact some of BGP's partners have alleged that the Company has failed or been unable to pay overdue invoices. *See, e.g.*, *Drifter Entertainment, Inc. v. Blockchain Game Partners, Inc.*, No. 1:23-cv-00187-SAH (D. Wy., Oct. 10, 2023) (asserting that BGP has failed to pay plaintiff the $750,000 milestone payment owed under the parties' agreement); *see also* Thurston Decl. ¶ 13. Thus, there are substantial reasons for concern about Schiermeyer and BGP's inability to pay a judgment—particularly to pay enough to compensate for True North's mounting losses.

Finally, the daily distribution of GALA to node owners is written into the GALA code and will continue to roll forward, irrespective of whether True North's Nodes are turned on.

Practically speaking, this means that the designated amount of GALA will be distributed each day, and it will simply be distributed to nodes that are operating on that day. Recovery of that GALA from those node owners would pose real and significant legal and equitable challenges, because those node owners who received the daily distribution (apart from Schiermeyer) would be blameless third parties not before the Court—thus underscoring the need for injunctive relief here.

With this Motion, True North simply seeks a return to the status quo. Schiermeyer's unilateral action—after filing his lawsuit—has already caused, and will continue to cause, substantial irreparable injury. His continued pursuit of vigilante justice outside the bounds of the law should be stopped, and the Parties should be returned the position they were in at the start of the case.

## II.     True North Is Substantially Likely to Succeed on the Merits

True North is substantially likely to establish that Schiermeyer and BGP's shut-off and theft of the Nodes was improper, and that it was a breach of both Schiermeyer's Founders Agreement with True North and BGP's Terms and Conditions.

Under Wyoming law, a breach of contract action involves three elements: (1) "a lawfully enforceable contract," (2) "an unjustified failure to timely perform all or any part of what is promised therein," and (3) "entitlement of injured party to damages." *Sinclair Wyoming Refinery Co. v. A&B Builders, LTD.*, 2019 WL 13177803, at *3 (D. Wyo. Aug. 23, 2019) (quoting *Schlinger v. McGhee*, 268 P.3d 264, 268 (Wyo. 2012)). As to the first element, Schiermeyer cannot contest that the Founders Agreement constitutes a "lawfully enforceable contract"—given that it is the fundamental agreement between Schiermeyer and True North underlying the

formation of BGP. Similarly, as conceded by Schiermeyer, BGP is bound by its Terms and Conditions as to True North's Node ownership and use. And regarding the third element, as discussed above and in the next Section below, True North has suffered and continues to suffer substantial harm entitling it to both monetary damages and injunctive relief. The key element to discuss here is that second one—demonstrating substantial likelihood that True North will prevail in showing that Schiermeyer and BGP have "unjustifiab[ly] fail[ed] to timely perform" their obligations under these agreements.

True North and Schiermeyer executed the Founders Agreement dated January 1, 2019, which resulted in each becoming a 50% owner of BGP at that time. The Founders Agreement states in plain language that neither party shall "circumvent or compete with the BGP Companies in a manner to earn income, hold ownership, vote, or earn rewards from the services and products of the BGP Companies in a manner to squeeze out or diminish the rights and Ownership of any other party to this Agreement." True North has fully performed its contractual obligations under the Founders Agreement.

BGP's Terms and Conditions purport to govern the use of nodes to generate GALA tokens. These Terms & Conditions memorialize the fact that "[w]hen a User purchases, earns, or receives any NFT or digital reward the Smart Contract process [including GALA tokens, as defined in § 1.3 on "GALA Rewards"], the User owns completely and outright the NFT and/or digital reward." They also acknowledge users' ability to sell or transfer their GALA tokens via digital exchanges (involving digital platforms such as the Ethereum network, MetaMask, and Coinbase—which would also encompass trading platforms like Genesis). True North has fully

performed its contractual obligations under the Terms and Conditions and has not triggered any of the clauses of the suspension/termination provision.

Although True North has not breached either agreement, Schiermeyer and BGP have breached each one. As for the Founders Agreement, Schiermeyer has breached the Founders Agreement by unilaterally shutting off and effectively stealing True North's nodes in his transparent, self-described agenda to diminish True North's GALA holdings and revenue. He audaciously explained this was his goal while unilaterally burning and destroy hundreds of millions of dollars of True North's assets, *see* Am. Compl. ¶¶ 82-84. That is the case here as well. The Node suspension and theft violates the central precept of their Founders Agreement to not "squeeze out or diminish the rights and Ownership of any other party to this Agreement."

Regardless of Schiermeyer's attempt to justify his actions and avoid liability, hhe conduct also is an obvious breach of BGP's Terms and Conditions. In his Letter to Thurston announcing his decision to shutoff True North's Nodes, Schiermeyer refers generally to certain incidents that he claims justify his extrajudicial action against Thurston and True North. *See* ES Letter. True to form, each of the excuses Schiermeyer cites as a basis for his action allegedly occurred years ago and was not an issue before this matter was filed.

