Paul W. Shakespear (14113)
Cameron Cutler (15116)
Natalie Beal (18311)
SNELL & WILMER L.L.P.
15 West South Temple, Suite 1200
Gateway Tower West
Salt Lake City, Utah 84101
Telephone: 801.257.1900
Facsimile: 801.257.1800
Email: pshakespear@swlaw.com
          ccutler@swlaw.com
          nbeal@swlaw.com

Abram I. Moore (admitted *pro hac vice*)
Christian A. Zazzali (admitted *pro hac vice*)
K&L GATES LLP
70 West Madison St., Suite 3100
Chicago, IL 60602
Telephone: 312.781.6010
Facsimile: 312.827.8000
Email:   abe.moore@klgates.com
            christian.Zazzali@klgates.com

*Attorneys for Plaintiff Eric Schiermeyer*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ERIC SCHIERMEYER, Derivatively on Behalf of Nominal Defendant, BLOCKCHAIN GAME PARTNERS, INC. D/B/A GALA GAMES,<br><br>              Plaintiff,<br><br>vs.<br><br>WRIGHT THURSTON and TRUE NORTH UNITED INVESTMENTS, LLC,<br><br>              Defendants,<br><br>BLOCKCHAIN GAME PARTNERS, INC. D/B/A GALA GAMES,<br><br>              Nominal Defendant. | **ERIC SCHIERMEYER'S OPPOSITION TO MOTION FOR MANDATORY RESTRAINING ORDER**<br><br>Case No. 2:23-cv-00589-HCN-DAO<br><br>Judge Howard C. Nielson<br><br>Magistrate Judge Daphne A. Oberg |

## TABLE OF CONTENTS

I.       INTRODUCTION ................................................................................................ 1

II.      ARGUMENT ...................................................................................................... 4

    A.   True North seeks a disfavored mandatory injunction that does not seek a return to the status quo and would provide all the relief recoverable at trial. ...................... 4

    B.   True North lacks standing to bring the Motion because it does not own the suspended Gala Nodes. ......................................................................................... 6

    C.   True North will not suffer irreparable injury if the Gala Nodes remain suspended. ................................................................................................................................ 7

    D.   True North is not likely to succeed with its claims against Schiermeyer  regarding the Gala Nodes. .................................................................................................... 10

        1.   True North is not likely to succeed in its claim against Schiermeyer for breach of the Gala Terms and Conditions (Count Eight) or tortious interference with the Terms and Conditions (Count Ten). ...................... 11

        2.   True North is not likely to succeed in its claim for breach of the Founders Agreement (Count Seven) ...................................................................... 17

        3.   True North is not likely to succeed in its claim for conversion of Thurston's Gala Node (Count Nine). ...................................................... 19

    E.   The balance of harms weighs against the mandatory injunction. ........................ 20

    F.   True North is not entitled to its requested relief because it comes to the Court with unclean hands. ...................................................................................................... 21

III.     CONCLUSION................................................................................................. 21

Plaintiff Eric Schiermeyer, derivatively and on behalf of Nominal Defendant Blockchain Game Partners, Inc. ("Gala Games" or the "Company"), for his opposition to the Motion for Mandatory Restraining Order filed by Defendant and True North United Investments, LLC (the "Motion") (Dkt. No. 63), states as follows:

## I.    Introduction

On October 20, 2023, the Court denied a motion for a mandatory restraining order filed by True North and Thurston (Dkt. No. 54). That motion asked the Court to reactivate suspended Gala Nodes—precisely the same relief sought in the instant Motion. In its second bite at the apple, True North again asks the Court for a mandatory injunction that would alter the status quo and provide True North with all of the relief it could recover at trial. Indeed, the injunction would not only moot True North's counterclaims relating to the nodes, it would reverse a rightful suspension of the nodes and shift any losses to the Company and third-party node owners. In addition, True North does not seek a return to the last peaceable status quo before the parties' disputes, but rather a return to the disputed position that existed starting in June 2023, when Thurston turned on his nodes in the midst of settlement discussions. The requested injunction is extremely disfavored and True North must make a strong showing of all elements for injunctive relief. It fails to do so, and its Motion should be denied.

First, True North does not own Gala Nodes and therefore lacks standing to bring the Motion (or underlying claims) based entirely on suspension of those nodes.

Most critically, there is no irreparable harm here, as True North claims it will suffer only an economic loss compensable by money damages if the nodes remain suspended. Specifically, True North claims that it will be denied ownership of a quantity of fungible GALA tokens. As

Defendants have previously argued:

> GALA is a cryptocurrency. It has an exchange traded value.
> Experts can determine the maximum value of a particular
> cryptocurrency (in this case GALA) over a period of time. Thus, if
> there were any cognizable loss in this case, establishing the amount
> would reduce to a math problem.

(Dkt. No. 27, Defendants' Opp. to TRO, p. 19). The Court agreed. (Dkt. No. 49, Order, p. 8).

