David L. Mortensen (#8242)
dmortensen@foley.com
Monica S. Call (11361)
mcall@foley.com
FOLEY & LARDNER LLP
95 S. State Street, Suite 2500
Salt Lake City, UT 84111
Telephone: 801.401.8900

*Attorneys for Blockchain Game Partners, Inc.
d/b/a Gala Games and d/b/a BGP Games*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ERIC SCHIERMEYER, Derivatively on Behalf of Nominal Defendant, BLOCKCHAIN GAME PARTNERS, INC. D/B/A GALA GAMES,<br><br>Plaintiff,<br><br>vs.<br><br>WRIGHT W. THURSTON and TRUE NORTH UNITED INVESTMENTS, LLC<br><br>Defendants.<br><br>and<br><br>BLOCKCHAIN GAME PARTNERS, INC. D/B/A BGP GAMES,<br><br>Nominal Defendant.<br><br>vs. | **BLOCKCHAIN GAME PARTNERS, INC.'S OPPOSITION TO TRUE NORTH UNITED INVESTMENTS, LLC'S MOTION FOR MANDATORY RESTRAINING ORDER TO MAINTAIN STATUS QUO AND REQUEST FOR IMMEDIATE HEARING**<br><br>Case No. 2:23-cv-00589-HCN-DAO<br><br>The Honorable Howard C. Nielson, Jr.<br><br>Magistrate Judge Daphne A. Oberg |

| | |
|---|---|
| TRUE NORTH UNITED INVESTMENTS, LLC, Derivatively on Behalf of Nominal Defendant, BLOCKCHAIN GAME PARTNERS, INC. D/B/A GALA GAMES, | |
| Counterclaimant, | |
| vs. | |
| ERIC SCHIERMEYER, | |
| Counterdefendant, | |
| and | |
| BLOCKCHAIN GAME PARTNERS, INC. D/B/A BGP GAMES, | |
| Nominal Counterdefendant. | |
| TRUE NORTH UNITED INVESTMENTS, LLC, | |
| Crossclaim Plaintiff, | |
| vs. | |
| BLOCKCHAIN GAME PARTNERS, INC. D/B/A BGP GAMES, | |
| Crossclaim Defendant. | |

Blockchain Game Partners, Inc. d/b/a Gala Games ("Gala Games" or the "Company") respectfully submits this Memorandum in Opposition to True North United Investments, LLC's Motion for Mandatory Restraining Order to Maintain Status Quo and Request for Immediate Hearing.

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

FACTUAL BACKGROUND .......................................................................................... 2

   A.  Blockchain Technology ...................................................................................... 2

   B.  Gala Games ......................................................................................................... 2

   C.  Gala Nodes Licensed to Schiermeyer and Thurston .......................................... 3

   D.  The Founders Nodes Award Program .................................................................. 5

   E.  Suspension of Thurston's Gala Nodes ................................................................ 5

LEGAL STANDARD ..................................................................................................... 6

ARGUMENT .................................................................................................................. 7

   I.    TRUE NORTH LACKS STANDING TO BRING THIS MOTION BECAUSE IT DOES NOT OWN THE SUSPENDED GALA NODES. ................................. 7

   II.   TRUE NORTH WILL NOT SUFFER IRREPARABLE HARM IN THE ABSENCE OF A RESTRAINING ORDER ...................................................... 8

      A.  Thurston's Alleged Damages Can Be Calculated. ......................................... 8

      B.  Thurston's "Concerns" About the Founders Nodes Awards Program Do Not Establish a Threat of Imminent Irreparable Harm. ................................. 11

      C.  Thurston's "Concerns" About Gala Games' Solvency Are Unfounded. ................... 12

   III.  TRUE NORTH IS UNLIKELY TO SUCCEED ON THE MERITS OF ITS CLAIMS AGAINST GALA GAMES ...................................................... 13

   IV.  BALANCE OF EQUITIES AND PUBLIC INTEREST DISFAVOR ENTRY OF A RESTRAINING ORDER, WHICH WOULD ALTER THE STATUS QUO AND DESTABILIZE THE COMPANY. .................................................... 14

      A.  The Court Should Preserve the Status Quo. ............................................... 14

      B.  Granting True North's Motion Would Result in Unnecessary Instability for Gala Games. ........................................................................... 15

   V.   INJUNCTIVE RELIEF SHOULD NOT BE AWARDED, BUT IF IT IS, A SECURITY BOND SHOULD BE IMPOSED ............................................... 16

CERTIFICATE OF SERVICE ..................................................................................... 18

4883-2648-3344.3

# TABLE OF AUTHORITIES

Page(s)

