UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| ERIC SCHIERMEYER, Derivatively and on Behalf of Nominal Defendant, BLOCKCHAIN GAME PARTNERS, INC. D/B/A GALA GAMES,<br><br>Plaintiff,<br><br>v.<br><br>WRIGHT THURSTON and TRUE NORTH UNITED INVESTMENTS, LLC,<br><br>Defendants;<br><br>and<br><br>BLOCKCHAIN GAME PARTNERS, INC. D/B/A GALA GAMES,<br><br>Nominal Defendant. | **MEMORANDUM DECISION AND ORDER DENYING COUNTERCLAIMANT'S MOTION FOR A TEMPORARY RESTRAINING ORDER**<br><br>Case No. 2:23-cv-589-HCN-DAO |
| TRUE NORTH UNITED INVESTMENTS, LLC, Derivatively and on Behalf of Nominal Defendant, BLOCKCHAIN GAME PARTNERS, INC. D/B/A GALA GAMES,<br><br>Counterclaimant,<br><br>v.<br><br>ERIC SCHIERMEYER,<br><br>Counterdefendant;<br><br>and<br><br>BLOCKCHAIN GAME PARTNERS, INC. D/B/A GALA GAMES,<br><br>Nominal Counterdefendant. | Howard C. Nielson, Jr.<br>United States District Judge |

|  |
|---|
| TRUE NORTH UNITED INVESTMENTS, LLC, Crosssclaim Plaintiff, <br><br> v. <br><br> BLOCKCHAIN GAME PARTNERS, INC. D/B/A GALA GAMES, <br><br> Crossclaim Defendant. |

True North United Investments, LLC asserts that Eric Schiermeyer unlawfully directed Blockchain Game Partners, Inc. (a company doing business as "Gala Games") to shut down thousands of True North's "nodes," which generate cryptocurrency tokens when operated, and to bar True North's access to these nodes.[1] True North seeks a temporary restraining order directing Gala Games and Mr. Schiermeyer to restore True North's access to those nodes so that it can once again operate the nodes if it chooses to do so. The court denies True North's motion.

I.

This case is once again before the court on a motion for preliminary relief. As set forth in the court's previous opinion denying such relief, *see Schiermeyer v. Thurston*, --- F. Supp. 3d ----, 2023 WL 6609566 (D. Utah Oct. 9, 2023), Mr. Schiermeyer and True North are two large shareholders of Gala Games, a company that administers a "blockchain-based gaming

---

[1] Mr. Schiermeyer and Gala Games each assert that the nodes are not actually owned by True North but are instead owned by Mr. Thurston individually, and that True North thus lacks standing to seek relief for loss of access to the nodes. *See* Dkt. No. 68 at 8–9; Dkt. No. 71 at 12–13; Dkt. No. 80 at 3–4. The court concludes that True North has presented sufficient evidence that it owns the nodes to demonstrate a likelihood of success on its contention that it has standing to seek such relief. The court will accordingly not deny True North's motion for a temporary restraining order on this ground. Further, True North has alleged in its counterclaim that it owns the nodes in question, *see* Dkt. No. 75 ¶¶ 29–30, which is all that is required to avoid dismissal of its counterclaim for lack of standing at the pleadings stage of the proceedings, *see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

2

infrastructure" and oversees distribution of a cryptocurrency called "GALA tokens," Dkt. No. 14 ¶ 30; *accord* Dkt. No. 75 ¶ 30. True North, in turn, is controlled by Wright Thurston. Mr. Thurston and Mr. Schiermeyer are Gala Games' two directors.

Mr. Schiermeyer and Mr. Thurston have recently been embroiled in a dispute. Mr. Schiermeyer contends that Mr. Thurston stole hundreds of millions of dollars' worth of the company's GALA tokens. Mr. Thurston maintains that those tokens belonged to him, not the company, and that it is Mr. Schiermeyer who has stolen, wasted, and misused corporate assets.

