Paul W. Shakespear (14113)
Cameron Cutler (15116)
Natalie Beal (18311)
SNELL & WILMER L.L.P.
15 West South Temple, Suite 1200
Gateway Tower West
Salt Lake City, Utah  84101
Telephone:  801.257.1900
Facsimile:  801.257.1800
Email: pshakespear@swlaw.com
       ccutler@swlaw.com
       nbeal@swlaw.com

Abram I. Moore (admitted *pro hac vice*)
Christian A. Zazzali (admitted *pro hac vice*)
K&L GATES LLP
70 West Madison St., Suite 3100
Chicago, IL 60602
Telephone: 312.781.6010
Facsimile: 312.827.8000
Email:    abe.moore@klgates.com
          christian.Zazzali@klgates.com

*Attorneys for Plaintiff Eric Schiermeyer*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ERIC SCHIERMEYER, Derivatively on Behalf of Nominal Defendant, BLOCKCHAIN GAME PARTNERS, INC. D/B/A GALA GAMES,<br><br>Plaintiff,<br><br>vs.<br><br>WRIGHT THURSTON and TRUE NORTH UNITED INVESTMENTS, LLC,<br><br>Defendants,<br><br>BLOCKCHAIN GAME PARTNERS, INC. D/B/A GALA GAMES,<br><br>Nominal Defendant. | **PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS**<br><br>Case No. 2:23-cv-00589-HCN-DAO<br><br>Judge Howard C. Nielson<br><br>Magistrate Judge Daphne A. Oberg<br><br>(Consolidated with 2:23-cv-00590-HCN) |

TRUE NORTH UNITED INVESTMENTS,
LLC, Derivatively on Behalf of Nominal
Defendant, BLOCKCHAIN GAME
PARTNERS, INC. D/B/A GALA GAMES,

                    Counterclaimant,

vs.

ERIC SCHIERMEYER,

                    Counterdefendant,

BLOCKCHAIN GAME PARTNERS, INC.
D/B/A GALA GAMES,

                    Nominal Counterdefendant.

---

TRUE NORTH UNITED INVESTMENTS,
LLC,

                    Crossclaim Plaintiff,

vs.

BLOCKCHAIN GAME PARTNERS, INC.
D/B/A GALA GAMES,

                    Crossclaim Defendant.

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................... 1

II.   ARGUMENT ............................................................................................................ 4

    A.    True North's derivative claims should be dismissed under Rule 23.1 and/or Rule 12(b)(6). ....................................................................................................... 4

        a.    Each of True North's derivative claims on behalf of the Company (Counterclaims One through Six) should be dismissed because True North has failed to allege that it made a written demand that the Company remedy the claimed issues prior to suing in court ...................................... 4

        b.    True North's derivative claims should be dismissed because they fail to adequately allege injury to the Company, and instead assert direct injuries to True North and Thurston. .................................................................................... 8

        c.    Counterclaim Two should be dismissed because True North fails to state a claim for "waste of corporate assets." .................................................................. 12

        d.    Counterclaim Three fails to state a derivative claim for unjust enrichment ............................................................................................................. 13

        e.    Counterclaim Four fails to state a derivative claim for an equitable accounting ........................................................................................................... 14

        f.    The Fifth and Sixth Counterclaims fail to state claims for judicial removal of Plaintiff as a director or appointment of a custodian. ........................... 15

    B.    True North's direct counterclaims against Plaintiff should be dismissed for failure to state a claim. ........................................................................................ 17

        a.    Counterclaim Seven fails to state a claim for breach of the Founders Agreement. ........................................................................................................... 17

        b.    Counterclaim Eight fails to state a claim for breach of the implied covenant of good faith and fair dealing. .................................................. 19

        c.    Counterclaim Eleven fails to state a claim against Plaintiff for conversion ........................................................................................................... 20

        d.    Counterclaim Twelve fails to state a claim against Plaintiff for tortious interference with the Gala Terms and Conditions. .................................. 22

        e.    Counterclaim Thirteen, for declaratory judgment, fails to state a claim against Plaintiff. ............................................................................................... 23

III.   CONCLUSION ....................................................................................................... 24

4880-9786-9464

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Advanced Recovery Sys. v. Am. Agencies*,
    923 F.3d 819 (10th Cir. 2019) ...............................................................22

*Boland v. Engle*,
    113 F.3d 706 (7th Cir. 1997) .............................................................7, 8

*Campbell v. Davidson*,
    2023 WY 100, 537 P.3d 734 (Wyo. 2023) ...........................................20

*City of Cambridge Ret. Sys. v. Ersek*,
    921 F.3d 912 (10th Cir. 2019) .................................................................5

*Davidson-Eaton v. Iversen*,
    2022 WY 135, 519 P.3d 626 (Wyo. 2022) ...........................................13

*Doherty v. Mut. Warehouse Co.*,
    245 F.2d 609 (5th Cir. 1957) ...............................................................10

*Excel Const., Inc. v. HKM Eng'g, Inc.*,
    2010 WY 34, 228 P.3d 40 (Wyo. 2010) ...............................................20

*Fish Creek Cap., LLC v. Wells Fargo Bank, N.A.*,
    No. 11-CV-176-F, 2011 WL 13162236 (D. Wyo. July 21, 2011), aff'd, 485 F.
    App'x 924 (10th Cir. 2012) ..................................................................19

*Flat Footed LLC v. Begley*,
    No. 19-CV-255-F, 2020 WL 10357004 (D. Wyo. Oct. 27, 2020)..........14

*Gamble v. Overton*,
    No. 05-CV-192, 2007 WL 9707043 (D. Wyo. Nov. 8, 2007)................15

*Garnitschnig v. Horovitz*,
    48 F. Supp. 3d 820 (D. Md. 2014) ........................................................13

Harwell Wells, *The Life (and Death?) of Corporate Waste*, 74 Wash. & Lee L.
    Rev. 1239 (2017) ..................................................................................12

*J. Kent Kinniburgh Revocable Tr. v. Moncur*,
    2023 WY 56, 530 P.3d 579......................................................................11

*Kamen v. Kemper Fin. Servs., Inc.*,
    500 U.S. 90, 111 S. Ct. 1711, 114 L. Ed. 2d 152 (1991)........................8

