John W. Huber (Utah Bar No. 7226)
Daniel J. Wadley (Utah Bar No. 10358)
Marc T. Rasich (Utah Bar No. 9279)
Alexander Baker (Utah Bar No. 17163)
**GREENBERG TRAURIG, LLP**
222 South Main Street, Suite 1730
Salt Lake City, Utah 84101
Telephone: (801) 478-6900
*john.huber@gtlaw.com*
*wadleyd@gtlaw.com*
*marc.rasich@gtlaw.com*
*bakera@gtlaw.com*

Michael G. Rhodes (California Bar No. 116127)
*Admitted Pro Hac Vice*
**COOLEY LLP**
3 Embarcadero Center, 20th Floor.
San Francisco, CA 94111
Telephone: (415) 693-2000
*rhodesmg@cooley.com*

*Attorneys for Defendants, Counterclaimant, and Crossclaim Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ERIC SCHIERMEYER, Derivatively on Behalf of Nominal Defendant, BLOCKCHAIN GAME PARTNERS, INC. D/B/A GALA GAMES,<br>    Plaintiff,<br>vs.<br>WRIGHT W. THURSTON and TRUE NORTH UNITED INVESTMENTS, LLC,<br>    Defendants,<br><br>  and<br>BLOCKCHAIN GAME PARTNERS, INC. D/B/A BGP GAMES,<br>    Nominal Defendant. | **OPPOSITION TO BLOCKCHAIN GAME PARTNERS, INC.'S MOTION TO COMPEL ARBITRATION, OR IN THE ALTERNATIVE, TO DISMISS TRUE NORTH'S AMENDED CROSSCLAIM**<br><br>Case No. 2:23-cv-00589-HCN-DAO<br><br>Judge Howard C. Nielson<br><br>Magistrate Judge Daphne A. Oberg |

| | |
|---|---|
| TRUE NORTH UNITED INVESTMENTS, LLC, Derivatively on Behalf of Nominal Defendant, BLOCKCHAIN GAME PARTNERS, INC. D/B/A GALA GAMES, <br>    Counterclaimant, <br>vs. <br>ERIC SCHIERMEYER, <br>    Counterdefendant, <br><br>  and <br>BLOCKCHAIN GAME PARTNERS, INC. D/B/A BGP GAMES, <br>    Nominal Counterdefendant. | |
| TRUE NORTH UNITED INVESTMENTS, LLC, <br>    Crossclaim Plaintiff, <br>vs. <br>BLOCKCHAIN GAME PARTNERS, INC. D/B/A BGP GAMES, <br>    Crossclaim Defendant. | |

Counterclaimant and Crossclaim Plaintiff True North United Investments, LLC ("True North"), through the undersigned counsel, submits the following Memorandum in Opposition to Crossclaim Defendant Blockchain Game Partners, Inc.'s Motion to Compel Arbitration, or in the Alternative, to Dismiss True North's Amended Crossclaim ("BGP's Motion," cited hereinafter as "BGP MTD") [Dkt. No. 89].

## INTRODUCTION

BGP moves to compel arbitration and, in the alternative, dismiss the direct claims against it. BGP argues that the Terms and Conditions (a) require arbitration this dispute, since it is related to its provisions, and (b) grant it unfettered discretion to do as it pleases with nodes and

1

rewards generated therefrom belonging to True North or any other node owner. BGP has drawn mistaken conclusions from both provisions, however, and its Motion should be denied.

First, BGP has waived the right to demand arbitration. The Parties' disputes began many months ago, with True North and Thurston exchanging accusations and demands with Schiermeyer and BGP. During those discussions, True North and Thurston sought to resolve the disputes through mediation or arbitration on at least six occasions (both orally and in writing). Schiermeyer and BGP rejected each of those efforts. Based on those rejections, the Parties proceeded to pursue their claims through the courts. It would be unjust to allow BGP to change course now, having repeatedly refused to arbitrate related claims. BGP's Motion to Compel Arbitration should be denied.

Second, True North has properly pled its claims against BGP. BGP's challenge to True North's breach of contract and implied covenant of good faith and fair dealing claims cannot stand in light of (a) Schiermeyer's extracontractual actions and (b) the fact that BGP's interpretation of the Terms and Conditions' unconscionable "discretion" provision would render the contract wholly illusory and, therefore, unenforceable. True North's conversion claim also withstands BGP's challenges, since Schiermeyer and BGP wrongfully converted True North's property outside the bounds of the Terms and Conditions, and True North sufficiently asserted its ownership of the nodes and GALA tokens at issue. And finally, there are valid underlying claims supporting True North's claim for declaratory relief. Under the circumstances, the dismissal of any claims—though not warranted—should be without prejudice.

