Paul W. Shakespear (14113)
Cameron Cutler (15116)
Natalie Beal (18311)
SNELL & WILMER L.L.P.
15 West South Temple, Suite 1200
Salt Lake City, Utah 84101
Telephone: 801.257.1900
Facsimile: 801.257.1800
Email: pshakespear@swlaw.com
  ccutler@swlaw.com
  nbeal@swlaw.com

Abram I. Moore (admitted *pro hac vice*)
Christian A. Zazzali (admitted *pro hac vice*)
K&L GATES LLP
70 West Madison St., Suite 3100
Chicago, IL 60602
Telephone: 312.781.6010
Facsimile: 312.827.8000
Email:  abe.moore@klgates.com
  christian.Zazzali@klgates.com

*Attorneys for Plaintiff Eric Schiermeyer*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| ERIC SCHIERMEYER, Derivatively on Behalf of Nominal Defendant, BLOCKCHAIN GAME PARTNERS, INC. D/B/A GALA GAMES,<br><br>Plaintiff,<br><br>vs.<br><br>WRIGHT THURSTON and TRUE NORTH UNITED INVESTMENTS, LLC,<br><br>Defendants,<br><br>BLOCKCHAIN GAME PARTNERS, INC. D/B/A GALA GAMES,<br><br>Nominal Defendant. | **PLAINTIFF'S OPPOSITION TO TRUE NORTH'S MOTION FOR PRELIMINARY INJUNCTION ORDERING THE TEMPORARY APPOINTMENT OF A CUSTODIAN**<br><br>Case No. 2:23-cv-00589-HCN-DAO<br><br>Judge Howard C. Nielson<br><br>Magistrate Judge Daphne A. Oberg |

Plaintiff Eric Schiermeyer, derivatively on behalf of Blockchain Game Partners, Inc. ("Company"), in opposition to the motion filed by Defendant True North United Investments, LLC ("True North") for the entry of a preliminary injunction ordering the appointment of a custodian to act as the President and CEO of the Company and take on the role of sole Director of the Company's Board of Directors ("Motion" at Dkt. No. 88), states as follows.

1

## I.      INTRODUCTION

True North's Motion (its third attempt at injunctive relief) asks the Court to appoint a custodian of the Company and to grant the custodian all of the powers of the Company's Board of Directors and officers to manage, control and operate the Company, and thus effectively requests that the Court appoint a receiver. In support of its Motion, True North initially relied in large part upon the allegations of True North's Amended Counterclaims, which were verified by Defendant Wright Thurston. (Dkt. No. 75.) However, at a scheduling hearing after the Motion was filed on January 9, 2024 (the "Hearing"), True North withdrew its reliance upon any of Mr. Thurston's verified allegations in order to avoid subjecting those sworn allegations to scrutiny in a deposition. (Transcript of January 9, 2024 scheduling hearing attached hereto as Exhibit 1 ("Transcript") at pp. 14-15.)

True North ultimately agreed that the Court should rule upon its Motion without holding an evidentiary hearing and without considering any allegations in the Amended Counterclaims. (*Id.* at pp. 14-17.) True North agreed that the Court may consider only the following undisputed facts as "evidence" in support of its Motion: (1) there are two members of the Company's Board of Directors; (2) they are on opposing sides of this lawsuit; (3) each is purporting to sue the other derivatively on behalf of the Company (although the allegations of those competing claims cannot be considered); and (4) the Company Bylaws and Founders Agreement attached to the Motion. (*See Id.* at pp. 29-30; Motion, Exhibits A & B.) In short, in light of True North's agreements at the Hearing, this Opposition responds to a Motion that is materially different from the Motion that was filed. To memorialize the material modifications, attached hereto as Exhibit 2 is a redacted copy of the Motion, removing all factual allegations that are not supported by the limited evidence subject to the Court's consideration in resolving the Motion.

True North has been inconsistent about what legal standard controls its request for appointment of a receiver. In its Motion, True North took the position that it must establish each of the four factors for showing entitlement to a preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure before a receiver may be appointed, arguing that the "likelihood of success" factor should be examined with reference to Wyoming Statute Section 17-16-748 (the "Wyoming Statute"). (*See* Motion at pp. 19-20.) At the Hearing, True North retreated to the position that it need only establish "deadlock" under the Wyoming Statute and nothing more. (*See* Transcript at 11.) Neither of these legal standards for evaluating the Motion is correct.

