# Exhibit 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

```
_____
                              )
Schiermeyer,                  )
                              )
      Plaintiff,              )
                              )   Case No. 2:23-cv-00589-HCN-DAO
vs.                           )
                              )
Thurston, et al.,            )
                              )
      Defendants.             )
_____)
```

**MOTION HEARING VIA ZOOM BEFORE THE**

**HONORABLE JUDGE HOWARD C. NIELSON, JR.**


Tuesday, January 9, 2024


Time:  2:00 p.m. to 3:00 p.m.




Reported by Teena Green, RPR, CRR, CBC

      Orrin G. Hatch United States Courthouse
      351 South West Temple, 7.430
      Salt Lake City, Utah   84101
      (801) 910-4092
      teena_green@utd.uscourts.gov

1                              **APPEARANCES**

2     FOR THE PLAINTIFF:

3     ABRAM I. MOORE
      K&L GATES LLP
4     70 W. Madison Street, Suite 3100
      Chicago, IL   60602
5     (312) 372-1121
      abe.moore@klgates.com
6
      CAMERON J. CUTLER
7     SNELL & WILMER LLP
      15 West South Temple, Suite 1200
8     Salt Lake City, UT   84101
      (801) 257-1828
9     ccutler@swlaw.com

10    MONICA S. CALL
      FOLEY & LARDNER LLP
11    95 South State Street, Suite 2500
      Salt Lake City, UT  84111
12    (801) 401-8917
      mcall@foley.com
13
      FOR THE DEFENDANT:
14
      DANIEL J. WADLEY
15    GREENBERG TRAURIG PA
      222 South Main Street, Suite 1730
16    Salt Lake City, UT   84101-2185
      (801) 478-6910
17    wadleyd@gtlaw.com

18    MICHAEL GRAHAM RHODES
      COOLEY LLP
19    3 Embarcadero Center, 20th Floor
      San Francisco, CA   94111
20    (415) 693-2181
      rhodesmg@cooley.com
21

22

23

24

25

```
 1   January 9, 2024                                    2:00 p.m.
 2                     P R O C E E D I N G S
 3        THE COURT:  All right.  Good afternoon.
 4        We're here for a video scheduling conference in
 5   Eric Schiermeyer versus True North United Investments, LLC,
 6   et al.  It's Case No. 2:23-cv-00589.
 7        The purpose of this status conference is to discuss
 8   logistics for addressing the three pending motions:
 9        Docket No. 88, True North's motion for a preliminary
10   injunction;
11        Docket No. 89, Blockchain Game Partners' motion to
12   compel arbitration or, in the alternative, to dismiss;
13        And, Docket No. 90, Mr. Schiermeyer's motion to
14   dismiss.
15        First, though, we'll begin with appearances for the
16   record.
17        First, counsel for the plaintiff and counterclaim
18   defendant, Mr. Schiermeyer.
19        MR. MOORE:  Good afternoon, Your Honor.  Abe Moore
20   appearing pro hoc vice on behalf of Plaintiff Eric Schiermeyer.
21        THE COURT:  All right.  Welcome, Mr. Moore.
22        MR. CUTLER:  And, Your honor, Cameron Cutler as well
23   for Mr. Schiermeyer.
24        THE COURT:  And welcome, Mr. Cutler.
25        All right.  Counsel for the Defendant and
```

1    Counterclaim Plaintiff and Crossclaim Plaintiff True North.

2          **MR. WADLEY:**  Good afternoon, Your Honor.  Daniel

3    Wadley from Greenberg Traurig for True North and for Wright

4    Thurston.  And with me today is Michael Rhodes, who's been

5    admitted pro hoc vice as well.

6          **THE COURT:**  All right.  Thank you.

7          Welcome, Mr. Wadley, welcome Mr. Rhodes.

8          So I gather from that that you represent Mr. Thurston

9    as well as True North.

10         **MR. WADLEY:**  Correct, yes.  That is correct.

11         **THE COURT:**  All right.  Very well.

12         Finally, counsel for Blockchain Game Partners.  I

13   know the status -- you had a different status and two different

14   cases that were consolidated but, at a minimum, you're a

15   crossclaim defendant.

16         **MS. CALL:**  That's right, Your Honor.  Monica Call

17   from Foley & Lardner on behalf of Blockchain Game Partners,

18   Inc.

19         **THE COURT:**  All right.  Welcome, Ms. Call.

20         **MS. CALL:**  Thank you.

21         **THE COURT:**  All right.  Are there any other lawyers

22   on the call that need to enter appearances?

23         All right.  Very well.

24         Okay.  Now, because we are holding this hearing by

25   videoconference and because there's quite a few lawyers

1   involved, we need to be careful to help the reporter create an

2   accurate transcript.  So please speak slowly and clearly.

3   Please do not speak over each other or interrupt and please

4   speak only when directed.  And finally, please put your

5   microphone on mute when you are not speaking, to reduce

6   background noise.

