John W. Huber (Utah Bar No. 7226)
Daniel J. Wadley (Utah Bar No. 10358)
Marc T. Rasich (Utah Bar No. 9279)
Alexander Baker (Utah Bar No. 17163)
**GREENBERG TRAURIG, LLP**
222 South Main Street, Suite 1730
Salt Lake City, Utah 84101
Telephone: (801) 478-6900
Email: *john.huber@gtlaw.com*
Email: *wadleyd@gtlaw.com*
Email: *marc.rasich@gtlaw.com*
Email: *bakera@gtlaw.com*

*Attorneys for Defendants, Counterclaimant, and Crossclaim Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| ERIC SCHIERMEYER, Derivatively on Behalf of Nominal Defendant, BLOCKCHAIN GAME PARTNERS, INC. D/B/A GALA GAMES,<br>     Plaintiff,<br>vs.<br>WRIGHT W. THURSTON and TRUE NORTH UNITED INVESTMENTS, LLC,<br>     Defendants,<br><br>   and<br>BLOCKCHAIN GAME PARTNERS, INC. D/B/A BGP GAMES,<br>     Nominal Defendant. | **REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION ORDERING THE TEMPORARY APPOINTMENT OF A CUSTODIAN TO ACT AS PRESIDENT, CEO, AND SOLE DIRECTOR OF BLOCKCHAIN GAME PARTNERS, INC.**<br><br>Case No. 2:23-cv-00589-HCN-DAO<br><br>Judge Howard C. Nielson<br><br>Magistrate Judge Daphne A. Oberg |
| TRUE NORTH UNITED INVESTMENTS, LLC, Derivatively on Behalf of Nominal Defendant, BLOCKCHAIN GAME PARTNERS, INC. D/B/A GALA GAMES,<br>     Counterclaimant,<br>vs.<br>ERIC SCHIERMEYER,<br>     Counterdefendant, | |

|  |  |
|---|---|
| and<br>BLOCKCHAIN GAME PARTNERS, INC.<br>D/B/A BGP GAMES,<br>    Nominal Counterdefendant. |  |
| TRUE NORTH UNITED INVESTMENTS, LLC,<br>    Crossclaim Plaintiff,<br>vs.<br>BLOCKCHAIN GAME PARTNERS, INC.<br>D/B/A BGP GAMES,<br>    Crossclaim Defendant. |  |

## **INTRODUCTION**

Between brandishing a heavily redacted version of True North's Motion and contorting the request for a custodian under Wyoming law (the state of incorporation) into an inapplicable legal standard relating to the appointment of an equitable receiver under federal law, Schiermeyer at least deserves points for creativity. But that is about it. Schiermeyer's Opposition does accomplish one thing: it reveals the lengths to which Schiermeyer is willing to go to cement his sole control over a two-person Board by avoiding the proper application of Wyoming law to the instant case. The reason is clear – Wyoming law providing for the appointment of a custodian was designed for exactly the matter before this Court – a deadlocked board that is incapable of providing the necessary, and mandatory, oversight over BGP's business operations, management and executives, and the inevitable risk of imminent harm to its business, its shareholders, and its community that results.

As the Court observed in the Parties' status conference, it would be difficult to dispute the deadlock that exists in BGP's Board of Directors, and Schiermeyer's attempts to minimize

1

this reality fall well short of the mark. Nor can he refute the inevitable irreparable harm inherent in the Company's inability to perform key functions without the Board approval and the oversight mandated by its Bylaws. BGP was not designed, and was never intended to function, as a sole proprietorship run exclusively by Schiermeyer to further his personal interests. Under the circumstances, True North is substantially likely to succeed on the merits of establishing this claim for relief—and neither Schiermeyer's ironic assertion of unclean hands nor his unfounded demand for a $130 million-dollar bond change anything. For the sake of BGP and Gala stakeholders everywhere, the Motion to appoint a custodian to safeguard the Company's wellbeing should be granted.

## ARGUMENT

### I. Schiermeyer Has Misconstrued the Applicable Legal Standard

Schiermeyer goes to great lengths to construe True North's counsel's comments and the Court's remarks at the Parties' recent status conference as narrowly as possible. *See, e.g.*, ES Opp. Br. at 2, 3, 9, 10 n.2, 13, 16-17. In that effort, Schiermeyer intentionally distorts what was discussed in the conference—just as he distorts the legal standard applicable to True North's Motion for the appointment of a custodian.

