David L. Mortensen (#8242)
dmortensen@foley.com
Monica S. Call (11361)
mcall@foley.com
FOLEY & LARDNER LLP
95 S. State Street, Suite 2500
Salt Lake City, UT 84111
Telephone: 801.401.8900

*Attorneys for Blockchain Game Partners, Inc.
d/b/a Gala Games and d/b/a BGP Games*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ERIC SCHIERMEYER, Derivatively on Behalf of Nominal Defendant, BLOCKCHAIN GAME PARTNERS, INC. D/B/A GALA GAMES,<br><br>Plaintiff,<br><br>vs.<br><br>WRIGHT W. THURSTON and TRUE NORTH UNITED INVESTMENTS, LLC<br><br>Defendants.<br><br>and<br><br>BLOCKCHAIN GAME PARTNERS, INC. D/B/A BGP GAMES,<br><br>Nominal Defendant. | **REPLY IN SUPPORT OF BLOCKCHAIN GAME PARTNERS, INC.'S MOTION TO COMPEL ARBITRATION, OR IN THE ALTERNATIVE, TO DISMISS TRUE NORTH'S AMENDED CROSSCLAIM**<br><br>Case No. 2:23-cv-00589-HCN-DAO<br><br>The Honorable Howard C. Nielson, Jr.<br><br>Magistrate Judge Daphne A. Oberg |

| | |
|---|---|
| TRUE NORTH UNITED INVESTMENTS, LLC, Derivatively on Behalf of Nominal Defendant, BLOCKCHAIN GAME PARTNERS, INC. D/B/A GALA GAMES,<br><br>        Counterclaimant,<br><br>  vs.<br><br>ERIC SCHIERMEYER,<br><br>        Counterdefendant,<br><br>  and<br><br>BLOCKCHAIN GAME PARTNERS, INC. D/B/A BGP GAMES,<br><br>        Nominal Counterdefendant. | |
| TRUE NORTH UNITED INVESTMENTS, LLC,<br><br>        Crossclaim Plaintiff,<br><br>  vs.<br><br>BLOCKCHAIN GAME PARTNERS, INC. D/B/A BGP GAMES,<br><br>        Crossclaim Defendant | |

Crossclaim Defendant Blockchain Game Partners, Inc. d/b/a BGP Games ("Gala Games") hereby submits this Reply in support of its Motion to Compel Arbitration or, in the Alternative, to Dismiss True North's Amended Crossclaim (the "Motion").

## INTRODUCTION

In its Opposition, True North argues the direct claims against Gala Games should not be dismissed because (1) Gala Games has waived its right to demand arbitration, and (2) True North has otherwise sufficiently pleaded its direct claims against Gala Games. True North is wrong on both counts. ***First***, True North argues that Gala Games waived its right to arbitrate True North's crossclaims (which are based primarily on conduct that allegedly occurred on October 10, 2023) because Plaintiff did not accept Defendant Thurston's proposals in June 2023 to arbitrate entirely different disputes between Plaintiff and Thurston. Even if True North had proposed, in June 2023, that Gala Games arbitrate all then-existing claims between True North and Gala Games (it did not), and even if Gala Games had rejected such a proposal (it did not), that would not mean that Gala Games waived its right to arbitrate claims that allegedly arose months later and that are subject to the mandatory arbitration provision of the Terms and Conditions. To the contrary, Gala Games has specifically and successfully sought to preserve its arbitration right by keeping its litigation conduct minimal and punctuated with early and repeated assertions of that right.

***Second***, True North's pleading misconstrues the law, conflates Gala Games' liability with Schiermeyer's, and asserts skewed characterizations of the allegations and the applicable agreement (the "Terms & Conditions"). In a futile attempt to save its breach of contract claim, True North offers conclusory assertions about unconscionability and lumps Schiermeyer's conduct with Gala Games'. For its implied covenant claim, True North ignores nearly all the Terms & Conditions' provisions to claim the *only* consideration Gala Games provided through it was the nodes. For conversion, True North again relies on Schiermeyer's conduct to show liability and essentially concedes the Terms & Conditions govern this dispute.

1

As explained in the Motion and below, True North's claims should be dismissed with prejudice. True North's claims against Gala Games are arbitrable and not sufficiently pleaded.

