Paul W. Shakespear (14113)
Cameron Cutler (15116)
Natalie Beal (18311)
SNELL & WILMER L.L.P.
15 West South Temple, Suite 1200
Gateway Tower West
Salt Lake City, Utah  84101
Telephone:  801.257.1900
Facsimile:  801.257.1800
Email: pshakespear@swlaw.com
        ccutler@swlaw.com
        nbeal@swlaw.com

Abram I. Moore (admitted *pro hac vice*)
Christian A. Zazzali (admitted *pro hac vice*)
K&L GATES LLP
70 West Madison St., Suite 3100
Chicago, IL 60602
Telephone: 312.781.6010
Facsimile: 312.827.8000
Email:   abe.moore@klgates.com
          christian.Zazzali@klgates.com

*Attorneys for Plaintiff Eric Schiermeyer*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ERIC SCHIERMEYER, Derivatively on Behalf of Nominal Defendant, BLOCKCHAIN GAME PARTNERS, INC. D/B/A GALA GAMES, <br><br> Plaintiff, <br><br> vs. <br><br> WRIGHT W. THURSTON and TRUE NORTH UNITED INVESTMENTS, LLC <br><br> Defendants. <br><br> and <br><br> BLOCKCHAIN GAME PARTNERS, INC. D/B/A BGP GAMES, <br><br> Nominal Defendant. | **PLAINTIFF'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS COUNTERCLAIMS** <br><br> Case No. 2:23-cv-00589-HCN-DAO <br><br> The Honorable Howard C. Nielson, Jr. <br><br> Magistrate Judge Daphne A. Oberg |

| TRUE NORTH UNITED INVESTMENTS, LLC, Derivatively on Behalf of Nominal Defendant, BLOCKCHAIN GAME PARTNERS, INC. D/B/A GALA GAMES, | |
|---|---|
| Counterclaimant, | |
| vs. | |
| ERIC SCHIERMEYER, | |
| Counterdefendant, | |
| and | |
| BLOCKCHAIN GAME PARTNERS, INC. D/B/A BGP GAMES, | |
| Nominal Counterdefendant. | |

| TRUE NORTH UNITED INVESTMENTS, LLC, | |
|---|---|
| Crossclaim Plaintiff, | |
| vs. | |
| BLOCKCHAIN GAME PARTNERS, INC. D/B/A BGP GAMES, | |
| Crossclaim Defendant | |

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ……………………………………………………………..1

II.    ARGURMENT .................................................................................................... 4

    A.    True North's derivative counterclaims (One through Six) should be dismissed... 4

        1.    True North has failed to comply with Rule 23.1, even considering its improper and incomplete new evidence. ................................................. 4

        2.    Counterclaim One, for breach of fiduciary duty, and True North's remaining derivative claims should be dismissed because they fail to adequately allege injury to the Company.................................................. 8

            a.    True North concedes that the alleged $600 million "burn" of shareholder tokens was not an injury to the Company. ................. 8

            b.    True North fails to allege that any Company assets or opportunities were transferred to Gala Music or Gala Film. ....... 10

            c.    True North's newly raised conclusory allegations of breaches of fiduciary duty causing injury to the Company should be disregarded. ................................................................................ 12

        3.    Counterclaim Two, for "corporate waste," fails to allege that any Company assets were wasted................................................................. 14

        4.    Counterclaim Three fails to state a derivative claim for unjust enrichment....................................................................................... 15

        5.    Counterclaim Four fails to state a derivative claim for an equitable accounting. .............................................................................. 17

        6.    The Fifth and Sixth Counterclaims fail to state claims for judicial removal of Plaintiff as a director or appointment of a custodian............................ 18

    B.    True North fails to establish that any of its direct claims against Plaintiff states a claim................................................................................................ 19

        1.    Counterclaim Seven: True North fails to tie any alleged conduct to a breach of the actual terms of the Founders Agreement. .......................... 19

            a.    Counterclaim Eight fails to state a claim for breach of the implied covenant of good faith and fair dealing. ......................... 21

            b.    Counterclaim Eleven fails to state a claim against Plaintiff for conversion. ................................................................................ 22

            c.    Counterclaim Twelve fails to state a claim against Plaintiff for tortious interference with the Gala Terms and Conditions. ......... 23

**TABLE OF CONTENTS**
(continued)

**Page**

d.    Counterclaim Thirteen, for declaratory judgment, fails to state a claim against Plaintiff. .............................................................. 24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alviar v. Lillard*,
854 F.3d 286 (5th Cir. 2017) ................................................23

*Barnes v. Harris*,
783 F.3d 1185 (10th Cir. 2015) .............................................13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...............................................................17

*Bryson v. Gonzales*,
534 F.3d 1282 (10th Circuit, 2008) ......................................12

*Campbell v. Davidson*,
2023 WY 100, 537 P.3d 734 (Wyo. 2023) ............................23

*Cook v. Ohio Nat'l Life Ins. Co.*,
961 F.3d 850 (6th Cir. 2020) ................................................16

*Delaware Cnty. Emps. Ret. Fund v. Sanchez*,
124 A.3d 1017 (Del. 2015) ......................................................4

*Erickson v. Pardus*,
551 U.S. 89 (2007)................................................................12

*Garnitschnig v. Horovitz*,
48 F. Supp. 3d 820 (D. Md. 2014).........................................15

*George A. Fuller Co., a Div. of Northrop Corp. v. Chicago Coll. of Osteopathic Med.*,
719 F.2d 1326 (7th Cir. 1983) ..............................................23

*Giles v. Gen. Motors Acceptance Corp.*,
494 F.3d 865 (9th Cir. 2007) ................................................22

*Gulf Coast W. Oil Co. v. Trapp*,
165 F.2d 343 (10th Cir. 1947) ..............................................18

*In re Kauffman Mut. Fund Actions*,
479 F.2d 257 (1st Cir. 1973)...................................................5

*Khalik v. United Air Lines*,
671 F.3d 1188 (10th Cir. 2012) .............................................13

*Koch v. Koch Indus., Inc.*,
    203 F.3d 1202 (10th Cir. 2000) ...................................................................13