Schiermeyer seeks to justify his self-help by first referencing his allegation that Thurston improperly sold several hundred nodes to Blox Lending and Dereck Hope, and second claiming again that Thurston allegedly stole 8.6 billion GALA tokens from the Company. *See id.* Both alleged events cited for his action occurred over two years ago. The third basis referred to by Schiermeyer for his unilateral decision is that Thurston is diminishing the value of GALA by selling the GALA that is generated daily by the operating Nodes. Interestingly, BGP (at

12

Schiermeyer's direction), not True North, is the one dumping GALA, selling off at least $1 million in GALA every day. Regardless, none of these justifications is a proper basis for Schiermeyer's transparently punitive actions.

As discussed in connection with Schiermeyer's own TRO request, years have gone by since the alleged improper actions by Thurston took place. Both the transactions referred to with Blox Lending and Dereck Hope, which did not constitute a "sale" of nodes, and the alleged "theft" of GALA by Thurston, took place more than two years ago. The Court has already rejected these dated references as a basis for immediate emergency action now, and it should do so again. Reference to these acts to justify his punitive action is a mere fig leaf that cannot obscure the reality of what Schiermeyer has done—abuse his position as President and CEO of the Company to exact some punishment of Thurston and True North in retaliation for Thurston questioning Schiermeyer's gross mismanagement of BGP and self-dealing. At best, all Schiermeyer has done is make unsupported allegations against Thurston. Unsupported allegations, with no basis in evidence or fact, cannot support so the drastic step of shutting down and cut off access to thousands of nodes and the millions of GALA that rightfully were being distributed to True North each day in the middle of the lawsuit instituted to resolve these very issues.

Additionally, with respect to True North's sale of its earned GALA, as stated above, True North's ownership of the Nodes is not in dispute, and neither is its ability to either retain or sell the GALA that those Nodes generate. The Terms and Conditions Schiermeyer cites in his letter to justify his misdeeds confirm that True North owns the Nodes and their corresponding GALA rewards outright, *see* Ex. B, T&C § 1.2-1.3. They also acknowledge users' ability to sell or

transfer their GALA tokens via digital exchanges (involving digital platforms such as the Ethereum network, MetaMask, and Coinbase—which would also encompass trading platforms like Genesis), *see id.* § 1.5.1. As with any other node owner, True North can turn on or off the Nodes as it pleases, and it can hold, trade, or sell the GALA tokens that the Nodes generate. These fundamental features of node ownership cannot be disputed by Schiermeyer, as much as he would like to avoid the conclusions those features implicate.

Schiermeyer refers to certain provisions within the Terms and Conditions concerning unlawful and fraudulent conduct—presumably to connect the Node shut-off with his accusations regarding the supposedly "stolen GALA". But neither of these provisions nor Schiermeyer's referenced allegations have anything to do with the GALA generated since True North turned on the Nodes in June. Moreover, Schiermeyer knows that True North is entitled to the GALA that its own Nodes have generated, so there is no basis to claim that transferring or transacting with its own Node-generated GALA implicates these fraud-related provisions of the Terms and Conditions.

Although Schiermeyer claims he "has full discretion to terminate node licenses if the node user has harmed Gala Games in any way," his Letter does not cite or substantively refer to the actual termination/suspension provision of § 4.1 of the Terms and Conditions, which states:

> GALA may suspend or terminate the User's right to access or use GALA Services immediately and without notice if: (i) GALA determines the User's use of the GALA Services poses a security risk to GALA Services or any third party, could adversely impact GALA, GALA Services, GALA Blockchain or any other GALA users, or could subject GALA, its affiliates, or any third party to liability, or could

14

> be fraudulent; (ii) the User is in breach of these Terms & Conditions; . . . or (v) for any other reason at GALA's discretion.

The "adverse impact" and "any other reason at Gala's discretion" language is the only thing that could conceivably apply to Schiermeyer's shut-off, but perhaps Schiermeyer shied away from specifically invoking these provisions because he recognizes how problematic it would be to apply them to the present circumstances.

First, Schiermeyer cannot defensibly claim that the mere act of True North transacting with its own GALA tokens constitutes the "adverse[] impact" referred to in subsection (i) above. The purpose of a currency such as GALA tokens is to enable holders to transact with their currency, as provided in the Terms and Conditions (*see*, *e.g.*, § 1.5.1) and in the fundamental structure of the Gala enterprise itself. Moreover, there is of course a fundamental line-drawing problem with Schiermeyer's suggestion that True North's trading somehow constitutes "dumping" that harms the Gala Games ecosystem. If trading, say, 1 GALA token is permissible, as is 10, or 100, or 1,000 tokens, then when does it become harmful? And where in any of the applicable contractual provisions is there a reference to such a threshold? There is no such provision.