True North argues that the quantity of GALA the nodes would have earned will be hard to

determine, but in fact it is readily ascertainable from public information. Just as the Court found

that the Company's deprivation of GALA from Thurston's theft was not irreparable, it must

reach the same conclusion regarding True North's claimed deprivation of GALA due to the node

suspension and deny the Motion.

Further, True North has not established that it is likely to succeed on the merits of the

claims upon which it bases its Motion. First, True North argues that Schiermeyer breached the

Gala Terms and Conditions governing Gala Nodes (Counterclaim Eight), but neither True North

nor Schiermeyer is even a party to that agreement.

Further, there simply has been no breach of the Terms and Conditions by anyone other

than Thurston. True North alleges only a breach of the implied obligation of good faith and fair

dealing, which is inapplicable here.  Thurston hardly disputes that he has flagrantly breached the

Terms and Conditions by stealing and selling Gala Nodes and GALA tokens, instead arguing

that the Company should have acted sooner to deactivate the nodes in response to those breaches.

However, there was no need to turn off Thurston's Gala Nodes *until he recently turned them on*

in the midst of this dispute as a retaliatory measure and effort to further enrich himself.

Moreover, Thurston's claim that the Company has long-planned to take his nodes and distribute

them to employees is demonstrably false.

Second, True North cannot succeed with its claim that the node suspension breaches an early "Founders Agreement" between True North and Schiermeyer (Counterclaim Seven). The Founders Agreement is a vague noncompetition agreement that does not control the governance of Gala Nodes in any fashion. Thurston is not a party to that agreement and it has zero applicability to his personal nodes, which are governed by the Gala Terms and Conditions. True North certainly has not demonstrated a likelihood of success with respect to this claim.[1]

The balance of harms also tips against granting the requested injunction. If the Court orders the Company to re-activate Thurston's nodes, the daily GALA tokens distributed to third-party Gala Node owners will be significantly reduced (the node portion of the daily distribution is fixed and divided evenly among all active nodes). Those third parties will have no means of redressing their loss.

Finally, True North is not entitled to the equitable relief it seeks because it comes to Court with unclean hands. Defendants have enriched themselves by more than $130 million by stealing and selling the Company's GALA tokens and Gala Nodes and are not entitled to a mandatory injunction in their favor to enable further unjust enrichment.

The Motion should therefore be denied.

---

[1] Nor can Schiermeyer, an officer of the Company, be liable for tortiously directing the Company to breach the Terms and Conditions (Count Ten) or for conversion of the Gala Nodes (Count Nine). Thus, True North fails to even address the elements of these claims or make a substantive argument for likelihood of their success.

II.    **Argument**[2]

A.    **True North seeks a disfavored mandatory injunction that does not seek a return to the status quo and would provide all the relief recoverable at trial.**

"In the Tenth Circuit, certain types of injunctions are disfavored: '(1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits.'" *Vendr, Inc. v. Tropic Techs., Inc.*, No. 2:23-CV-165-DAK-DAO, 2023 WL 3851838, at *5 (D. Utah June 6, 2023) (quoting *Schrier v. University of Colo.*, 427 F.3d 1253, 1259 (10th Cir. 2005)). True North's Motion checks all three boxes for disfavored injunctions. First, the Motion is expressly styled as a disfavored "Motion for Mandatory Restraining Order."

Second, True North does not seek a return to the "last peaceable uncontested status existing between the parties before the dispute developed." *Id.* In any conceivable formulation of the last peaceable status quo, Thurston's Gala Nodes were dormant. *See Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1155 (10th Cir. 2001) (in determining status quo the court "looks to the reality of the existing status and relationship between the parties and not solely to the parties' legal rights"). In the throes of the parties' dispute, Thurston unilaterally activated his nodes; a return to this posture is in no way the last peaceable status quo.

Thurston's own declaration states that his Gala Nodes were dormant between "fall of 2020" and "June 2023," when Thurston activated them. (Dkt. No. 60, Defendants' Answer, ¶ 52). Whether the dispute between the parties developed in 2021 (when Thurston stole the

---

[2] Plaintiff has set forth the factual background of the operation of the Gala Games ecosystem and Thurston's willful misconduct in his Verified First Amended Complaint (Dkt. 14, "VFAC") and incorporates that information here by reference.

Company's GALA), in July 2022 (when Thurston first began liquidating the Company's GALA for his own enrichment and was confronted by Plaintiff), in December 2022 (when Plaintiff again confronted Thurston over the increased frequency and amount of his liquidation of stolen GALA), or even in May 2023 (when GALA v2 was implemented, in part as a protective measure against Thurston's actions, and Thurston first purported to raise issues about Schiermeyer's management of the Company), it is undisputed that the Gala Nodes at issue were dormant in the status quo prior to each of the dates that may mark the beginning of the disputes. (Dkt. No. 14, VFAC, ¶¶ 2, 73, 78, 83, 130). In fact, Thurston activated his nodes in June 2023 as a retaliatory tactic to further enrich himself while the parties were *in settlement negotiations* attempting to *resolve their disputes*. (*See* Schiermeyer Decl., ¶¶ 6-7; Dkt. No. 36, Plaintiffs' Reply, pp. 18-20).