Cases

49 F. Supp. 3d 841 (D. Colo. 2014)................................................................ 10

*Alarm Funding Assocs., LLC v. Sec. Prod. Co., LLC* No. 1:14-CV-0128-S, 2015 WL 11090396 (D. Wyo. Feb. 13, 2015)........................................................................ 7, 15

*Alpha Cap. Anstalt v. Shiftpixy, Inc.* 432 F. Supp. 3d 326 (S.D.N.Y. 2020) ............................... 10

*Am. Civil Liberties Union v. Praeger* 815 F. Supp. 2d 1204 (D. Kan. 2011)............................... 11

*Amoco Prod. Co. v. Heimann* 904 F.2d 1405 (10th Cir. 1990) ...................................... 13

*Aposhian v. Barr* 958 F.3d 969 (10th Cir. 2020) ............................................... 6

*Carma Devs. (Cal.), Inc. v. Marathon Dev. California, Inc.* 2 Cal. 4th 342, (1992)................... 13

*Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.* 269 F.3d 1149 (10th Cir. 2001)..... 6, 8

*Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.* 356 F.3d 1256 (10th Cir. 2004)....... 11

*EcoNova Inc. v. DPS Utah* No. 1:12-CV-174-TC, 2012 WL 5944257 (D. Utah Nov. 28, 2012) 16

*First Western Capital Mgmt. Co. v. Malamed* 874 F.3d 1136 (10th Cir. 2017)............................ 8

*Gerdlund v. Elec. Dispensers Int'l* 190 Cal. App. 3d 263, 235 Cal. Rptr. 279 (Ct. App. 1987)... 13

*Grynberg v. Questar Pipeline Co.* 70 P.3d 1 (Utah 2003)............................................... 14

*GTE Corp. v. Williams* 731 F.2d 676 (10th Cir. 1984)................................................. 11

*Heideman v. South Salt Lake City* 348 F.3d 1182 (10th Cir. 2003) ................................ 8, 12

*Johnson v. Kimberly Clark Worldwide, Inc.* 86 F. Supp.2d 1119 (D. Utah 2000)...................... 13

*Miller v. Austin* 622 F. Supp. 3d 1105 (D. Wyo. 2022)................................................ 14

*Oklahoma v. Tyson Foods, Inc.* 258 F.R.D. 472 (N.D. Okla. 2009) ................................... 7

*Surplec, Inc. v. Maine Pub. Serv. Co.* 495 F. Supp. 2d 147 (D. Me. 2007)........................... 12

*Third Story Music, Inc. v. Waits* 41 Cal. App. 4th 798 (1995) ..................................... 13

iv

*Utah Gospel Mission v. Salt Lake City Corp.* 316 F. Supp. 2d 1201 (D. Utah 2004) .................. 11

*Winter v. Natural Res. Def. Council, Inc.* 555 U.S. 7 (2008) ................................... 6, 12

Rules

Fed. R. Civ. P. 65(c) ...................................................................................... 16

## **INTRODUCTION**

Gala Games is a blockchain-based video game company. It currently has hundreds of employees and 12,936 unique owners of Gala Nodes. Users participate in the network and earn GALA cryptocurrency tokens by, among other things, operating Gala Nodes. The Company's directors, Carl Eric Schiermeyer and Wright W. Thurston, each own 7,000 Gala Nodes. According to Thurston, prior to the disputes that led to this lawsuit, neither director operated their nodes. This non-operation was done in the interest of creating and maintaining stability for the Gala Games ecosystem.

Both directors operated their nodes between June and October 2023, around when this litigation began. In early October, the Company suspended Schiermeyer's and Thurston's Gala Nodes to protect the Company. The Company took this action pursuant to the Company's Terms and Conditions, which provide that Gala Games may suspend a user for any reason. In response, Thurston's investment vehicle, True North United Investments, LLC ("True North"), brought derivative claims on behalf of Gala Games as well as direct claims against Gala Games for conversion and breach of contract. True North also filed a motion for mandatory restraining order ("Motion" or "Mot.").

True North's Motion should be denied for the myriad of reasons described below. Paramount among those reasons is that True North lacks standing to bring its crossclaim or seek any kind of injunctive relief because it does not own the suspended nodes. The Motion also fails to meet the high bar for establishing the necessity for such extraordinary preliminary injunctive relief. True North has not presented substantial evidence demonstrating irreparable harm or a likelihood of success on the merits for its claims against Gala Games. Moreover, the balance of

equities and public interest favor the status quo and stability of the Company, both of which weigh against entry of a restraining order. The Motion should be denied.