In tandem with filing his complaint, Mr. Schiermeyer moved for a temporary restraining order and preliminary injunction freezing certain digital assets that he said could be traced to Mr. Thurston's alleged theft. *See* Dkt. No. 9. The court denied the motion, reasoning that Mr. Schiermeyer had alleged a mere economic loss and thus had not shown that he was likely to suffer irreparable harm absent the requested relief. *See Schiermeyer*, --- F. Supp. 3d at ----, 2023 WL 6609566 at *3–4.

The day after the court denied his motion, Mr. Schiermeyer directed Gala Games to suspend True North's 7,000 GALA nodes, thereby preventing True North from operating those nodes to generate GALA tokens. *See* Dkt. No. 69 ¶ 10. True North also suggests—and Mr. Schiermeyer vehemently denies—that Mr. Schiermeyer plans to redistribute True North's nodes to Gala Games employees. *See* Dkt. No. 63 at 6–7; Dkt. No. 68 at 18–19; Dkt. No. 71 at 10 & 16.[2]

---

[2] In its motion, True North cited a recent announcement by the company that it would distribute 8,000 nodes among its employees as part of an employee rewards program. *See* Dkt. No 63 at 6–7; Dkt. No. 64 ¶¶ 3 & 14. True North theorized that because this announcement was made shortly before True North's nodes were suspended, and because 8,000 is "uncannily the same number of Nodes held by True North (approximately 7,000 Nodes) and Connect (another Thurston-related entity owning approximately 1,000 nodes)," Mr. Schiermeyer and Gala Games

True North filed counterclaims and crossclaims asserting that the suspension and allegedly impending redistribution of the nodes is wrongful. *See* Dkt. Nos. 60, 75. It then moved for a temporary restraining order requiring Mr. Schiermeyer and Gala Games "to immediately turn back on and restore True North's account access to its Nodes, and to refrain from terminating or otherwise distributing them to [Gala Games] employees." Dkt. No. 63 at 19.

## II.

The court denies True North's motion for a temporary restraining order for the same reason it previously denied Mr. Schiermeyer's motion: True North alleges mere economic harm that can be adequately compensated with money damages.

As discussed last time, *see Schiermeyer*, --- F. Supp. 3d at ----, 2023 WL 6609566 at *2, a temporary restraining order "is an extraordinary remedy never awarded as of right," *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008), and will be granted only if "the movant's right to relief [is] clear and unequivocal," *Aposhian v. Barr*, 958 F.3d 969, 978 (10th Cir. 2020) (cleaned up). Among the requirements that the movant must satisfy to obtain this extraordinary

---

must be planning to distribute True North's 7,000 nodes as part of the announced program. Dkt. No. 63 at 6–7. Key to this speculative deduction were Mr. Thurston's assertions that the number of possible nodes that can ever be created is capped at 50,000, that "there are less than 8,000 node licenses remaining" from that initial 50,000 to be created, and that Gala Games does not itself own any nodes that it could distribute. Dkt. No. 64 ¶ 3.

In his response brief, Mr. Schiermeyer acknowledged the 50,000-node cap but contended that more than 7,000 nodes had not yet been initially distributed and that Gala Games owned a holding account containing approximately 1,400 additional nodes that had "been deactivated for various reasons including refunds and employee departures." Dkt. No. 68 at 18–19; *see also* Dkt. No. 70 ¶¶ 3–11. Mr. Schiermeyer and Gala Games represent that the 8,000 nodes for the employee rewards program will come from these undistributed and company-owned nodes, not from True North's suspended nodes. *See* Dkt. No. 68 at 18–19; Dkt. No. 71 at 10 & 16. True North has offered no response to this explanation in its reply brief, though it still seeks a temporary restraining order requiring Mr. Schiermeyer and Gala Games to "refrain from terminating or otherwise distributing [True North's] Nodes to [Gala Games] employees." Dkt. No. 76 at 20.

remedy, "the single most important prerequisite" is "a showing of probable irreparable harm." *First Western Capital Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1141 (10th Cir. 2017).