*Knapp v. Bankers Securities Corp.*,
    230 F.2d 717 (3d Cir.1956)...........................................................................10

*Law of Corp. Offs. & Dirs.: Rts., Duties & Liabs.* § 9:10 (2023-2024) .........................................8

*Lawrence v. Kuenhold*,
    271 F. App'x 763 (10th Cir. 2008)...............................................................23

*Lichtie v. U.S. Home Corp.*,
    655 F. Supp. 1026 (D. Utah 1987)...............................................................22

*Ltd. v. Wetrade Group, Inc.*,
    No. CH-2023-0000028, 2023 WL 7939772 (Wy. Ch. Nov. 07, 2023) ..............................8, 12

*Matney v. Barrick Gold of N. Am.*,
    No. 22-4045 (10th Cir. Sep. 6, 2023) .......................................................11

*Roberts v. Am.'s Wholesale Lender*, No. 2:11-CV-597-DB-SA, 2012 WL
    1379203, at *9 (D. Utah Mar. 22, 2012), *report and recommendation adopted*,
    No. 2:11-CV-597, 2012 WL 1390188 (D. Utah Apr. 18, 2012), *aff'd*, 525 F.
    App'x 675 (10th Cir. 2013) ........................................................................14

*Schlinger v. McGhee*,
    2012 WY 7, 268 P.3d 264 (Wyo. 2012) .....................................................19

*Scuderi v. Springer*,
    *No. 03 CV 2098 (RO), 2004 WL 2711048, (S.D.N.Y. Nov. 29, 2004)* ....................................22

*Sigford v. U.S. Bank, N.A.*,
    No. CIV. 13-2225 ......................................................................................23

*Vanterpool v. Fed'n of Chiropractic Licensing Boards*,
    No. 22-CV-01208-CNS-NRN, 2022 WL 16635391 (D. Colo. Nov. 2, 2022) ......................23

*Wallop Canyon Ranch, LLC v. Goodwyn*,
    2015 WY 81, 351 P.3d 943 (Wyo. 2015) .........................................................8

*In re Walt Disney Co. Derivative Litig.*,
    906 A.2d 27 (Del. 2006) ...........................................................................13

## Statutes

Ga. Code Ann. § 14-2-742........................................................................................8

Mich. Comp. Laws Ann. § 450.1493a........................................................................8

Wyo. Stat. Ann. § 17-16-742..............................................................................6, 8

Wyo. Stat. Ann. § 17-16-748..............................................................................16

Wyo. Stat. Ann. § 17-16-809 ........................................................................................16

Wyo. Stat. Ann. § 17-16-1605 ..................................................................................11, 15

Wyo. Stat. Ann. § 17-17-140 ........................................................................................16

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ..........................................................................................2, 4, 17

Fed. R. Civ. P. 12(b)(6) and Rule 23.1 ............................................................................1

Fed. R. Civ. P. 23.1 ..........................................................................................1, 4, 5, 6

Fed. R. Civ. P. 23.1(b)(3)(A)-(B) ....................................................................................5

Plaintiff Eric Schiermeyer moves the Court under Rule 12(b)(6) and Rule 23.1 of the Federal Rules of Civil Procedure to dismiss the Amended Counterclaims filed by True North United Investments, LLC ("True North") (Dkt. No. 75).  In support of his motion, Plaintiff states as follows:

## I.      INTRODUCTION

After Plaintiff sued Defendants for their theft and liquidation of billions of tokens from the Company treasury, enriching themselves by more than $130 million, True North filed meritless counterclaims against Plaintiff and cross claims against Wyoming corporation Blockchain Game Partners, Inc. ("the Company" or "Gala Games"). The counterclaims fall into two categories: (1) purported shareholder derivative claims brought on behalf of the Company; and (2) direct claims by True North against Plaintiff. Each of the counterclaims should be dismissed.

True North's derivative claims (Counterclaims One through Six) should be dismissed for failure to meet the particularized pleading requirements for derivative claims. Federal Rule of Civil Procedure 23.1 requires shareholders asserting derivative claims to "state with particularity" the "effort" to "obtain the desired action" and Wyoming law requires shareholders to make a written demand upon a corporation before filing a derivative suit in court. In short, as a prerequisite to initiating litigation, the Company must have first been apprised by True North in writing of what was done wrong and given the opportunity to address the particular claims at issue, and True North must plead those facts with particularity for its derivative claims against Plaintiff to survive dismissal. True North failed to allege that it made the required written demand upon the Company to address the matters of which it

1

now complains.  In fact, Plaintiff learned about many of these manufactured issues for the first time by reading about them in True North's pleadings. Shareholders are not entitled to ambush directors with derivative claims in this fashion.

True North's derivative claims should also be dismissed for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. There is an overarching deficiency in all of the derivative claims: they purport to address injuries to True North and Thurston ***directly*** (for example, by allegedly depriving True North of tokens to which it claims it is entitled), rather than injuries to the Company. The few allegations of injury to the Company are wholly conclusory (for example, that Plaintiff somehow took or misused unspecified "Company funds") and should be disregarded. True North's claims that it was injured directly cannot form the basis of a derivative action on behalf of the Company.

Each derivative claim is also plagued with its own particular deficiencies. Counterclaim One, for "breach of fiduciary duties," fails to allege any facts showing disloyal conduct that actually injured the Company. Counterclaim Two, for "waste of corporate assets," fails to allege that any asset belonging to the Company was squandered. Counterclaim Three, for "unjust enrichment," identifies nothing retained by Plaintiff that rightfully belongs to the Company. Counterclaim Four, for "equitable accounting," is based upon True North's allegation that Thurston, as director, has not received complete and accurate information from the Company, but Thurston himself has an adequate remedy for this and there is no allegation that the accounts as between Plaintiff and the Company are so complicated that an accounting is necessary. Counterclaims Five and Six, for removal of Schiermeyer as a director and appointment of a custodian, fail because True North fails to allege facts showing that

irreparable injury to the Company is threatened or that Plaintiff has defrauded or intentionally harmed the Company. True North has no derivative claim, and Counterclaims One through Six should be dismissed.