For these reasons, BGP's Motion must be denied in its entirety.

## STATEMENT OF FACTS

Although a fulsome statement of facts is set forth in True North's Amended Counterclaims and Crossclaims (cited hereinafter as "TN Am. CC") [Dkt. No. 75], and is incorporated by reference herein, certain factual allegations are excerpted and discussed further below to correct the selective recitations BGP presents in its Motion.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8 and 12(b)(6) impose a low pleading hurdle for plaintiffs to cross. Typical notice pleading requires nothing more than a "short and plain statement" of a plaintiff's entitlement to relief. Fed. R. Civ. P. 8. In evaluating whether a claim is sufficient under Rule 12(b)(6), the reviewing court "must accept the allegations of the complaint as true and construe those allegations, and any reasonable inferences that might be drawn from them, in the light most favorable to plaintiff." *Gaines v. Stenseng*, 292 F.3d 1222, 1224 (10th Cir. 2002). Well pleaded facts provide "plausible grounds" that "discovery will reveal evidence" to support the plaintiff's allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *see also Russell v. Nebo Sch. Dist.*, 2016 WL 4287542, at *1 (D. Utah Aug. 15, 2016) (same).

In assessing a motion to dismiss for failure to state a claim, "the court need only satisfy itself that [the claimant has] pled a viable legal theory that entitles [it] to relief on the claim asserted, not that each of [the claimant's] asserted theories are viable in themselves." *Disability Law Ctr. v. Utah*, 180 F. Supp. 3d 998, 1007 n.5 (D. Utah 2016); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[A] claim has 'facial plausibility' when the [claimant] pleads factual content that allows [the] court to draw [the] reasonable inference that defendant is liable for [the] misconduct alleged."); *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (holding that if

3

a complaint "omits some necessary facts . . . it may still suffice so long as the court can plausibly infer the necessary unarticulated assumptions"). Thus, a party is not required to assert a "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 547; *see also Russell*, 2016 WL 4287542 at \*1 (a complaint must include enough factual matter to "suggest" that the plaintiff is entitled to relief). In other words, "specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal quotation marks and citation omitted). The Tenth Circuit has recognized that "[g]ranting [a] motion to dismiss is a harsh remedy which must be cautiously studied . . . to effectuate the spirit of the liberal rules of pleading [and] protect the interests of justice." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009).

## ARGUMENT

### A. BGP's Motion to Compel Arbitration Must Fail

True North's crossclaims against BGP do not require arbitration. In the months leading up to the filing of True North's crossclaims, on multiple occasions, True North proposed that the Parties arbitrate and/or mediate this dispute. In each instance, Schiermeyer and BGP refused and disregarded True North's requests, thus waiving the right to seek to arbitrate them now.

BGP asserts that True North "ignores the Arbitration Provision" contained in the Terms and Conditions. BGP MTD at 8. But this is false, given that (a) True North acknowledged this language in its amended counterclaims, *see* TN Am. CC ¶ 81,[1] and (b) True North, in direct

---

[1] If anything, it is BGP that has ignored this language in True North's Amended Crossclaims, and has ignored the accompanying passage stating that "[o]n *multiple occasions* during the summer of 2023, before either party had filed a lawsuit against the other (in the proceeding

4

communication with Schiermeyer and BGP's general counsel, proposed arbitration on numerous occasions only to have the proposals rejected. *See* Exhibits A, B, C.[2] Not only does BGP fail to acknowledge True North's multiple requests to arbitrate, it feigns victimhood by claiming that "the FAA allows 'a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate' to petition the court to compel arbitration," BGP MTD at 8 (quoting 9 U.S.C. § 4), implying that *True North—rather than BGP—*was the party that failed, neglected, or refused to arbitrate. This is simply not true.