The Court does not look to Wyoming law when considering whether to appoint a receiver, but to federal law. Further, when considering a motion to appoint a receiver, federal courts do not limit the analysis to the four Rule 65 factors associated with a preliminary injunction. Because of the extraordinary nature of the requested relief, federal courts examine several additional factors (including whether there is evidence of fraud, the availability of a less drastic equitable remedy, and the financial position of the relevant parties) when considering whether to appoint a receiver. True North makes no effort to even acknowledge these factors, much less submit evidence in support of them.

Even under True North's erroneous framing of the legal standards, it fails to submit evidence sufficient to support the disfavored relief it requests. The Motion is not supported by any evidence that the requirements for a preliminary injunction under Rule 65 or the requirements of the Wyoming Statute have been met. Both require a showing that the Company will suffer irreparable injury unless a custodian is appointed and True North has not even identified any such injury, much less submitted evidence showing that irreparable injury will, or even is likely, to occur. True North simply asks the Court to *assume* that

irreparable harm is likely, arguing that because this lawsuit exists the directors may disagree about other unidentified matters in the future. There is no legal basis for this position.

Indeed, if the mere existence of competing derivative claims were sufficient to justify appointing a receiver, then any defendant in a derivative action could simply file a meritless derivative counterclaim and thereby overturn a company's operations by demanding appointment of a receiver. Indeed, that is precisely what Defendants are attempting here.

True North also fails to establish likelihood of success on the merits of any counterclaim. Although True North identifies no counterclaim that would support appointment of a receiver, presumably it relies upon Counterclaim Six, which in a circular fashion simply asks for appointment of a receiver under the Wyoming Statute. However, federal courts appoint receivers only as a means to protect property that is the subject of some valid claim to that property, and will not appoint a receiver as an end in itself. In any event, Counterclaim Six is erroneously founded on the Wyoming Statute which is inapplicable in this action and should be dismissed for that reason (and the other reasons set forth in Plaintiff's Motion to Dismiss the Amended Counterclaims, Dkt. No. 90).

While True North has introduced no evidence whatsoever of imminent harm to the Company absent the appointment of a receiver, there can be little doubt that a court-ordered seizure of control from the only person who has ever acted as president and CEO would be damaging (and potentially catastrophic) to the Company. Indeed, as evidenced by the repeated admonitions of federal courts against appointment of receivers absent extraordinary circumstances, public policy weighs heavily against this type of disruption of control.

Even if the Court could cast aside federal law and the requirements for a preliminary injunction and rely exclusively upon the Wyoming Statute, as True North now argues it should, the Motion should be denied. The Wyoming Statute requires a showing of deadlock and threatened irreparable harm. There is no evidence of either. The mere existence of

derivative claims over past alleged conduct does not establish deadlock in the management of corporate affairs, and True North has not shown evidence of inaction on any particular management issue due to a deadlocked Board.

In summary, True North submits no evidence that would support granting its Motion under either the correct legal standard or the varying incorrect standards it advances. The Motion should be denied.

Finally, the Motion should be denied for the independent reason that Defendants have unclean hands, having stolen and liquidated Company property worth more than $130 million, and True North should be required to post a significant bond if a receiver is appointed.

## ARGUMENT

**I.     Rule 66 sets the legal standard for appointing a receiver, and the Court should decline to apply any other legal standard in resolving the Motion.**

The Court should analyze True North's Motion with reference to the seven factors relevant to the appointment of a receiver in federal courts and should not be guided by the various other legal standards True North advances, including the Wyoming Statute.