7            All right.  What I want to discuss first is whether

8   it makes sense for the parties to brief and me to resolve the

9   three pending motions simultaneously, or whether it would

10  instead make sense for the parties to first brief and for me to

11  decide the order -- well, rather, let me rephrase that --

12  whether it would make sense to treat the motions in a

13  particular order.

14           And one thing that comes to mind, and I guess I have

15  a question, does anyone think that all of the counterclaims and

16  crossclaims against Mr. Schiermeyer, as well as against

17  Blockchain Games, on which the motion for a preliminary

18  injunction is based, are subject to arbitration?

19           I know there's a motion to compel arbitration.  I

20  know that Blockchain at least thinks that some of the

21  crossclaims or some of the claims are subject to arbitration.

22           Does anyone think that all of the counterclaims and

23  crossclaims on which the pending motion for a preliminary

24  injunction is based are subject to arbitration?

25           Let me just ask you in turn.

1    I'll start with you, Ms. Call.

2    **MS. CALL:**  Thank you, Your Honor.

3    Yes, we believe that all the claims against

4  Blockchain Game Partners as a direct defendant, in this case a

5  crossclaim defendant, are subject to arbitration, because all

6  of them are dependent on either their direct contract claims or

7  their claims that relate to the agreement between the parties

8  that compels arbitration.

9    **THE COURT:**  Right.  What about the -- do you have a

10  position on whether the claims against Mr. Schiermeyer would be

11  subject to arbitration?

12    **MS. CALL:**  We do not.

13    **THE COURT:**  All right.  What about -- I guess,

14  Mr. Moore, Mr. Cutler, I know that you did not move to compel

15  arbitration.

16    Do you have a view on that?

17    I know that -- I gather that the arbitration

18  agreement would be between Blockchain Games and Mr. Thurston,

19  but I also know that it appears -- and many arbitration

20  agreements have fairly broad language.

21    And do you have a position on that?  Do you think

22  that the claims against your client that underlie the

23  preliminary injunction are subject to arbitration?  Have you

24  thought about that or considered it?

25    **MR. MOORE:**  Thank you, Your Honor.  The claims that

1   underlie this motion for preliminary injunction are derivative

2   claims filed by True North as a shareholder against Eric

3   Schiermeyer as a director.  And particularly, we understand

4   that the motion is based upon Counterclaim 6, which is the

5   motion to appoint the custodian.  That claim is not subject to

6   arbitration, in our view, and nobody's moved to compel

7   arbitration of that particular claim.

8         **THE COURT:**  Right.  Because technically it's a

9   derivative claim on behalf of Blockchain against

10  Mr. Schiermeyer.

11         **MR. MOORE:**  Correct, Your Honor.

12         **THE COURT:**  Okay.  That makes sense.  I appreciate

13  that.

14         All right.  And I don't know if you have any thoughts

15  or want to be heard on this, Mr. Wadley or Mr. Rhodes.

16         **MR. WADLEY:**  Yes, Your Honor.

17         Obviously, you know, we are aware of the company's

18  motion to compel arbitration or dismiss.  We do not believe,

19  and for the reasons that we'll articulate more fully in our

20  opposition, that all of the claims that have been raised are

21  subject to arbitration.  We certainly do not believe that the

22  claim to appoint -- or the request to appoint a custodian is

23  subject to arbitration.  And so that one, at the very least, we

24  believe ought to go forward expeditiously and be considered

25  expeditiously.

1          **THE COURT:**  Understood.  Thank you.

2          All right.  Given that, my inclination would be to

3    brief all three motions simultaneously.  If it were the case

4    that there was a plausible argument that everything should be

5    subject to arbitration, I might be inclined to brief that

6    first, but I think -- I think this is messy enough that we

7    probably should have simultaneous briefing.

8          Now, given that there's a pending motion for

9    preliminary injunction, I'd like to have the briefing schedule

10   be expeditious, but also sufficient to allow for adequate

11   briefing and factual development.

12          Magistrate Judge Oberg recently granted the parties'

13   stipulated motion to extend the deadline for response briefs

14   for all three motions to February 2nd.

15          Do all of you believe that gives you adequate time to

16   prepare your responses?

17          **MR. MOORE:**  Your Honor, if I may, no.  If we were

18   going to actually brief the motion for preliminary injunction

19   fully in preparation for a hearing, if that is the direction

20   that we are taking, then we'll require discovery on the

21   allegations upon which that motion is founded in advance of any

22   response.  But I would propose a potential alternative, and we

23   would propose that the motion to dismiss these counterclaims be

24   considered first.  And I can explain briefly why.

25          If the counterclaims are dismissed, there's no need

1    to proceed with discovery and an evidentiary hearing on this

2    preliminary injunction, and there's no evidence cited in this

3    motion for a preliminary injunction other than the allegations

4    in the counterclaims.  So here the allegations and the evidence

5    are the same.  And as set forth in our motion to dismiss, those

6    allegations fail to state a claim.