Schiermeyer suggests that "True North withdrew its reliance upon any of [its] verified allegations in order to avoid subjecting those sworn allegations to scrutiny in a deposition"; that "True North ultimately agreed that the Court should rule upon its Motion without holding an evidentiary hearing and without considering any allegations in the Amended Counterclaims"; and that "in light of True North's agreements at the Hearing, this Opposition responds to a Motion that is materially different from the Motion that was filed." *Id.* at 2. But this

2

characterization is mistaken in multiple respects, and the Motion currently under consideration is in no respect different from the document that True North submitted for the Court's review.

To begin with, True North's Motion made it very clear that, in assessing the merits of the request for the appointment of a custodian, "the Court need not decide who is right" regarding the Parties' disputed allegations of fraud and misconduct. TN Mot. at 3. True North further emphasized that:

> the Court need not wade deeply into the merits of these warring characterizations, because irreparable injury is evident and inevitable from (a) the indisputable deadlock on the Board and shareholder levels, and (b) the uncontestable fact that, under the plain language of BGP's Bylaws, Schiermeyer has acted, and continues to act, as President and CEO without regard to Board or shareholders' authorization and corporate formalities with which he is contractually and duty-bound to comply.

*Id.* at 16. Nothing has changed on that score. The other factual allegations referenced in the Motion were included to provide background context for the Court's assessment, for lining up the Parties' disputes alongside one another, irrespective of which side is correct, to illustrate just how deep and irreconcilable the dysfunction is among BGP's two Directors and major shareholders. *See id.* at 4-14.

In addition, it is simply not true that:

> True North agreed that the Court may consider only the following undisputed facts as 'evidence' in support of its Motion: (1) there are two members of the Company's Board of Directors; (2) they are on opposing sides of this lawsuit; (3) each is purporting to sue the other derivatively on behalf of the Company (although the allegations of those competing claims cannot be considered); and (4) the Company Bylaws and Founders Agreement attached to the Motion.

ES Opp Br. at 2. At the status conference, counsel for True North clearly conveyed that the Court's assessment of the Parties' *disputed* allegations was not necessary to resolve the Motion. *See* ES Opp Br. Ex. 1 at 14:25-15:6 (". . . it doesn't have to hang on allegations of misbehavior,

3

impropriety. All of the remaining issues that are in dispute in this case, frankly, we can efficiently set aside for purposes of the custodian motion."). This, of course, does not prevent the Court from considering factual allegations that are *not in dispute* (*i.e.*, that are agreed upon by both Parties and referenced in both of their pleadings, such as the fact of the burn/v2 upgrade, the suspension of True North's nodes, the hiring/firing and quitting of senior corporate executives, the purchase and acquisition of corporate properties and assets, the issuance and distribution of valuable NFT's, and the transfer of valuable intellectual property to entities in Switzerland and Dubai created and controlled by Schiermeyer at the expense of other stakeholders, to name a few), nor does it prevent the Court from considering Schiermeyer's own assertions that inadvertently support the Motion (which, though potentially disputed by True North, may be assumed true for the sake of argument here). The Court even appeared to note this in its remark that "as long as I take judicial notice of the fact that there's a deadlocked board, that just based on the bylaws ***and other things that you've submitted***, I can make the legal determination—[under] Wyoming law, I can make the determination to decide the motion?" *Id.* at 15:24-16:3 (emphasis added). Presumably the "other things" that the Parties have submitted would include their pleadings and the undisputed facts that they contain. Accordingly, although Schiermeyer attempts to shrink the available facts for the Court to consider to only to only the following: (1) there are two Board members, (2) they are suing each other, (3) they are each asserting derivative claims on behalf of BGP, and (4) the Bylaws and Founders Agreement govern their relationship—with no other facts to assist the Court in determining whether there is a deadlock and accompanying irreparable harm. Such an artificially myopic view is not called for here.

But Schiermeyer's distortions do not stop there. He also contends that "True North has been inconsistent about what legal standard controls," and that "[a]t the Hearing, True North retreated to the position that it need only establish 'deadlock' under the Wyoming Statute and nothing more." ES Opp. Br. at 3. Not only is this false, but Schiermeyer cites the very language that counsel for True North used in conveying that *more than just deadlock is required*—in the remark that "the Court can simply determine [#1:] whether or not there's a deadlocked board and [#2: whether] the deadlock itself prevents the proper functioning of the company." *Id.* at 9. This second clause, of course, is an obvious reference to the irreparable harm prong of the inquiry referenced throughout the Motion. Thus, as Schiermeyer himself notes, Wyoming law requires a showing that (1) "[t]he directors are deadlocked in the management of the corporate affairs" and "the shareholders are unable to break the deadlock," and (2) "irreparable injury to the corporation is threatened or being suffered." *Id.* at 9-10. And as discussed below, both irreconcilable deadlock and irreparable harm have been established here.