**ARGUMENT**

**I.     GALA GAMES HAS NOT WAIVED ITS RIGHT TO DEMAND ARBITRATION.**

True North argues Gala Games may not demand arbitration of the crossclaims because Gala Games waived its right to do so. True North is wrong. True North mischaracterizes Gala Games' conduct, Gala Games' limited litigation participation does not establish waiver, and True North's inefficiency argument is meritless and unsupported by case law.

True North carries a heavy burden to prove Gala Games' supposed waiver, especially because this Court must "give substantial weight to the strong federal policy encouraging expeditious and inexpensive resolution of disputes through arbitration." *Hill v. Ricoh Americas, Corp.*, 603 F.3d 766, 775 (10th Cir. 2010). True North cannot meet this burden.

Tenth Circuit courts generally evaluate arbitration waiver by several non-exclusive factors. *E.g.*, *BOSC, Inc. v. Board of County Commn'rs of County of Bernalillo*, 853 F.3d 1165, 1170 (10th Cir. 2017) (listing factors, and stating the factors are not "appl[ied] mechanically" (citations omitted)). To show waiver, True North points to Gala Games' supposed settlement-discussion arbitration rejections. It also claims the "litigation machinery has been substantially invoked" because, in its view, the parties have engaged in "costly and time-consuming motions practice" through months of litigation. True North further argues it would be inefficient to separate Gala Games out because "the same issues would still be litigated." Opp. at 7-8. None of these meritless arguments suffices to meet True North's burden.

***First,*** True North claims Gala Games waived its right to arbitrate because, in the months

2

before True North asserted its crossclaims, Gala Games repeatedly rejected proposals to arbitrate.[1] However, Gala Games has never rejected any proposal to arbitrate True North's crossclaims, which are the only claims that any party has argued are subject to the mandatory arbitration provision of the Terms and Conditions. Rather, Defendants' counsel made early proposals regarding entirely separate matters that appear to relate to the claims against Plaintiff, not Gala Games. Indeed, the dispute between True North and Gala Games regarding the node suspension, which is subject to the mandatory arbitration provision of the Terms and Conditions, *did not even allegedly arise until months after those pre-litigation discussions.* True North's crossclaims against the Company are based upon the suspension of Defendants' nodes, which allegedly occurred "[o]n October 10, 2023," months after all of the referenced discussions about arbitration. (Dkt. No. 75 at ¶ 68.) True North does not contend that it ever requested that anyone arbitrate the issue of the node suspension (or anything else) after October 10, 2023, much less that Gala Games rejected any request to arbitrate the crossclaims at issue in its motion to compel arbitration.

Moreover, prelitigation discussions and conduct generally do not indicate a waiver of arbitration rights. *See, e.g.*, *McWilliams v. Logicon, Inc.*, 143 F.3d 573, 577 (10th Cir. 1998) (rejecting argument that defendant-employer waived arbitration rights by failing to invoke them before plaintiff filed the lawsuit); *Prcic v. Carnival Corporation*, 641 F. Supp. 3d 1313, 1320 (S.D.

---

[1] True North notes that Gala Games has not refuted its factual allegation that Schiermeyer rejected True North's requests to mediate and/or arbitrate and that, accordingly, the allegation's truth should be assumed in deciding the Motion. Opp. at 4-5 n.1. As True North knows, Gala Games has not yet answered the crossclaims. Instead, it has filed the Motion. *Cf.* Fed. R. Civ. P. 12(b) ("A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed.").

3

Fla. 2022) (defendant cruise company did not waive right to arbitrate despite failing to respond to pre-filing requests by plaintiff to assert right to arbitrate where company did nothing to invoke the "litigation machinery" before demanding arbitration).

*Second*, Gala Games has not "substantially invoked" the litigation machinery, and in fact moved to compel arbitration roughly one month after it was brought into this action. True North first brought its arbitrable crossclaims against Gala Games in November 2023 (*see* Dkt. No. 60, 11/03/23 Answer and Counterclaims; Dkt. No. 75, 11/16/23 Amended Answer and First Amended Counterclaims and Crossclaims) and Gala Games filed its Motion to Compel Arbitration of those crossclaims in December 2023 (*see* Dkt. No. 89). *See, e.g.*, *Hill*, 603 F.3d at 775 (no waiver where there was four months between a party's answer and motion to compel arbitration, and collecting cases where "there was no waiver despite delays of four months or more after answering the complaint").