*Lochhead v. Alacano*,
    662 F. Supp. 230 (D. Utah 1987) ...............................................................13

*Mod. Gaming, Inc. v. Sockeye Software, LLC*,
    No. CV 22-00357-BAJ-SDJ, 2023 WL 157796 (M.D. La. Jan. 11, 2023) ............11

*Papilsky v. Berndt*,
    59 F.R.D. 95 (S.D.N.Y. 1973) ......................................................................5

*Scherer Const., LLC v. Hedquist Const., Inc.*,
    2001 WY 23, 18 P.3d 645 (Wyo. 2001) ......................................................21

**Statutes**

American Bar Association's Model Business Corporation Act Section 7.42 ...............4

Wyo. Stat. Ann. § 17-16-748 ..........................................................................19

Wyo. Stat. Ann. § 17-16-809 ..........................................................................19

Wyo. Stat. § 17-16-742 .............................................................................4, 8

Wyo. Stat § 17-17-140 ..................................................................................18

Wyo. Stat § 17-17-141 ..................................................................................18

**Other Authorities**

Fed. R. Civ. P. 23.1 ............................................................................... *passim*

https://tokengamer.io/gala-burns-660m-of-own-token-to-avoid-fud-and-
    instability/; https://playtoearn.net/news/gala-games-burns-over-600-million-
    worth-of-gala-tokens-to-address-concerns;
    https://nftnewstoday.com/2023/05/19/gala-games-burns-637m-in-gala-tokens-
    to-secure-community-trust/.........................................................................10

Fed. R. Civ. P. 8(b) .......................................................................................19

Fed. R. Civ. P. 8(b)(2) ...................................................................................13

Fed. R. Civ. P. 9(b) .......................................................................................19

Fed. R. Civ. P. 11 ............................................................................................7

**INTRODUCTION**

True North filed its retaliatory claims immediately after Plaintiff filed its derivative claims, in an attempt to divert attention from the fact that Defendants stole and liquidated more than $130 million worth of specifically-identified Company assets. True North's hurried derivative and direct counterclaims are plagued with irreparable deficiencies and should be dismissed, with prejudice.

First, True North misunderstands the nature of "derivative" claims.  It cannot file a derivative claim regarding conduct without pleading with particularity that it brought the conduct to the Company's attention and made a written demand for the remedy that it seeks via the derivative claim.  True North did not adequately plead that it met these requirements with respect to *any of Plaintiff's alleged conduct.* It attempts to remedy this pleading failure by attaching numerous documents to its Opposition, but those documents do not describe any misconduct by Plaintiff or demand that it be remedied. These purported "demands" are in marked contrast to the particularized demands that preceded Plaintiff's derivative actions against Thurston. Because True North failed to adequately allege the required written demands, all of its derivative claims (Counterclaims One through Six) should be dismissed.

Even if True North had made the proper written demands, its derivative claims would fail because they do not allege injury to the Company. True North's derivative claims seek $600 million in damages, based upon $600 million worth of "burned" GALA. However, True North finds itself between a rock and a hard spot regarding who owned that burned GALA. If the burned GALA belonged *to True North and other shareholders*, as True North alleges, then there is no $600 million injury *to the Company* and no derivative claim. But if the burned

GALA belonged to the Company, as Plaintiff alleges, then True North stole and liquidated $130 million worth of that Company GALA. Incredibly, True North ends up arguing that the Court should *not accept its own allegations (verified by Thurston) as true*, but should instead "draw inferences of corporate waste in True North's favor" (*i.e.*, assume the burned GALA belonged to the Company) as *Plaintiff's allegations* give rise to a "contradictory fact pattern concerning whether BGP or True North owned the GALA." (Opp. at p. 18.) Oh, what a tangled web it weaves. Unfortunately for True North, it is stuck with its own allegations, not Plaintiff's, and it has failed to allege a derivative injury associated with this "burn."

True North thus hopes to rely upon conclusory allegations that Plaintiff misappropriated some wholly-unspecified funds, assets, and real estate, arguing that "specific facts are not necessary" and that the Court should just "infer the necessary unarticulated assumptions." (Opp. at p. 3.) At the same time, True North characterizes the purported misappropriation as "fraudulent conduct" that would be subject to Rule 9(b) standards. These conclusory allegations of misappropriation cannot support True North's derivative claims under any standard. Nor can True North's allegation that Plaintiff *either* transferred Company assets to other entities *or* never transferred anything but just intended to do so.

True North's derivative Counterclaim Two for corporate waste fails because no facts are alleged showing that making a contractually-required installment payment for a corporate jet was a transaction on terms so one-sided that they could not have been in good faith. Further, Counterclaim Three, for unjust enrichment, fails because True North cannot explain how the alleged Gala burn or the node suspension conveyed a benefit to Plaintiff for which the Company is entitled to compensation. In addition, it is undisputed that the subject matter

of the node suspension was governed by an express contract.  Nor can True North's equitable accounting claim (Counterclaim Four) proceed, as it fails to allege any injury to the Company for which there is an inadequate remedy at law or that the accounts between Plaintiff and the Company are so complicated that only a court of equity can sort them out.

True North's Counterclaims Five and Six to remove Plaintiff as an officer of the Company and to appoint a receiver to control the company should be dismissed. It concedes that certain of the statutes it relied upon do not apply. Further, it fails to allege well-pleaded facts showing fraudulent conduct or impending irreparable injury.

True North's direct claims against Plaintiff also fail.  In Counterclaim Seven, True North argues that Plaintiff breached an early Founders Agreement by "causing BGP to suspend the nodes" belonging to True North (which True North also contends is a breach of the Terms and Conditions by the Company). This is not a breach of any express provision of the Founders Agreement. True North's argument that Counterclaim Eight, for breach of the implied duty of good faith and fair dealing, survives merely because it "buttresses" Counterclaim Seven is legally unsupported. Counterclaim Eleven, for conversion, fails because True North concedes that any right to operate its nodes was governed by contract and it fails to allege facts showing that it had a legal right to any of the burned GALA v2. Because True North fails to allege facts showing that Plaintiff acted solely for his own benefit in directing the Company to suspend the nodes, it has failed to state a claim for tortious interference (Counterclaim Twelve). Finally, True North fails to point to anything in its requested declaratory judgment (Counterclaim Thirteen) that would guide the parties' future conduct.  Instead, it asks for an improper declaration purely regarding past conduct.