Second, and perhaps more of an impediment to Schiermeyer's reliance on this language, is the inherent contradiction in the fact that BGP, at the direction of Schiermeyer, has been daily liquidating millions of dollars' worth of GALA tokens for months. *See* ES TRO Opp. Br. J. Miller Decl. ¶¶ 24-26. Schiermeyer does not dispute the fact of these liquidations, nor can he—

and it completely undermines his ability to rely upon this "adverse[] impact" language as a justification for shutting off and cutting off access to True North's Nodes.

Third and finally, there is the broad "any other reason at GALA's discretion" language, but even this provision cannot justify Schiermeyer's misconduct. Such incredibly broad language cannot be invoked simply because nodes are generating GALA tokens and those tokens are being sold or traded in the marketplace. Under a broad reading of this language, Schiermeyer could justify suspending all community members' nodes simply because he felt like it; but an abuse of commercial power cannot be propped up by such a groundless rationale. *See, e.g.*, *Johnson v. Kimberly Clark Worldwide, Inc.*, 86 F. Supp. 2d 1119, 1123 (D. Utah 2000) ("[W]hen a party has been granted discretion under a contract, that discretion may not be exercised capriciously or in bad faith."); *Amoco Prod. Co. v. Heimann*, 904 F.2d 1405, 1412 (10th Cir. 1990) (same). The same is true here: Schiermeyer has caused BGP to shut off and take control of the Nodes—resorting to improper self-help hours after the Court foreclosed a legal impairment of Thurston's and True North's assets—because *he feels like it*. He did not get his desired asset freeze, so he is forcing a freeze of sorts on his own.

Accordingly, none of Schiermeyer's stated (or implied) rationales hold up, which goes to the heart of why Schiermeyer and BGP's shut-off and effective stealing of True North's Nodes breaches both the Founders Agreement and BGP's Terms and Conditions. True North owns those Nodes and the GALA rewards that they generate, Schiermeyer can point to no breach or other wrongful action of True North (and no supported allegations against Thurston). Thus, there is no excuse for these abusive breaches.

Schiermeyer theoretically could have shut off True North's Nodes at any point in the months in which he has been complaining about the supposedly "stolen GALA" but did not. It is eminently revealing that he did it right after being denied his own TRO by this Court. True North is substantially likely to succeed on the merits of its claim that Schiermeyer and BGP breached the Founders Agreement and BGP's Terms and Conditions by suspending and effectively stealing True North's Nodes and the rewards generated by them—as would be the termination of said Nodes, if it does in fact coincide with Schiermeyer's anticipated distribution of 8,000 nodes to BGP employees. This Court should therefore preserve the status quo by requiring Schiermeyer to turn back on and restore True North's account access to its Nodes and to refrain from terminating or otherwise distributing them to BGP employees.

### III.     The Balance of Harms and Public Policy Factors Weigh Heavily in Favor of a TRO

Finally, there is no contest as to the balance of harms and public policy factors. Neither Schiermeyer nor BGP will suffer any harm from True North exercising rights inherent in node ownership—rights enshrined in the Terms and Conditions that Schiermeyer and BGP have breached. In contrast, True North will suffer significant harm from being prevented from exercising these rights. Public policy favors respect for property rights, for supporting citizens' freedom to transact with their owned assets, and for holding parties to their contractual obligations and discouraging extra-judicial self-help motivated only by personal animus.

## CONCLUSION

For all these reasons, True North requests that the Court grant this Motion and order Schiermeyer and BGP to immediately turn back on and restore True North's account access to its Nodes, and to refrain from terminating or otherwise distributing them to BGP employees.

DATED this 6th day of November 2023.

GREENBERG TRAURIG LLP

/s/ *Marc Rasich*
Marc Rasich
John Huber
Daniel Wadley
Alexander Baker

*Attorneys for Defendants, Counterclaimant, and Crossclaim Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of November 2023, a true and correct copy of the foregoing Motion For Mandatory Restraining Order To Maintain Status Quo And Request For Immediate Hearing was filed with the Court's electronic filing system and thereby served on counsel of record.

Paul W. Shakespear
Cameron Cutler
Natalie Beal
SNELL & WILMER LLP
15 West South Temple, Suite 1200
Gateway Tower West
Salt Lake City, UT 84101
pshakespear@swlaw.com
ccutler@swlaw.com
nbeal@swlaw.com

Abram L. Moore
Christian A. Zazzali
K&L GATES LLP
70 West Madison Street, Suite 3100
Chicago, IL 60602
abe.moore@klgates.com
christian.zazzali@klgates.com

GREENBERG TRAURIG, LLP

*/s/ Candy Long*