Third, the injunction would provide True North the very relief requested in Counterclaims Seven and Eight, preventing the claimed economic harm (loss of future GALA tokens) from occurring and effectively mooting those claims. In addition, the injunction could not be undone, as Thurston will have received and liquidated many millions of GALA tokens by the time of trial, harming the Gala Games ecosystem and taking GALA from third party node owners.

Because the injunction True North seeks is disfavored (thrice over), it "must make a strong showing both with regard to the likelihood of success and with regard to the balance of harms" and the injunction "must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *Schrier*, 427 F.3d at 1259 (internal quotations omitted). True North fails on all counts.

**B.**      **True North lacks standing to bring the Motion because it does not own the suspended Gala Nodes.**

True North states that "Schiermeyer concedes [the nodes] are owned by True North."

(Mot. p. 2.) Defendants know this is false. The suspended Gala Nodes do not belong to True

North (a shareholder in the Company), they belong to Wright Thurston personally. As detailed in

a September 14, 2023 filing, the Company "maintains a database that records the name of Gala

Node owners, the wallet address into which their node rewards are to be deposited, their email

address, their phone number and other information." (Dkt. No. 39, Second Brink Decl., ¶ 3).

"There are no Gala Nodes registered to True North United Investments, LLC in the Gala Games

node database." (*Id.*, ¶ 6.) The Company's node database shows that the suspended Gala Nodes

belong to "Wright Thurston" personally. (*Id.*, ¶¶ 3-4.)

Indeed, Thurston has acknowledged that the Gala Nodes belong to him, not True North.

When Thurston and True North filed their first motion for a temporary restraining order seeking

reactivation of Thurston's nodes, they represented that "**Thurston — like every node-owner** is

expressly permitted to do — has engaged in a number of transactions" using his nodes. (Dkt. No.

52, Defendants' First Motion for TRO, p. 4 (emphasis added)). In prior briefing before the Court,

Defendants referred to "the actual percentage split between **Thurston and Schiermeyer** on the

one hand, and other node owners on the other hand." (Dkt No. 45, p. 6 (emphasis added)).

Further, in text exchanges with Schiermeyer, Thurston referred to the Gala Nodes not as True

North's nodes but as his own. (*See* Schiermeyer Decl., ¶¶ 4-5 (referring in texts to "**my** node"

and stating "I turned on 100 nodes that day **personally**" (emphasis added).) In 2021, he texted a

picture of his node dashboard, which showed that the account holder was "Wright Thurston," not

True North. (*See* Schiermeyer Decl., ¶ 4).

Under 12.1 of the Gala Terms and Conditions, nodes cannot be assigned or transferred.[3] True North offers no documentary support for its alleged ownership of the suspended nodes, and the allegation is contrary to the Company's records. Once again, the controlling documentary evidence conflicts with Thurston's testimony. Because True North does not own the suspended Gala Nodes, it has no standing to bring claims for suspension of those nodes.

### C. True North will not suffer irreparable injury if the Gala Nodes remain suspended.

The Court has held a "party's harm is *irreparable* 'when the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain.'" (Dkt. No. 49, Order, p. 4). True North has failed to show that it will suffer irreparable injury if Thurston does not receive GALA tokens from operating his nodes. First, the Gala Nodes belong to Thurston, not True North, so any loss of GALA would be incurred by a nonparty to the Motion. Further, Defendants have argued, and the Court has held, that the loss of an ascertainable amount of GALA does not constitute an irreparable injury. (*Id.*) Because the Court found that the *Company's loss of GALA* cannot support preliminary injunctive relief, neither can *Thurston's loss of GALA*.

If Thurston's nodes remain suspended through trial, the amount of daily GALA that he would have received from operating his nodes is readily ascertainable. There is currently a daily emission of GALA, distributed 50% to the Company and 50% to the Gala Node owners who

---

[3] Under section 3.11 of the Terms and Conditions, "[i]t is anticipated that the GALA Game Node will be able to be sold or transferred in the future as Non-Fungible Tokens," but this is not yet the case. If and when nodes become transferrable, any recipient of a transferred node will be required to create a Gala Games account, thus agreeing to the Terms and Conditions.

operated their nodes that day. (Dkt. No. 52, Defendants' First Motion for TRO, 9-10). In order to fund its operations, the Company sometimes liquidates GALA that it earns from this daily distribution and from sales.[4] (Dkt. No. 14, VFAC, ¶ 43).