## FACTUAL BACKGROUND

### A. Blockchain Technology

A blockchain is a distributed ledger shared among a computer network's nodes, which are linked together in a peer-to-peer network. (Schiermeyer Verified First Am. Compl., Dkt. 14, ¶ 31.) The computer nodes work together to create and maintain a public digital ledger of transactions in a way that makes it difficult or impossible to change, hack, or cheat the system's records. (*Id*.) The nodes of a blockchain check and validate each other by a consensus mechanism before adding a transaction to the distributed ledger. (*Id*. at ¶ 32.) Once the nodes add a "block," or transaction, to the "chain," or ledger, the block cannot be changed. (*Id*.)

### B. Gala Games

Gala Games develops and presents a variety of blockchain-based video games. (Sept. 1, 2023 Brink Decl., Dkt. 9-1, ¶ 2.) An individual can participate in the Gala Games network by operating a Gala Node. (Sept. 1, 2023 Brink Decl., Dkt. 9-1, ¶ 3.) Gala Nodes are available to the public to purchase, and when a person buys a Gala Node, they receive software and a license from Gala Games to operate the Gala Node. (Schiermeyer Verified First Am. Compl., Dkt. 14, ¶ 36.) Gala Nodes provide computational resources required to perform actions requested by the network and storage for the network. (*Id*. at ¶ 35.) Gala Nodes are the core of the Gala Games ecosystem. (*Id*. at ¶¶ 35-36.) Currently, there are 12,936 unique owners of Gala Nodes. (Nov. 14, 2023 Brink Decl., Dkt. 70, ¶ 4.)

Gala Node owners earn GALA tokens as a reward for operating their nodes and supporting the Gala Games ecosystem. (Schiermeyer Verified First Am. Compl., Dkt. 14, at ¶ 37.) Every day, there is an emission of GALA, in which 50% of the tokens are distributed to Gala Node owners and the other 50% are distributed to the Company. (*Id*. at ¶ 38.) The daily emission of GALA distributed to Gala Node owners is divided equally among nodes that have been active for the minimum required time during the previous 24-hour period. (*Id*. at ¶ 40.) GALA tokens are the currency used in the games for in-game purchases and exchange between players. (*Id*. at ¶ 30.) A Gala Node owner can also "mint" their GALA to be written on the Ethereum-based blockchain. (*Id*. at ¶ 41.) GALA tokens are fungible tokens recorded on the Ethereum blockchain. (*Id*. at ¶ 33.)

### C. Gala Nodes Licensed to Schiermeyer and Thurston

Eric Schiermeyer and Wright Thurston[1] formed Gala Games in January 2019. (*Id*. at ¶ 29.) Since Gala Games' inception, Schiermeyer and Thurston have been the only two directors of the Company. (*Id*. at ¶ 46.) Schiermeyer is the President and Chief Executive Officer. (Schiermeyer Verified First Am. Compl., Dkt. 14, at ¶ 47.)

At the time Gala Games was formed, Schiermeyer and Thurston each personally received 7,000 Gala Nodes. (*Id*. at ¶ 52.) Thurston still owns approximately 7,000 Gala Nodes. (Sept. 1, 2023, Brink Decl., Dkt. 9-1, ¶ 5.) The use of Gala Nodes is governed by Gala Games' Terms and Conditions. (Nov. 14, 2023 Brink Decl., Dkt. 70, ¶ 12; Terms and Conditions, Dkt. 70-1.) The Terms and Conditions provide, in pertinent part:

---

[1] When Thurston entered the Founders Agreement with Schiermeyer, he did so through his investment vehicle True North.

- When a User purchases, earns, or receives any NFT or digital reward the Smart Contract process, the User owns completely and outright the NFT and/or digital reward. (Terms and Conditions § 1.2.)

- Ownership of a GALA App or Game Node or the use of GALA Services *does not represent or constitute any ownership right or stake* … or any right to receive any future revenue or form of participation in or relating to any blockchain or digital reward, including the GALA Blockchain or GALA Reward. (Terms and Conditions § 8.1 (emphasis added).)

- *GALA may suspend or terminate the User's right to access or use GALA Services immediately and without notice* if: (i) GALA determines the User's use of the GALA Services poses a security risk to GALA Services or any third party, *could adversely impact GALA*, GALA Services, GALA Blockchain or any other GALA users, or could subject GALA, its affiliates, or any third party to liability, or could be fraudulent; (ii) the User is in breach of these Terms & Conditions; (iii) the User initiated a chargeback or dispute with respect to any payment or purchase of the GALA Services; (iv) the User has ceased to operate in the ordinary course, made an assignment for the benefit of creditors or similar disposition assets, or become the subject of any bankruptcy, reorganization, liquidation, dissolution or similar proceeding; or (v) *for any other reason at GALA's discretion*. (Terms and Conditions § 4.1 (emphasis added).)