A party's harm is *irreparable* "when the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain." *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1156 (10th Cir. 2001). Further, it is not enough to show that such harm is merely *possible*—instead, parties "seeking preliminary relief [must] demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22. And a remote, future injury will not do—rather, the movant "must show that the injury complained of is of such *imminence* that there is a clear and present need for equitable relief to prevent irreparable harm." *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003). This is not "an easy burden to fulfill." *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 356 F.3d 1256, 1262 (10th Cir. 2004).

It is "well settled that simple economic loss usually does not, in and of itself, constitute irreparable harm," because "such losses are usually compensable by money damages." *Heideman*, 348 F.3d at 1189. In its motion for preliminary relief, True North—like Mr. Schiermeyer before—alleges mere economic loss.

While "tangible property" such as "a particular parcel of land or a specific vehicle" may "have subjective value making it difficult to adequately compensate with damages," *Schiermeyer*, --- F. Supp. 3d. at ----, 2023 WL 6609566 at *4, True North's GALA nodes serve no function but to produce GALA tokens. And, as discussed last time, GALA tokens are just an analogue for currency, with conversion rates to the dollar posted daily. *See id*. There is thus no "subjective value" here. Rather, the nodes to which True North has lost access are essentially

5

financial instruments capable of generating regular cash payments. An award of damages for the missed payments would adequately remedy that loss.[3]

To be sure, although Mr. Schiermeyer alleged a theft that occurred in the past, True North alleges ongoing harm. Each day that it is barred access to its GALA nodes, True North loses another opportunity to earn GALA tokens. *See* Dkt. No. 63 at 8–11; Dkt. No. 76 at 5. But an ongoing economic harm is still compensable so long as the court can, once the merits are ultimately resolved, calculate the damages that a party suffered in the interim. And that calculation need not be exact or undisputed; to the contrary, the availability of a "*reasonable measure of [True North's] damages*" suffices to foreclose preliminary injunctive relief. *Mrs. Fields Franchising, LLC v. MFGPC*, 941 F.3d 1221, 1235–36 (10th Cir. 2019) (emphasis added) (using evidence of past profits to estimate lost future profits).

Here, calculating True North's losses from the alleged shutdown of its nodes should not be particularly complex. The parties appear to agree that a set number of GALA tokens are

---

[3] True North makes two additional arguments that track those rejected by the court when it denied Mr. Schiermeyer's motion for preliminary relief. First, True North argues that every GALA node is "unique" personal property because each has its own "alphanumeric identifier." Dkt. No. 63 at 8. Yet the same is true for the GALA tokens themselves, along with "bills of currency and stock certificates." *Schiermeyer*, --- F. Supp. 3d at ----, 2023 WL 6609566 at *4 n.4. Giving a dollar bill, share of stock, GALA token, or GALA node its own serial number does not give it any "subjective value." There is no reason why someone would prefer one GALA node to another with a different serial number. And every GALA node is only valuable insofar as it can generate GALA tokens, which are themselves easily convertible to dollars.

Second, True North argues that it will be unable to recover the GALA tokens that its nodes would have generated, because those tokens are being distributed to third parties. *See* Dkt. No. 63 at 9 n.4 & 10–11. But again, the individual tokens do not have subjective value and, as discussed below, it is not unduly complicated to calculate the monetary value of those tokens and thus to award adequate damages for their loss. As for True North's initial claim that its nodes will be redistributed to Gala Games employees, and thus may never be recovered, the court concludes—in light of Mr. Schiermeyer's unrefuted response, *see* n.2, *supra*—that True North has not shown that any such redistribution is likely or imminent. True North's speculation regarding this possibility thus fails to establish a *likelihood* of *imminent*, irreparable injury. *See Winter*, 555 U.S. at 22; *Heideman*, 348 F.3d at 1189.

distributed each day, and that those tokens are distributed equally among the GALA nodes in operation that day.[4] The number of nodes in operation and the number of tokens distributed each day both seem to be public information, *see* Dkt. No. 70 ¶¶ 22, 24; if not, *see* Dkt. No. 64 ¶ 11, surely that information is discoverable. It follows that determining how many tokens True North will lose while its nodes are shut off reduces to a math equation: add True North's 7,000 nodes to the number of nodes in operation on a given day; divide the number of tokens distributed that day by this new denominator to get the number of tokens that each node would have generated had True North been allowed to operate its nodes; multiply that number by 7,000 to determine how many tokens True North would have generated that day; and repeat this process for each day that True North's nodes are shut off.