True North's five direct claims against Plaintiff (Counterclaims Seven, Eight, Eleven, Twelve and Thirteen) also fail to state a claim and should be dismissed. In Counterclaims Seven and Eight, True North alleges that Plaintiff breached a 2019 Founders Agreement. However, there are no facts alleged that plausibly show that Plaintiff breached that agreement, in which the parties agreed only "not to circumvent or compete with" the Company in a particular fashion. True North hopes to add new obligations to the Founders Agreement by treating the implied duty of a good faith as a catch-all provision, but this is contrary to Wyoming law.

Counterclaim Eleven fails to state a direct claim against Plaintiff for conversion of True North's Gala Nodes and tokens. First, True North itself alleges that its right to operate the nodes is controlled by the Gala Terms and Conditions, and therefore a conversion claim cannot lie as a matter of law. Second, True North alleges that its GALA v1 tokens were converted when the Company did not replace those tokens with GALA v2 tokens. However, True North still possesses the GALA v1 tokens and the GALA v2 tokens were never True North's property.

Counterclaim Twelve fails to state a direct claim against Plaintiff, the CEO of the Company, for tortiously causing the Company to breach the Gala Games Terms and Conditions. First, no breach is alleged, as set forth in the Company's contemporaneously filed

3

motion to dismiss. Second, Plaintiff, as a corporate officer, cannot be liable for interfering with the corporation's own contract under the facts alleged.

Finally, Counterclaim Thirteen fails to state a direct claim against Plaintiff for declaratory judgment because this is not a stand-alone claim and the remainder of True North's direct claims should be dismissed. Further, the requested expansive declaratory judgment is based entirely upon past conduct and would not be helpful to guide any anticipated future conduct.

## II.   ARGUMENT

True North's derivative claims (Counterclaims One through Six) and its direct claims (Counterclaims Seven, Eight, Eleven, Twelve and Thirteen) against Plaintiff should all be dismissed.

### A.   True North's derivative claims should be dismissed under Rule 23.1 and/or Rule 12(b)(6).

True North's derivative claims should be dismissed for failure to allege with particularity that it made the required demand upon the Company and because all of the derivative claims fail to state a claim.

### a.   Each of True North's derivative claims on behalf of the Company (Counterclaims One through Six) should be dismissed because True North has failed to allege that it made a written demand that the Company remedy the claimed issues prior to suing in court.

Each of True North's derivative claims should be dismissed under Rule 23.1 of the Federal Rules of Civil Procedure because True North failed to plead that it made a written demand upon the Company to obtain the relief requested prior to asserting derivative claims

in court, and Wyoming does not recognize demand futility as an excuse for True North's failure to make the required written demand.

Under Rule 23.1, a shareholder bringing a derivative action to enforce a right that the corporation may properly assert but has failed to enforce, must "state with particularity: (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and (B) the reasons for not obtaining the action or not making the effort." Fed. R. Civ. P. 23.1(b)(3)(A)-(B).  Federal courts look to the law of the state of incorporation to determine what facts must be plead in a derivative action under subsection (A) regarding pre-litigation efforts to obtain a resolution, and whether the particular facts alleged in the complaint excuse failing to make a demand under subsection (B). *See City of Cambridge Ret. Sys. v. Ersek*, 921 F.3d 912, 918 (10th Cir. 2019). Where a shareholder fails to plead facts sufficient to show that it has met the applicable state's pre-suit demand requirements, its derivative claims must be dismissed. *See id.* at 925 (affirming dismissal under Rule 23.1 where plaintiff failed to satisfy the rule's "rigorous pleading standard").

The Company is incorporated in Wyoming.  (Dkt. No. 75, Counterclaims ¶ 11.)  Under Wyoming law:

> (a) No shareholder may commence a derivative proceeding until:
>
> (i) **A written demand** has been made upon the corporation to take suitable action; and
>
> (ii) **Ninety (90) days have expired from the date the demand was made** unless the **shareholder has earlier been notified that the demand has been rejected** by the corporation or unless irreparable injury to the corporation would result by waiting for the expiration of the ninety (90) day period.

5

Wyo. Stat. Ann. § 17-16-742 (West) (emphasis added). True North has failed to meet these requirements.

First, True North does not allege that it made any "written demand" whatsoever upon the Company to remedy the matters raised in its derivative claims, much less does it allege with particularity the date and contents of the written demand, that it was rejected, that 90 days have passed between the date of the written demand and the date True North brought its claims, that the written demand was rejected at an earlier date, or that irreparable injury would result by waiting for 90 days to file suit after making the written demand. Thus, True North has failed to plead with "particularity" that it made the required effort to obtain the desired action from the Company prior to asserting an action in court in accordance with Wyoming's written demand requirement, and its derivative claims must be dismissed under Rule 23.1.

This is not a mere technical pleading hurdle. Plaintiff learned about many of the generalized allegations of wrongdoing for the first time by reading the derivative Complaint filed by True North in a separate action (amended and converted to counterclaims in this action).[1] Indeed, the factual bases for many of True North's conclusory allegations of derivative harm remain a mystery. Dismissing the derivative claims will force True North to make the required written demand specifying what it actually complains of and what it wants the Company to do, which could potentially result in an out-of-court resolution of the alleged

---

[1] True North first filed its claims in a Complaint in a separate action. (Case No. 2:23-cv-00590-HCN). That case was then consolidated with this case, and True North amended its claims and brought them in this action as counterclaims. (Dkt. No. 60.) True North then amended its counterclaims. (Dkt. No. 75.)

6

derivative claims and streamline the litigation.[2] *See Boland v. Engle,* 113 F.3d 706, 712 (7th Cir. 1997). A defendant's tactic of inventing claims in an attempt to distract from its own wrongdoing simply does not work in the context of a derivative action.

True North's failure to allege the required written demand cannot be excused by arguing that making a demand would have been futile, as Wyoming does not recognize demand futility. Wyoming has adopted Section 7.42 of the American Bar Association's Model Business Corporation Act ("Model Act"), which states (in relevant part):

> No shareholder may commence a derivative proceeding until (i) a written demand has been delivered to the corporation to take suitable action and (ii) 90 days have expired from the date delivery of the demand was made unless the shareholder has earlier been notified that the demand has been rejected by the corporation or unless irreparable injury to the corporation would result by waiting for the expiration of the 90-day period.