BGP's actions in the months leading up to the filing of this action are inconsistent with its claimed right to arbitrate, especially its *repeated refusal of True North's request to arbitrate.* Between June 2 and June 29, 2023, True North's representatives requested arbitration at least three times. On June 2, counsel for True North proposed to Schiermeyer and BGP's in-house counsel a "binding arbitration proceeding to resolve any and all matters of dispute and

---

months in which the Parties were *engaging in settlement discussions*), Thurston directed that his counsel *propose that the Parties seek resolution via mediation and/or arbitration. Schiermeyer rejected each of these requests to pursue such alternatives*." TN Am. CC ¶ 81 (emphasis added). BGP has made no attempt to refute this factual allegation, and as such its truth should be assumed in deciding this Motion.

[2] As for this Court's consideration of these exhibits, this Court has "broad discretion in determining whether or not to accept materials beyond the pleadings in connection with a motion to dismiss," and "[i]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim," then parties "may submit an indisputably authentic copy to the court" since the parties are "obviously on notice of their contents and the general rationale for conversion to summary judgment dissipates." *Nester v. Bank One Corp.*, 224 F. Supp. 2d 1344, 1345-46 (D. Utah 2002) (citing *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). Here, these communications are central to both Parties' claims on this issue, are referenced in but not attached to True North's Amended Crossclaims, *see* TN Am. CC ¶ 81, and there should be no controversy surrounding the Court's assessment of these exhibits.

disagreement." Exhibit A. Schiermeyer and BGP rejected that request on June 4, stating "we are not interested in arbitrating our claims against Wright at this time." On June 21 True North again raised arbitration, stating: "[w]e would propose that the parties arbitrate" their dispute. Exhibit B. Schiermeyer and BGP declined the arbitration request in a response on June 21. *See id.* Counsel for True North reiterated a third arbitration request on June 29, stating that "[w]e continue to propose confidential arbitration." Exhibit C. In their subsequent response on July 6, Schiermeyer and BGP refused to even address the arbitration issue.

Beyond these three written arbitration requests, BGP and Schiermeyer refused at least three additional oral requests to arbitrate in July and August. In at least two virtual meetings and at an in-person settlement conference held in Chicago, True North's counsel again proposed arbitration. Consistent with its position in the preceding months, BGP again rejected these requests. BGP's pattern of refusal and disregard constitute a waiver of its contractual right to arbitration and demonstrate how BGP's actions are inconsistent with its newfound desire for arbitration.

"It is axiomatic that 'the right to arbitration, like any other contract right, can be waived.'" *In re Cox Enters. Inc. Set-top Cable Television Box Antitrust Litig.*, 790 F.3d 1112, 1115 (10th Cir. 2015) (citing *Reid Burton Constr., Inc. v. Carpenters Dist. Council of S. Colo.*, 614 F.2d 698, 702 (10th Cir. 1980)). There are two forms of such a waiver: (1) when a party intentionally relinquishes or abandons its right to arbitrate, and (2) when a party's conduct in litigation forecloses its right to arbitrate. *See BOSC, Inc. v. Bd. of Cty. Commrs.*, 853 F.3d 1165, 1170 (10th Cir. 2017). Courts within the Tenth Circuit use a six-factor test to determine whether a party has waived its right to arbitrate. *See In re Cox*, 790 F.3d at 1115. Those factors are:

> (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place; and (6) whether the delay affected, misled, or prejudiced the opposing party.

*Peterson v. Shearson/Am. Express, Inc.*, 849 F.2d 464, 467–68 (10th Cir. 1988) (internal quotation marks and citation omitted). A court's assessment of these factors "do[es] not apply a 'mechanical process in which each factor is assessed and the side with the greater number of favorable factors prevails.'" *In re Cox*, 790 F.3d at 1116 (citation omitted). But "these factors reflect certain principles that should guide courts in determining whether it is appropriate to deem that a party has waived its right to demand arbitration." *Hill v. Ricoh Ams. Corp.*, 603 F.3d 766, 773 (10th Cir. 2010). The court's focus is on preventing parties from "play[ing] fast and loose with the judicial machinery and deceiv[ing] the courts" and, thus, "[a]n important consideration in assessing waiver is whether the party now seeking arbitration is improperly manipulating the judicial process." *In re Cox*, 790 F.3d at 1116 (internal quotation marks and citations omitted).