**A.     True North's Motion in actuality seeks appointment of a receiver.**

True North asks the Court to appoint a receiver for the Company, with all of the powers of the Company's Board of Directors, president and chief executive officer.  Although nominally a motion to appoint a "custodian," True North asks the Court to grant this custodian the power to manage, operate and control the Company during the pendency of this case. This is a receiver. *See Hill on Behalf of Republic First Bancorp Inc. v. Cohen* 40 F.4th 101, 110 (3d Cir. 2022) ("Receivers [are] individuals appointed to 'manage, operate, and control' a corporation during the pendency of a legal proceeding."). Indeed, "[h]aving an ability to control the . . . corporation can in fact be a defining characteristic of a receiver." *Id*. The fact that True North asks for appointment of a "custodian" is of no moment, as "[a] receiver by

5

any other name, or by no name, is still a receiver." *Id*. (quoting *In re Pressman-Gutman Co.*, 459 F.3d 383, 393 (3d Cir. 2006), and *United States v. Sylacauga Props., Inc.*, 323 F.2d 487, 490 (5th Cir. 1963)). Indeed, counsel for True North acknowledged at the Hearing that it is seeking "appoint[ment] of a custodian, just like a receiver . . . to manage the company." (Transcript, p. 16:14-17.)

> **B. Federal law applying Rule 66 governs the Court's resolution of True North's Motion, and holds that receivers should be appointed only in extraordinary circumstances to preserve property**.

Because True North asks this Court, a federal district court, to appoint a receiver, federal law applies. Rule 66 of the Federal Rules of Civil Procedure applies to situations where, as here, a party requests a receiver, and states that "[t]hese rules govern an action in which the appointment of a receiver is sought . . . [b]ut the practice in administering an estate by a receiver or a similar court-appointed officer must accord with the historical practice in federal courts or with a local rule."[1] That is because "the appointment of a receiver in a diversity case is a procedural matter governed by federal law and federal equitable principles." *Myles v. Sapta*, 139 F.3d 912, 1998 WL 45494 *3 (10th Cir. 1998) (unpublished) (quoting *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316 (8th Cir. 1993)).

Significantly, contrary to True North's assertions that the Wyoming Statute somehow applies a different and controlling standard, "[b]road state receivership provisions 'cannot therefore add to the equitable powers of a federal [district court] sitting in that State." *Id*. (quoting *Inland Empire Ins. Co. v. Freed,* 239 F.2d 289, 292 (10th Cir. 1956)); *see also Britton v. Green*, 325 F.2d 377, 382 (10th Cir. 1963) ("a federal court of equity should not

---

[1] "[I]s the appointment of a receiver a part of the 'administration of estates'? Probably it is, although there is no clear authority on the point. Indeed, the absence of authority itself, (there are remarkably few cases that refer to Rule 66 in any material way), suggests that the appointment of receivers is part of 'the practice in the administration of estates.'" § 2982 *Scope and Construction of Rule 66*, 12 Fed. Prac. & Proc. Civ. § 2982 (3d ed.)

6

appoint a receiver . . . even though a State court, exercising concurrent jurisdiction, may have appropriately appointed a Receiver in the same circumstances"); *Waag v. Hamm*, 10 F. Supp. 2d 1191, 1193 (D. Colo. 1998) ("federal procedural standards may preclude receivership even when a state statute would compel appointment in a state court of concurrent jurisdiction").

Under federal law as explained by the Tenth Circuit, "the power to appoint a receiver with authority to take custody and control of property and operate it as a going concern is a delicate one which is jealously safeguarded, and it should be exerted sparingly." *Skirvin v. Mesta*, 141 F.2d 668, 673 (10th Cir. 1944) (reversing district court's order that continued receivership because there was no evidence that the companies were grossly mismanaged by removed president). Seizing control of a company may itself cause irrevocable harm to the business and to third-parties, and thus a "court should be cautious and circumspect in the exertion of the remedy because perversion or abuse may work great hardship." *Id.; see also Netsphere, Inc. v. Baron*, 703 F.3d 296, 305 (5th Cir. 2012) ("[r]eceivership is an extraordinary remedy that should be employed with the utmost caution"); *United States v. Bradley*, 644 F.3d 1213, 1310 (11th Cir. 2011) ("appointment of a receiver ... is an extraordinary equitable remedy"). "[T]here is no occasion for a court of equity to appoint a receiver of property of which it is asked to make no further disposition" and therefore a federal court "will not appoint a receiver where the appointment is not ancillary to some form of final relief which is appropriate for equity to give." *Gordon v. Washington*, 295 U.S. 30, 37, 55 S. Ct. 584, 588, 79 L. Ed. 1282 (1935).