7         Without a claim, there's no basis for moving forward

8    with an evidentiary hearing.  Put another way, if the

9    allegations fail to state a claim, the same allegations

10   certainly fail to establish a likelihood of success on the

11   merits of that claim, when considered as evidence.  So we

12   believe it would be more efficient to move forward with the

13   motion to dismiss first.

14        **THE COURT:**  All right.  Now, a couple of thoughts on

15   that.  I mean there were some exhibits attached to the motion

16   for preliminary injunction, I mean but they were things like

17   the contract, which presumably could be considered in

18   connection with the motion to dismiss anyway.

19        And I know that there have been declarations filed in

20   the case before, and at least some -- at least one of those

21   declarations I note -- I think Mr. Schiermeyer's declaration is

22   cited in the motion for a preliminary injunction.  So I'm not

23   quite sure -- I want to say I'm not quite sure what evidence

24   the preliminary injunction is relying on in its entirety.

25        It does reference Mr. Schiermeyer's declaration.  It

1  does attach -- it attaches three exhibits.  Off the top, I know

2  one of them is the -- is a contract.  I can't remember off the

3  top what the other two are, but they're documents, they're not

4  exhibits.

5          Do you want to speak to that, Mr. Moore?  I mean are

6  these things that could be adequately considered on a motion to

7  dismiss?

8          **MR. MOORE:**  I would like to address it briefly,

9  Your Honor.

10          Those exhibits are the bylaws, the terms and

11  conditions governing founders' notes and the founders

12  agreement.  All three of those are the documents upon which the

13  counterclaims are based.  So they are -- it doesn't add

14  anything to the allegations in the counterclaim.  That really

15  it is the universe of the evidence.

16          I believe that the motion also does cite to the

17  complaint, the allegations of the complaint, but only for the

18  purpose of saying, look, both parties believe that there's

19  irreparable harm here.  That wouldn't change the fact that the

20  allegations in the counterclaim are insufficient to state a

21  claim and that we should consider that issue first.

22          **THE COURT:**  All right.  And as you said, the

23  documents attached to the preliminary injunction would be

24  subject to consideration under -- you know, on a motion to

25  dismiss.  All right.

1     Does -- I guess, Mr. Wadley, or if your colleague

2     wants to speak to the issue, I don't know who wants to speak to

3     that, but do you have thoughts about that?

4          **MR. WADLEY:**  I do.  Thank you, Your Honor.

5          So I think it's important to understand that Wyoming

6     law permits the appointment of a custodian in the case where

7     there's a deadlocked board to enable the company to continue to

8     operate.  It's not necessary for an individual -- you know, an

9     individual that is seeking this relief to demonstrate

10    wrongdoing or misbehavior on the part of the individuals that

11    are associated with the company.

12         That's an important -- I think that's a very

13    important point to consider when thinking about the briefing

14    schedule.  Because in this case, as Mr. Moore has suggested,

15    discovery would be necessary on the salient point.  On the most

16    important point that goes to the motion to appoint a custodian,

17    there does not appear to be any dispute, which is that there's

18    a deadlocked board.

19         And so beyond that -- there's only a two-member board

20    here, Your Honor, there's Mr. Schiermeyer and then there's

21    Mr. Thurston.  It's a two-member board.  They've already

22    documented, as late as last summer, their opposing views going

23    forward.  And so because of that, I don't think we believe

24    there's frankly any additional discovery that would need to be

25    undertaken for the Court to consider and rule on the motion to

1    put in a custodian, simply because all the Court would have to

2    determine is there's a deadlocked board, that deadlock prevents

3    the company from operating as it is supposed to operate, and as

4    a result, in the best interest of the company, the

5    shareholders, the equity interest owners, the operations, it's

6    in the best interest of all of those parties and interests to

7    appoint a custodian to manage the operation of the company

8    during the pending lawsuit while a number of these claims get

9    worked out by the Court.  So -- yeah.

10              Go ahead, Your Honor.  I apologize.

11          **THE COURT:**  No, please.  I interrupted you.  Please

12    finish.

13          **MR. WADLEY:**  No, so because of all that, we don't

14    believe that there needs to be a resolution on the motions to

15    dismiss.  Because, frankly, irrespective of what happens with

16    regard to the motions to dismiss, there's still this available

17    relief to appoint a custodian in an instance where there's a

18    deadlocked board.

19              So, Your Honor, we believe that that should be

20    considered straightaway.  It certainly can be considered on a

21    contemporaneous schedule with the motions to dismiss, but we

22    certainly would not support or agree to any kind of bifurcated

23    briefing structure where the motions to dismiss get considered

24    first.