As a final point regarding Schiermeyer's warping of the issues at hand, he proposes the notion that True North's Motion should really be construed as seeking the appointment of a receiver and claims that FRCP 66 imposes some alternative test that would govern such an appointment in this case.[1] *See* ES Opp. Br. at 5-8. The entire basis of this out-of-left-field

---

[1] FRCP provides: "These rules govern an action in which the appointment of a receiver is sought or a receiver sues or is sued. But the practice in administering an estate by a receiver or a similar court-appointed officer must accord with the historical practice in federal courts or with a local rule. An action in which a receiver has been appointed may be dismissed only by court order." In short, FRCP 66 simply confirms that the federal rules of civil procedure apply to actions involving a court appointment receiver. The rule does not create some alternative test that governs the appointment of a receiver, and it certainly does not displace clearly applicable

assertion is a single Third Circuit case that, if anything, refutes Schiermeyer's proposed approach. *Hill on Behalf of Republic First Bancorp Inc. v. Cohen* 40 F.4th 101 (3d Cir. 2022) concerns a Pennsylvania state statute similar to the one at issue here, but its only discussion of receivers is in its *exploration of whether a custodian is sufficiently similar to a receiver to permit the Court to take up an interlocutory appeal under 28 U.S.C. § 1292(a)(2)* (which permits interlocutory appellate review of orders appointing receivers). The case does not involve a custodian-to-receiver translation, nor does it invoke Rule 66, nor does it dislodge the application of substantive state law in favor of inapplicable federal common law (as proposed by Schiermeyer). Neither the Third Circuit nor the underlying district court in *Hill* did or approved of what Schiermeyer is attempting to do here – avoid the application of state law to a corporate dispute arising under that law as the state of incorporation. As in *Hill*, the appropriate legal standard for such a claim for relief arises under state law (here Wyoming), and all of the pages of ink that Schiermeyer spills on the subject arguing the contrary should be summarily disregarded.

## II. True North Has Demonstrated Deadlock

During the recent status conference the Court conveyed doubt that Schiermeyer would or could dispute that the two-person Board is deadlocked. *See* ES Opp. Br. Ex. 1 at 17:8-9. When counsel for Schiermeyer pushed back, the Court remarked "I'm having trouble [seeing] how you could dispute that the board is deadlocked." *Id.* at 18:15-16. The Court's impressions are understandable, given the uncontested facts surrounding the schism between the Parties and at

---

substantive state law providing for the appointment of a custodian in the case of a deadlocked board of directors.

BGP's helm. Crucially, however, BGP's Board is not simply deadlocked on a single issue; it is fundamentally deadlocked on *all issues*.

As explained in True North's Motion, BGP's Bylaws establish that the "board of directors shall have the control and general management of the affairs and business of the corporation." TN Mot. Ex. B § 3.01. A majority of directors is required to make business decisions in the general management of the affairs and business of BGP. *Id*. Thus, the board can only act if *both* directors vote in favor of the action. The Bylaws further direct that "[t]he directors shall act only as a board and the individual directors shall have no power as such." *Id.* § 3.09. Importantly, all actions of officers are subject to the direction of the Board of Directors. For example, while there is a President that serves as the chief executive officer of the Company, the President's general supervision over the business of the corporation is subject to "the control of the board of directors." *Id.* § 4.05. In fact, the President may only act and sign binding instruments as "authorized by the board of directors." *Id.* Schiermeyer makes no attempt to evade this interpretation of the Bylaws, *see generally* ES Opp Br. at 5-18, perhaps because their meaning is clear and inescapable. If the President and CEO of BGP is unable to even execute "corporation deeds, mortgages, bonds, contracts or other instruments" without authorization or delegation by the Board of Directors, then the corporate paralysis inherent in a deadlock at the Board and shareholder level, where the directors and majority shareholders have sued each other, is self-evident and Schiermeyer's many unilateral acts are ultra vires.