Additionally, during the last four months, Gala Games has not engaged in substantial litigation activities. Again, Gala Games is not voluntarily involved in this litigation; True North pulled it in. Gala Games has not filed an answer to True North's crossclaims and has asserted no claims against True North (or any other parties). No trial date has been set. (*See* Dkt. No. 93, 12/22/23 Attorney Planning Meeting Report at 9). Gala Games has participated in no discovery and instead agreed that no discovery would take place until this Court rules on the Motion. (*See id.* at 8). And while Gala Games has opposed True North's preliminary motions for injunctive relief and filed the present Motion, it has consistently asserted its arbitration rights in each instance. (*See* Dkt. No. 71, 11/14/23 Opposition to Mandatory Restraining Order at 4 n.2; Dkt No. 89, 12/20/23 Motion to Compel Arbitration/Dismiss; Dkt. No. 99, 02/02/24 Response to Defendants'

Motion for Preliminary Injunction at 1). *See, e.g.*, *Lamkin v. Morinda Props. Weight Parcel, LLC*, 440 Fed. App'x 604, 610 (10th Cir. 2011) (right to arbitrate not waived where, among other things, the party promptly sought to enforce its arbitration right, it did not interject counterclaims, and no important litigation steps (like discovery) had occurred).

**Third**, True North's inefficiency suggestion has little merit. True North does not dispute that the crossclaims against Gala Games are governed by the Terms & Conditions, which has a plain arbitration provision. And "when a complaint contains both arbitrable and nonarbitrable claims, the [FAA] requires courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be possible inefficient maintenance of separate proceedings in different forums." *KPMG LLP v. Cocchi*, 565 U.S. 18, 22 (2011) (citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985)). Notably, here *all of the claims* between Gala Games and True North will be in arbitration. Any inefficiencies that result from arbitrating the claims against Gala Games apart from others does not negate the mandate for arbitration.[2] In short, True North should be required to arbitrate its crossclaims against Gala Games, and those crossclaims should be dismissed.

II. **TRUE NORTH HAS FAILED TO STATE ITS CROSSCLAIMS AGAINST GALA GAMES.**

True North's crossclaims should be dismissed because they are subject to arbitration.

---

[2] Moreover, as alleged, True North's direct claims against Gala Games rest on Gala Games' conduct as measured and defined by the Terms & Conditions. *See* First Am. Crossclaims ¶¶ 131-135, 139. Indeed, even the interest underlying True North's conversion claim against Gala Games ultimately arises from the Terms & Conditions. *See id.*; Opp. at 15. Schiermeyer and others are not parties to the Terms & Conditions. Thus, because Gala Games' liability is squarely governed by the Terms and Conditions while other parties' liability is not, it is not inefficient to separately arbitrate the claims against Gala Games.

Nevertheless, True North's claims should also be dismissed for failure to state a claim.

### A. True North Has Failed to State a Claim for Breach of Contract.

True North first argues it has stated a claim for breach of contract because Gala Games' authority to deal with its users' tokens and nodes would be unconscionable and unenforceable if Gala Games could suspend nodes for any reason in its discretion. But True North cannot avoid the Terms & Conditions provisions it dislikes by now complaining they are unfair. *George v. eBay, Inc.,* 71 Cal. App. 5th 620, 630 (2021). And even had True North alleged that the Terms & Conditions are unconscionable or unenforceable (it has not), True North makes no meaningful showing to that effect and instead simply misconstrues the law. For example, True North flatly asserts the Terms & Conditions are procedurally unconscionable because it is an adhesive contract. But "merely alleging that a contract is one of adhesion is not sufficient." *E.g.*, *George,* 71 Cal. App. 5th at 632; *Malone v. Superior Court*, 226 Cal. App. 4th 1551, 1561 ("However, the fact that an agreement is adhesive is not, alone, sufficient to render it unconscionable.").

For substantive unconscionability, True North conclusorily asserts that Gala Games' ability to suspend nodes in its discretion would be oppressive and a shock to the conscience. Opp. at 11. But substantive unconscionability "requires a substantial degree of unfairness," as "[n]ot all one-sided provisions are unconscionable." *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1245 (2016) (internal quotation marks omitted). For example, contracts can provide one party "a type of extra protection for which it has a legitimate commercial need without being unconscionable." See *Chen v. PayPal, Inc.*, 61 Cal. App. 5th 559, 579 (2021) (citation omitted); see also *Baltazar,* 62 Cal. 4th at 1250 ("commercial need to protect Forever 21's valuable trade secrets and proprietary and confidential information from public disclosure" was legitimate).