## <u>ARGUMENT</u>

**A.      True North's derivative counterclaims (One through Six) should be dismissed.**

  **1.      True North has failed to comply with Rule 23.1, even considering its improper and incomplete new evidence.**

  True North is obligated under Rule 23.1 and Wyoming Statute § 17-16-742 to plead particularized allegations that it made written demand that the Company take suitable action regarding each of the complained-of actions that form the basis for its derivative claims. It has failed to do so, and its arguments to the contrary are unavailing.

  First, True North seems to suggest that it was not required to make any pre-suit demand, although it does not expressly argue that Wyoming law recognizes demand futility. (*See* Opp. at pp. 8-9, arguing only that the Wyoming Supreme Court has not addressed the issue.) Critically, True North does not (and cannot) dispute that (a) Wyoming's demand requirement controls, (b) Wyoming has adopted Section 7.42 of the Model Business Corporation Act, and (c) Section 7.42 sets forth a universal demand requirement that does not recognize demand futility. (*See* Dkt. No. 90, Plaintiff's Motion to Dismiss Counterclaims at pp. 4-8) ("Motion"). In short, True North makes no legal argument that it was excused from making the demand required by Wyoming law.

  Next, True North argues that it has pled particularized allegations that it made the required written demands.[1] However, the very allegations cited by True North—consisting of six bullet points—show that this is false. (Opp. at pp. 5-6.) Not one of those allegations includes a written

---

[1]   True North argues that its pleading obligations under Rule 23.1 of the Federal Rules of Civil Procedure are explained in a state court opinion. (*See* Opp. at pp. 7-8, fn. 4, citing *Delaware Cnty. Emps. Ret. Fund v. Sanchez*, 124 A.3d 1017, 1020 (Del. 2015).) The Delaware state court standard and Delaware rules are inapplicable here, as this case is subject to the federal pleading standards in a universal-demand state.

demand that the Company do anything. Rather they allege only that: (1) Thurston raised "concerns" about some unspecified token and NFT distributions at some unspecified time without demanding that the Company do anything; (2) Thurston told the Company's counsel that issuing GALA v2 "violated the companies' organizing documents" without demanding that the Company do anything; (3) Thurston unsuccessfully "attempted to discuss" unspecified matters with Plaintiff at unspecified times without demanding that the Company do anything; (4) Thurston "sought to address" the creation of other Gala entities with Plaintiff at a board meeting but did not demand that the Company do anything; (5) the Directors voted against removing or suing themselves for unspecified matters; and (6) Thurston asked Plaintiff if he would agree to arbitrate their disputes. *Id*. These fall radically short of particularized allegations showing that True North raised each of the issues in its counterclaims and demanded the payment of any damages, return of any property, or anything else that True North now asks the Court to order.

   True North attempts to remedy its pleading failures by attaching documents to its Opposition and asking the Court to wade into facts outside the pleadings. True North does so despite arguing that "the Rule 23.1 requirement of particularity is directed solely to the face of the complaint, and should not provide a forum for factual issues however presented." (Opp. at p. 9, citing *Papilsky v. Berndt*, 59 F.R.D. 95, 98 (S.D.N.Y. 1973).)[2] Even if the Court were to consider

---

[2] True North cites *Papilsky* in an attempt to excuse its failure to plead particularized facts showing that it made the required demand. However, the First Circuit quickly disapproved of that decision, noting that "the authorities cited do not, in fact, support the [*Papilsky*] decision" and holding: "it is clear that the [Rule 23.1] 'particularity' must appear in the pleading itself; the stockholder may not plead in general terms, hoping that, by discovery or otherwise, he can later establish a case." *In re Kauffman Mut. Fund Actions*, 479 F.2d 257, 263, 266 (1st Cir. 1973).

these documents, they demonstrate True North's failure to made adequate demand for the relief it now seeks. True North asks the Court to compare the demands made by the parties. (*See* Opp. at p. 6-7.) This is an illustrative exercise, but True North fails to attach the underlying demands.

Plaintiff's pre-suit demands have not been challenged, and for good reason. Plaintiff specifically apprised Defendants and the Company of the particular misconduct Defendants had engaged in and demanded the particular relief set forth in Plaintiffs' Amended Complaint. In 2022, Plaintiff demanded that Defendants return the specific GALA tokens that they had stolen from the Company. (Am. Compl. ¶¶ 67, 78-81, 92.) On the morning of June 6, 2023, Plaintiff sent a written demand to the Board of Directors demanding that the Company file suit against Thurston for "stealing Company assets" and breaching his duties to the Company. (Opp. Ex. B.) On June 9, 2023, counsel for Plaintiff (as shareholder and director) sent an eleven-page demand letter describing Defendants' misconduct with particularity and demanding the relief that is set forth in Plaintiff's Amended Complaint. (Plaintiff's June 9, 2023 Demand Letter attached hereto as Exhibit 1.) Thurston voted against bringing suit regarding this specific misconduct. (*See* Opp. at Ex. D.) Nothing in the Amended Complaint is a surprise to Defendants.

In contrast, Defendants refer to a "demand" made on the evening of June 6, 2023, in which True North did little more than change the names in the demand that Plaintiff had sent earlier that morning. (*Compare* Opp. Ex. A. *with* Opp. Ex. B.) True North also states that "Thurston sent a cease-and-desist letter in May 2023," but fails to attach it—again, for good reason. (Opp. p. 6.) That one-page letter is even more conclusory than the Amended Counterclaims, referring to entirely unspecified "actions" purportedly affecting the value of BGP and demanding that Plaintiff "cease and desist from any and all decisions and actions" that "could materially affect the value"

of Company. (Cease and Desist letter attached as Exhibit 2.)[3] This is the extent of True North's new evidence regarding any written demand.