The fixed amount of GALA that is distributed to Gala Node owners on any given day is divided equally among the Gala Nodes that were in operation that day. (Brink Decl., ¶¶ 17-18). Gala Games publishes its daily distribution information online, including the number of GALA tokens distributed each day and the number of nodes in operation ("Points") on that day. (*Id.*, ¶ 19). To determine the amount of GALA Thurston would have received on any given day if he had operated his Gala Nodes, one must simply add his 7,000 nodes to the total number of nodes that were operated on that day, then determine the GALA that would have been distributed per node. (*Id.*, ¶ 20).

For example, if Thurston had operated his Gala Nodes on October 17, 2023, he would have earned 3,844,845 GALA. This is calculated by determining how much GALA would have been distributed per node on that day if Thurston had operated his nodes:

| Nodes in Operation | | Total Node Distribution | Distribution per Node |
|---|---|---|---|
| Without Thurston | 23,854 | 17,123,288 | 718 |
| With Thurston | 30,854 | 17,123,288 | 555 |

Because each node would have received 555 GALA if Thurston's nodes were in operation, and because Thurston has 7,000 nodes, he would have received 3,844,845 GALA from operating his

---

[4] In his Motion, Thurston complains about the Company's liquidation of its GALA, but offers no alternative funding mechanism for the Company's operations. (*See* Dkt. No. 63, Motion, pp. 15-16.) Notably, Thurston now concedes that the Company receives and owns GALA. He has previously argued to this Court that there is no such thing as Company-owned GALA (in order to justify his theft of billions of the Company's tokens).

nodes on October 17th.[5] (*Id.*, ¶ 21). All of the information necessary to perform this calculation, for any given day, is available online. (*Id.*, ¶ 24). Therefore, at trial, Thurston can calculate precisely how much GALA he would have earned had his nodes been operating. As Defendants have successfully argued, "if there were any cognizable loss in this case, establishing the amount would reduce to a math problem." (Dkt. No. 27, Defendants' Opp. to TRO, p. 19).

Although True North struggles mightily to differentiate its claim for the loss of node GALA from the Company's claim for loss of GALA due to Thurston's theft, the alleged injuries are of the same nature. True North argues that its loss of GALA is different because it is yet to occur. However, this does not render the harm irreparable. *Mountain Med. Equip., Inc. v. Healthdyne, Inc.*, 582 F. Supp. 846, 848 (D. Colo. 1984) ("future losses, if they are quantifiable, do not constitute irreparable injury"). True North argues that its loss is unquantifiable because it would require speculation about when it would have liquidated GALA in the "but for" world. (*See* Dkt. No. 63, Motion pp. 8-9). Of course, the same is true of the GALA stolen by Thurston: but for Thurston's theft and liquidation of Company GALA, is the assumption that the Company would have held onto its GALA and "liquidat[ed] the currency during market up-turns?" (*Id.*) Defendants previously brushed such questions aside, arguing that "[e]xperts can determine the maximum value of a particular cryptocurrency (in this case GALA) over a period of time." (Dkt. No. 27, Defendants' Opp. to TRO, p. 19).

True North also argues that GALA will be distributed to other node owners and that "[r]ecovery of that GALA from those node owners would pose real and significant legal and

---

[5] The actual amount of GALA generated per node is 554.977896, and the amount Thurston's nodes would have generated is 3,884,845.27. The amounts are rounded for convenience.

equitable challenges." (Dkt. No. 63, Motion, p. 11). But True North's claims do not (and could not) seek recovery of GALA from third parties, True North seeks only monetary damages from Schiermeyer and the Company (and now an injunction). (Dkt. No. 60, Counterclaims, p. 96).

Finally, True North makes a half-hearted argument that Schiermeyer and the Company may not be able to pay for any lost GALA after trial. (Dkt. No. 63, Motion, p. 9). As the Court has held, to succeed with such an argument, True North must "demonstrate that [Schiermeyer and the Company] would *likely* be unable to pay an award of money damages after a trial." (Dkt. No. 49, Order, p. 9). True North does not offer a single fact suggesting that Schiermeyer would be unable to satisfy such an award. Further, with respect to the Company, Thurston swears that he "do[es] not have insight into BGP's financials."[6] Thurston's speculation about "possible devaluation" of the GALA currency and generalized false references to "mismanagement" are insufficient to demonstrate that the Company would be unable to satisfy a judgment.

**D.    True North is not likely to succeed with its claims against Schiermeyer regarding the Gala Nodes.**

True North bases its Motion on two of its counterclaims: Count Eight, for breach of the Gala Terms and Conditions; and Count Seven for breach of a "Founders Agreement." True North is unlikely to succeed on the merits of either claim (or any other claim against Schiermeyer).

---

[6] Thurston cites a recent lawsuit filed against the Company by a developer, and states that it shows that the Company "owes a substantial amount of money to software studio partners." (Dkt. No. 64 at ¶ 13). This recklessly false public statement by a director of the Company regarding a contested lawsuit is just another example of Thurston placing his own interests ahead of the Company's.