- Any claim or dispute between the User and GALA arising out of or relating to the User's use of GALA sites, GALA Service, or these Terms & Conditions, in whole or in part, shall be governed by the laws of the State of California, USA without respect to its conflict of laws provisions. (Terms and Conditions § 12.6.)[2]

For several years, Schiermeyer and Thurston agreed not to operate their nodes in order to maintain the stability of the Gala Games ecosystem. (Schiermeyer's Verified First Am. Compl., Dkt. 14, at ¶ 53; Thurston's Answer to First Am. Compl., Dkt. 60, ¶ 53.) However, in June 2023, Thurston began operating all 7,000 of his nodes. (Nov. 6, 2023, Thurston Decl., Dkt. 64, ¶¶ 7-8.)

---

[2] The Terms and Conditions also contains an arbitration provision, mandating that disputes be resolved "before a single arbitrator to be held in Salt Lake City, Utah, USA administered by the International Centre for Dispute Resolution in accordance with International Dispute Resolution Rules." (Terms and Conditions § 12.3.) Now that True North has directly sued Gala Games, the Company reserves its right to compel arbitration following the adjudication of True North's Motion.

4

Because a set number of GALA are split between operators, to limit the number of GALA Thurston could liquidate into the market, Schiermeyer activated his nodes. (*Id*. at Ex. 2.)

### D.      The Founders Nodes Award Program

In May 2023, Gala Games announced its intent to create the Founders Nodes Awards Program, in which employees would receive three Gala Node licenses. (Nov. 6, 2023, Thurston Decl., Dkt. 64, ¶ 3.) In the announcement, the Company described the program generally and stated it would initially distribute 3,000 nodes and then distribute 1,000 nodes each year for the next five years. (*Id*. at Ex. 1.) The Founders Nodes Award Program involves the distribution of 7,022 as-yet-undistributed Gala Nodes plus 1,414 nodes in the Company's holding account to Company employees. (Nov. 14, 2023, Brink Decl., Dkt. 70, ¶¶ 3-11.)

### E.      Suspension of Thurston's Gala Nodes

Schiermeyer initiated this action on August 31, 2023, bringing derivative claims against Thurston for breach of fiduciary duties, conversion, fraud, unjust enrichment, equitable accounting, and removal as director. (Schiermeyer's First Am. Compl., Dkt. 14, ¶¶ 139-179.) In an October 4, 2023 letter, Schiermeyer, as President and CEO of Gala Games, informed Thurston that Gala Games was suspending the operation of Thurston's 7,000 Gala Nodes for the reasons alleged in Schiermeyer's Verified First Amended Complaint. (Nov. 6, 2023, Thurston Decl., Dkt. 64, Ex. 2.) Schiermeyer explained that Gala Games was suspending his Gala Nodes as well. (*Id*.) He wrote, "[t]his dual suspension avoids any appearance of impartiality, affects both of us in equal measure, is in line with our prior agreement that neither you nor I would operate our Gala Nodes, is beneficial to the Gala Games ecosystem and responds to community concerns." (*Id*.)

5

As set forth above, the Company has the discretion to suspend or terminate node licenses "for any [] reason" under the Terms and Conditions, and nothing in the Terms and Conditions requires Board authorization for the Company to take this action. (Terms and Conditions § 4.1.) Moreover, as Schiermeyer stated in the October 4 letter, Gala Games will reactivate Thurston's Gala Nodes "[s]hould it be judicially determined that [he has] not engaged in any of the alleged conduct." (Nov. 6, 2023, Thurston Decl., Dkt. 64, Ex. 2.)

One month later, True North (Thurston's investment vehicle) filed its motion for a mandatory restraining order to reverse Gala Games' suspension of Thurston's nodes. (Dkt. 63.) True North has also asserted crossclaims against Gala Games for conversion and breach of the Company's Terms and Conditions. (True North's Countercl., Dkt. 60, ¶¶ 126-141.)

## LEGAL STANDARD

Preliminary injunctive relief—whether a temporary restraining order or a preliminary injunction—"is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 24 (2008). A party seeking such relief bears the burden and "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of the equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20. Importantly, such relief is "the exception rather than the rule" and will be granted only if "the movant's right to relief [is] clear and unequivocal." *Aposhian v. Barr,* 958 F.3d 969, 978 (10th Cir. 2020) (cleaned up). Indeed, satisfying these stringent requirements is not "an easy burden to fulfill." *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1262 (10th Cir. 2001). Further, "[p]reliminary injunctions that alter the status quo are disfavored and must be more closely scrutinized. In such instances, the moving party

6

must make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms." *Alarm Funding Assocs., LLC v. Sec. Prod. Co., LLC*, No. 1:14-CV-0128-S, 2015 WL 11090396, at *7 (D. Wyo. Feb. 13, 2015) (citation omitted)).