True North nevertheless argues that its damages would be too difficult to quantify because the tokens must be converted to dollars. Although it does not appear to dispute that market rates for converting GALA tokens to dollars are posted daily, True North argues that using these posted conversion rates to calculate the value of the tokens it would have received each day would be arbitrary and unfair because True North would not have liquidated the tokens it earned at the end of each day, but would instead have done so only "during market up-turns." Dkt. No. 63 at 9–10.

---

[4] The parties do disagree on some of the details. Mr. Schiermeyer asserts that half of the tokens each day are placed in a company treasury, and that only the *remainder* is split evenly among the nodes in operation. See Dkt. No. 14 at ¶¶ 38–40. Mr. Thurston asserts that there is no such company treasury, and that *all* the tokens are distributed among these nodes. See Dkt. No. 75 at ¶¶ 38–40. Although the court will ultimately need to resolve that disagreement to decide the merits of Mr. Schiermeyer's claim against Mr. Thurston, it need not do so now. Regardless of who is correct, what matters for current purposes is the undisputed fact that a set number of tokens each day are divided equally among the nodes in operation that day.

These problems are not unique to cryptocurrency. Any plaintiff who has lost assets or money can claim that he would have been a sage investor in the but-for world where he suffered no loss: that he would have sold the lost assets only at the market peak or would have invested the lost money in some asset with a better-than-market return. And courts have established rules to govern these sorts of arguments. For instance, courts may award a set rate of prejudgment interest to account for the time value of money. Or, in cases involving the conversion of stock shares, courts sometimes allow parties to seek "the highest intermediate stock price between the notice of conversion and a reasonable time thereafter during which the stock could have been replaced." *Scully v. US WATS, Inc.*, 238 F.3d 497, 510 (3d Cir. 2001); *see also Kearl v. Rausser*, 293 F. App'x 592, 606 (10th Cir. 2008). The court need not decide which if any of these options would be appropriate if True North prevails on its counterclaims and crossclaims. The point is that it does not follow that damages are inadequate simply because a plaintiff can or does make such an argument. Again, only a "*reasonable* measure" of True North's damages need be available to preclude the preliminary relief it seeks. *Mrs. Fields Franchising*, 941 F.3d at 1235–36 (emphasis added).

Finally, True North argues that Mr. Schiermeyer's "erratic and abusive mismanagement" of Gala Games might result in the company's no longer having enough assets to pay damages by the time the merits of this action are resolved. Dkt. No. 63 at 10. But this court has already held that to establish the requisite likelihood of irreparable harm based on such an argument, a movant must show that the other party will "*likely* be unable to pay an award of money damages after a trial." *Schiermeyer*, --- F. Supp. 3d at ----, 2023 WL 6609566 at *4. That, in turn, means showing "that the risk of insolvency is likely and imminent." *Id.* (quoting *CRP/Extell Parcel I, L.P. v. Cuomo*, 394 F. App'x 779, 782 (2d Cir. 2010)). True North—which offers as support for

8

this argument only another company's mere *allegations*, in a different lawsuit, that Gala Games did not pay some of its invoices, *see* Dkt. No. 63 at 10—does not come close to making such a showing.

\* \* \*

For the foregoing reasons, Plaintiff's motion for a temporary restraining order is **DENIED**.

**IT IS SO ORDERED**.

Dated this 8th day of December, 2023.

BY THE COURT:

_____
Howard C. Nielson, Jr.
United States District Judge