---

[2] The consequence of True North's failure to comply with Wyoming's written demand prerequisite to filing a shareholder derivative claims is that the Company does not know what True North wants and has not been given the opportunity to address any such requests. Does True North want the Company to dissolve the complained-of shell Swiss entity? (Dkt. No. 75, Counterclaim at ¶ 61.) It knows this has already been done. Does it want the Company to dissolve the "sales entity in Dubai"? (*Id.*) No such entity exists, and True North has never identified any such entity. Does it want the Company to "sell" the as-yet-undelivered "corporate jet" (which Thurston himself bound the Company to purchase via installment payments)? (*Id.* at ¶ 54.) It knows that the Company cannot do so and has been asking Thurston to assume the contract or come up with a solution for absolving the Company of this obligation. Does True North want Plaintiff to return Company funds he reportedly misappropriated? (*Id.* at ¶ 43.) It has never even identified any such funds. Does it want Plaintiff to return to the Company the "huge amounts of GALA" he purportedly took "for personal use"? (*Id.* at ¶ 92.) It has never identified or complained of any such GALA. Does it want Plaintiff to explain the tokens transferred to Jason Brink? (*Id.* at ¶ 43.) It already knows the purpose of those transfers, but the Company would surely reiterate the purpose.

*Compare* Wyo. Stat. Ann. § 17-16-742 (West). This is a "universal demand" provision, which does not recognize a "demand futility" exception. Universal demand requirement, *Law of Corp. Offs. & Dirs.: Rts., Duties & Liabs.* § 9:10 (2023-2024) ("In 1991, the Model Business Corporation Act, which had excused demand when 'futile,' was revised to provide for universal demand as well.") The United States Supreme Court has recognized that this statutory language creates a "universal-demand rule." *Kamen v. Kemper Fin. Servs., Inc.,* 500 U.S. 90, 102, 111 S. Ct. 1711, 1719, 114 L. Ed. 2d 152 (1991)*,* citing the nearly identical Ga. Code Ann. § 14-2-742 (West) and Mich. Comp. Laws Ann. § 450.1493a (West). As explained by the Court of Appeals for the Seventh Circuit, a universal demand requirement "serves as a valuable screen of potential lawsuits, both by giving corporations a crack at resolving shareholder complaints before litigation and by giving courts more information on which to decide the merits of those suits that remain after demand." *Boland,* 113 F.3d at 712.

> **b.    True North's derivative claims should be dismissed because they fail to adequately allege injury to the Company, and instead assert direct injuries to True North and Thurston.**

A derivative action is brought "by one or more stockholders to enforce a corporate cause of action" and "[a]s a general rule, recovery in such actions inures to the corporation rather than to the stockholders as individuals." *Wallop Canyon Ranch, LLC v. Goodwyn,* 2015 WY 81, ¶ 28, 351 P.3d 943, 951 (Wyo. 2015) (internal citations omitted). A shareholder "does not bring [a derivative] suit because his rights have been directly violated or because the cause of action is his or because he is entitled to relief sought," as the action "is maintained directly for the benefit of the corporation." *Id.* In order to determine whether a claim is direct or derivative, courts look to the nature of the injury alleged. *See Ltd. v. Wetrade Group, Inc.,*

No. CH-2023-0000028, 2023 WL 7939772, at *2 (Wy. Ch. Nov. 07, 2023) ("an action is derivative when the shareholder was not injured directly or independently of the corporation" (internal citation omitted)).

Here, True North's derivative claims are based upon five alleged actions, all of which are pled in support of True North's breach of fiduciary duty claim (Counterclaim One). True North alleges that the complained-of actions caused injuries primarily to shareholders True North and Thurston—not to the Company. Thus, even assuming the truth of the allegations, they do not and cannot state a plausible derivative claim for (unpled) injury to the Company and Counterclaim One (along with all remaining derivative counterclaims based upon the same conduct) should be dismissed.

First, True North's primary complaint is that Plaintiff "burned more than approximately 20.9 billion GALA tokens **belonging to [Company] shareholders** and others in the GALA community worth more than $600 million" (Dkt. No. 75, Counterclaims at ¶ 88 (emphasis added).)[3] This is an injury to the alleged owners of the burned GALA (shareholders and third parties), not an injury to the Company (which is not alleged to have owned the burned GALA).[4] Where a shareholder sues for deprivation of some asset to which

---

[3] This allegation is repeated *ad nauseum* throughout True North's Answer and Counterclaims. *See e.g.* Dkt. No. 75, Answer at ¶¶ 82, 83, 84 ("burn and destroy all of True North's GALA by causing BGP to burn billions of GALA v2 tokens belonging to some of BGP's shareholders and node owners"); Counterclaims at ¶ 47 ("Schiermeyer caused BGP to burn billions of GALA v2 tokens belonging to BGP's shareholders"); ¶ 48 ("by burning True North's GALA v2 tokens"); ¶ 52 ("Schiermeyer burned True North's GALA tokens (and GALA tokens belonging to other shareholders and community members)"); ¶ 92 ("by burning shareholder GALA tokens").

[4] Contrary to True North's allegations, all GALA that was burned actually *did* belong to the Company. But True North must continue with its false story that there is no Company treasury of

it claims personal entitlement (*e.g.*, a dividend), the shareholder's action is direct, not derivative. *See Doherty v. Mut. Warehouse Co.*, 245 F.2d 609, 612 (5th Cir. 1957) ("[a] stockholder suing to compel the corporation to declare a dividend is enforcing a right common to himself and the other stockholders against the corporation, rather than a derivative right" for the company's benefit); *Knapp v. Bankers Securities Corp.*, 230 F.2d 717, 721 (3d Cir.1956) ("If the directors have wrongfully withheld the declaration of dividends the shareholder is the injured party. He shows an injury to himself which is quite apart from any which the corporation might be thought to suffer.") Like the 'loss' of a shareholder dividend, the alleged loss of shareholders' GALA is not a derivative injury suffered by the Company and therefore cannot support a derivative claim against Plaintiff.

Second, True North complains that its Gala Nodes have been shut off, "***depriving True North*** of the opportunity to generate substantial valuable digital assets over time." (Dkt. No. 75, Counterclaims ¶¶ 72; 84 (emphasis added).) Again, this alleged injury is not to the Company. It is purely to True North in its capacity as an alleged Gala Node owner. This injury cannot support a derivative claim.