As discussed, BGP explicitly refused True North's multiple requests to arbitrate. Further, the "litigation machinery" has in fact "been substantially invoked" and the Parties were and are now "well into preparation of a lawsuit before the party notified the opposing party of an intent to arbitrate." *Peterson*, 849 F.2d at 467. The Parties have already engaged in a considerable amount of costly and time-consuming motions practice, and the Court has undoubtedly become well versed in all the disputed issues. Litigation has been proceeding for months. Nearly all the

7

same issues would still be litigated (with the inevitability of the same discovery sought, the same depositions taken, and so on in both fora) regardless of whether BGP were allowed to arbitrate a portion of True North's crossclaims here. Thus, it would offend notions of efficiency, judicial economy, and conservation of party resources to separate out BGP from this action via its demand for arbitration under these circumstances.

This Court should not countenance BGP's disingenuous request to arbitrate. In making this request, BGP is attempting to game the system and "improperly manipulat[e] the judicial process." *In re Cox*, 790 F.3d at 1116 (citations omitted) (internal quotation marks omitted). Dismissing the claims against BGP pursuant to an arbitration agreement between the Parties after BGP repeatedly refused to arbitrate would be an injustice to True North and needlessly propagate duplicative proceedings.

**B.    True North's Crossclaims Do Not Fail to State Claims for Relief**

**1.    Schiermeyer's *Ultra Vires* Actions Causing BGP's Breach Cannot Be Validated by the Unconscionable Discretion Provision of BGP's Terms and Conditions**

BGP asserts that "[e]ven if this Court disagrees that this claim must be arbitrated, it fails because burning of the GALA tokens and shutting off the nodes are within Gala Games' bargained-for rights under the Terms and Conditions." BGP MTD at 11. But this is like a bank saying that it has the discretion to torch someone's savings, or a brokerage firm has the right to take someone's investments for itself just because it felt like it. It simply cannot be that BGP has the freedom to destroy or steal any or all the community members' nodes or rewards for no valid justification at all, as it has done here with True North's GALA tokens and nodes. No fair reading of the Terms and Conditions supports such an argument. Moreover, in burning and

8

coopting True North's assets, Schiermeyer and BGP acted well outside of the scope of the Terms and Conditions—with no authorization from the Board and with no regard to required corporate governance processes—causing BGP to breach the contract. Schiermeyer's rogue actions cannot be construed as legitimate exercises of BGP's "discretion" under the Terms and Conditions. Thus, BGP's argument must fail.

BGP's Terms and Conditions purport to govern the use of nodes to generate GALA tokens. These Terms & Conditions memorialize the fact that "[w]hen a User purchases, earns, or receives any NFT or digital reward [through] the Smart Contract process [including GALA tokens, as defined in § 1.3 on 'GALA Rewards'], *the User owns completely and outright the NFT and/or digital reward*" (emphasis added). The Terms and Conditions also acknowledge users' ability to sell or transfer their GALA tokens via digital exchanges (involving digital platforms such as the Ethereum network, MetaMask, and Coinbase—which would also encompass trading platforms like Genesis). True North has performed its contractual obligations under the Terms and Conditions and has not triggered any of the clauses set forth in the suspension provision.

BGP argues that, notwithstanding the clear language of the Terms and Conditions confirming node owners' ownership of both the nodes and rewards, the ownership is not really ownership and that the broad "any other reason at GALA's discretion" language in the Terms and Conditions justified both the burning of True North's GALA and the repossession of its nodes. *See* BGP MTD at 11-12. But BGP cannot invoke such overbroad language simply because nodes are generating GALA tokens and those tokens are being sold or traded in the marketplace. Based on its reading of this "any other reason" clause alone, BGP could justify

suspending all community members' nodes for no reason—other than because it felt like it, whenever it felt like it. An interpretation that leads to this result is inconsistent with the provisions and spirit of the Terms and Conditions, would be unconscionable, and would render the clause unenforceable.

Under Cal. Civ. Code § 1670.5, if a "court as a matter of law finds . . . any clause of the contract to have been unconscionable at the time it was made the court . . . may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." The California Supreme Court has explained:

> [U]nconscionability has both a "procedural" and a "substantive" element, the former focusing on "oppression" or "surprise" due to unequal bargaining power, the latter on "overly harsh" or "one-sided" results. . . . The prevailing view is that [procedural and substantive unconscionability] must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability. But they need not be present in the same degree. Essentially a sliding scale is invoked that disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves. In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.

*Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000) (internal quotation marks and citations omitted). Regarding procedural unconscionability, the California Supreme Court has stated:

> [A] finding of procedural unconscionability does not mean that a contract will not be enforced, but rather that courts will scrutinize the substantive terms of the contract to ensure they are not manifestly unfair or one-sided. . . . [T]here are degrees of procedural unconscionability; at one end of the spectrum are contracts that have been freely negotiated by roughly equal parties, in which there is no procedural unconscionability. . . . Contracts of adhesion that involve surprise or other sharp practices lie on the other end of the spectrum. . . . Ordinary contracts of

> adhesion . . . contain a degree of procedural unconscionability even without any notable surprises, and bear within them the clear danger of oppression and overreaching.

*Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1244 (2016) (internal quotation marks and citations omitted). And of substantive unconscionability, the California Supreme Court has further stated:

> The unconscionability doctrine ensures that contracts, particularly contracts of adhesion, do not impose terms that have been variously described as "overly harsh," "unduly oppressive," "so one-sided as to shock the conscience," or "unfairly one-sided." . . . These include terms that impair the integrity of the bargaining process or otherwise contravene the public interest or public policy, terms that attempt to alter in an impermissible manner fundamental duties otherwise imposed by the law, fine-print terms, or provisions that seek to negate the reasonable expectations of the nondrafting party, or unreasonably and unexpectedly harsh terms having to do with price or other central aspects of the transaction.

*Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1145 (2013) (internal quotation marks and citations omitted). Considering these legal standards, this clause of BGP's Terms and Conditions (at least as interpreted by BGP) is both procedurally and substantively unconscionable.

Procedurally, BGP's Terms and Conditions is a contract of adhesion, so it bears a "clear danger of oppression and overreaching," *Baltazar*, 62 Cal. 4th at 1244. Substantively, such unfettered discretion as proposed by BGP would be "oppressive" and "so one-sided as to shock the conscience." *Sonic-Calabasas A, Inc.*, 57 Cal. 4th at 1145. The idea that BGP can burn the GALA rewards or suspend and steal the nodes of True North or any other community member at will and for no reason at all is beyond "unreasonably and unexpectedly harsh." *Id.*

Perhaps as importantly, this is not a case in which BGP staff neutrally exercised the Company's discretion to take corrective action under its Terms and Conditions. Rather, this was Schiermeyer acting on BGP's behalf, enacting vigilante self-help to cut True North off from

11

these assets almost immediately after the Court denied his motion for essentially the same relief. Such a drastic action—in suspending a substantial plurality of all outstanding nodes—was neither presented to nor approved by BGP's Board. And, although Schiermeyer caused BGP to commit it, it was not a sanctioned and legitimate exercise of BGP's discretion. BGP should not permit its officers to pursue personal vendettas under the auspices of its authority, and it was a manifest breach of its Terms and Conditions to do so here.

BGP argues that it can do whatever it wants with any node owners' GALA rewards and nodes (including True North's), rewards and nodes that, by definition, are owned outright by the purchasers and owners of those assets. BGP has not even purported to offer any rational limiting principle for its position. Schiermeyer's lashing out cannot be blessed as an exercise of BGP's discretion. Without reliance on the unenforceable "discretion" clause, BGP has not identified any other alleged flaw in the pleading of True North's Crossclaim for breach of contract. Accordingly, BGP's motion to dismiss that claim must fail.

### 2. True North Sufficiently Pled Breach of the Implied Covenant of Good Faith and Fair Dealing

BGP next asserts that its unfettered exercise of discretion cannot implicate the implied covenant of good faith and fair dealing because that principle cannot contradict the express terms of an agreement. *See* BGP MTD at 13. As with the breach of contract claim, however, BGP's argument must fail.

Under California law, parties to commercial contracts are not afforded unfettered discretion to act for any or no reason at all, even if an agreement suggests that they are entitled to do so. Instead, "the implied covenant of good faith is . . . applied to contradict an express contractual grant of discretion when necessary to protect an agreement which otherwise would

be rendered illusory and unenforceable." *Third Story Music, Inc. v. Waits*, 41 Cal. App. 4th 798, 806 (1995); *see also City of Chula Vista v. Stephenshaw*, 91 Cal.App.5th 352, 429 (Cal. Ct. App. 2023) (same). Here, the only consideration BGP provided in this transaction were the nodes. If, as argued, BGP could burn node owners' GALA rewards and suspend or terminate any or their nodes for any or no reason at all, despite receiving tens or hundreds of thousands of dollars in value as consideration for each such node, the agreements governing the nodes' acquisition and use would be illusory and unenforceable. This is a "textbook case" in which "a promise to use good faith would necessarily be implied" to create the needed mutuality. *See Third Story Music, Inc.*, 41 Cal. App. at 808.