Federal courts consider seven factors when ruling on a motion to appoint a receiver: "(1) the probability of plaintiff's success in the action and the possibility of irreparable injury to plaintiff's interests in the property; (2) probability that fraudulent conduct has occurred or will occur to frustrate the plaintiff's claim; (3) financial position of the debtor; (4) imminent danger of the property being lost, concealed, injured, diminished in value, or squandered; (5)

inadequacy of available legal remedies; (6) lack of a less drastic equitable remedy; and (7) the likelihood that appointment of a receiver will do more good than harm." *McKean v. McClure*, No. CIV-16-320-SPS, 2017 WL 1843114, at *3 (E.D. Okla. May 5, 2017) (quoting *American Bank & Trust Co. v. Bond International Ltd.*, 2006 WL 2385309, at *8 (N.D. Okla. Aug. 17, 2006) and *Aviation Supply Corp.*, 999 F.2d 314, 316–17 (8th Cir. 1993)); *see also* 12 Fed. Prac. & Proc. Civ. § 2983. These "Rule 66 Factors" include those generally considered in connection with a Rule 65 motion for preliminary injunctions, as well as additional factors.

### C. True North improperly relies upon Rule 65 and/or the Wyoming Statute

True North ignores the Rule 66 Factors and well-developed federal law regarding the appointment of receivers, which is the form of injunction requested in the Motion. Instead, True North contends that it must either meet the requirements of Rule 65 governing injunctions of all types and the Wyoming Statute, or perhaps must only show corporate deadlock and nothing more.

First, in the Motion, True North held itself to the standard of meeting all four elements for a preliminary injunction under Rule 65. (*See* Motion at pp. 15-16 (conceding that True North must "establish four elements": "(1) the moving party will suffer irreparable injury unless the injunction issues; (2) the threatened injury to the moving party outweighs any damage to the opposing party; (3) the injunction, if issued, will not be adverse to the public interest; and (4) a substantial likelihood exists that the moving party will prevail on the merits") (citing *Bauchman by & Through Bauchman v. W. High Sch.*, 900 F. Supp. 248, 250 (D. Utah 1995) *aff'd,* 132 F.3d 542 (10th Cir. 1997))).)

Notably, even under this Rule 65 framework for evaluating injunctions of all types, the Court should closely scrutinize True North's request because it seeks a disfavored mandatory injunction that would not just alter the status quo, but would dramatically disrupt

8

the ongoing operations of the Company. *See Vendr, Inc. v. Tropic Techs., Inc.*, No. 2:23-CV-165-DAK-DAO, 2023 WL 3851838, at *5 (D. Utah June 6, 2023) (holding injunctions that alter the status quo and mandatory injunctions are disfavored in the Tenth Circuit and citing *Schrier v. University of Colo.*, 427 F.3d 1253, 1259 (10th Cir. 2005)). Where a party seeks a disfavored injunction, it "must make a strong showing both with regard to the likelihood of success and with regard to the balance of harms" and the injunction "must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *Schrier*, 427 F.3d at 1259 (internal quotations omitted).

Perhaps recognizing that it falls far short of this high bar, at the Hearing, counsel for True North abandoned the Rule 65 factors and argued for a less stringent test:

> All of the remaining issues that are in dispute in this case, frankly, we can efficiently set aside for purposes of the custodian motion and the Court can simply determine whether or not there's a deadlocked board and the deadlock itself prevents the proper functioning of the company.
>
> And if the Court makes that determination, then the Court is then empowered under the Wyoming statute to appoint a custodian to safeguard the company. It's a provision that allows the company to continue to operate in a case just like this where you have a deadlocked board. It's as simple and straightforward as that.

(Transcript at p. 15.) True North's shifted to an argument that the Wyoming Statute alone controls the disposition of its Motion is a plain legal error. *See Myles*, 139 F.3d at *3; *Britton*, 325 F.2d at 382.