25          **THE COURT:**  Okay.  Let me ask you this, then.

```
 1              Is it your position that the preliminary injunction
 2    can be decided based on the papers that you've submitted and
 3    argument, perhaps, but without additional evidence or testimony
 4    or any kind of an evidentiary hearing?  Is that your position?
 5              MR. WADLEY:  It is, Your Honor.
 6              To the extent that the Court is able to take judicial
 7    notice of a deadlocked board, which, again, we believe either
 8    through the briefing, through the positions that have been
 9    asserted and through the material that the Court has already
10    considered, certainly can take judicial notice of the fact that
11    there is a deadlocked board here, and, as a result, because it
12    is permitted under Wyoming law, can resolve this issue and
13    appoint a custodian to manage the affairs of the corporation
14    while the remaining dispute gets resolved.
15              THE COURT:  Okay.  So to be clear, you think that you
16    would be comfortable with my ruling on a preliminary injunction
17    motion based on what you've submitted and perhaps argument.
18              MR. WADLEY:  As long as Your Honor rules in our
19    favor, we would be absolutely comfortable with that resolution,
20    Your Honor.
21              THE COURT:  Right.  Well, unfortunately you don't get
22    to make that --
23              MR. WADLEY:  I understand.  I understand.
24              THE COURT:  But -- no, so -- okay.  So you don't
25    think there's a need for additional evidentiary development,
```

1    basically.

2              **MR. WADLEY:**  We don't.

3              **THE COURT:**  Okay.  Well, I think -- do you have

4    thoughts on that, Mr. Moore?  If it's just a matter of

5    briefing, I mean given that the defendant and counterclaim

6    plaintiff bears the burden on preliminary injunction, if they

7    think that they're comfortable with the record as it is, is

8    there evidence that you think you would need to submit in

9    opposition to it?

10             **MR. MOORE:**  Your Honor, on that basis, I think that

11   with one deposition, with the deposition of the affiant, with

12   the person who has declared and verified that the allegations

13   in the counterclaims are true, then I wouldn't have a problem

14   with it.

15             But our view is that there isn't sufficient

16   foundation, that this witness doesn't have the personal

17   knowledge to testify as to things in the verified complaint, it

18   is largely conclusory.  I mean those are issues that we could

19   raise in a response, but we would much prefer to raise those

20   after having taken the deposition of Mr. Thurston to flesh

21   those issues out of it.

22             **THE COURT:**  Right.  I understand.  How much -- do you

23   think -- I mean -- well, bracket that.  I'm not going to ask

24   you that.  I'll ask you that in a minute.

25             Mr. Wadley, are you in line?  Do you need the

1    allegations in your counterclaims?

2         **MR. WADLEY:**  I don't think so, Your Honor, not for

3    the purpose of the custodian motion.  Again, because the law

4    permits the court to appoint a custodian when there's a

5    deadlocked board, it doesn't have to hang on allegations of

6    misbehavior, impropriety.

7         All of the remaining issues that are in dispute in

8    this case, frankly, we can efficiently set aside for purposes

9    of the custodian motion and the Court can simply determine

10   whether or not there's a deadlocked board and the deadlock

11   itself prevents the proper functioning of the company.

12        And if the Court makes that determination, then the

13   Court is then empowered under the Wyoming statute to appoint a

14   custodian to safeguard the company.  It's a provision that

15   allows the company to continue to operate in a case just like

16   this where you have a deadlocked board.  It's as simple and

17   straightforward as that.

18        All of the remaining allegations are there, and

19   certainly, Your Honor, we believe need to be properly vetted

20   and addressed in discovery and everything else, but we don't

21   believe they're necessary for purposes of determining whether

22   or not the Court can and should appoint a custodian at this

23   point in the litigation.

24        **THE COURT:**  So you think that just as long as I take

25   judicial notice of the fact that there's a deadlocked board,

1    that just based on the bylaws and other things that you've

2    submitted, I can make the legal determination -- in Wyoming

3    law, I can make the determination to decide the motion?

4              **MR. WADLEY:**  Yes, Your Honor.  And there's a very

5    straightforward reason for that.  I mean, as you've seen the

6    motions for TROs and prelim- -- you know, throughout the file

7    in this case filed by both parties, the custodian -- the law

8    that allows a court to appoint a custodian is specifically

9    designed to address those very issues, right, where there is an

10   internal corporate dispute, there's a claim that the one

11   executive is taking, you know, action -- extrajudicial action,

12   just as we've alleged in this case.

13             There's claims that the board is not properly being

14   briefed and considered.  All of those issues, Your Honor, we

15   can simply set aside and address by appointing a custodian,

16   just like a receiver or, you know, some kind of bankruptcy

17   trustee, to manage the company.

18             And the custodian would certainly be accountable to

19   the Court to manage the company while these remaining issues

20   get resolved; thus, preventing the parties from continually

21   filing these TROs or asking the Court for emergency relief

22   because they're afraid that one issue needs to be addressed

23   immediately or another issue needs to be addressed immediately.

24   We get to set all of that aside and then move forward with the

25   litigation in regular course.  That's what we're seeking at

1  this point.