As reflected in Schiermeyer's own pleadings (*see* ES Am. Compl. ¶¶ 55-56, 82-87, 129-37), BGP's Board has not functioned for many months due to the Parties' deadlock and opposing views on numerous issues—a fact that is likewise supported by the corresponding uncontested

7

facts presented in True North's own pleadings (*see* TN Am. CC ¶¶ 42, 44-52, 57, 66, 69, 78-80).[2] In light of their mounting disputes and deadlock, both Schiermeyer and Thurston voted against suing themselves and removing themselves as members of the Board. *See* ES Am. Compl. ¶¶ 129-37; TN Am. CC ¶ 80. The fundamental, structural deadlock here—which is a function of the two-person Board, the requirements of the Bylaws, and the Parties' diametrically opposed views and dysfunctional relationship—could not be more obvious.

Schiermeyer attempts to conjure a narrow rule from thin air, asserting that *APEG Energy* stands for the proposition that "the deadlock must be over a particular management decision." ES Opp Br. at 17. But *APEG Energy* neither cites nor establishes such a rule, and certainly does not foreclose the need for a custodian in a case of wholesale, structural deadlock. That said, the Parties have encountered numerous "particular management decisions" over which the Board has been or would be inherently deadlocked, such as the burn/v2 upgrade, the extent to which BGP must provide information to Thurston/True North, the unilateral seizure of thousands of True North's nodes, the firing and hiring of senior level executives (including the CEO of Gala Music), and whether BGP should sue or remove either Director from their positions. But more than this, Schiermeyer's major unilateral management decisions—which he must concede he enacted without Thurston's/the Board's approval—were *each a particular management decision* that he made despite the inherent deadlock that should have foreclosed such actions under the governing Bylaws. Although Wyoming caselaw is shallow in this area, other courts have pointed

---

[2] Although Schiermeyer disputes the reasons for and characterizations of some of the events discussed in these passages, each contains uncontested facts corresponding with his own allegations that paint a clear picture of the irreconcilable schism between the Parties and resultant deadlock of BGP's Board.

out the significance of wholesale deadlock. *See*, *e.g.*, *In re Shawe & Elting LLC*, 2015 WL 4874733, at *1 (Del. Ch. Aug. 13, 2015), *aff'd sub nom. Shawe v. Elting*, 157 A.3d 152 (Del. 2017) (custodian appointed to sell company after "complete dysfunction" between the only two directors of a company, "resulting in irretrievable deadlocks over significant matters that are causing the business to suffer").

This Court noted at the status conference that "the question . . . might end up being, just as a legal matter, under Wyoming law, what is required for deadlock and whether the requirements are met based on those facts." ES Opp. Br. Ex. 1 at 19:22-25. Despite the Court's clear charge, however, Schiermeyer has done little more than point at *APEG Energy* in this effort, and claim that, notwithstanding the obvious board dysfunction, deadlock as to future decisions should not be assumed. In contrast to the numerous pages Schiermeyer devoted to receivers and Rule 66, he spared a meagre two paragraphs to the question of deadlock under Wyoming law. Under the circumstances, the Parties' irreconcilable deadlock is beyond dispute, and Schiermeyer's half-hearted attempt to contest this obvious fact is without merit.

III. **True North Has Established Irreparable Harm**

Apart from the issue of deadlock, Schiermeyer argues that True North has introduced no evidence under Rule 65 or Wyoming law that the Company has suffered sufficiently irreparable injury to warrant the appointment of a custodian. Again citing to *APEG Energy*, Schiermeyer asserts that, unlike the prevailing party in that case, True North did not establish any potential injury to the Company such as the threat of delisting on a public trading platform because of the alleged board deadlock. But as stated above, Schiermeyer reads *APEG Energy* too narrowly, and he ignores both Parties' acknowledgement that Coinbase did in fact delist GALA in the wake of

9

Schiermeyer's non-Board-approved burn/v2 upgrade and that additional crucial business decisions, together with BGP's existence as an operating and successful business, hangs in the balance. *See* ES Am. Compl. ¶ 127; TN Am. CC ¶ 46. Irreparable harm to BGP has occurred and further harm is certainly threatened[3] in this case.