Here, Gala Games offers a broad range of services and products to users like True North, which True North acknowledged carries various risks and uncertainties. Terms & Conditions §§ Preface, 1.1-1.5, 3.3-3.6, 3.9, 3.11, 4.1-4.3, 8.1-8.6, 9. Certainly, Gala Games had a legitimate need to police activities on its systems/services, to deal with the risks and uncertainties where possible, and to act to protect its users, systems, and services—all of which necessitated discretion. *See id*. §§ 3.9, 4.1; *see also* Motion, Ex. B. Indeed, to use True North's bank example, while banks may not have unlimited discretion to simply "torch someone's savings," banks may act proactively by suspending withdrawals to stop a bank run or freezing accounts for a variety of reasons.[3]

### B. True North Has Failed to State a Claim for Breach of the Implied Covenant.

True North argues it has sufficiently pleaded its implied covenant claim because, in its view, the "only consideration" Gala Games provided were the nodes. Therefore, interpreting the Terms and Conditions to allow Gala Games to suspend nodes at its discretion would render the contract illusory. Not so. Again, the implied covenant "will not be read into a contract to prohibit a party from doing that which is expressly permitted by the agreement itself." *Wolf v. Walt Disney Pictures & Television*, 162 Cal. App. 4th 1107, 1120 (2008). And when a contract "is adequately supported by adequate consideration regardless of the discretionary power, there is no need to

---

[3] True North relies on Schiermeyer's conduct to argue its breach of contract claim survives. It asserts Schiermeyer's actions cannot be construed as legitimate exercises of Gala Games' discretionary authority because they amounted to Schiermeyer's "rogue," "vigilante self-help." Opp. at 8-9, 11-12. Gala Games would not be liable for an officer's "rogue" conduct. And as alleged, Gala Games' liability is governed by the Terms & Conditions. *See* Dkt. No. 75, 11/16/23 First Amended Counterclaims and Crossclaims, ¶¶ 68, 71-72, 131-136. The direct and derivate claims alleged against Schiermeyer should not be conflated with the direct claims against Gala Games.

7

impose a covenant of good faith in order to create mutuality." *Storek & Storek, Inc. v. Citicorp Real Estate, Inc.*, 100 Cal. App. 4th 44, 57 (2002).

The nodes are not the only consideration Gala Games provides through the Terms & Conditions. First, the Terms & Conditions are, quite obviously, not just a contract for nodes. Through it, Gala Games offers the full range of its services, features, and products to users, such as use of the GALA blockchain, the GALA app, the GALA Launcher, and the ability to earn and receive GALA Rewards. Terms & Conditions, Preface & § 1. *See Dos Beaches, LLC v. Mail Boxes Etc., Inc.*, No. 09CV2401-LAB, 2012 WL 1903905, at *6 (S.D. Cal. May 25, 2012) (regardless of discretion to approve relocation, no implied covenant applied where the agreement was more than a relocation agreement and was amply supported by consideration).

Second, Gala Games offers its services in tandem with many risks, uncertainties, and complexities, especially given the novelty and ongoing development of blockchain services. These include risks and uncertainties related to user conduct, the network, modification of associated technologies, the market, regulatory oversight, and digital rewards and their technologies and protocols. Terms & Conditions §§ Preface, 1.1-1.5, 3.3-3.6, 3.9, 3.11, 4.1-4.3, 8.1-8.6, 9. In accepting the terms of use, users like True North plainly acknowledge these risks as well as Gala Games' responsibility to supervise and to deal with them where possible (along with its overall products, services, and user oversight). *Id*. *Cf. First American Title Ins. Co. v. Spanish Inn, Inc.*, 239 Cal. App. 4th 598, 605 (2015) (party's discretionary power supported by adequate consideration, as evidenced by defendants' acknowledgement in the agreement about party's willingness to issue a riskier-than-normal title insurance policy). In short, the Terms & Conditions are supported by adequate consideration apart from the nodes. And because Gala Games is

8

expressly permitted the discretion to make oversight decisions about its users, services, and systems, True North's implied covenant claim must fail. *E.g.*, *Wolf,* 162 Cal. App. 4th at 1120-21.