In the attachments to True North's Opposition, there is not a single reference to the bulk of Plaintiff's purported conduct that True North now highlights as the very basis for its derivative claims (much less a demand that it be remedied). The following alleged conduct is unaddressed:

- Sending cryptocurrency to Jason Brink for "unknown reasons";[4]

- Distributing NFTs to himself rather than to third parties;

- Misappropriating unspecified "millions of dollars" of Company funds;

- Using Company funds to buy and rent real estate for his own use;

- Using Company funds to hire architects and others for personal real estate;

- Transferring BGP funds into his personal accounts.

(*See* Opp. pp. 14-15, 21.) On October 23, 2023, counsel for Plaintiff sent a letter to Defendants' counsel expressing concern that these and other allegations central to Defendants' derivative claims had not been previously raised (and lacked evidentiary support). (October 13, 2023 Letter

---

[3] Thurston sent another letter in May 2023, which is not incorporated by reference in the Amended Counterclaims or attached to the Opposition. The closest thing to a demand in that letter was a request that the creation of Gala Music be "discussed and rectified." Thurston does not, and cannot (within the confines of Rule 11), allege that any demand to dissolve Gala Music has gone unresolved. To the contrary, Plaintiff responded that the creation of Gala Music "has not proceeded precisely *because* Mr. Thurston refuses to authorize it." (Ex. 1 at pp. 9-10.) As Defendants well know, the entity never received any Company assets and is in the process of being dissolved.

[4] True North complained of this for the first time in its pleadings, then immediately confessed that it does know the legitimate reason for these transfers to Brink: "BGP continued to derive revenue from product sales. Its revenue was primarily earned in crypto, including Gala. It was routinely liquidating this earned Gala through Jason Brink's account at crypto exchange Binance." (Dkt. No. 30, Declaration of Jennifer Miller, p. 6 ¶ 18.)

to Defendants' Counsel, attached as Exhibit 3.) Defendants have failed to respond to that letter and have never provided any details about this alleged conduct other than what is in the conclusory Amended Counterclaims.[5]

Even if True North could be excused its failure to meet the particularized pleading requirements of Rule 23.1, it certainly cannot proceed with derivative claims raised for the first time in its pleadings. Unfortunately for Defendants, filing surprise retaliatory derivative claims is a tactic that is strictly prohibited under Rule 23.1 and Wyoming Statute § 17-16-742. Because True North is required to comply with particularized demand pleading requirements and has failed to do so, its derivative counterclaims (Nos. One through Six) should be dismissed.

### 2. Counterclaim One, for breach of fiduciary duty, and True North's remaining derivative claims should be dismissed because they fail to adequately allege injury to the Company.

True North does not dispute that its derivative counterclaims must be dismissed unless they are based upon an injury to the Company (as opposed to a direct injury to Defendants or others). No such injuries are adequately alleged.

### a. True North concedes that the alleged $600 million "burn" of shareholder tokens was not an injury to the Company.

True North has been very clear about the primary damages supporting its purported derivative counterclaims: "BGP and its shareholders have sustained significant damages, in an amount to be proven at trial but which exceeds $600 million." (Dkt. No. 75, Am. Counter. at ¶ 85,

---

[5] True North wrongly argues that the Court should simply *assume* that its prior demands "of course, concerned allegations asserted in True North's Amended Counterclaims." (Opp. at p. 5). This flies in the face of Rule 23.1's requirement that these demands for suitable action be alleged with particularity.

*see also* ¶¶ 1, 47, 48, 52, 88, 89, 92, 103, 112.) This figure is based upon an alleged "burn" of GALA v2 which purportedly "destroyed more than $600 million in assets" consisting of "billions of GALA v2 tokens belonging to BGP's shareholders." (*Id*. at ¶ 46.) True North concedes that it has not alleged that the burned GALA belonged to the Company. This should end the matter, but instead True North asks the Court to consider *Plaintiff's allegations* that the burned GALA belonged to the Company. (*See* Opp. p. 18, citing allegations in Amended Complaint that Defendants stole GALA belonging to the Company.) If Defendants intend to concede that the burned GALA belonged to the Company, then they must again amend their counterclaims—and their Answer—which repeatedly denies as much (Dkt. No. 75, pp. 30-36).  Until then, assuming the truth of the allegations in the Amended Counterclaims as they stand, True North does not claim that the $600 million in burned assets belonged to the Company, and thus the core damage claim underlying its derivative claims must be disregarded.

Realizing it has no cognizable $600 million derivative claim, True North attempts to spin tangential damages theories. It argues that the alleged burn "harmed the Company itself by opening it up to many millions of dollars' worth of liability for the wanton destruction of . . . shareholders' digital assets." (Opp. at p. 14.) This new damages theory is nowhere in the Amended Counterclaims, and no shareholder other than True North has ever claimed that the Company was liable for burning any GALA. In other words, True North argues that if it has a *direct claim against the Company* for the value of the lost GALA, then it also has a derivative claim *on behalf of the Company* against Plaintiff for the value of the burned GALA. Unsurprisingly, True North cites no authority suggesting that a shareholder can premise a derivative claim upon the Company's potential direct liability to the shareholder itself. While one could certainly dive deep into the

problems with such a circular theory of liability, this argument can be disposed of by the simple fact that the Company has not been found liable to True North and thus has not been injured.[6]

Finally, True North argues that the burn of shareholder assets has "wrought untold harms" to "community confidence" in the Company and the GALA tokens. (Opp. p. 14.) "Untold" here can be read as "unalleged," as this purported theory of injury is not pled. Nor does True North tie decreased "community confidence" to any injury to the Company.[7] Indeed, the "community" is not even identified. This new "community confidence" argument is also the only alleged Company injury arising from Thurston's alleged exclusion from management, although there is no allegation that Thurston's purported exclusion was ever even disclosed to the community. (*Id*.)

True North fails to allege any harm to the Company caused by the alleged burn of $600 million in shareholder assets, and the burn can therefore not form the basis of a derivative claim.

   **b.    True North fails to allege that any Company assets or opportunities were transferred to Gala Music or Gala Film.**

True North fails to allege facts showing that Plaintiff diverted any Company funds, assets or opportunities to Gala Music or Gala Film, and thus has failed to allege any injury to the

---

[6] Even if the Company were to be found liable to True North at some future date, True North would then be required (in its capacity as shareholder) to demand that the Company seek indemnification from Plaintiff before bringing any derivative claim on the Company's behalf.