1.     **True North is not likely to succeed in its claim against Schiermeyer for breach of the Gala Terms and Conditions (Count Eight) or tortious interference with the Terms and Conditions (Count Ten).**

True North cannot succeed with Count Eight or Count Ten against Schiermeyer for three reasons: (1) it is an improper plaintiff and Schiermeyer is an improper defendant; (2) the Company has the discretion to terminate Gala Nodes; and (3) Thurston breached the Terms and Conditions.

a.     **True North and Schiermeyer are improper parties to Counts Eight and Ten, and Scheirmeyer cannot tortiously interfere with the Company's contracts.**

While the parties agree that the Gala Terms and Conditions govern Gala Nodes, True North, the movant, does not own any Gala Nodes. (*See supra*, § II.B). The Terms and Conditions, which are governed by California law, constitute an agreement between the Company on the one hand, and Gala Games account holders (including those who own Gala Nodes) on the other. (*See* Brink Decl., Exhibit A (Terms and Conditions), p. 1 ("By signing up for an account through GALA or any associated websites, APIs, or mobile applications, the User has read and consents to the Terms & Conditions")). Because True North has no Gala Games account and owns no Gala Nodes, it cannot bring a claim under the Terms and Conditions. *Volkswagen Grp. of Am. v. Smartcar, Inc.*, 21-cv-04895-JST, at *23 (N.D. Cal. July 12, 2023) ("under California law, 'a person who is not a party to a contract lacks standing to sue for breach'").

Nor can True North bring a direct claim against Schiermeyer for breach of those Terms and Conditions (Count Eight), as Schiermeyer is not a party to the agreement. *Gruenewald v. Scott*, No. E046596, at *1 (Cal. Ct. App. June 21, 2010) ("it is hornbook law that a corporate

officer is not personally liable for the corporation's breach of contract based solely on his or her official position").

True North makes no substantive argument regarding Count Ten, alleging that Schiermeyer, as President and CEO of the Company, tortiously induced the Company to breach the Terms and Conditions. Perhaps, this is because the claim is unlikely to succeed. "[C]ourts throughout the country have held that a corporate officer cannot incur liability for tortiously interfering with the corporation's own contract." *Advanced Recovery Sys. v. Am. Agencies*, 923 F.3d 819, 828 (10th Cir. 2019) (collecting cases); *see also Lichtie v. U.S. Home Corp*., 655 F. Supp. 1026, 1028 (D. Utah 1987) (corporate officer acting within the scope of his authority cannot be liable for tortiously interfering with corporation's contracts). Schiermeyer acted within the scope of his authority as President and CEO when directing the Company to suspend the Gala Nodes, received no personal benefit from the suspension, and acted solely for the benefit of the Company.[7] Further, as set forth below, the Company did not breach the Terms and Conditions and therefore Schiermeyer cannot be liable for tortiously inducing a breach.

### b.  The Terms and Conditions grant the Company the absolute right to suspend nodes for any reason.

Even if True North had standing to sue under the Terms and Conditions, and even if Schiermeyer were a proper defendant to such a claim, True North does not contend that any express term has been breached. True North admits that the Company has the discretion to

---

[7] Thurston's suggestion that disabling Gala Nodes requires board approval is not true. The Company has disabled Gala Nodes on numerous occasions for various reasons and the decision to disable a Gala Node has always been an operational decision made at or below the office of the President and CEO. (Schiermeyer Decl., ¶ 13). At no time has Thurston argued that disabling a Gala Node requires approval of the board of directors. (*Id.*)

suspend Gala Nodes for any reason.[8] (Dkt. No. 63, Motion, p. 16). True North argues that such

discretion may not be exercised "capriciously or in bad faith" under Utah law, thus revealing that

True North's claim is actually one for breach of an implied covenant of good faith and fair

dealing. (*Id.*) However, as noted above, the Terms and Conditions are governed by California

law. (Brink Decl., Ex. A, § 12.6).

Under California law, "courts are not at liberty to imply a covenant directly at odds with

a contract's express grant of discretionary power except in those relatively rare instances when

reading the provision literally would, contrary to the parties' clear intention, result in an

unenforceable, illusory agreement." *Third Story Music, Inc. v. Waits*, 41 Cal. App. 4th 798, 808,

48 Cal. Rptr. 2d 747, 753 (1995). In *Third Story Music*, an agreement to purchase musical

recordings included an "illusory promise" to either market the recordings or not market the

recordings, at the purchaser's election. *Id*. The court refused to imply a covenant of good faith

and fair dealing into that provision because the remainder of the contract was binding. *Id.*

Specifically, under California law, there is no implied duty to exercise a discretionary

termination provision in good faith. *Carma Devs. (Cal.), Inc. v. Marathon Dev. California, Inc.*,

2 Cal. 4th 342, 376, 826 P.2d 710, 729 (1992) (reversing decision imposing an implied duty of

good faith over a provision granting lessor discretion to terminate a lease); *Gerdlund v. Elec.