<u>**ARGUMENT**</u>

## I.    TRUE NORTH LACKS STANDING TO BRING THIS MOTION BECAUSE IT DOES NOT OWN THE SUSPENDED GALA NODES.

As an initial matter, the suspended Gala Nodes belong to Thurston personally, not True North. "Gala Games maintains a node database that records the name of Gala Node owners, the wallet address into which their node rewards are to be deposited, their email address, their phone number and other information." (Sept. 14, 2023, Second Brink Decl., Dkt. 39, ¶ 3.) Below is an image of data extracted from the node database showing that Thurston owns the nodes associated with the wallet address ending in 8c47F:



(*Id*. at Ex A.) The Gala Nodes that were operating and were then suspended are the nodes associated with this wallet. (Nov. 14, 2023, Brink Decl., Dkt. 70, ¶¶ 13, 16.) There are no Gala Nodes registered to True North United Investments, LLC in the Gala Games node database. (Sept. 14, 2023, Second Brink Decl., Dkt. 39, ¶ 6.)

Because True North does not own the suspended Gala Nodes, it lacks standing to bring this Motion. *See Oklahoma v. Tyson Foods, Inc.*, 258 F.R.D. 472, 483 (N.D. Okla. 2009) (a party "does

4883-2648-3344.3

not have standing to assert a claim of injury to property it does not own or hold in trust"). Thus, the Court should deny True North's Motion.

## II.     TRUE NORTH WILL NOT SUFFER IRREPARABLE HARM IN THE ABSENCE OF A RESTRAINING ORDER.

"[T]he single most important prerequisite" to preliminary injunctive relief is "a showing of probable irreparable harm." *First Western Capital Mgmt. Co. v. Malamed,* 874 F.3d 1136, 1141 (10th Cir. 2017) (internal citations and alterations omitted). In denying a similar motion brought by Schiermeyer, this Court stated that a "party's harm is *irreparable* 'when the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain.'" Oct. 9, 2023 Order Denying Pls.' Mot. for Preliminary Relief, Dkt. 49 at § II (citing *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.,* 269 F.3d 1149, 1156 (10th Cir. 2001)). Here, True North has not demonstrated that it will suffer any irreparable harm. To the contrary, if the Court determines that True North has suffered any harm due to the alleged conduct, it could grant an effective monetary remedy because damages would be easily ascertainable.

### A.     Thurston's Alleged Damages Can Be Calculated.

In its crossclaim against Gala Games, True North's prayer for relief is for Gala Games to reverse the suspension of the nodes and "for judgment against Schiermeyer for True North's benefit in an amount according to proof but in no event less than $150 million in ***monetary damages***[.]" (True North's Countercl., Dkt. 60, at 96-97.) It is "well settled that simple economic loss usually does not, in and of itself, constitute irreparable harm," because "such losses are compensable by money damages." *Heideman v. South Salt Lake City,* 348 F.3d 1182, 1189 (10th Cir. 2003). Setting aside that True North would not suffer any loss because it does not own the

suspended Gala Nodes[3], Thurston can calculate exactly how much GALA he would be earning if his nodes were operating on any given day. All the information needed to run this calculation is publicly available online.

As described in the factual background above, there is a set emission of GALA every day, and the amount of GALA distributed to Gala Node owners is divided equally among the nodes in operation that day. Gala Games publishes its daily distribution information online, including the number of nodes in operation and the number of GALA tokens distributed each day. (*See* Nov. 12, 2023, Gala Games' Global Distribution Data, https://app.gala.games/distribution?date=1699837199999&_tokenType=gala (nodes in operation tracked as "points".) If Thurston wants to calculate the amount of GALA he would have received if he had operated his Gala Nodes on any given day, he need only add his 7,000 nodes to the total number of nodes that were operated on that day and then determine the amount of GALA that **would have been** distributed per node.

As Thurston and True North successfully argued in their opposition to Scheirmeyer's motion for preliminary relief: "GALA is a cryptocurrency. It is traded on secondary markets. It has a value that can be calculated and paid in fiat currency. The loss of GALA, even a lot of it, is compensable in monetary damages." (Sept. 11, 2023 Defs. Opp. to Mot. for Preliminary Relief, Dkt. 27, at 5.) "Experts can determine the maximum value of a particular cryptocurrency (in this case GALA) over a period of time. Thus, if there were any cognizable loss in this case, establishing the amount would reduce to a math problem." (*Id*. at 19.) If it was true then, it is true now.