Third, True North alleges "upon information and belief" that complete and accurate financial statements were not provided "to Thurston as Director," and that Plaintiff has "cut[] Thurston out of management." (*Id.* ¶¶ 55-56, 84.) However, if it was true that Thurston as

---

GALA and that all GALA was distributed to nodes, lest it acknowledge that Thurston and True North stole the Company's GALA. (*See* Dkt. No. 86, Order Denying TRO at fn 4 ("Mr. Thurston asserts that there is no such company treasury, and that all the tokens are distributed among these nodes.")

Director has been denied inspection rights (it is not), a remedy exists for Thurston as Director

under Wyoming law:

> The district court of the county where the corporation's principal
> office, or if none in this state, its registered office, is located may
> order inspection and copying of the books, records and documents
> at the corporation's expense, **upon application of a director** who
> has been refused inspection rights, unless the corporation establishes
> that the director is not entitled to those inspection rights.

Wyo. Stat. Ann. § 17-16-1605 (West) (emphasis added). The statute makes clear that inspection

rights can be ordered "upon application of a director," not upon an action by the company or via a

derivative action. Similarly, True North's complaints about Plaintiff allegedly "cutting Thurston

out of the management of BGP" is another complaint personal to Thurston as Director. True North

alleges no facts plausibly showing that the Company has suffered any injury whatsoever as a result

of Thurston's alleged exclusion from any management decision.

Fourth, True North makes the conclusory allegation that Plaintiff "convert[ed]

Company funds for personal use" (Dkt. No. 75, Counterclaims ¶ 84), but fails to allege what

Company funds Plaintiff allegedly converted, when he allegedly converted them, the amount

of funds taken, or any other facts in support of this conclusion. This conclusory (and false)

allegation should be ignored, and cannot form the basis of any claim. *See Matney v. Barrick

Gold of N. Am.*, No. 22-4045, at *11 (10th Cir. Sep. 6, 2023) (courts should disregard

conclusory allegations that lack underlying facts or factual enhancement).

Fifth, and finally, True North alleges that Plaintiff "formed Gala Music in

Switzerland" and "a sales entity in Dubai" and "has **or intends to** transfer or use much of

BGP's current [assets] to benefit the foreign legal entities." (Dkt. No. 75, Counterclaims ¶¶

58-62, 84 (emphasis added).) Critically, True North does not (and cannot) allege that any

Company assets **have actually been** transferred to any foreign entities or that these entities **have actually** done anything at all to compete with the Company. The mere existence of a shell entity that has not taken any assets or opportunities from the Company fails to state a claim for breach of fiduciary duty, as it does not plausibly allege that the Company (or anyone else) has been injured in any way. *J. Kent Kinniburgh Revocable Tr. v. Moncur*, 2023 WY 56, ¶ 23, 530 P.3d 579, 587 (damages are necessary component of breach of fiduciary claim).

Because not one of these five allegations can support a derivative claim, and because the derivative claims (Counterclaims One through Six) are based solely on these allegations, they should be dismissed. There are additional deficiencies with each claim requiring dismissal, as set forth below.

      **c.**    **Counterclaim Two should be dismissed because True North fails to state a claim for "waste of corporate assets."**

In Counterclaim Two, True North (as shareholder in the Company) fails to state a derivative claim for "Waste of Corporate Assets." First, Plaintiff has not identified any Wyoming case law recognizing a claim for waste of corporate assets. *See Ltd. v. Wetrade Group, Inc*., No. CH-2023-0000028, 2023 WL 7939772, at *3 (Wy. Ch. Nov. 07, 2023) (court re-characterizes "corporate waste" claim as claim for breach of fiduciary duty); Harwell Wells, *The Life (and Death?) of Corporate Waste*, 74 Wash. & Lee L. Rev. 1239 (2017) (discussion the demise of the corporate waste doctrine). This Court should decline to be the first to uphold a new cause of action for "corporate waste" under Wyoming law.

While there is no guidance from Wyoming courts, in jurisdictions recognizing such a claim, "[a] claim of waste will arise only in the rare, unconscionable case where directors irrationally squander or give away corporate assets" in an exchange that is "so one sided that

no business person of ordinary, sound judgment could conclude that the corporation has received adequate consideration." *In re Walt Disney Co. Derivative Litig.*, 906 A.2d 27, 74 (Del. 2006) (noting this "onerous standard" is a corollary to the business judgment rule) (internal citations omitted). Such facts must be plead with particularity. *Garnitschnig v. Horovitz*, 48 F. Supp. 3d 820, 835 (D. Md. 2014) (facts underlying corporate waste claim must be alleged with particularity).

Here, True North relies on two allegations to support its claim for waste of corporate assets: (1) the burn of GALA that it alleges ***did not belong to*** the Company and instead belonged to "shareholders"; and (2) a "$5 million installment payment for a corporate jet." (Dkt. No. 75, Counterclaims ¶ 88.) With regard to the GALA burn, there is no allegation that any Company assets were squandered or given away at all (much less in an unconscionable fashion). Rather, True North alleges that the burned GALA belonged to shareholders and others, not the Company—thus, it cannot constitute an asset of the Company.  With regard to the installment payment for the corporate jet, no facts are alleged suggesting that the Company did not receive adequate consideration (i.e., credit toward a corporate jet) in exchange for the payment. Thus facts are not alleged showing that the exchange is "so one sided" as to plausibly plead corporate waste.  *In re Walt Disney Co. Derivative Litig.*, 906 A.2d at 74.