As stated in more depth above, BGP had no legitimate basis for its actions, and its actions and its interpretation of the contract renders the agreement illusory, thus breaching the implied covenant of good faith and fair dealing. True North has sufficiently pled this claim.

### 3. True North Sufficiently Pled Conversion

True North has met its burden of proving all the elements of a conversion claim required to survive a motion to dismiss. BGP's claims to the contrary must fail.

As Schiermeyer does in his motion, BGP asserts that True North failed to show that a duty independent of the Terms and Conditions was violated. *See* BGP MTD at 14-15. BGP similarly cites to *Excel Construction, Inc. v. HKM Engineering, Inc.* for this notion. *See id.* (citing *Excel Constr., Inc. v. HKM Eng'g, Inc.*, 2010 WY 34, ¶ 31 (Wyo. 2010)). But as the court noted by its reference to a relevant Ninth Circuit opinion, claims are "not barred [if] they relate[] to behavior outside the contract [that] violated [extra-contractual] obligation[s]"—for instance, duties arising "under [state] law." *Id.* ¶ 29 (discussing *Giles v. General Motors Acceptance*

13

*Corp.*, 494 F.3d 865 (9th Cir. 2007)). Here, BGP acted (under Schiermeyer's direction)—as Schiermeyer *himself essentially admits*, *see* ES Am. Compl. ¶¶ 82-84—to burn and deprive Thurston and True North of the value of GALA rewards that True North owned outright, and to arbitrarily foreclose True North from accessing and reaping the benefits of its thousands of Gala nodes. This was not BGP acting in accordance with its duly enacted procedures of corporate governance. It was Schiermeyer stepping outside of those bounds to pursue his own tortious agenda. This wanton behavior was not supported by the Terms and Conditions between BGP and node holders like True North (to which Schiermeyer is not personally a party), but instead constituted behavior "outside the contract" committed to deprive True North of the value of its assets. For these reasons, and for those identified in the two immediately preceding Sections above, the Company's Terms and Conditions did not justify Schiermeyer and BGP's actions underlying the conversion claim.[3]

BGP also asserts that True North has failed to plead the required ownership element of a claim for conversion. *See* BGP MTD at 14-15. True North has asserted that it has valid ownership interests in its Gala nodes[4] and the GALA tokens that those nodes have generated.

---

[3] True North also asserts this conversion claim in the alternative, to the extent that the Court is inclined to invoke the economic loss rule (despite the fact that Schiermeyer's conduct has been committed outside the bounds of BGP's Terms of Conditions); as True North has adequately pled that True North owns the nodes and GALA tokens at issue, the burn and suspension was either a breach of the Terms and conditions, or, in the alternative, can constitute conversion of the GALA and nodes.

[4] BGP asserts that the Terms and Conditions state that "ownership" of nodes does not represent or constitute any "ownership right." BGP MTD at 14-15. BGP's argument that "ownership," as set forth in the Terms and Conditions, does not really mean "ownership" is baffling. In offering this made-for-litigation interpretation, BGP only quotes portions of the provision at issue, and does not acknowledge the broader context. The entire passage reads as follows:

The Terms and Conditions memorialize the fact that "[w]hen a User purchases, earns, or receives any NFT or digital reward [from] the Smart Contract process [including GALA tokens, as defined in § 1.3 on "GALA Rewards"], the User owns completely and outright the NFT and/or digital reward." However, BGP contends that True North "fail[ed] to plainly allege . . . that it is entitled to any of the GALA v2 that were issued to others." BGP MTD at 15. But this assertion ignores both the plain language of True North's pleadings as well as the practical reality of the GALA v2 "upgrade." True North specifically alleged that v2 tokens *were* created to correspond with all its v1 tokens, but *Schiermeyer* "directed BGP to deposit those replacement tokens into wallets controlled by Schiermeyer personally, and then he burned those tokens." TN Am. CC ¶ 45. The whole concept of the v2 conversion, at least as it was publicized before Schiermeyer

---

> 8. DISCLOSURES & RISKS
> 8.1 Notification. GALA notifies each User of certain disclosures and risks associated with blockchain NFT and digital rewards and their associated technology and protocols. GALA Services are not an investment product, and no action, notice, communication by any means, or omission by GALA shall be understood or interpreted as such. GALA has no influence whatsoever on the GALA Blockchain, the transactions and consensus protocols, or the NFTs or digital rewards, including the GALA Reward. Ownership of a GALA App or Game Node or the use of GALA Services does not represent or constitute any ownership right or stake, share or security, debt or equivalent right, or any right to receive any future revenue or form of participation in or relating to any blockchain or digital reward, including the GALA Blockchain or GALA Reward.