However, even if the Wyoming Statute alone controlled, True North's articulation of its requirements at the Hearing was incorrect and its proposed legal standard would be wrong. The Wyoming Statute imposes three requirements for appointment of a custodian or receiver: (1) "The directors are deadlocked in the management of the corporate affairs," (2) "the

9

shareholders are unable to break the deadlock," and (3) "irreparable injury to the corporation is threatened or being suffered."[2] Thus, the statute on its face rebuts the argument advanced by True North's attorney at the scheduling hearing that *deadlock alone* is sufficient to warrant appointment of a custodian. To the contrary, the statute itself reemphasizes the need for a showing of likely irreparable injury in the absence of the appointment of a custodian.

II.     **Under any legal standard, True North has failed to demonstrate that a receiver should be appointed to manage and control the Company.**

Consistent with federal law and Tenth Circuit precedent, the Court should apply the Rule 66 Factors when resolving the Motion, but even if the Court applies the Rule 65 standard or Wyoming Statute standard that True North advances, the Motion should be denied. True North submits no evidence that Plaintiff is engaging in misconduct or mismanagement (or indeed any conduct at all apart from filing a lawsuit). Indeed, True North has submitted no evidence related to *anything that is actually happening* with the Company in the real world, much less evidence sufficient to meet even one of the Rule 66 Factors that the Court must consider before ordering the extraordinary equitable relief of seizing control of the Company and appointing a receiver. Because the Rule 66 Factors overlap in part with the Rule 65 factors, the overlapping factors are examined together below. Moreover, even under the bare-bones test of the Wyoming Statute to which True North has retreated, its Motion fails.

A.     **True North has submitted no evidence of irreparable injury.**

True North has not introduced any evidence whatsoever that the Company will be irreparably injured unless a receiver is appointed. This core requirement is at the center of the

---

[2] The Wyoming Statute also permits appointment of a custodian where "[t]he directors or those in control of the corporation are acting fraudulently and irreparable injury to the corporation is threatened or being suffered" (§ 17-16-748(ii)), but True North has disclaimed any attempt to rely upon any such argument (Transcript at pp. 14-17).

Rule 66 Factors, the Rule 65 factors and the Wyoming Statute and there can be no dispute that such a showing is required.

Rather than submit evidence of irreparable harm, True North asks the Court to *assume* that "irreparable injury is evident and inevitable" because there is some general "deadlock on the Board and shareholder levels" evidenced *solely by the existence of this lawsuit* over alleged past conduct by both parties.[3] (Motion, p. 16; Transcript, p. 15.) True North references hypothetical future agreements and unidentified "key business decisions" that might be frustrated if the two directors do not agree on those as-yet-nonexistent matters. (Motion, pp. 16-17.) It asks the Court to assume that "[t]here is no realistic possibility that [the two directors] could mutually agree on how to exercise their votes on the Board" (Motion, pp. 19-20), but fails to identify a single current business issue upon which the two directors presently disagree, much less an issue that presents an imminent irreparable harm to the Company. There is no evidentiary basis to assume the directors will disagree about future management decisions. To the contrary, to the extent some future matter requiring board approval arises, the Court should actually assume that both directors will mutually agree to proceed in the best interests of the Company in accordance with their fiduciary duties and because both are also major shareholders in the Company.

True North relies heavily upon a single case as support for its argument that the Court should assume irreparable injury in these circumstances. *See* Motion, pp. 16-20 (citing *APEG Energy II, LP v. Veltri*, 2019 WL 2137386 (D. Colo. May 16, 2019) ("*APEG Energy*")). True North argues that "as in *APEG Energy*, irreparable harm is evident here." (Motion, p. 19.)

---

[3] Notably, Plaintiff's claims against Defendants do not suggest that a receiver should be appointed. Those claims relate primarily to Defendants' theft of tokens and nodes from the Company. Defendants do not argue that their theft would have been prevented had a receiver been at the helm or that appointment of a receiver will help secure the return of the stolen property.