2          **THE COURT:**  And you'd be willing to proceed on that

3  basis?

4          **MR. WADLEY:**  Yes, Your Honor, we would.

5          **THE COURT:**  All right.

6          Mr. Moore, thoughts?

7          It sounds like they're willing to basically rely

8  on -- I mean, I doubt you're going to dispute that the board's

9  deadlocked.  I suspect you'll argue that that doesn't matter,

10  but assuming I can take judicial notice that the board is

11  deadlocked and all I look at -- the only things that I look at

12  is evidence -- and it's not really evidence, I don't know if

13  that's even the right word -- all I look at is Wyoming law and

14  the bylaws of your company, is there any reason why we would

15  need any additional evidentiary development?

16          **MR. MOORE:**  Your Honor, if defendants are relying

17  solely upon a yet-to-be-filed request for judicial notice that

18  the board is deadlocked, along with the bylaws, and if that's

19  the entire evidentiary basis on which the defendants intend to

20  proceed with the motion, no discovery will be necessary, and

21  we'd be happy to brief that along with the motion to dismiss.

22          **THE COURT:**  Right.  And to be clear, I mean it would

23  be the three documents attached to the -- it would be the

24  bylaws, the terms and conditions, and the founders agreement.

25  But I think the point is the same; correct?

1      **MR. MOORE:**  It is, Your Honor.  And the request for

2  judicial notice, just to be clear, Your Honor suggested that we

3  couldn't -- you thought that we would oppose the defendant's

4  contention that the board is deadlocked.  We certainly will.

5  There has been no issue presented to the board for decision

6  upon which the parties are deadlocked, much less some decision

7  that would result in some immediate irreparable harm, just to

8  clarify our position on the record.

9          We will respond to the request for judicial notice

10  when it's filed and respond to the brief otherwise without

11  regard to the allegations from the verified complaint which

12  have been withdrawn as evidence in support of that motion.  Is

13  that correct and fair?

14      **THE COURT:**  I understand.  I mean I think the

15  second -- as I said, I -- I'm having trouble how you could

16  dispute that the board is deadlocked, seeing how you could do

17  that.  I do understand your argument at the end, which, you

18  know, there hasn't been a question submitted to the board or

19  that -- you know, and that was what I was trying to capture

20  with your point that it doesn't matter.

21          I suspect your position is going to be that the

22  relevant decisions being made are being appropriately made by

23  the company's officers and don't require board approval so, you

24  know, whether or not, you know, there's a conflict on the board

25  wouldn't matter.

1    I guess maybe you're drawing a more specific position

2  that I could not assume there's a deadlock unless there was

3  actually a vote properly put to the board on a specific issue.

4  Is that what you're trying to argue?  Sorry you're on mute.

5    **MR. MOORE:**  I apologize.

6    Yes, Your Honor.  Some issue, there has to be some

7  issue upon which there's deadlock.  For example, the case that

8  was cited by the defendants, MPEG, there was a -- NASDAQ had

9  sent a notice to this company and said, "Look, if you don't

10 reconstitute your audit committee then you're going to be

11 delisted on X date."  So they had an impending harm coming and

12 they had a particular issue that had to be decided.

13   The board voted two to two.  They were deadlocked on

14 that issue, and so they needed someone to come in and break

15 that deadlock, less they be delisted by NASDAQ, as promised by

16 NASDAQ in the warning letter.  So --

17   **THE COURT:**  Okay.  Let me rephrase it, then.  I mean

18 I don't think you can dispute that there are two members of the

19 board and that they're on opposite sides of this lawsuit.

20 Correct?

21   **MR. MOORE:**  Of course, Your Honor.

22   **THE COURT:**  And then I think the question might -- it

23 might end up being, just as a legal matter, under Wyoming law,

24 what is required for deadlock and whether the requirements are

25 met based on those facts.  If that's the question, I think we

1   could proceed just as a legal issue, you know, taking as a

2   given the facts that there are two of the board and they're on

3   opposing sides of this lawsuit.  And you can you could argue

4   that doesn't mean -- that's not deadlock under Wyoming law.

5         Does that make sense?

6         **MR. MOORE:**  It does, Your Honor.  And that -- that's

7   what I was getting at and certainly fair.

8         If the judicial notice is of the fact that there are

9   two directors and they're on opposite sides of this lawsuit,

10  both purporting to sue derivatively on behalf of the company,

11  then so long as that's taken along with our motion to dismiss,

12  we're happy to brief that at the same time.

13        **THE COURT:**  Right.

14        And let me ask you, Mr. Wadley.  I mean I don't know

15  that I can take judicial notice of much more than that.

16        Is that what you need?

17        **MR. WADLEY:**  It is, Your Honor.  We believe that

18  that's all, frankly, the Court would need to take judicial

19  notice of.  Additional depositions, at this point, we don't

20  think would be necessary to document the fact that the board is

21  deadlocked.