As explained above, the deadlock itself inherently results in irreparable injury to the Company, considering the Board's inability to function and the President and CEO's inability to legitimately make crucial management decisions without the Board approval required by the Bylaws. The fact that, by virtue of corporate inertia and Schiermeyer's *ultra vires* management, the Company has continued to function (albeit unlawfully) on a basic level—essentially operating as a sole proprietorship—is of no moment. *See In re Shawe & Elting LLC*, 2015 WL 4874733, at *1 (finding that deadlock threatens irreparable injury to the business even if the business is profitable); *Forrester Constr. Co. v. Forrester*, 2021 Md. Cir. Ct. LEXIS 15, *1 (finding that the appointment of a provisional director was warranted even though the business could still function in the face of total deadlock). In other words, the Bylaws restrict the Company from making a host of decisions without Board approval. If there is a nonfunctioning Board, then the Company suffers significant harm, regardless of profitability. Although BGP's trajectory under Schiermeyer's unilateral direction suits him personally, that does not erase the irreparable injury BGP faces as a company.

---

[3] Note that even the *threat* of irreparable harm to the BGP because of the deadlock suffices under Wyoming law. *See* ES Opp. Br. at 9-10. Such harm is surely at least threatened here.

### IV. True North Is Substantially Likely to Succeed on the Merits and Schiermeyer's Assertion of Unclean Hands Must Fail

For reasons set forth above (*see supra* Sections II and III), True North has demonstrated a substantial likelihood of success on the merits of its substantive claim for the appointment of a custodian under Wyoming law. This is not circular logic, but rather an inescapable conclusion.

By contrast, Schiermeyer's invocation of unclean hands (*see* ES Opp. Br. at 17-18) is irrelevant, given that the Court need not consider disputed facts to grant the Motion. That said, should further factual development be required to establish the need and basis for a custodian in this case, as stated by counsel for True North in the status conference, True North would be willing to undertake such an effort provided it is targeted and expeditious since each day that passes with the current dysfunction imperils many stakeholders.

### V. No Substantial Bond Is Warranted Here

Finally, Schiermeyer requests that the Court require True North to post a staggering $130 million bond if the Court decides to grant True North's preliminary injunction and appoint a custodian, a requirement at times provided for in the appointment of an equitable receiver to oversee the dissolution of an enterprise. However, such a bond is neither called for nor supported by the Wyoming law providing for the appointment of a custodian, and frankly runs counter to the whole notion of the appointment of a custodian in cases such as this. Unlike equitable receiverships, which typically are utilized in the dissolution of an enterprise, the custodian would be tasked with safeguarding and running the enterprise while the corporate dispute in this matter is considered and resolved.

Notwithstanding this reality, Schiermeyer argues that appointing a custodian will disrupt the Company's function, necessitating a bond that matches the token value the defendants

11

allegedly took from the Company. Schiermeyer's specious allegations regarding the alleged theft of tokens by Thurston are entirely unrelated to whether the Board is deadlocked and the company is unable to function properly according to its Bylaws. Furthermore, even when applying considerations generally applicable to a receivership, "if there is an absence of proof showing a likelihood of harm, certainly no bond is necessary." *Cont'l Oil Co. v. Frontier Ref. Co.*, 338 F.2d 780, 782 (10th Cir. 1964). Here, Schiermeyer says this preliminary injunction could have a negative impact on the Company, but he has failed to demonstrate that the harm is likely, let alone likely to amount to the astronomical figure of $130 million in damages. Thus, a bond is unnecessary in this case and even were one to be required, the Court can take additional evidence on what would be an appropriate (not exorbitant) amount.

## CONCLUSION

For these reasons, and those stated in the Motion, True North requests that the Court grant the Motion and enter an order appointing a temporary custodian to serve as BGP's President, CEO, and sole member of the Board of Directors.

DATED this 16th day of February 2024.

GREENBERG TRAURIG LLP

/s/ *Marc Rasich*
Marc Rasich
John Huber
Daniel Wadley
Alexander Baker

*Attorneys for Defendants, Counterclaimant, and Crossclaim Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of February 2024, a true and correct copy of the foregoing was filed with the Court's electronic filing system and thereby served on counsel of record.

Paul W. Shakespear
Cameron Cutler
Natalie Beal
SNELL & WILMER LLP
15 West South Temple, Suite 1200
Gateway Tower West
Salt Lake City, UT 84101
pshakespear@swlaw.com
ccutler@swlaw.com
nbeal@swlaw.com

Abram L. Moore
Christian A. Zazzali
K&L GATES LLP
70 West Madison Street, Suite 3100
Chicago, IL 60602
abe.moore@klgates.com
christian.zazzali@klgates.com

GREENBERG TRAURIG, LLP

*/s/ Lindsey Wharton*