### C. True North Has Failed to State a Claim for Conversion.

True North argues it has stated a claim for conversion against Gala Games because Gala Games has an independent duty apart from the Terms & Conditions not to deprive True North of its rewards and nodes. But it points only to Schiermeyer's alleged "wanton behavior" to show a supposed duty. Opp. at 13-15 & n.3. Again, any alleged "wanton behavior" by Schiermeyer is separate from True North's direct claims against Gala Games. First Am. Crossclaims ¶ 143 (alleging Schiermeyer's conduct was "outside the scope of his authorized capacity" as director and officer of Gala Games). *See generally CIG Exploration, Inc. v. Hill*, 824 F. Supp. 1532 n.9 (D. Utah 1993) ("It is axiomatic that acts performed by an agent beyond the scope of the agency do not bind the principal.").

Next, True North argues it sufficiently pleaded the ownership element of conversion. But in doing so, True North overtly relies on portions of the Terms & Conditions it believes demonstrate its interest in the tokens and nodes. Opp. 14-15 & n.4. And although True North now claims to have alleged conversion in the alternative, *see* Opp. n.3, no allegations suggest there is a dispute about whether the Terms & Conditions validly govern this dispute. *Cf. Hope Int'l Hospice, Inc. v. Net Health Sys.*, Inc., No. 2:22-cv-00656-DBB-DBP, 2023 WL 2433642, at *8 (D. Utah Mar. 9, 2023) (where plaintiff failed to allege the contract was invalid or that subsequent promises concerned matters outside of it, claim for promissory estoppel dismissed). *See* First Am. Crossclaim ¶¶ 30, 131-136, 138-141. Thus, True North effectively concedes, as it must, that the Terms & Conditions are the source of any interest it has in the tokens and nodes.

This bars its conversion claim and justifies its dismissal. *E.g.*, *Motivo Eng'g, LLC v. Black Gold Farms*, No. 2:22-cv-01447-CAS-JCx, 2022 WL 3013227, at *4 (C.D. Cal. June 27, 2022) (where the defendant's "ownership interest arises solely from the Master Services Agreement the parties entered into," defendant's conversion counterclaim was barred).[4]

### III.     TRUE NORTH'S CLAIMS SHOULD BE DISMISSED WITH PREJUDICE.

Finally, this Court should not afford True North leave to amend. True North claims that amendment would not be futile because (1) it has adequately pleaded it claims, and (2) most of Gala Games' assertions rest on disputed factual issues inappropriate for resolution at this stage.

If True Norths' claims against Gala Games are arbitrable (and they are), the dismissal should be with prejudice. True North has already had two attempts to properly plead its claims against Gala Games, and it has not. Moreover, as explained above and in the Motion, because True North's claims fail as a matter of law—based on settled principles of law—amendment would be futile. True North cannot amend its way around the fact that its claims against Gala Games arise from the Terms & Conditions and that the Terms & Conditions legally allowed Gala Games to take the actions it did. True North also has not identified or raised factual issues specific to Gala Games in need of further development.

### CONCLUSION

For the reasons discussed above and set forth in the Motion, True North's claims should be dismissed.

---

[4] As discussed above and in the Motion, True North has not sufficiently pleaded its claims against Gala Games. Thus, True North's claim for declaratory relief also must be dismissed. *See* Motion at 16; Opp. at 16.

DATED this 16th day of February, 2024

                                                FOLEY & LARDNER LLP

                                                /s/ *Monica S. Call*
                                                David L. Mortensen
                                                Monica S. Call
                                                FOLEY & LARDNER LLP
                                                95 S. State Street, Suite 2500
                                                Salt Lake City, UT 84111
                                                Tel. (801) 401-8919
                                                Email:  dmortensen@foley.com
                                                                     mcall@foley.com

                                                *Attorneys for Blockchain Game Partners, Inc. d/b/a Gala Games and d/b/a BGP Games*

11

12

**CERTIFICATE OF SERVICE**

I hereby certify that on February 16th, 2024, a true and correct copy of the foregoing **REPLY IN SUPPORT OF BLOCKCHAIN GAME PARTNERS, INC.'S MOTION TO COMPEL ARBITRATION, OR IN THE ALTERNATIVE, TO DISMISS TRUE NORTH'S AMENDED CROSSCLAIM** was served through the court's e-filing system which caused notice of filing to be sent to all counsel of record.

*/s/ Stacy Kamaya*

4855-3739-4595.4