[7] Further, as True North knows, this argument runs precisely contrary to the truth. One need only search the internet for "Gala Games" and "burn" to find a trove of industry articles reflecting favorably upon the Company's burn of its treasury, as it neutralized any concern in the community that the Company would liquidate its huge reserves of the GALA token. (*See e.g.*, https://tokengamer.io/gala-burns-660m-of-own-token-to-avoid-fud-and-instability/; https://playtoearn.net/news/gala-games-burns-over-600-million-worth-of-gala-tokens-to-address-concerns; https://nftnewstoday.com/2023/05/19/gala-games-burns-637m-in-gala-tokens-to-secure-community-trust/.)

Company. True North knows very well that nothing was ever transferred to the short-lived Swiss entity and that it is being dissolved (and that no Dubai entity was ever formed).[8] Indeed, True North now appears to acknowledge as much. (*See* Opp. at p. 27 fn. 15.) Therefore, True North skirts the issue in its pleading, alleging only that Plaintiff "has ***or intends to*** transfer or use much of BGP's current [assets] to benefit the foreign legal entities." (Dkt. No. 75, Counterclaims ¶¶ 58-62, 84 (emphasis added).)  True North suggests that pleading this sort of "disjunctive alternative" is sufficient to state a claim. (Opp. at p. 15.) This is incorrect, as one of the two possible factual allegations (that Plaintiff merely *intended to* transfer assets) would undisputedly result in a failure to state a claim. *See Mod. Gaming, Inc. v. Sockeye Software, LLC*, No. CV 22-00357-BAJ-SDJ, 2023 WL 157796, at *2 (M.D. La. Jan. 11, 2023) (tortious interference claim dismissed where plaintiff alleged that defendant knew about the interfered-with contract "soon after, at the time of, *or* prior to" the breach, because if defendant only became aware of the contract "soon after" the breach there would be no claim). Indeed, even if True North had directly alleged the transfer of unidentified assets, its allegation would still be too conclusory to state a claim.

Finally, True North reverts to arguing that the "use of the name 'Gala'" in these entities is sufficient to establish damage to the Company because it was "designed to take advantage of and profit off of [the Company's] goodwill." (Opp. p. 16.)  However, True North does not, and cannot, allege that these foreign entities ever conducted *any business whatsoever*, much less that they

---

[8] True North oddly argues that Plaintiff "stopped short of denying that he has transferred any assets" to these entities. (Opp. p. 15.) Although irrelevant to a motion to dismiss, Plaintiff not only denies that any assets were transferred to any such entities, he  sent a letter to Defendants expressly denying it and demanding that Defendants explain the basis for any contention to the contrary. (*See* Ex. 3, Oct. 13, 2023 letter, p. 4.) Defendants have refused to respond to that letter.

diverted business from the Company by the purported use of the word Gala in the entities' names. Because True North has not alleged any damage to the Company caused by the alleged formation of Gala Music or Gala Film, it cannot base a derivative claim upon the creation of these entities.

        c.      **True North's newly raised conclusory allegations of breaches of fiduciary duty causing injury to the Company should be disregarded.**

As set forth in Section I (A)(2) above, True North made certain conclusory allegations for the first time in its pleadings (and has refused to disclose the factual bases for those allegations). True North argues that it should be permitted to proceed with Count One, for breach of fiduciary duty, and its other derivative claims based upon certain of these conclusory allegations. (*See* Opp. at pp. 13-16.) Specifically, it points to its conclusory allegations that Plaintiff (a) misappropriated Company funds and (b) distributed NFTs to himself and Company employees that were supposed to be distributed to unnamed third parties outside the Company. (*See* Opp. pp. 14-16.)

True North attempts to justify its conclusory allegations by relying upon general statements in inapposite cases.  First, it argues that the Court should look past its failure to plead important facts necessary to establish liability and instead just "infer the necessary unarticulated assumptions," citing *Bryson v. Gonzales*, 534 F.3d 1282 (10th Cir. 2008). This is precisely contrary to the standard in *Bryson*, in which the Tenth Circuit affirmed dismissal of a complaint for failure to allege sufficient factual detail. The court made clear that a claim should be dismissed "if the complaint is sufficiently devoid of facts necessary to establish liability," that the allegations "must show (not merely assert) that relief is appropriate" and that therefore claimants "omit important factual material at their peril." *Id.* (internal citations omitted).)  True North also argues that "specific facts are not necessary" to state a claim, citing *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Notably, the plaintiff in *Erickson* had no counsel, and the Court explained that "a *pro se*

complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings, drafted by lawyers." *Id*.  In any event, "[w]hile "[s]pecific facts are not necessary . . . some facts are." *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012).  True North includes none.

    With respect to misappropriation of Company assets or funds, True North alleges only:

> *Upon information and belief*, Schiermeyer further breached his fiduciary duties by using Company funds to buy and rent real estate for personal use, transferring Company assets into his own name (via entities that he created), hiring architects, construction companies, and designers for personal real estate, and moving funds into his personal accounts.

(Dkt. No. 75 at p. 75, ¶ 53.) True North wrongly argues that this conclusory paragraph, *standing alone*, states a derivative claim for breach of fiduciary duty. Such bald allegations of misappropriation would fail to state a claim even under the Rule 8(b)(2) standard. *Barnes v. Harris*, 783 F.3d 1185, 1197 (10th Cir. 2015) (affirming dismissal under Rule 8(b)(2) where complaint "fails to provide any additional support for [the] conclusory allegations that [$265,000 in funds] were misappropriated"). Here, True North contends that this purported misappropriation of funds and assets constitutes "fraudulent conduct." (Opp. p. 24.)  Therefore, it must plead the underlying facts with particularity, including the factual basis to support its "information and belief" allegation. *Lochhead v. Alacano*, 662 F. Supp. 230, 234 (D. Utah 1987) (dismissing claim for breach of fiduciary duty based upon allegedly fraudulent conduct because plaintiff failed to plead the factual basis for the claim with particularity); *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1237 (10th Cir. 2000) (facts underlying "information and belief" allegations must be pleaded). True North does not even argue that it has met this standard.