Dispensers Int'l*, 190 Cal. App. 3d 263, 273, 235 Cal. Rptr. 279, 284 (Ct. App. 1987) (finding

---

[8] Specifically, "**GALA may suspend or terminate the User's right to access or use GALA Services** immediately and without notice if: (i) GALA determines the User's use of the GALA Services . . . could adversely impact GALA, GALA Services, GALA Blockchain or any other GALA users, or could subject GALA, its affiliates, or any third party to liability, or could be fraudulent; (ii) the User is in breach of these Terms & Conditions . . . or (v) **for any other reason at GALA's discretion**." (*Id.* at ¶ 4.1). (Brink Decl., Ex. A, § 4.1 (emphasis added).

that where a contract for services states that "[n]otice of termination may be given at any time and for any reason," there is no implied obligation to terminate only "for any *good* reason").

True North does not argue that the Terms and Conditions would be illusory absent implied restrictions on the Company's ability to terminate node licenses, nor could it. In exchange for users agreeing to the terms, the Company provides an account and access to the Gala Games ecosystem and infrastructure, including GALA tokens, nodes, and games. Like the termination provisions in *Carma* and *Gerdlund*, this provision cannot be limited by an implied term as True North argues, and the Company can terminate Gala Nodes for any reason.

c.  <strong>Thurston has breached the Terms and Conditions.</strong>

In any event, True North does not dispute that Thurston's Gala Nodes may be suspended if he violates the Terms and Conditions. "GALA reserves the right to take action, with or without advance notice, if GALA believes the User has violated these Terms and Conditions. This may include but is not limited to: ban User; disable User ability to use the GALA Services in conjunction with buying NFTs available on Gala Site; disable User's ability to access GALA Services; and/or other actions." (*Id.* at ¶ 3.9).

Under the Terms and Conditions, owners of Gala Nodes agree that they will not: "use the GALA Services to buy, sell, or transfer stolen items, fraudulently obtained items, items taken without authorization, and/or any other illegally obtained items;" "trick, defraud, or mislead GALA or other Users;" "use the GALA Services for any illegal or unauthorized purpose;" "bypass or ignore instructions that control access to the GALA Services;" "sell or resell the GALA Services in a manner that violates any law or contract, or in a way that attempts to circumvent any GALA fee systems or rules;" "use the GALA Services to engage in price

14

manipulation, fraud, or other deceptive, misleading, or manipulative activity;" or "disparage, tarnish, or otherwise harm, in GALA's sole discretion, GALA and/or the Site." Further, "it is in GALA's sole discretion to determine if User has violated any of the above User Conduct guidelines." (*Id.*)

Thurston has violated the Terms and Conditions. First, Thurston took Gala Node licenses from the Company and sold or transferred them to Dereck Hope and Blox Lending while keeping the proceeds for himself and defrauding the purchasers (both of whom sued Thurston for fraud and one of whom also sued the Company). (Dkt. No. 14, VFAC, ¶¶ 93-116). This willful misconduct violates numerous terms, including the prohibition against selling or reselling the GALA Services in a manner that attempts to circumvent any GALA fee systems, the prohibition against the "transfer" of any "items taken without authorization," and the prohibition against defrauding other users. True North does not even dispute this, offering only a one-sentence response, unsupported by any evidence, stating that these "transactions" somehow "did not constitute a 'sale' of nodes." (Dkt. No. 63, Motion, p. 11. 13). This comes nowhere close to demonstrating a likelihood of success on the merits.

Second, Thurston stole GALA tokens from the Company without authorization and dissipated the tokens in a complex web of transfers, enriching himself by more than $130 million in ill-gotten gains. (Dkt. No. 14, VFAC, ¶ 3). True North does not dispute that, if true, this conduct would be a violation of the Terms and Conditions justifying the suspension of Thurston's nodes. Among other terms, this violates the prohibitions against transferring stolen items using Gala Services and defrauding and misleading the Company. True North has failed to demonstrate a likelihood of proving that Thurston was entitled to take and dissipate billions of

GALA for his own enrichment. Thurston has argued in previous briefing that he had a verbal agreement with Schiermeyer that he could take 8.6 billion GALA and that the agreement was evidenced by a text between the parties. (Dkt. No. 28, Thurston Decl. ¶ 12). However, there was no such agreement and the text was grossly misrepresented to the Court. (Dkt. No. 36, Plaintiffs' Reply, pp. 6-7). Indeed, Plaintiff is likely to succeed on the merits of proving that Thurston stole billions of the Company's GALA. (*See generally* Dkt. Nos. 9, 14).

Instead of making any substantive argument that Thurston *did not* breach the Terms and Conditions, True North argues that Thurston's breaches happened a long time ago and that "Schiermeyer theoretically could have shut off [the nodes] at any point in the months in which he has been complaining about the supposedly 'stolen GALA' but did not." (Dkt. No. 63, Motion, p. 17). This is misleading. Thurston admits that his nodes were dormant through June 2023. In other words, there was nothing for Schiermeyer to "shut off." It was Thurston's recent activation of his nodes that triggered the suspension for his breaches. In any event, Thurston cites no authority suggesting that the Company waived its right to suspend his nodes due to any passage of time between his breaches and the suspension.