---

[3] Thurston personally owns the suspended Gala Nodes, not True North. *See supra* § I.

Yet, in a blatant about face, True North now argues that its purported loss of GALA is not limited, specific, or readily ascertainable because: (1) the alleged loss is open-ended and complicated by the volatility of the cryptocurrency market; and (2) each of the suspended Gala Nodes is unique. Neither of these arguments supports its claim of irreparable harm, and the Court should reject True North's reversal for several reasons. First, as described above, with publicly available information and rather simple math, True North or Thurston—and certainly a damages expert—can calculate True North's alleged damages, even if it occurs over a period of time. Second, Thurston owns 7,000 Gala Nodes that True North argues are "unique (represented by a unique alphanumeric identifier)." But an ID number does not change the nodes' fungible nature.[4] A Gala Node is not "like a particular parcel of land or a specific vehicle [that] may be unique and have subjective value making it difficult to adequately compensate with damages[.]" *See Alpha Cap. Anstalt v. Shiftpixy, Inc.*, 432 F. Supp. 3d 326, 339-40 (S.D.N.Y. 2020). To the contrary, a Gala Node is like a stock certificate, which is individually numbered and identifiable, but still fungible. (*See* Oct. 9, 2023 Order Denying Pls.' Mot. for Preliminary Relief, Dkt. 49, at § II.B n.4.) Thurston's 7,000 suspended nodes and any related loss of GALA is limited, specific, easily ascertainable, and does not constitute an irreparable injury.

---

[4] True North's case on this issues is inapposite. (Mot. at 8.) In *Port-a-Pour, Inc. v. Peak Innovations, Inc.*, the court found that a licensor demonstrated irreparable injury when a licensee continued to use the licensor's products and proprietary information after termination of the licensing agreement. 49 F. Supp. 3d 841, 872 (D. Colo. 2014). The *Port-a-Pour* court was swayed by the licensee illegally using proprietary information to usurp the licensor's business. *Id.* A Gala Node does not have subjective value like that of proprietary business information. Moreover, here, Gala Games is the licensor exercising its rights under the Terms and Conditions.

10

**B.      Thurston's "Concerns" About the Founders Nodes Awards Program Do Not Establish a Threat of Imminent Irreparable Harm.**

Thurston attests that he became concerned his Gala Nodes would be distributed to Gala Games' employees as part of the Founders Nodes Awards Program in May 2023. (Nov. 6, 2023, Thurston Decl., Dkt. 64, ¶ 3.) True North's repeated concerns about this topic (Mot. at 2-3, 5-6, 17) are discredited by its decision to wait six months to bring this Motion. Delay "undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury." *GTE Corp. v. Williams*, 731 F.2d 676, 678 (10th Cir. 1984). True North's "delay belies any irreparable injury to their rights." *See Utah Gospel Mission v. Salt Lake City Corp.*, 316 F. Supp. 2d 1201, 1220-1222 (D. Utah 2004).

Further, Thurston's concern about the distribution of his nodes is nothing more than unsupported speculation. "[S]tatements alone [about potential harms resulting from an alleged breach of contract] are insufficient to support a finding of irreparable harm and an award of injunctive relief." *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 356 F.3d 1256, 1266 (10th Cir. 2004); *see also Am. Civil Liberties Union v. Praeger*, 815 F. Supp. 2d 1204, 1220 (D. Kan. 2011) (recognizing a "court should be wary of issuing an injunction based solely upon allegations and conclusory affidavits" and denying motion for preliminary injunction because the record included only "very general statements" and the "absence of any foundation" for that declaration). In fact, the Founders Nodes Award Program does not involve the distribution of any Gala Nodes belonging to Thurston. While still under development, the current plan would have the nodes come from those that have not yet been distributed and the holding account for nodes that have been deactivated by the Company. (Nov. 14, 2023, Brink Decl., Dkt. 70, ¶¶ 4-11.)

## C. Thurston's "Concerns" About Gala Games' Solvency Are Unfounded.

A party seeking preliminary relief must show more than the mere possibility of irreparable harm. Instead, it must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter,* 555 U.S. at 22 (emphasis in original). "The party seeking injunctive relief must show that the injury complained of is of such *imminence* that there is a clear and present need for equitable relief to prevent irreparable harm." *Heideman,* 348 F.3d at 1189 (emphasis in original). Moreover, general concerns about solvency are not grounds for irreparable harm. Courts in other jurisdictions have noted that "[a]lleging a mere possibility that a defendant might not be able to ultimately satisfy a judgment because, at the time such judgment is entered, he may not have assets is not sufficient to demonstrate irreparable injury for preliminary injunction purposes." *Surplec, Inc. v. Maine Pub. Serv. Co.,* 495 F. Supp. 2d 147, 151 (D. Me. 2007) (internal citation omitted).