### d.    Counterclaim Three fails to state a derivative claim for unjust enrichment.

"Unjust enrichment is the unjust retention of a benefit to the loss of another" and "exists as a basis for recovery for goods or services rendered under circumstances where it would be inequitable if no compensation was paid in return."  *Davidson-Eaton v. Iversen*, 2022 WY 135, ¶ 48, 519 P.3d 626, 641 (Wyo. 2022). Here, True North alleges that Plaintiff

was personally "unjustly enriched" in three ways: (1) "nominally 'suspending' but actually converting True North's nodes (which as a node owner, benefits Schiermeyer directly)"; (2) "burning shareholder GALA tokens while retaining huge amounts of GALA for personal use"; and (3) "converting [unspecified] Company assets for personal use." (Dkt. No. 75, Counterclaims ¶ 92.)  The first two allegations cannot support a derivative claim because they do not contend that Plaintiff retained any benefit to the loss of ***the Company*** (any loss was to shareholder True North).  Further, an unjust enrichment claim cannot lie with respect to the suspension of nodes because True North acknowledges that an express contract governs the operation of those nodes. *See Flat Footed LLC v. Begley*, No. 19-CV-255-F, 2020 WL 10357004, at *3 (D. Wyo. Oct. 27, 2020) (unjust enrichment claim barred as a matter of law where there is an express contract on the same subject). The third allegation is purely conclusory, and does not specify any "Company assets" that Plaintiff purportedly retained for his own benefit, why retention would be unjust, or any other facts supporting this conclusion. Thus, Counterclaim Three should be dismissed for failure to state a derivative unjust enrichment claim.

### e. Counterclaim Four fails to state a derivative claim for an equitable accounting

In order to state a claim for an equitable accounting, a plaintiff must allege facts showing (1) the absence of an adequate remedy at law; and (2) that the accounts between the parties are of such a complicated nature that only a court of equity can satisfactorily unravel them. *See Roberts v. Am.'s Wholesale Lender*, No. 2:11-CV-597-DB-SA, 2012 WL 1379203, at *9 (D. Utah Mar. 22, 2012), *report and recommendation adopted*, No. 2:11-CV-597, 2012 WL 1390188 (D. Utah Apr. 18, 2012), *aff'd*, 525 F. App'x 675 (10th Cir. 2013).

14

Here, True North alleges that Thurston, as director, "requested financial information regarding the Company" and that Plaintiff "has refused and failed to provide such information" to the director. (Dkt. No. 75, Counterclaims ¶ 98.) If this was true (it is not), an adequate remedy exists under Wyoming law, as set forth in Section II(A)(b) above. *See* Wyo. Stat. Ann. § 17-16-1605 (West). Further, True North requests an accounting of the Company's own finances, rather than an accounting of the Plaintiff's transactions. No facts are alleged demonstrating that Plaintiff was involved in any particular transactions with the Company, much less that such accounts are so complicated that the Court must order an accounting. Indeed, True North fails to allege facts identifying any corporate assets purportedly taken by Plaintiff. Therefore, Counterclaim Four should be dismissed.

> **f.     The Fifth and Sixth Counterclaims fail to state claims for judicial removal of Plaintiff as a director or appointment of a custodian.**

In Counterclaims Five and Six, True North purports to bring derivative *and* direct claims for removal of Schiermeyer as a director and for appointment of a custodian. However, the claims must fail in either capacity. For its direct claims, True North relies upon sections of Chapter 17 of Wyoming's corporate statutes, which expressly applies only to "statutory close corporations."  Wyo. Stat. Ann. §§ 17-17-140 (stating when a shareholder of statutory close corporation can bring a direct action for removal of 17-17-102 (limiting chapter to statutory close corporations); 17-17-103 (election must be in articles of incorporation). True North alleges only that the Company "is a Wyoming corporation," not that it is a statutory close corporation (and indeed the Company's articles of incorporation do not designate it as a close corporation). *See Gamble v. Overton*, No. 05-CV-192, 2007 WL 9707043, at *3 (D. Wyo. Nov. 8, 2007) ("A corporation is a close corporation, however, only when the articles

15

of incorporation provide explicitly that the corporation is a close corporation"). Therefore, it has not alleged facts sufficient to state a direct claim under Sections 17-17-140 or 17-17-141, and the "direct" actions in Counterclaims Five and Six should be dismissed with prejudice for failure to state a claim.

The derivative claims to remove Schiermeyer as a director (Counterclaim Five) and for appointment of a custodian (Counterclaim Six) must fail for additional reasons. A court cannot appoint a custodian of a Wyoming corporation absent a showing that "irreparable injury to the corporation is threatened or being suffered." Wyo. Stat. Ann. § 17-16-748 (West). True North alleges only that "irreparable injury to the corporation has occurred and continues to be threatened," but supports the conclusion with no facts. (Dkt. No. 75, Counterclaims ¶ 116.) Indeed, as discussed in Section II(A)(b), any particular harm True North claims is to itself and harm to the Company is alleged in only the most conclusory fashion. Thus, True North has failed to state a claim for appointment of a custodian.

A court can remove a director of a Wyoming corporation via a derivative action where "the director engaged in fraudulent conduct with respect to the corporation or its shareholders, grossly abused the position of director, or intentionally inflicted harm on the corporation." Wyo. Stat. Ann. § 17-16-809 (West). For example, Plaintiff has detailed Thurston's specific fraudulent conduct (Dkt. No. 14, Complaint ¶¶ 153-160) and the intentional harm he inflicted on the Company by stealing specific GALA tokens (*id*. ¶¶ 171-179). In contrast, True North has failed to plead any facts showing that Schiermeyer has defrauded or intentionally harmed the Company (*See* supra, Section II(A)(b).) True North has failed to plead facts stating a

16

plausible claim to remove Schiermeyer as a director under this standard, and Counterclaim Six should be dismissed.

**B.    True North's direct counterclaims against Plaintiff should be dismissed for failure to state a claim.**

True North's direct claims against Plaintiff fare no better than its defective derivative claims. Counterclaim Seven (for breach of a Founders Agreement), Counterclaim Eight (for breach of the implied duty of good faith and fair dealing inherent in the Founders Agreement); Counterclaim Eleven (for conversion), Counterclaim Twelve (for tortious interference with contract) and Counterclaim Thirteen (for declaratory judgment) should all be dismissed for failure to state a claim.

     a.    **Counterclaim Seven fails to state a claim for breach of the Founders Agreement.**

Counterclaim Seven, for breach of a 2019 Founders Agreement, should be dismissed for failure to state a claim. On its face, the Founders Agreement appears to be an effort to create a noncompetition agreement between the initial two shareholders of the Company, True North and Plaintiff. Those parties "desire[d] to form" the Company and a number of affiliated entities, and "intend[ed]" at the time to each have 50% ownership in the entities they created. (*See* Exhibit A, Founders Agreement.)[5] In furtherance of that goal:

---

[5] On a motion to dismiss, "the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *see also Awan v. Mather*, No. 2:23-cv-00258-DBB-DAO, 2023 U.S. Dist. LEXIS 191177, at *2 n.8 (D. Utah Oct. 24, 2023) ("In evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also attached exhibits, and documents incorporated into the complaint by reference[.]"). Here, True North refers to and incorporates both the Founders Agreement and the Terms and Conditions throughout its Counterclaims. (*See* e.g., Dkt. No. 75, Counterclaims ¶ 17,

> The parties agree **not to circumvent or compete with the BGP Companies in a manne**r **to** earn income, hold ownership, vote, or earn rewards from the services and products of the BGP Companies **in a manner to** squeeze out or diminish the rights and Ownership of any other party to this Agreement.