Taken in context, this language clearly concerns disclaiming that ownership of nodes entails an ownership interest, *i.e. a security interest*, in the Company. Thus, a much more straightforward reading of the language set forth in the Terms and Conditions is that ownership of the nodes does not bestow an "ownership right . . . to receive any future revenue or form of participation in or relating to any blockchain or digital reward." That reading of the language is not the same thing as BGP's suggestion that node owners do not own their nodes or the rewards generated therefrom. Nor is BGP's proposed interpretation at all consistent with the fact that Schiermeyer has used the term "node *owner*" throughout his pleadings, including his motion to dismiss. Thus, at best, this disputed question of node ownership is a question for the trier of fact that should not be resolved at the motion to dismiss stage.

admitted his ulterior scheme, was that all node owners' GALA v1 tokens would be replaced with v2 tokens, and their old v1 tokens would cease to have any value. True North has pled it had an ownership interest in those v2 tokens that Schiermeyer withheld and then destroyed.

Thus, despite BGP's arguments to the contrary, True North has sufficiently pled conversion.

    **4. True North Sufficiently Established the Need for Declaratory Relief**

Finally, BGP seeks to dismiss Count thirteen for failure to state a claim for declaratory relief on the grounds that the underlying substantive claims are subject to dismissal. As established above, however, True North has adequately pled substantive claims for each of the counts discussed herein. Although there are factual disputes surrounding these claims, dismissing them is unwarranted given that their investigation expands outside the scope of a motion to dismiss. Therefore, BGP's motion to dismiss Count thirteen should be denied.

**C. True North's Claims Should Not Be Dismissed with Prejudice**

BGP asserts that True North's crossclaims should be dismissed with prejudice because further amendments to True North's amended crossclaims would prove futile. BGP is wrong.

"Where a complaint fails to state a claim under Rule 12(b)(6), dismissal without prejudice is appropriate where granting leave to amend would not be futile." *The Sherwin-Williams Co. v. SUSE, LLC*, 2015 WL 10990185, at *7 (D. Utah Oct. 23, 2015) (citing *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006)). Moreover, Rule 15(a)(2) provides that "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Here, True North has adequately pled all its claims against BGP, and most if not all of BGP's assertions essentially come down to disputed issues of fact that cannot be resolved

at the motion to dismiss stage. If the Court is inclined to credit any of BGP's challenges to the sufficiency of True North's pleadings, then justice requires that True North be permitted to amend its pleadings to address them.

Accordingly, although True North sufficiently pled all claims in light of the applicable notice pleading standards, True North respectfully requests that any claim dismissals the Court is inclined to grant be granted without prejudice and with leave to amend.

## CONCLUSION

For all the reasons set forth above, True North respectfully requests that BGP's Motion be denied in its entirety.

DATED February 2, 2024

> GREENBERG TRAURIG LLP
> /s/ *Marc Rasich*
> Marc Rasich
> John Huber
> Daniel Wadley
> Alexander Baker
>
> *Attorneys for Defendants, Counterclaimant, and Crossclaim Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of February 2024, a true and correct copy of the foregoing was filed with the Court's electronic filing system and thereby served on counsel of record.

Paul W. Shakespear
Cameron Cutler
Natalie Beal
SNELL & WILMER LLP
15 West South Temple, Suite 1200
Gateway Tower West
Salt Lake City, UT 84101
pshakespear@swlaw.com
ccutler@swlaw.com
nbeal@swlaw.com

Abram L. Moore
Christian A. Zazzali
K&L GATES LLP
70 West Madison Street, Suite 3100
Chicago, IL 60602
abe.moore@klgates.com
christian.zazzali@klgates.com

David L. Mortensen
Monica S. Call
FOLEY & LARDNER LLP
95 S. State Street, Suite 2500
Salt Lake City, UT 84111
dmortensen@foley.com
mcall@foley.com

GREENBERG TRAURIG, LLP

*/s/ Lindsey Wharton*