Not so. In *APEG Energy*, NASDAQ had threatened to de-list U.S. Energy if its board failed to submit a plan to reconstitute a proper audit committee by a specific date. The board was "deadlocked 2-2 on the task of re-arranging the audit committee," and the plaintiff shareholder sought the appointment of a custodian to replace the CEO. *Id*. at *1. By operation of the company's bylaws, the new CEO would also act as a fifth member of the board, thus breaking the deadlock. The court found that "the damage to U.S. Energy (and, by extension, to APEG as one of its largest shareholders) from a publicly disclosed de-listing process would be difficult to calculate and likely inadequate even if it could be calculated." *Id.* at *2. Solely because of this impending de-listing, the court found irreparable harm.[4] In contrast, True North has submitted no evidence that any injury to the Company is looming, much less the type of irreparable injury that would be caused by de-listing of a public company. It fails to show the likelihood of irreparable harm of any sort.

Because True North has failed to introduce any evidence of irreparable harm that would occur in the absence of a receiver, the Court should deny the Motion. Indeed, if the mere existence of competing derivative claims were sufficient to justify appointing a receiver, then any defendant in a derivative action could simply file a meritless derivative counterclaim and thereby seize control of a company by demanding appointment of a receiver.

---

[4] True North cites five other arguments regarding irreparable harm that the *APEG* plaintiff had made in connection with a different motion (*see APEG Energy II, LP v. Veltri*, 2019 WL 3841243, at *7 (D. Colo. Apr. 23, 2019) ("*APEG I*")), and argues that "the *APEG* Court found that these ongoing injuries, along with the potential NASDAQ delisting, established irreparable harm." (Motion at p. 18.) This is incorrect. The court in *APEG Energy* did not cite or rely upon any of those other alleged injuries as evidence of irreparable harm that supported appointing a custodian.

### B. True North has failed to demonstrate a substantial likelihood of success on the merits of any claim.

True North has offered no evidence suggesting a substantial probability of success in any of its counterclaims against Plaintiff. Quite the opposite, it has withdrawn the verified allegations of its counterclaims, agreeing to rely upon the mere fact that it has filed a purported derivative claim. (Transcript at pp. 14-15, 29-30.) Even the *nature* of True North's derivative counterclaims will not be considered in deciding this Motion, much less the likelihood that True North will succeed on any counterclaim. The lack of any evidence is dispositive of this factor.

True North argues, circularly, that a custodian should be appointed because it is likely to succeed with its Motion to appoint a custodian. (Motion pp. 17, 19.) True North misunderstands the likelihood of success factor in this context. Federal courts will not appoint a receiver as an "end" but only as a "means" to preserve property to which a party has a valid claim. *See Gordon*, 295 U.S. at 37. True North fails to even identify any underlying claim that the Company or its assets are being wrongfully endangered, much less establish the probability of success with such claim. Similarly, even under the incorrect Rule 65 standard advanced by True North, it must identify an underlying claim for equitable relief upon which it is likely to succeed, and submit evidence showing that it will likely prove the elements of the underlying claim. *See First Western Capital Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1141 (10th Cir. 2017). True North fails to do so.

Presumably, True North hopes to rely upon Counterclaim Six, which seeks only the appointment of a custodian under the Wyoming Statute. However, this claim should be dismissed for all of the reasons set forth in Plaintiff's Motion to Dismiss the Amended Counterclaims (Dkt. No. 90, pp. 15-16) as well as the additional reason that the Wyoming Statute does not apply to the appointment of a receiver in federal court. (*See supra*, Section

4869-4568-5410

(I)(B)). Because Counterclaim Six should be dismissed, True North is not likely to succeed with that counterclaim and its Motion should be denied.

True North argues that the *APEG Energy* and *APEG I* cases support its position that it is likely to succeed on the merits of some claim. It does not. There, the plaintiff shareholder sued because the defendant "[held] himself out to be and act[ed] as president and CEO of U.S. Energy" when in fact the majority of the non-conflicted directors had voted to remove him from that position (defendant, as director, had voted against his own removal as CEO). *APEG Energy* at *1. In *APEG I*, the court examined the merits of that claim and found that the plaintiff "has made the necessary showing of likelihood of success on the merits as to the vote to terminate [defendant] as president and CEO" *APEG I*, 2019 WL 3841243, at *7. In *APEG Energy*, the court held that the likelihood of success in proving that the president had been removed supported its appointment of a custodian to replace the defendant as CEO. *APEG Energy* at *2-3. Unlike in *APEG Energy* and *APEG I*, True North has not submitted any evidence that it is likely to succeed in any counterclaim to remove Plaintiff as President, CEO or director of the Company.