22        And then, of course, to the extent that the

23  briefing -- if, in the case the briefing revealed that

24  additional discovery, for one reason or another, was necessary,

25  I can't imagine at this point sitting here why it would be, but

1  if it was, we could certainly address it at that point.

2       **THE COURT:**  All right.  The way it would work is that

3  what I would be taking judicial notice of is simply that there

4  are two members of the board, that they're on opposite sides of

5  this lawsuit, that they're both purporting to sue derivatively

6  on behalf of the company.  And then you -- the opposing parties

7  would be free to argue whether, as a matter of law, that

8  constitutes deadlock under Wyoming law.

9       **MR. WADLEY:**  Certainly, Your Honor, yes.

10       **THE COURT:**  Okay.  I mean on that understanding, I

11  propose that we do proceed with simultaneous briefing.  If it

12  turns out that, you know, for some reason I just don't have

13  enough information to decide the motion for a preliminary

14  injunction, keeping in mind the respected burdens of proof and

15  so forth, who bears the burdens, you know, we can consider at a

16  later date whether we have to engage in discovery or an

17  evidentiary hearing.

18       But, you know, as I said, we -- effectively, I think

19  that should satisfy both sides, because the plaintiff -- all

20  you would have to do on this motion for a preliminary

21  injunction is briefing.  You would not have any duty to -- you

22  know, you would not need to present any evidence because we

23  would not be taking the verified complaint as -- I wouldn't be

24  considering that as evidence.

25       Would that work?  Would that work for the plaintiff,

1    Mr. Moore?

2              **MR. MOORE:**  Yes, Your Honor.

3              **THE COURT:**  All right.  Well, on that understanding,

4    is February 2nd sufficient time for a response?

5              **MR. MOORE:**  It is for us to respond to the motion for

6    preliminary injunction, Your Honor, yes.

7              **THE COURT:**  Right.  And, again, I anticipate, based

8    on what Mr. Wadley has represented, that I will decide that on

9    the papers, maybe with argument, but taking judicial notice

10   only of the facts I mentioned, and then considering, as a

11   matter of law, whether that constitutes deadlock.

12             And then -- you know, then also just looking at the

13   documents that have been presented to me, whether -- you know,

14   to the extent they're relevant to the question of, you know,

15   the proper operations of the company and the board and the

16   respective allocations of authority or whatever.  Those could

17   be relevant, I imagine, to whether there's a deadlock and that

18   you all can --

19             I'm not suggesting that I have a view on what the

20   allocation between the board and the officers is or what

21   deadlock -- what's required for deadlock under law, but I would

22   just be looking at basically the procedural posture of this

23   case, the bylaws and other documents that have been given to

24   me, and Wyoming law, and just try and decide whether, on that

25   basis, plaintiff can show -- or, excuse me, counterclaim

1   plaintiff, the defendant, can show a likelihood of success on

2   the merits and the other requirements for preliminary

3   injunction.

4           Okay.  Well, if we have that, so the February 2nd

5   deadline would work for you.

6           Would -- Ms. Call, would you be filing a response to

7   the motion for a preliminary injunction as well, do you

8   anticipate?

9           **MS. CALL:**  At this time, the company anticipates

10  filing something.  I don't know that I would call it an

11  opposition.  I think a response is probably the most we would

12  call it, given that it's based on a claim that's not asserted

13  against the company, but the company may have an interest in

14  chiming in about the appointment of a custodian.  So that's the

15  way I would characterize --

16          **THE COURT:**  Okay.  And --

17          **MS. CALL:**  -- but we expect to respond.  And

18  February 2nd would work fine for us.

19          **THE COURT:**  Okay.  Very well.

20          **MS. CALL:**  My only concern -- sorry, Your Honor,

21  sorry to interrupt.  Go ahead.

22          **THE COURT:**  No, please go ahead.  Your only concern

23  is what?

24          **MS. CALL:**  Is that, if engaging in a response to the

25  preliminary injunction would somehow waive our argument that --

1    as to the claims that Mr. Thurston and the other

2    cross-claimants are making against the company, that that would

3    somehow waive it by engaging in a response to that motion.  So

4    I don't know if Your Honor has any thoughts on that.

5             Of course, we believe all claims against the company

6    should be submitted to an arbitrator, but given that we're

7    currently a party and that there's a motion that might impact

8    the company, we might take advantage of the opportunity to file

9    a response, acknowledging that doing so shouldn't waive our

10   ability to still enforce our arbitration provisions in the

11   agreement between the parties.

12        **THE COURT:**  Understood.  You're just worried about

13   the possibility of losing the right to arbitrate or waiving it

14   through engaging in litigation.

15            Given that you've filed a motion to compel

16   arbitration, I do not believe there would be a waiver if you

17   engage in briefing, especially since it will be simultaneous.