Similarly, True North has pled no factual basis for its allegation that Plaintiff purportedly distributed unidentified "NFTs to himself and select BGP employees" rather than "to the Gala community." (Opp. at p. 15.) It identifies no particular wrongfully distributed NFTs, or even an estimate of the number of NFTs at issue, a general time frame in which this purportedly occurred, an estimated value of the NFTs, or who received them. Notably, True North does not contend that the NFTs were supposed to go *to the Company*, and therefore there is no derivative injury associated with any such distribution.[9]

True North is required to have conducted a reasonable investigation and determined that there is sufficient evidentiary support to make its factual allegations (verified as true by Thurston). True North therefore must know, and must be required to plead, the factual bases for these conclusory allegations. Absent such factual allegations, these conclusory allegations must be disregarded and all derivative claims based upon purportedly misappropriated assets should be dismissed.

**3.    Counterclaim Two, for "corporate waste," fails to allege that any Company assets were wasted.**

True North concedes that it cannot state a claim for corporate waste absent factual allegations showing "economic terms so one-sided as to create an inference that no person acting in good faith pursuit of the corporation's interests could have approved the terms." (Opp. at p .17.) It also does not dispute that facts supporting a corporate waste claim must be plead with

---

[9] True North cursorily argues that if the NFTs had been properly distributed it "would have bolstered BGP's sales and engagement with the public," but there are no such allegations in the Amended Counterclaims. (Opp. at p. 15.) In any event, this new theory of injury is purely speculative and unsupported by any factual allegations.

14

particularity. *See Garnitschnig v. Horovitz*, 48 F. Supp. 3d 820, 835 (D. Md. 2014). True North concedes that its derivative "corporate waste" claim is based upon only (a) the alleged burn of shareholders' GALA tokens; and (b) an installment payment made for a corporate jet. (*See* Opp. at pp. 17-18.) As set forth above, True North alleges the burned GALA did not belong to the Company and its "corporate waste" claim thus cannot be based upon the burned GALA.

The only remaining "corporate waste" allegation is that Plaintiff caused the Company to make a $5 million installment payment toward a corporate jet "despite the BGP Board previously agreeing to sell the jet/BGP's position." (Dkt. No. 75 at ¶¶ 43, 88.)[10] There are no further allegations regarding who bound the Company to purchase this jet (it was Thurston), how much had already been paid in installment payments toward the jet (millions of dollars); what would have happened to the prior payments if this installment was not made (they would have been lost); or what the Company received in exchange for this installment payment (credit toward a company jet). True North fails to plead any facts plausibly showing that making the installment payment was one-sided at all, and has therefore failed to state a derivative claim for corporate waste.

### 4.   Counterclaim Three fails to state a derivative claim for unjust enrichment.

True North fails to identify any benefit provided to Plaintiff by the Company and retained by Plaintiff to the detriment of the Company, much less under circumstances that violate

---

[10] In its Opposition, True North argues that the board made a "unanimous decision *not* to pay the installment," which is neither true nor alleged in the Amended Counterclaims. (Opp. at p. 18.) A vote to attempt to sell the Company's position in the jet is not the same as a vote to breach an installment contract (and potentially forfeit all equity in the jet).  True North also argues that the Court should *infer* "BGP's lack of benefit from that expenditure," but there are no facts alleged that would support such an inference. *Id.*

fundamental principles of justice, and therefore its derivative unjust enrichment claim fails under the very standard it proposes. (*See* Opp. at p. 18.) True North points to the suspension of Defendants' Gala Nodes, but does not allege that the nodes belonged to the Company or that Plaintiff received the suspended nodes.  Instead, it argues that the suspension of Defendants' nodes would benefit all other node owners, including Plaintiff, because they would theoretically each receive an increased proportion of GALA if they operated their nodes.  *Id*.  Notably, True North does not even allege that Plaintiff *has operated* his nodes, and thus has not alleged that Plaintiff *has actually* received any benefit at all from the suspension. In any event, True North does not allege that *the Company* would be entitled to compensation for the "benefit" of any increased proportion of GALA that Plaintiff might theoretically receive from operating his nodes.

In another contortion, True North acknowledges that its claim *on behalf of* the Company for unjust enrichment is premised upon the same conduct underlying its claim *against* the Company for breach of contract. (*See* Opp. at pp. 19-20.) True North argues that its unjust enrichment claim is not barred by the express contract because Plaintiff is not a party to the contract. However, True North concedes that the *subject matter* of the claim (the Company's suspension of Defendants' nodes) is governed by an express contract, which is enough to bar an unjust enrichment claim. *See e.g.*, *Cook v. Ohio Nat'l Life Ins. Co*., 961 F.3d 850, 859 (6th Cir. 2020) (unjust enrichment claim by nonparty to contract barred because subject matter of claim was governed by contract).

True North makes no effort at all to explain how the alleged burn of True North's GALA conveyed a benefit to Plaintiff *for which the Company is entitled to compensation*. (*See* Opp. at p. 20.) Thus, under its own standard, True North cannot state a claim for unjust enrichment based

upon the burn. Finally, True North attempts to rely upon the same conclusory allegations addressed above regarding the purported misappropriation of unidentified Company funds. Those conclusory allegations should be disregarded. Counterclaim Three should be accordingly dismissed for failure to state a derivative unjust enrichment claim.

### 5. Counterclaim Four fails to state a derivative claim for an equitable accounting.

True North wrongly argues that the pleading standard for its equitable accounting claim (and its unjust enrichment claim) is set forth in an out-of-circuit case decided years before the *Twombley* and *Iqbal* decisions. (*See* Opp. at pp. 19, 22, citing *Enterprise Warehousing Sols., Inc. v. Cap. One Servs., Inc.*, No. 01 C 7725, 2002 WL 406976, at *5 (N.D. Ill. Mar. 15, 2002) ("The plaintiff is entitled to the benefit of the court's imagination and ability to hypothesize a set of facts that would entitle the plaintiff to relief consistent with the claims set out in the complaint.") True North's reliance upon this antiquated pleading standard is telling, as it has failed to allege well-pleaded facts stating a claim to an equitable accounting that is plausible on its face. *See Bell Atl. Corp. v.. Twombly*, 550 U.S. 544, 570 (2007).