Finally, True North falsely claims that the suspension of Thurston's nodes was a scheme hatched in May to take the nodes and distribute them to Company employees. It is true that the Company has considered distributing 8,000 node licenses to employees and that number of nodes is capped at 50,000. However, Thurston's sworn testimony that "BGP does not own nodes as a corporation that it could provide to these employees" is false. (Dkt. No. 64, Thurston Decl. ¶ 3). As of May 2023, the Company had distributed or sold 42,978 of the 50,000 available node licenses, and thus had 7,022 remaining for distribution. (Brink Decl., ¶¶ 4, 11). In addition, the

Company maintains a holding account for nodes that have been deactivated for various reasons including refunds and employee departures. (Brink Decl., ¶¶ 5-8). This holding account also includes the nodes that Thurston stole from the Company and sold to Blox Lending and Dereck Hope, which the Company subsequently deactivated. (*Id.*, ¶ 9). As of May 2023, the holding account included 1,414 nodes. (*Id.*, ¶ 10). Thus the sum of node licenses available for distribution to employees in May was 8,436 (the 7022 unsold nodes plus the 1,414 in the holding account). (*Id.*, ¶ 11). Once again, Thurston's sworn testimony is disproven by documentary evidence.

Because True North is not likely to succeed on the merits of its claim for breach of the Terms and Conditions, the Motion should be denied.

2. **True North is not likely to succeed in its claim for breach of the Founders Agreement (Count Seven).**

True North also claims that the suspension of Thurston's nodes is a breach of a 2019 Founders Agreement between True North and Schiermeyer. In this count, unlike Count Eight, True North and Schiermeyer are at least parties to the contract True North claims was breached. But the contract says nothing about the operation of Gala Nodes, for good reason: the terms of the relationship between Gala Node owners and the Company are set forth in the Gala Terms and Conditions, and not the Founders Agreement. Thurston, the owner of the Gala Nodes at issue, is not even a party to the Founders Agreement.

Even if True North owned the Gala Nodes, it has failed to state a claim for breach of the Founders Agreement, much less demonstrated a likelihood of success on the merits of that claim. While not a model of clarity, the Founders Agreement appears to be an effort to create a noncompetition agreement of sorts between the initial two shareholders of the Company, True

North and Schiermeyer. Those parties "desire[d] to form" the Company and a number of affiliated entities, and "intend[ed]" at the time to each have 50% ownership in the entities they created.[9] In furtherance of that goal, the parties agreed:

> The parties agree **not to circumvent or compete with the BGP Companies in a manner to** earn income, hold ownership, vote, or earn rewards from the services and products of the BGP Companies **in a manner to** squeeze out or diminish the rights and Ownership of any other party to this Agreement.

(Dkt. No. 28, Thurston Decl., Ex. 1 (emphasis added)).[10]

This is the provision True North claims Schiermeyer breached by directing the Company to suspend Thurston's Gala Nodes. (Dkt. No. 60, Counterclaims, ¶¶ 20, 120; Dkt. No. 63, Motion, p. 11). This is simply wrong. The provision prohibits circumventing or competing with the Company and the remainder of the provision is made up of adverbial phrases modifying the act of circumventing or competing. *See State v. Amsden*, 2013 VT 51, ¶ 33, 194 Vt. 128, 145, 75 A.3d 612, 624 (2013) ("The phrase 'in a manner to endanger' can have no meaning independent of the verbs it modifies in this statute."). True North has not argued, and cannot plausibly argue, that the suspension of Gala Nodes circumvented or competed with the Company at all, much less "in a manner" proscribed in this provision.

Indeed, even if the adverbial phrases in the remainder of this provision created stand-alone obligations (rather than simply describing how the parties shall not circumvent or compete with the Company), suspending the Gala Nodes would not be a breach of the provision.

---

[9] Today, neither Schiermeyer nor True North owns 50% of the shares in the Company, as additional shareholders have joined the Company.

[10] The Founders Agreement refers to "BGP Companies," but the only existing company that was formed by True North and Schiermeyer is Gala Games. A related Swiss entity was formed earlier this year, but it has not operated and is in the process of being dissolved.

Schiermeyer did not "earn income, hold ownership, vote, or earn rewards" in any manner by directing the Company to suspend the Gala Nodes. Nor were True North's shares in the Company affected in any way by the suspension. The parties have simply been returned to the status quo preceding their dispute, when their nodes were dormant.[11]

Because nothing in the Founders Agreement prevents the Company or Schiermeyer from suspending Thurston's nodes for a breach of the Gala Terms and Conditions, True North is not likely to succeed with its counterclaim for breach of the Founders Agreement.