Here, Thurston attaches a "lawsuit filed against [Gala Games] showing that it owes a substantial amount of money to software studio partners" and asserts that he is, therefore, concerned that he will not be able to recover the value lost during the days his Gala Nodes are suspended. (Nov. 6, 2023, Thurston Decl., Dkt. 64, ¶¶ 11, 13.) Notably, Thurston also claims that he does not have insight into Gala Games' financials. (*Id.* at ¶ 13.) Either way, Thurston's speculation about the solvency of Gala Games—based entirely on allegations against the Company in a separate contract dispute—are a far cry from the requisite demonstration of a "likely" and "imminent" irreparable injury. Whether or not Thurston will be able to recover the monetary damages he seeks is the same risk any claimant faces. There are no unique facts here that transform that into irreparable harm.

III.   **TRUE NORTH IS UNLIKELY TO SUCCEED ON THE MERITS OF ITS CLAIMS AGAINST GALA GAMES.**

True North has brought crossclaims against Gala Games for breach of the Terms and Conditions and for conversion. It is unlikely to succeed on either claim.

The Terms and Conditions state that "GALA may suspend or terminate the User's right to access or use GALA Services immediately and without notice . . . for any other reason at GALA's discretion."[5] (Terms and Conditions § 4.1.) The Terms and Conditions are governed by California law. (*Id*. ¶ 12.6.) Perhaps recognizing that the express language of the Terms and Conditions gives the Company the right to terminate access to the nodes for any reason, True North only cites to cases addressing a breach of the duty of good faith and fair dealing and cites no law from California. Mot. at 16; *Johnson v. Kimberly Clark Worldwide, Inc.*, 86 F. Supp.2d 1119, 1123 (D. Utah 2000); *Amoco Prod. Co. v. Heimann*, 904 F.2d 1405, 1412 (10th Cir. 1990). This sleight of hand cannot save True North's breach of contract claim.

California courts have consistently refused to imply a duty of good faith and fair dealing to discretionary termination clauses, absent an illusory agreement. *Gerdlund v. Elec. Dispensers Int'l*, 190 Cal. App. 3d 263, 277, 235 Cal. Rptr. 279, 284 (Ct. App. 1987) (finding "few principles of our law are better settled, than that the language of a contract is to govern its interpretation, if the language is clear and explicit" and rejecting an attempt to imply a duty of good faith (cleaned up)); *see also Carma Devs. (Cal.), Inc. v. Marathon Dev. California, Inc.*, 2 Cal. 4th 342, 376, (1992) (reversing decision imposing an implied duty of good faith over a provision granting lessor discretion to terminate a lease); *Third Story Music, Inc. v. Waits*, 41 Cal. App. 4th 798, 808 (1995)

---

[5] Again, Thurston (as owner of the Gala Nodes) is party to the Terms and Conditions with Gala Games. True North lacks standing to bring this claim. *Supra* § I.

13

("courts are not at liberty to imply a covenant directly at odds with a contract's express grant of discretionary power except in those relatively rare instances when reading the provision literally would, contrary to the parties' clear intention, result in an unenforceable, illusory agreement.").

True North has not argued that the Terms and Conditions are illusory. As a Gala Node owner, Thurston agreed to the Terms and Conditions and received access to the Gala Games ecosystem. Last month, the Company suspended Thurston's Gala Nodes, as it was contractually allowed to do by the Terms and Conditions. Given the Company's broad discretion to suspend Thurston's nodes for any reason, True North is unlikely to succeed on the merits of its breach of contract claim.

As for True North's claim of conversion, it is based on the same conduct described in the breach of contract claim and is thus barred by the economic loss doctrine. *Grynberg v. Questar Pipeline Co.*, 70 P.3d 1, 20 (Utah 2003) ("The fact that the exact same conduct is described in both the contract and tort claims, and the exact same facts and circumstances are at play, is indicative of the overlapping duties in this case."). In any event, the Terms and Conditions expressly state that ownership of a Gala Node does not constitute "any ownership right." Thus, Gala Games' suspension of Thurston's nodes cannot constitute conversion.

## IV.   BALANCE OF EQUITIES AND PUBLIC INTEREST DISFAVOR ENTRY OF A RESTRAINING ORDER, WHICH WOULD ALTER THE STATUS QUO AND DESTABILIZE THE COMPANY.