(Dkt. No. 75, Counterclaims ¶ 20.)). Thus, in order to allege a breach of the Founders Agreement, True North must allege facts showing: (a) that Plaintiff "circumvented or competed with" the Company; **and** (b) that the circumvention or competition was done in a manner to provide a particular benefit to Plaintiff from the Company (earn income, hold ownership, vote or earn rewards); **and** (c) that the circumvention or competition was **also** done in a manner to squeeze out or diminish True North's ownership or rights.

True North fails to allege facts showing that Plaintiff has engaged in any conduct that would breach the Founders Agreement. (Dkt. No. 75, Counterclaims ¶ 122.) The Founders Agreement prevents the two initial shareholders of the Company from acting *outside of the corporate structure* (e.g. creating new entities or taking opportunities for themselves) in a way that provides one shareholder income or ownership from the Company's services and products at the expense of the other shareholder's ownership rights. True North asserts only one allegation that could even potentially fit this bill: "launching competing companies and omitting True North and other BGP shareholders with the same percentage interest in those entities." *Id*. However, as discussed above, True North alleges only that shell companies were created. (*See* supra, Section II(A)(b).) There is no allegation (and there could be no allegation) that the shell companies took any Company assets or did anything at all—much less did

---

123, 127). There is no dispute as to the documents' authenticity. Thus, the Court may refer to any terms from the agreements on this motion.

anything to compete with or circumvent the Company in any fashion.  Thus, True North has failed to state a claim for breach of the Founders Agreement. *Schlinger v. McGhee*, 2012 WY 7, ¶ 12, 268 P.3d 264, 268 (Wyo. 2012), as amended on reh'g (Feb. 7, 2012) (damages are an essential element of a breach of contract claim).

      **b.**      **Counterclaim Eight fails to state a claim for breach of the implied covenant of good faith and fair dealing.**

Unable to allege any conduct that breaches an express provision of the Founders Agreement, True North reverts to a claim that the same conduct breached an implied covenant of good faith and fair dealing inherent in the Founders Agreement. True North effectively takes the position that the implied covenant is a contractual catch-all prohibiting any conduct that offends True North. This is unsupported by Wyoming law.

Under Wyoming law, the implied covenant (1) relates only to the transaction contemplated in the underlying contract, (2) must arise from the express obligations of the contract and (3) cannot establish new, independent rights or duties not agreed upon by the parties. *See Fish Creek Cap., LLC v. Wells Fargo Bank, N.A.*, No. 11-CV-176-F, 2011 WL 13162236, at *3 (D. Wyo. July 21, 2011), aff'd, 485 F. App'x 924 (10th Cir. 2012). The transaction contemplated in the Founders Agreement is the formation of a number of "affiliated companies and entities" related to blockchain gaming. (Dkt. No. 75, Counterclaims ¶ 17.) The parties' only express obligation is "not to circumvent or compete with" those entities in the particular manner quoted above, and any implied duty of good faith would relate only to this particular express obligation. (*Id.* ¶ 20.) True North thus cannot rely upon the implied duty of good faith to establish new independent obligations upon the shareholders regarding management of the Company, director's inspection rights, operation of Gala Nodes,

and management of circulating tokens. Therefore, True North has failed to state a claim for breach of the implied duty of good faith and fair dealing with respect to the Founders Agreement and Counterclaim Eight should be dismissed.

      **c.**      **Counterclaim Eleven fails to state a claim against Plaintiff for conversion**

In support of its conversion claim, True North alleges that Plaintiff directed the Company to suspend its Gala Nodes and issue GALA v2 to others, but not to True North. True North fails to state a conversion claim.

To establish a claim for conversion, True North must allege facts showing: (1) it had legal title to the converted property; (2) it either had possession of the property or the right to possess it at the time of the conversion; (3) Plaintiff exercised dominion over the property in a manner which denied True North its rights to use and enjoy the property; (4) True North made some demand for the property's return which Plaintiff refused; and (5) True North has suffered damage by the loss of the property. *Campbell v. Davidson*, 2023 WY 100, ¶ 33, 537 P.3d 734, 744 (Wyo. 2023). Recovery under a conversion theory requires a showing that a duty independent of a contract was violated. *Excel Const., Inc. v. HKM Eng'g, Inc.*, 2010 WY 34, ¶ 31, 228 P.3d 40, 48 (Wyo. 2010). Thus, if the Court must turn to a contract to determine whether the interference with property is justified, there can be no conversion claim.

Here, True North alleges that its rights in the Gala Nodes are governed by the "Gala Games Terms and Conditions" and that suspending the nodes constitutes a breach of that agreement. (Dkt. No. 75, Counterclaims at ¶¶ 131-136, 139-141, 152.) Indeed, the Terms and Conditions state that "[o]wnership" of Gala Nodes "does not represent or constitute any ownership right or stake . . . or any right to receive any future revenue or form of participation

in or relating to any blockchain or digital reward, including the GALA Blockchain or GALA Reward." (*See* Exhibit B, Terms and Conditions.) True North does not dispute that, if it has breached those terms and conditions, then the node suspension is justified. (*See id.* at § 4.1; *accord* Dkt. No. 75, Counterclaims at ¶¶ 132-133.) Because True North's right to operate the Gala Nodes is governed by the Terms and Conditions, and because those Terms and Conditions control whether the suspension was justified, it cannot bring a conversion claim for suspension of those nodes.