### C. The appointment of a receiver will do more harm than good to the Company and is against public policy.

True North attempts to balance Plaintiff's personal interests in acting as an officer of the Company against the interests of the Company as a whole. This is the wrong measure. The Court should consider whether appointment of a receiver will be more likely to harm than to benefit the Company (on whose behalf Plaintiff brought this derivative action).

True North offers no evidence that appointing a receiver will benefit the Company, as there is no evidence that the Company is presently mismanaged in any fashion. True North's argument that the Company "will suffer significant harm from continued Board and shareholder deadlock" is wholly conclusory, unsupported by a single fact. (Motion, p. 20.)

On the other hand, it would be extraordinarily disruptive to the Company if a receiver was appointed to assume the role of the President and CEO. Plaintiff steered the Company from a start-up to the successful venture it is today and his historical knowledge, understanding of present operations, and expertise at the helm of an innovative tech company are irreplaceable.

Further, court-ordered seizure of the Company's operations via appointment of a receiver could cause users, customers, vendors, lenders, node operators and others to cut ties with the Company, as they may wrongly assume that the Company is in serious peril. Thus, by inflicting reputational harm and undermining stakeholder confidence in the Company, the appointment of a receiver could very well *cause* irreparable injury. Indeed, the likelihood that the unnecessary appointment of a receiver "may work great hardship" is one of the reasons why "[a] court should be cautious and circumspect in the exertion of the remedy." *Skirvin*, 141 F.2d at 673.

As set forth above, federal courts have repeatedly warned against appointing receivers in any but the most extreme circumstances. This shows that public policy disfavors such a court-ordered intervention in the affairs and operations of a private corporation. While True North argues that "policy favors companies pursuing the best interests of their stakeholders" there is no evidence that the Company is not doing so. (Motion, p. 20.)

In short, True North is correct that "there is no contest as to the balance of harms and public policy factors." (*Id*.)  Both weigh heavily against appointing a receiver in this case.

> **D.     True North ignores the remaining factors considered by federal courts when determining whether to appoint a receiver.**

True North at least makes an attempt to address the required Rule 66 Factors discussed in section (I)(C) above because they align with the requirements for a preliminary injunction under Rule 65.  As for the remaining Rule 66 Factors considered by courts when ruling on motions to appoint a receiver, True North wholly ignores them:

**Fraudulent conduct**. True North does not purport to submit evidence of *any* conduct by Plaintiff, much less fraudulent conduct.

**Financial position**. True North does not purport to submit any evidence of the financial position of the Company or Plaintiff.

**Imminent danger.** True North has provided no evidence that the Company is in imminent danger of suffering any injury.

**Inadequacy of legal remedies**. Because True North fails to identify any threatened injury, it is impossible to know whether any such injury could be remedied in damages.

**Lack of a less drastic equitable remedy**. Again, because there is no evidence of harm to be remedied, an alternative equitable remedy is uncertain. If Plaintiff was engaged in some conduct that threatened the Company (he is not), then an injunction against such conduct would be a less drastic equitable remedy than appointing a receiver. To the extent that the alleged harm is general "deadlock" because the two directors are no longer on friendly terms, then a less drastic equitable remedy would be to remove Wright Thurston as a director of the Company, as requested by Plaintiff in Count VI of the Amended Complaint. (Dkt. No. 14 at ¶¶ 171-179.) This would be far less disruptive to the Company than removing the President and CEO who has managed its operations from day one.

Each of these factors, ignored by True North, weighs against appointment of a receiver. Thus, the Motion should be denied.

### E.     True North fails to even satisfy the clearly erroneous bare-bones legal standard to which it retreated at the scheduling hearing.

After abandoning any of the allegations verified by Mr. Thurston, True North argued that a showing of "deadlock" alone is sufficient for a federal court to appoint a custodian

under the Wyoming Statute.[5] Even if this were true (and it certainly is not), True North has failed to demonstrate even this threshold issue.