18            But does either of the opposing counsel believe that

19   Ms. Call would waive the right to compel arbitration, if she

20   has that right, just by filing a response to the briefing on

21   the other motions simultaneously to the briefing schedule on

22   her motion?

23        **MR. WADLEY:**  No, Your Honor, we don't believe there

24   is a waiver.

25        **THE COURT:**  And do you have a position on that?  I

1  don't know that you have a dog in the fight, Mr. Moore, but do

2  you have a position on that?

3       **MR. MOORE:**  You're right, we don't have a dog in the

4  fight, but we also don't believe that that filing would

5  constitute a waiver.

6       **THE COURT:**  Right.  There are circumstances in which

7  delay -- which filing briefs can constitute waiver.  Usually,

8  it's a conjunction of that with a delay in asserting the right

9  to arbitrate.

10       I think -- given that you've already set down your

11  position and filed the motion to compel arbitration, I don't

12  think that you would be waiving anything, you know, by

13  participating --

14       **MS. CALL:**  Thank you, Your Honor.

15       **THE COURT:**  -- you know, by stating your views on

16  other motions, pending my decision on your motion to compel

17  arbitration, which you've already made.

18       **MS. CALL:**  Thank you, Your Honor.

19       **THE COURT:**  Okay.  Very well.

20       How much time would be needed for reply briefs after

21  February 2nd?  I guess I'd like all three parties' views on

22  that since, again, there's three motions.  We'd be looking for

23  replies on all three of them.

24       **MR. WADLEY:**  Your Honor, I could bring up the

25  schedule.  I thought that we did allow for a couple of weeks to

1    reply, if I'm remembering correctly.  And maybe Ms. Call and

2    Mr. Moore can correct me on that.  I think that the schedule

3    was tracking on each of the -- the (inaudible) motion and the

4    motions to dismiss.  I believe it was approximately two

5    thereafter that we would file replies.

6           **THE COURT:**  And you're comfortable with that?

7           **MR. WADLEY:**  I think so, yeah, Your Honor.

8           **THE COURT:**  Is that correct, Mr. Moore?  Do you -- is

9    the deadline set in Judge Oberg's order and are you comfortable

10   with that deadline?

11          **MR. MOORE:**  I'm comfortable with the deadline.  I

12   don't know that it's in the order, but the 16th would be fine,

13   Your Honor.

14          **THE COURT:**  Right.  I can't recall off the top

15   whether that was in there either, honestly.  I know that the

16   February 2nd deadline was in there, I didn't recall if there

17   was an express deadline for the reply.

18          **MR. MOORE:**  There's not.  I have the order pulled up

19   now, at least the docket text order.  There's no date for

20   reply, but the 16th is fine for the plaintiff.

21          **THE COURT:**  Right.  So Mr. Wadley, would the 16th

22   work for you?  Sorry you're on mute.

23          **MR. WADLEY:**  Yeah.  Yes, Your Honor.  I was just

24   trying to bring up whether or not, in our planning meeting

25   report and proposed schedule we had included a separate date,

1   but at this point I think the 16th is just fine.  I think we

2   should be able to put together a reply by the 16th.

3           **THE COURT:**  Okay.

4           And Ms. Call, you'll, of course, be wanting to submit

5   a reply in support of your motion to compel arbitration if

6   there's any opposition to that.  Would two weeks, to the 16th,

7   give you ample time for that?

8           **MS. CALL:**  Yes.  Thank you, Your Honor.

9           **THE COURT:**  All right.  Well, why don't we proceed on

10  that basis.

11          So February 2nd, February 16th for the response and

12  the replies respectively to all three motions.  I will --

13  depending on how things develop -- I think it's quite likely

14  that I will hold a hearing to give the parties an opportunity

15  to argue the motions.  I think with all -- with three motions,

16  the likelihood that I'll feel comfortable deciding them all

17  without argument is probably not high.  But I will get -- once

18  I've read the briefs, I will reach out through my chambers to

19  counsel to set a date for an argument.

20          Again, I'm not -- given the position the counterclaim

21  plaintiff and defendants have taken here, I don't anticipate

22  that we will be looking to hold an evidentiary hearing or have

23  evidence on the preliminary injunction.  If, for some reason,

24  something comes up where I feel that I simply just cannot

25  decide it based on the information before me, we'll decide how

1    to proceed.  You know, whether that means ruling first on the

2    motions to dismiss and to compel arbitration and seeing if we

3    need to have discovery on the other, but I will -- but I

4    anticipate that I will likely and, in accordance with what

5    Mr. Wadley has requested, just try and decide the motion based

6    on what we've discussed here without further factual

7    development.

8              Okay.  All right.  On that -- so we'll proceed on

9    that basis.

10             Any questions about that before we move on?

11             **MR. MOORE:**  Your Honor, I do have one question that

12   just occurred to me.  And that is, I will now be filing a

13   response to a motion that is quite different than the one

14   that's in writing, with all the evidence stripped from that

15   motion, other than what we've discussed today.  So our response

16   will track what we've discussed in court today.