True North bases its equitable accounting claim on the allegation that Thurston "has requested financial information regarding the Company and Schiermeyer's commercial dealings" but has not received it. (Dkt. No. 75 at p. 86, ¶ 98.) Yet, True North now contends that this allegation is irrelevant to its equitable accounting claim. (*See* Opp. at p. 21.)  Instead, it argues that its claim is premised upon five allegations (that tokens were sent to Brink; NFTs were distributed incorrectly; GALA v2 was burned; unknown assets were misappropriated; and the jet installment payment was made), none of which involve an injury to the Company for which there is no adequate remedy at law. (*Id.* at pp. 21-22.) Nor do these allegations show that the accounts between

Plaintiff and the Company are so complicated that only a court of equity can sort them out, and True North's general argument to the contrary is insufficient. *Gulf Coast W. Oil Co. v. Trapp,* 165 F.2d 343, 347 (10th Cir. 1947) ("General allegations of fraud or the existence of a fiduciary relationship or that the account is long and complicated are not sufficient. The complaint must set out primary specific facts touching these matters."). Counterclaim Four should be dismissed.

### 6. The Fifth and Sixth Counterclaims fail to state claims for judicial removal of Plaintiff as a director or appointment of a custodian.

True North does not dispute that two of the statutes that it relies upon in Counterclaims Five and Six (Wyoming Statutes §§ 17-17-140 and 17-17-141) are inapplicable because the Company is not a statutory close corporation, and thus the counterclaims as based upon those statutes must be dismissed.

True North also fails to state a claim for appointment of a custodian to manage the Company under Section 17-16-748 (Counterclaim Six). First, True North fails to point to a single well-pled fact demonstrating that "irreparable injury to the corporation is threatened or being suffered." Instead, it cites allegations stating that Thurston has been unable to schedule meetings with Plaintiff and that Plaintiff has not agreed to bring this meritless action against himself. (*See* Opp. at pp. 24-25, citing Dkt. No. 75 at ¶¶ 78, 79, 104, 113.) From these bare allegations, True North jumps to the unsupported conclusion that some entirely unspecified irreparable harm is looming. Further, as set forth in Plaintiff's Opposition to True North's Motion for a Preliminary Injunction, the appointment of a custodian to act as receiver for the Company is controlled by federal law, not Wyoming law, and True North makes no effort to allege or argue that the federal standard for appointment of a receiver has been met. (*See* Dkt. No. 103 at pp. 6-8.) Nor has True

North alleged facts showing that the Board is deadlocked on any issue—other than whether to bring the derivative claims that are the subject of this litigation.

True North also argues that it has stated a claim for appointment of a custodian by alleging that "those in control of the corporation are acting fraudulently" (Wyo. Stat. Ann. § 17-16-748) and for removal of Plaintiff as director by alleging "the director engaged in fraudulent conduct with respect to the corporation or its shareholders" (Wyo. Stat. Ann. § 17-16-809). As support, True North relies upon its conclusory allegation that Plaintiff has misappropriated funds or assets. (*See* Opp. p. 24.) As set forth above, those conclusory allegations must be disregarded even under Rule 8(b). They certainly do not plead the purportedly fraudulent conduct with the particularity required under Rule 9(b). True North also reiterates its failed argument that Plaintiff has intentionally inflicted harm "on the Company," when in fact it complains of harm to True North itself. *Id*. True North has failed to plead facts stating a plausible claim to remove Plaintiff as a director, and Counterclaim Six should be dismissed.

**B.    True North fails to establish that any of its direct claims against Plaintiff states a claim.**

**1.    Counterclaim Seven: True North fails to tie any alleged conduct to a breach of the actual terms of the Founders Agreement.**

True North's argument that the "Founders Agreement" is "the foundational document governing Schiermeyer and True North's relationship" with respect to the Company is incorrect. On its face, the document is aspirational, stating that the parties "desire to form and operate Blockchain Game Partners, Inc. and several affiliated companies and entities" and "intend to equitably share and participate in the Ownership" in those companies, should they ever be formed. (*See* Motion at Exhibit A.) In other words, the document expresses the parties' intent regarding

how future companies should be structured. Of course, the Company *was actually incorporated* and the parties' ownership, rights and relationship *vis a vis* the Company and its operations and assets were formalized in the Company's governing documents.

True North does not dispute that, in order to allege a breach of the Founders Agreement, it must allege well-pleaded facts meeting three requirements: (a) that Plaintiff "circumvented or competed with" the Company; **and** (b) that the circumvention or competition was done in a manner to provide a particular benefit to Plaintiff from the Company (earn income, hold ownership, vote or earn rewards); **and** (c) that the circumvention or competition was **also** done in a manner to squeeze out or diminish True North's ownership or rights. (*See* Motion at pp. 17-19.)   In Counterclaim Seven, True North engages in shotgun pleading, alleging that *all of* Plaintiff's alleged conduct constitutes such a breach. (Dkt. No. 75 at p. 90, ¶ 122.)

In its Opposition, True North hones in on Plaintiff allegedly "causing BGP to suspend the nodes" as the particular breach at issue. (*See* Opp. at p. 26.) This fails to meet any of the three requirements for a breach. First, Plaintiff did not circumvent the Company in order to receive benefits outside the Company, he instead allegedly directed the Company to suspend the nodes as the Company's duly-appointed President and CEO. Second, there is not a single allegation that Plaintiff earned any income, ownership or rewards from the suspension. Although True North now makes the unsupported argument that Plaintiff benefited from the suspension by "reaping more" income and rewards from his own nodes, it does not even allege that Plaintiff has operated his own nodes since the suspension. (*See* Opp. p. 26.) Third, while True North— in its alleged capacity as node owner— may receive fewer GALA tokens as a result of the suspension, there is no allegation that its *ownership or rights in the Company* have been diminished. True North makes no effort to

describe how any other alleged conduct might constitute a breach of the Founders Agreement, and therefore Counterclaim Seven should be dismissed.