### 3. True North is not likely to succeed in its claim for conversion of Thurston's Gala Node (Count Nine).

True North performs no analysis of its conversion claim in its Motion, and thus has failed to make any attempt to demonstrate that it is likely to succeed on the merits of that claim against Schiermeyer. Nor could it succeed. To establish a claim for conversion under Utah law, True North must show: (1) willful interference with personal property; (2) without lawful justification; (3) depriving True North of possession or use; and (4) that True North was entitled to immediate possession at the time of the alleged conversion. *Nilson v. JPMorgan Chase Bank, N.A.*, 690 F. Supp. 2d 1231, 1252 (D. Utah 2009).

First, True North has no ownership right in the Gala Nodes. Indeed, the Terms and Conditions state that even *Thurston's* "[o]wnership" of Gala Nodes "does not represent or

---

[11] After Thurston turned on his Gala Nodes in June 2023, Plaintiff turned on his own Gala Nodes in an initial effort to mitigate the amount of GALA Thurston could dump into the market, as more nodes in operation on a given day means less GALA distributed per node. (*See* supra, § II.C; Schiermeyer Decl., ¶ 9) Unlike Thurston, Plaintiff has not sold the GALA earned by his nodes. (Schiermeyer Decl., ¶ 9). When the Company suspended Thurston's nodes, this mitigation was no longer necessary, so Plaintiff also turned off his own Gala Nodes. (Schiermeyer Decl., ¶ 11).

constitute any ownership right or stake . . . or any right to receive any future revenue or form of participation in or relating to any blockchain or digital reward, including the GALA Blockchain or GALA Reward." (Brink Decl., Ex. A, § 8.1.)

Moreover, "a conversion claim cannot be brought where the property right alleged to have been converted arises entirely from the [plaintiff's] contractual rights." *Global Fitness Holdings, LLC v. Fed. Recovery Acceptance, Inc.*, 127 F. Supp. 3d 1198, 1207 (D. Utah 2015). Here, True North's purported property interest in the nodes arises solely from the Gala Games Terms and Conditions and its allegations that Schiermeyer breached those terms. True North's conversion claim simply fails.

### E.     The balance of harms weighs against the mandatory injunction.

True North argues that the balance of harms tips in its favor because it has a property right in the Gala Nodes. As set forth above, this is incorrect.

In fact, the balance of harms weighs heavily against the "mandatory" injunction. Every GALA token that Thurston receives for operating his Gala Nodes is a token that is not earned by another node owner. When Thurston operates his nodes, he diverts a significant portion of GALA from the remaining node owners. For example, as set forth above in Section II.C, if Thurston had operated his nodes on October 17, 2023, there would have been roughly 22% less GALA for other node owners who have not breached the Terms and Conditions. While any loss to Thurston (even though he is not bringing the instant motion) can be quantified and compensated if no injunction issues, the loss to the remaining node owners if an injunction issues will never be repaired.

Further, an injunction would permit Thurston to resume his daily dumping of millions of GALA into the marketplace, impacting the entire Gala Games ecosystem. Unlike any readily ascertainable loss to Defendants from a wrongful suspension (*see* infra, § II.C), this damage to the Company could not be measured by the value of a fixed amount of GALA tokens. Indeed, the injunction itself may give rise to a claim for irreparable losses caused by Thurston's future dumping of wrongfully-acquired GALA.

> **F.      True North is not entitled to its requested relief because it comes to the Court with unclean hands.**

True North concedes that its Motion must be denied if its own conduct has been "unlawful, unconscionable, or inequitable" or is "tainted with inequitableness or bad faith relative to the matter in which [it] seeks relief. (Dkt. No. 27, Defendants' Opp. to TRO, pp. 24-25, citing *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1214 (10th Cir. 2014) and *Derma Pen, LLC v. 4EverYoung Ltd.*, 76 F. Supp. 3d 1308, 1321 (D. Utah 2014)).

It is difficult to imagine a more apt set of circumstances for the application of this doctrine. As detailed in prior briefing before the Court, and substantiated with voluminous evidence, Thurston and True North have stolen billions of GALA tokens from the Company and dissipated the GALA in a complex scheme of multi-layering and commingling, wrongfully enriching themselves to the tune of $130 million. Defendants' hands are unclean and True North is therefore not entitled to the equitable relief it seeks.

## III.   Conclusion

Because True North has no standing to bring this Motion for a disfavored injunction, has failed to show that it will incur anything other than reparable economic harm in the absence of an injunction, has failed to make a strong showing of likelihood of succeeding on the merits of its

claims, has failed to make a strong showing that the balance of harms tips in its favor, and has unclean hands, the Motion should be denied.

DATED this 14th day of November, 2023.

SNELL & WILMER L.L.P.

_/s/ Paul W. Shakespear_
Paul W. Shakespear
Cameron Cutler
Natalie Beal

 K&L GATES LLP
Abram I. Morre
Christian A. Zazzali

_Attorneys for Plaintiff Eric Schiermeyer_