### A.   The Court Should Preserve the Status Quo.

"The status quo is defined as the last peaceable uncontested status existing between the parties before the dispute developed." *Miller v. Austin*, 622 F. Supp. 3d 1105, 1110 (D. Wyo. 2022) (citation omitted). Here, the last peaceable uncontested status of node operation was pre-June 2023

when Thurston himself attests he was not operating nodes. When Thurston began operating his Gala Nodes in June 2023, Schiermeyer contends that he turned on his own nodes in a defensive maneuver designed to "mitigate the damage [Thurston was] causing the Gala Games ecosystem." (Nov. 6, 2023, Thurston Decl., Dkt. 64, Ex. 2.) Thus, the dispute regarding node operation began when Thurston decided to turn them on, and the status quo is the status existing before that date— *i.e.*, non-operation.

"Preliminary injunctions that alter the status quo are disfavored and must be more closely scrutinized. In such instances, the moving party must make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms." *Alarm Funding Assocs., LLC,* 2015 WL 11090396 at *7. Although True North frames its Motion as a "return to the status quo" (Mot. at 10), it actually seeks to disrupt the last peaceable status quo by forcing Gala Games to lift the suspension of Thurston's Gala Nodes so he may operate them again— placing the parties back into the disputed position. This alteration of the status quo is disfavored, and True North has not made a "strong showing" with regard to likelihood of success on the merits or the balance of harms. True North does not address that the balance of equities supports maintenance of the status quo, and it devotes only four sentences of its Motion to this prong, vaguely gesturing toward its "rights inherent in node ownership." (Mot. at 17.) True North has failed to meet its burden for upending the status quo, and its Motion should fail.

## B.   Granting True North's Motion Would Result in Unnecessary Instability for Gala Games.

The impact of this litigation and True North's Motion extends well beyond a director dispute. Gala Games has hundreds of employees, and it supports 12,936 unique Gala Node owners who participate in the network. The balance of equities and public interest analysis requires

15

consideration of these individuals as well, and there is no question that their interests are better served by maintaining stability in the Gala Games' ecosystem.

With 14,000 Gala Nodes between them, Schiermeyer and Thurston hold significant power to disrupt the Gala Games ecosystem. Each director has asserted that the other could liquidate GALA, known as a "rug pull". (Defs. Answer to Verified First Am. Compl., Dkt. 60, ¶¶ 68-69). Such an outcome would be harmful to the Company and all the people who rely on it, either through employment or participation in the Gala Games' ecosystem. Non-operation of Schiermeyer and Thurston's Gala Nodes—the status quo pre-June 2023 and now—promotes stability at Gala Games. Stability benefits every participant in the ecosystem, including the directors themselves. The balance of equities favors stability for Gala Games and the 12,936 node owners and employees who could be impacted and would not be compensated in this case. Accordingly, the Court should deny True North's Motion.

## V.   INJUNCTIVE RELIEF SHOULD NOT BE AWARDED, BUT IF IT IS, A SECURITY BOND SHOULD BE IMPOSED.

Rule 65(c) provides that no preliminary injunction shall issue "except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined." Fed. R. Civ. P. 65(c); *EcoNova Inc. v. DPS Utah*, No. 1:12-CV-174-TC, 2012 WL 5944257, *17 (D. Utah Nov. 28, 2012) (unpublished) (imposing bond and recognizing "no injunction shall issue without security"). Here, Thurston attests and True North argues that the suspended Gala Nodes have a value of $700 million. (Nov. 6, 2023, Thurston Decl., Dkt. 64, ¶ 10; Mot. at 8.) If Gala Games is wrongfully enjoined, it must be made whole. Should this Court grant

True North's Motion and enter a restraining order, True North should be required to post a bond of $700 million.

## **<u>CONCLUSION</u>**

For the foregoing reasons, the Court should deny True North's motion for mandatory restraining order.

Dated this 14th day of November, 2023

Foley & Lardner LLP


/s/ *Monica S. Call*
David L. Mortensen
Monica S. Call

*Attorneys for Blockchain Game Partners, Inc.*
*d/b/a Gala Games and d/b/a BGP Games*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 14th day of November, 2023, a true and correct copy of the foregoing **BLOCKCHAIN GAME PARTNERS, INC. D/B/A BGP GAMES OPPOSITION TO MOTION FOR MANDATORY RESTRAINING ORDER TO MAINTAIN STATUS QUO AND REQUEST FOR IMMEDIATE HEARING** was served through the court's e-filing system which caused notice of filing to be sent to all counsel of record.

*/s/ Rose Gledhill*

4883-2648-3344.3