Nor can the issuance of GALA v2 tokens to persons other than True North be considered conversion of any True North property. True North alleges that, prior to the issuance of GALA v2 tokens, it held "billions of v1" GALA tokens. (Dkt. No. 75, Counterclaims ¶ 45.) True North does not allege that anyone took, destroyed or interfered with its GALA v1 tokens—the only purported "property" it claims to have owned. Indeed, True North still owns its billions of GALA v1 tokens, and alleges nothing to the contrary. True North does not claim that Plaintiff exercised dominion over this GALA v1 property, but rather that True North did not receive *other* property: GALA v2 tokens. (*Id.* ¶¶ 45, 243.) True North cannot allege facts showing that it ever had title to any GALA v2 and has not identified any extra-contractual duty that would entitle it to receive GALA v2 to replace the property it did own. Because True North still has possession of its GALA v1 tokens, and because True North never owned any GALA v2 tokens, it has failed to state a claim for conversion of GALA tokens.

**d.  Counterclaim Twelve fails to state a claim against Plaintiff for tortious interference with the Gala Terms and Conditions.**

In Counterclaim Twelve, True North alleges that when Plaintiff, as President and CEO of the Company, directed the Company to suspend True North's nodes for violating the Gala Games Terms and Conditions, Plaintiff tortiously induced the Company to breach those Terms and Conditions. (Counterclaims ¶¶ 151-56.) However, "[c]ourts throughout the country have held that a corporate officer cannot incur liability for tortiously interfering with the corporation's own contract." *Advanced Recovery Sys. v. Am. Agencies*, 923 F.3d 819, 828 (10th Cir. 2019) (collecting cases); *see also Lichtie v. U.S. Home Corp.*, 655 F. Supp. 1026, 1028 (D. Utah 1987) (corporate officer cannot be liable for tortiously interfering with corporation's contracts absent facts showing the type of acts engaged in were outside of the scope of the officer's authority and the officer acted entirely to further personal interests).

Plaintiff certainly acted within the scope of his role as President and CEO of the Company when determining whether or not a Gala Node owner had breached the Gala Games Terms and Conditions.  No facts are alleged that would suggest otherwise. Further, no facts are alleged suggesting that Plaintiff received any personal benefit from the node suspension. *Scuderi v. Springer*, No. 03 CV 2098 (RO), 2004 WL 2711048, at *2 (S.D.N.Y. Nov. 29, 2004) (dismissing tortious interference claim against corporate officer where allegation that officer acted outside the scope of his authority and for personal gain were unsupported by particular facts). This is merely an improper attempt to convert True North's breach of contract action against the Company (Counterclaim Nine) into an intentional tort against a Company officer for making the decision that True North claims was a breach.

Further, as set forth in the Company's motion to dismiss, the Company did not breach the Terms and Conditions and therefore Plaintiff cannot be liable for tortiously inducing a breach.

        **e.**      **Counterclaim Thirteen, for declaratory judgment, fails to state a claim against Plaintiff.**

Counterclaim Thirteen, in which True North seeks an expansive declaratory judgment against both Plaintiff and the Company, should be dismissed for failure to state a claim. Where a declaratory judgment claim seeks to determine the parties' contractual rights after a disagreement whether the contract has been breached, but no plausible breach of contract is alleged, the declaratory judgment claim should be dismissed. *Vanterpool v. Fed'n of Chiropractic Licensing Boards*, No. 22-CV-01208-CNS-NRN, 2022 WL 16635391, at *8 (D. Colo. Nov. 2, 2022) (dismissing declaratory judgment claim based upon contractual rights were breach of contract claims were dismissed); see also *Sigford v. U.S. Bank, N.A.*, No. CIV. 13-2225 JNE/JJK, 2014 WL 468300, at *6 (D. Minn. Feb. 6, 2014) ("Because Plaintiff cannot bring and has not sufficiently plead any substantive claim against [defendant], judgment in favor of [defendant] on Plaintiff's claim for declaratory judgment should be entered"). Moreover, "a declaratory judgment is meant to define the legal rights and obligations of the parties in anticipation of some future conduct, not simply to proclaim liability for a past act." *Lawrence v. Kuenhold*, 271 F. App'x 763, 766 (10th Cir. 2008).

Here, because True North has failed to state any substantive claim against Plaintiff, for breach of contract or otherwise, its declaratory judgment counterclaim should be dismissed for failure to state a claim. Further, True North effectively seeks a declaration that the suspension of its nodes was wrongful, but both the suspension of the nodes by the

23

Company and Defendants' conduct that justified that suspension occurred in the past.[6] If the suspension was a breach, then any future injury from that past breach would simply involve a damages calculation, as this Court has already held. (*See* Dkt. No. 86, Order Denying TRO (finding that True North's damages from suspension of its nodes are readily calculable).). A declaratory judgment would do nothing to guide the parties' future conduct, and the Court should therefore dismiss Counterclaim Thirteen.

### III.   CONCLUSION

Unlike Plaintiff, who filed a derivative action to recover on behalf of the Company for specific GALA tokens that Defendants stole from the Company treasury, True North has not filed any counterclaims for the benefit of the Company. True North brought its counterclaims to recover for itself—and, primarily, to distract from Defendants' own wrongdoing. These are not proper derivative claims. Indeed, if they were, True North would have brought them to the Company's attention and sought to resolve them by making a written demand, as required before filing a derivative claim in court. Nor has True North stated any direct claims against Plaintiff. For the foregoing reasons, True North's counterclaims should be dismissed.

---

[6] True North first appears to request a declaration that it is entitled to operate its Gala Nodes, notwithstanding its past misconduct and the resulting suspension. (Counterclaims ¶ 159.) However, True North's request then begins to wander and inflate until it requests a declaration that Thurston and True North did not steal 8.6 billion GALA from the Company. (*Id.* ¶ 159(g).) Like the rest of the requested declaratory judgment, this asks the Court to pass judgment on past conduct that is the subject of the parties' claims against one another rather than to adjudicate rights in anticipation of some future conduct.

4880-9786-9464

DATED this 20th day of December, 2023.

SNELL & WILMER L.L.P.


/s/ Paul W. Shakespear
Paul W. Shakespear
Cameron Cutler
Natalie Beal

 K&L GATES LLP
Abram I. Morre
Christian A. Zazzali

*Attorneys for Plaintiff Eric Schiermeyer*

25