The Wyoming Statute applies only where there is deadlock "in the management of corporate affairs." As illustrated in *APEG Energy*, this means that the deadlock must be over a particular management decision (there, the task of re-arranging the company's audit committee). One Wyoming court examined the meaning of "deadlock" as used in the Wyoming Statute and concluded that "'deadlock' has a two-part definition: (1) inaction (2) caused by dissension among decisionmakers." *Wilkinson v. Hawaiian Hospitality Group, Inc.*, 2023 WL 2845794 (Wy. Ch.), ¶ 15 (finding the plaintiff had failed to show deadlock by submitting evidence that the board of directors was failing to act).

Here, True North has not submitted evidence of deadlock on any pending management issue. Instead, it asks the Court to assume deadlock from the fact that the two shareholder/directors have filed derivative claims against one another. But the existence of derivative claims alone does not lead to a conclusion of corporate deadlock. For example, Plaintiff's derivative claim centers around Wright Thurston's theft and sale of $130 million worth of Company tokens. The existence of that claim does not mean that Plaintiff and Thurston cannot agree to take certain actions benefiting the Company going forward. Indeed, True North offers no evidence that the existence of the derivative claims has done anything at all to interfere with the management of corporate affairs, much less cause terminal "deadlock."

### III. The Motion should be denied because True North has unclean hands.

True North's motion for equitable relief should be denied because it has unclean hands. "The unclean hands doctrine means, in general, that equity will not aid a party whose

---

[5] As set forth above, even if neither Rule 65 nor federal law applied here, the Wyoming Statute on its face requires a showing of irreparable injury in addition to deadlock.

conduct has been unlawful, unconscionable, or inequitable." *CGC Holding Co., Ltd. Liab. Co. v. Hutchens*, 974 F.3d 1201, 1214 (10th Cir. 2020). Here, both True North and the underlying beneficiary of the equitable relief sought, Wright Thurston, have engaged in unlawful and inequitable misconduct. As previously detailed, Defendants stole and liquidated over $130 million worth of Gala tokens and nodes belonging to the Company. (Dkt. No. 14, Amended Complaint.) Should the Court consider any further evidence in support of the Motion at any juncture, it should also permit Plaintiff to submit evidence of Defendants' unclean hands and should deny True North's request for equitable relief.

## IV. True North should be required to post a bond if a receiver is appointed.

Should the Court grant True North's extraordinary request to appoint a receiver (which it should not), the Court should exercise its broad discretion to require True North to post a substantial bond to cover the potential damage to the Company.

Under Rule 65(c), courts have discretion to require a bond in an amount "to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). As the Tenth Circuit has held, district courts must contemplate the imposition of a bond when granting a preliminary injunction. *See Coquina Oil Corp. v. Transwestern Pipeline Co.*, 825 F.2d 1461, 1462 (10th Cir. 1987). This ensures compensation for the harm caused by an improper injunction. *Prop. Mgmt. Bus. Sols. v. Averitte*, No. 2:18-CV-552, 2018 WL 4327922, at *8 (D. Utah Sept. 10, 2018) (requiring a bond in an amount "to compensate a wrongfully enjoined party.")

An improper injunction that disrupts the operations of the Company could cause significant harm to the value of the Company. The last valuation of the Company established a value of hundreds of millions of dollars. If Defendants' injunction issues, they should be ordered to post a bond of $130 million. This is the value of the tokens that Defendants stole from the Company and liquidated, so Defendants should have it available.

## CONCLUSION

True North's Motion should be denied. It has submitted no evidence that appointment of a custodian is necessary. Indeed, it has submitted no evidence that the Company faces any risk of harm whatsoever should Plaintiff remain as President and CEO.

DATED this 2nd day of February, 2024.

SNELL & WILMER L.L.P.

*/s/ Paul W. Shakespear*
Paul W. Shakespear
Cameron Cutler
Natalie Beal

K&L GATES LLP
Abram I. Moore
Christian A. Zazzali

*Attorneys for Plaintiff Eric Schiermeyer*

4869-4568-5410