17             But in addition -- and I don't know that we will, but

18   if the plaintiff intends to submit its own evidence in response

19   to what is included, evidence that the defendants have limited

20   their motion to, I don't see that there would be any

21   prohibition against us doing that.  Is that correct?

22             **THE COURT:**  I assume so.  I don't know what evidence

23   you'd be looking at.  That's -- I mean, again, when I said I

24   don't anticipate right now a need for discovery or factual

25   development or an evidentiary hearing, I mean certainly if the

1   plaintiff does submit evidence, that might change that

2   calculus.  That's the sort of thing I was considering when I

3   said I would bracket the question of whether we would need any

4   additional development.

5           And so, you know, if you do submit a -- you know,

6   declarations and so forth, that could well change the calculus

7   of what is needed.  But we'll cross that bridge when we come to

8   it.

9           **MR. MOORE:**  Understood.  Thank you, Your Honor.

10          **THE COURT:**  And I -- again, if -- again, and to be

11  clear, Mr. Moore, if you do submit declarations then, you know,

12  it would not surprise me that -- if the counter-claim plaintiff

13  at that point decided that they wanted to try and submit

14  something in the reply brief, and then we would have to figure

15  out how to proceed, or they might want to -- at that point,

16  want to say, "Well, we're going to need our verified complaint

17  after all" to oppose these declarations.  So I think we'll have

18  to see how it goes.

19          Any other questions or thoughts about that?

20          **MR. MOORE:**  No, Your Honor.  I understand completely.

21  Thank you.

22          **THE COURT:**  Yeah.  I mean I think, Mr. -- I don't

23  want to put words in your mouth, Mr. Wadley, but I assume that

24  your willingness to rest on Wyoming law, the facts that I

25  mentioned that I think are undisputable, that there's two

 1   members of the board, they're on opposing sides of this

 2   lawsuit, that they both are purporting to sue derivatively on

 3   behalf of the company, and then, you know, the documents that

 4   you've attached to the preliminary injunction, I assume your

 5   willingness to rely solely on those materials -- you know, and

 6   not in your statement that you don't need the allegations in

 7   the verified complaint, that that could change if the plaintiff

 8   comes back with a bunch of evidence in their response brief.

 9   So I'm not going to hold you to that in that case, at which

10   point, you know, you could submit whatever you wanted in your

11   reply brief and then we would have to figure out how to

12   proceed.

13          Does that -- and to be clear, whatever you wanted

14   that's responsive to what the plaintiffs, that's not -- it

15   wouldn't necessarily open the whole world of evidence, it would

16   just open the world of evidence that's responsive to whatever

17   the plaintiff comes forward with if they have evidence.

18          Is that fair and reasonable, Mr. Wadley, does that

19   make sense?

20          **MR. WADLEY:**  It is, Your Honor.  And that does make

21   sense.  You know, we believe it's a very straightforward

22   analysis.  We intended to brief it that way, certainly the

23   position that we have here, and I'm willing to move forward on

24   that.  And to the extent that that posture changed at all, you

25   know, we're willing to reconsider, but we think that it's a

1    pretty reasonable position going forward.

2         **THE COURT:**  All right.  So just with that -- with

3    that caveat, Mr. Moore, I mean you're free to submit what you

4    want in your response, on the understanding that if you do

5    submit evidence, I will allow the plaintiff in the reply brief

6    to submit evidence that's responsive to your evidence.  I don't

7    think it will necessarily open up the whole world to things

8    that are not responsive to your evidence.

9         Okay.  Any other questions?

10        All right.  Is there anything else we should discuss

11   while we're together at this time?

12        **MR. MOORE:**  Not from the plaintiff's perspective,

13   Your Honor.  That's all we intended to address.

14        **MR. WADLEY:**  Nothing here, Your Honor.

15        **MS. CALL:**  Nothing for the company.  Thank you, Your

16   Honor.

17        **THE COURT:**  All right.  Well, thank you.  I will

18   anticipate receiving your briefs as the schedule that we've

19   discussed.  And then, as I said, I will have my chambers reach

20   out to you, most likely, to set a date for argument as soon as

21   the briefing is -- or shortly after the briefing is completed.

22   All right.  With that, court is adjourned.  Thank you.

23        **MR. MOORE:**  Thank you.

24        **MR. WADLEY:**  Thank you, Your Honor.

25                    (Concluded at 2:50.)

CERTIFICATE OF COURT REPORTER


This is to certify that the proceedings in the foregoing matter were reported by me in stenotype and thereafter transcribed into written form;

That said proceedings were taken at the time and place herein named;

I further certify that I am not of kin or otherwise associated with any of the parties of said cause of action and that I am not interested in the event thereof.

In witness whereof I have subscribed my name this 9th day of January 2024.

Teena Green, RPR, CSR, CRR, CBC