### a. Counterclaim Eight fails to state a claim for breach of the implied covenant of good faith and fair dealing.

True North does not dispute that any implied covenant of good faith and fair dealing in the Founders Agreement (1) must relate to the formation of a number of "affiliated companies and entities" related to blockchain gaming; (2) must arise from the express obligations of the Founders Agreement; and (3) cannot establish new, independent rights or duties not agreed upon by the parties. (Motion at pp. 19-20.) True North fails to explain the particular implied duty at issue here and how it relates to the transactions contemplated by the Founders Agreement and arises from the terms of that agreement. It also fails to explain how any particular alleged conduct breached any such duty. Instead, True North merely argues that "[t]his claim buttresses and alternatively supports the preceding claim for breach of contract, and it passes the pleading threshold." (Opp. at p. 28.)

The single case cited by True North is unhelpful to its argument. *Scherer Const., LLC v. Hedquist Const., Inc.*, 2001 WY 23, ¶ 8, 18 P.3d 645, 649 (Wyo. 2001). In *Scherer*, a subcontractor on a project agreed with a contractor to be bound by any change orders issued by the owner of the project. *Id*. at ¶ 5. The subcontractor alleged that the contractor had breached the implied duty of good faith by actively soliciting a change order from the owner that reduced the subcontractor's scope of work and compensation. *Id*. at ¶¶ 7-8. Although the court in *Scherer* did not find that this was an appropriate claim for breach of the implied duty, it is illustrative of what is missing from True North's claim: an express contractual provision (regarding change orders); an implied duty

(not to actively solicit change orders that undercut the benefit to the subcontractor) and a specific breach (solicitation of such a change order).

### b. Counterclaim Eleven fails to state a claim against Plaintiff for conversion.

True North fails to state a claim for conversion based either on the node suspension or the GALA v2 upgrade. With respect to the node suspension, True North does not dispute that the Company was contractually entitled to suspend the nodes if True North "legitimately triggered any of the clauses of the suspension/termination provision" of the governing Terms and Conditions. (Dkt. No. 75 at ¶ 133.) There is simply a dispute between True North and the Company over whether those contractual clauses were indeed triggered. True North argues that a conversion claim against Plaintiff is nevertheless appropriate because the suspension "was not supported by the Terms and Conditions between BGP and node holders like True North," but this simply affirms that the question of whether the suspension is appropriate is governed by contract and therefore a conversion claim cannot lie.[11]

With respect to the GALA v2 upgrade and burn, True North does not dispute that it owned the same property—GALA v1 tokens—both before and after the complained-of conduct. In other words, its GALA was not "burned." Instead, it argues that it never received GALA v2, but fails to plead facts showing that it had legal title to any burned GALA v2 or the right to possess it at the time of the burn (it points to only to an alleged statement that v1 tokens would be "upgraded"

---

[11] True North relies upon an inapposite case in which the contract did not directly apply to the alleged conduct constituting conversion. *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 880 (9th Cir. 2007) (conversion claim held proper because "none of the parties' prior agreements actually provided for the assignment of the open account funds, and the alleged wrongful taking of the open account funds does not duplicate a contract claim.")

without explaining how this created a legal right to the upgraded tokens). This is insufficient to state a claim for conversion under Wyoming law. *Campbell v. Davidson,* 2023 WY 100, ¶ 33, 537 P.3d 734, 744 (Wyo. 2023) (no conversion claim where the plaintiff does not have legal title to, possession of, or the right to possess the property).

### c.   Counterclaim Twelve fails to state a claim against Plaintiff for tortious interference with the Gala Terms and Conditions.

The parties agree that True North's tortious interference claim against Plaintiff fails if True North has not alleged facts sufficient to show that Plaintiff directed the suspension of Defendants' nodes both: (a) outside the scope of his authority as President and CEO; and (b) entirely to further Plaintiff's own personal interests. First, True North points to nothing in the Company's governing documents that requires the President and CEO to get Board approval before suspending nodes. Second, True North fails to identify any facts in the Amended Counterclaims that suggest that Plaintiff received *any benefit at all* from the node suspension, much less that he acted *solely* for his own benefit. (*See* Opp. at pp. 31-32.) Thus, the claim for tortious interference fails. *Alviar v. Lillard*, 854 F.3d 286, 289 (5th Cir. 2017) (affirming dismissal of tortious interference claim against corporate officer where plaintiff "failed to plead any facts showing that [officer] acted *solely* in his own interests."); *George A. Fuller Co., a Div. of Northrop Corp. v. Chicago Coll. of Osteopathic Med.*, 719 F.2d 1326, 1333 (7th Cir. 1983) (affirming dismissal where insufficient facts were alleged to show officer acted solely in personal interests - mere allegations of "malice" were not enough).

Moreover, as set forth in the Company's briefing, Plaintiff has failed to state a claim against the Company for breach of the Terms and Conditions, and therefore Plaintiff has no claim against Plaintiff for tortious interference with that contract. (*See* Dkt. No. 89 at pp. 10-16.)

     **d.**    **Counterclaim Thirteen, for declaratory judgment, fails to state a claim against Plaintiff.**

The parties agree that True North's declaratory judgment counterclaim should be dismissed if the requested judgment would proclaim liability for past acts, rather than declare the legal rights and obligations of the parties in anticipation of some future conduct. (*See* Opp. at p. 32.)  True North fails to clarify the declaration it seeks, arguing only that "these claims would govern Schiermeyer's and BGP's power to manage BGP shareholders' and node holders' property rights moving forward" without explaining how. *Id.* In any event, True North does not dispute that it is seeking a declaration that the Defendants' past conduct (breach of the Terms and Conditions) does not justify the Company's past conduct (suspension of the nodes). This is an improper declaratory judgment and Counterclaim Thirteen should be dismissed.

Dated this 16th day of February, 2024.

        Respectfully submitted,

        SNELL & WILMER L.L.P.

        */s/ Paul W. Shakespear*
        Paul W. Shakespear
        Cameron Cutler
        Natalie Beal

        K&L GATES LLP
        Abram I. Moore
        Christian A. Zazzali

        *Attorneys for Plaintiff Eric Schiermeyer*

4896-1273-0278