FILED
2024 AUG 21 PM 12:06
CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| ERIC SCHIERMEYER, Derivatively and on Behalf of Nominal Defendant, BLOCKCHAIN GAME PARTNERS, INC. D/B/A GALA GAMES,<br><br>Plaintiff,<br><br>v.<br><br>WRIGHT THURSTON and TRUE NORTH UNITED INVESTMENTS, LLC,<br><br>Defendants,<br><br>and<br><br>BLOCKCHAIN GAME PARTNERS, INC. D/B/A GALA GAMES,<br><br>Nominal Defendant. | **MEMORANDUM DECISION AND ORDER DENYING COUNTERCLAIMANT'S MOTION TO APPOINT A CUSTODIAN**<br><br>Case No. 2:23-cv-589-HCN-DAO<br><br>Howard C. Nielson, Jr.<br>United States District Judge |
| TRUE NORTH UNITED INVESTMENTS, LLC, Derivatively and on Behalf of Nominal Defendant, BLOCKCHAIN GAME PARTNERS, INC. D/B/A GALA GAMES,<br><br>Counterclaimant,<br><br>v.<br><br>ERIC SCHIERMEYER,<br><br>Counterdefendant,<br><br>and<br><br>BLOCKCHAIN GAME PARTNERS, INC. D/B/A GALA GAMES,<br><br>Nominal Counterdefendant. | |

| |
|---|
| TRUE NORTH UNITED INVESTMENTS, LLC, |
| Crossclaim Plaintiff, |
| v. |
| BLOCKCHAIN GAME PARTNERS, INC. D/B/A GALA GAMES, |
| Crossclaim Defendant. |

Eric Schiermeyer brought a shareholder-derivative action on behalf of Blockchain Game Partners, Inc., which does business as Gala Games, against Wright Thurston and True North United Investments, LLC. In his complaint, Mr. Schiermeyer alleges that Mr. Thurston stole millions of dollars' worth of cryptocurrency tokens from Gala Games. True North filed a counterclaim—also a shareholder-derivative action on behalf of Gala Games—alleging that Mr. Schiermeyer has undertaken various unlawful actions as CEO of Gala Games. True North now seeks what it styles a "preliminary injunction" appointing a "custodian" to act as president, CEO, and sole director of Gala Games. The court denies True North's motion.

I.

This is the fourth time that a party has moved for preliminary relief in this action. *See* Dkt. Nos. 9, 52, 63 & 88. The court has set forth the underlying facts and allegations in some detail in two previous opinions. *See Schiermeyer v. Thurston*, 697 F. Supp. 3d 1265 (D. Utah 2023); *Schiermeyer v. Thurston*, No. 2:23-cv-589, 2023 WL 9183940 (D. Utah Dec. 8, 2023).

To summarize, Mr. Schiermeyer is President, CEO, and one of two directors of Gala Games, a company that administers a "blockchain-based gaming infrastructure" and oversees distribution of a cryptocurrency called "GALA tokens." Dkt. No. 75 ¶ 30. Mr. Schiermeyer and True North are both large shareholders of Gala Games. True North, in turn, is controlled by

Wright Thurston, who is Gala Games' other director. Mr. Schiermeyer contends that Mr. Thurston stole cryptocurrency tokens worth millions of dollars from Gala Games. Mr. Thurston, however, maintains that those tokens belonged to True North, not to Gala Games, and that it is Mr. Schiermeyer who has stolen, wasted, and misused corporate assets. Each party sued the other, and the two cases have been consolidated into this action. *See* Dkt. No. 57.

In its most recent motion for preliminary relief, True North seeks "the appointment of a custodian to temporarily" replace Mr. Schiermeyer as "the President and CEO of" Gala Games, and to "take on the role of sole Director" of the company, replacing Mr. Schiermeyer and Mr. Thurston in this capacity. Dkt. No. 88 at 2–3. True North provided copies of Gala Games' Founders' Agreement, Bylaws, and Terms and Conditions as exhibits to its motion. *See* Dkt. Nos. 88-1, 88-2 & 88-3. And at a subsequent hearing on the motion, the court clarified with counsel that it would decide True North's motion accepting only those "three documents" as evidence, Dkt. No. 97 at 17 (17:22–24), while taking "judicial notice" that "there are two members of [Gala Games'] board, that they're on opposite sides of this lawsuit, [and] that they're both purporting to sue derivatively on behalf of the company," *id.* at 21 (21:2–6); *see also id.* at 20 (20:8–17).

## II.

True North styles its motion as a request for a "preliminary injunction ordering the temporary appointment of a custodian." But it appears that the "custodian" True North seeks would effectively be a receiver—that is, "[a] disinterested person appointed by a court . . . for the protection or collection of property that is the subject of diverse claims (for example, because it belongs to a bankrupt or is otherwise being litigated)." *Receiver*, Black's Law Dictionary (12th ed. 2024). True North's request thus falls within the purview of Federal Rule of Civil Procedure

3

66, which provides that the Federal Rules "govern an action in which the appointment of a receiver is sought," and that "the practice in administering an estate by a receiver or a *similar court-appointed officer* must accord with the historical practice in federal courts or with a local rule." *Id.* (emphasis added).

There is a distinct and well-developed body of caselaw addressing when federal courts properly may appoint receivers. Like a preliminary injunction, the appointment of a receiver is an "extraordinary equitable remedy." *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316 (8th Cir. 1993). It "is not a matter of strict right," *Fosdick v. Schall*, 99 U.S. (9 Otto) 235, 253 (1878), but rather a remedy of which courts must be "cautious and circumspect," and which "should be exerted sparingly," *Skirvin v. Mesta*, 141 F.2d 668, 673 (10th Cir. 1944). "The appointment of a receiver or the refusal to appoint rests in the sound judicial discretion of the trial court." *Id.*

Although the Tenth Circuit appears not to have prescribed a specific test for when a federal receiver may be appointed, other circuits have well explained the federal courts' traditional approach. As the Eighth Circuit put it,

> [a]lthough there is no precise formula for determining when a receiver may be appointed, factors typically warranting appointment are a valid claim by the party seeking the appointment; the probability that fraudulent conduct has occurred or will occur to frustrate that claim; imminent danger that property will be concealed, lost, or diminished in value; inadequacy of legal remedies; lack of a less drastic equitable remedy; and likelihood that appointing the receiver will do more good than harm.

*Aviation Supply*, 999 F.2d at 316–17; *see also Canada Life Assur. Co. v. LaPeter*, 563 F.3d 837, 844 (9th Cir. 2009) (articulating essentially the same factors, as well as additional ones, including "the possibility of irreparable injury" to the moving party's "interest in the property" and whether the "interests sought to be protected will in fact be well-served by a receivership" (cleaned up)); Wright & Miller, 12 Fed. Prac. & Proc. Civ. § 2983 (3d ed.) (similar list).

4

True North does not engage with the extensive caselaw governing the appointment of federal receivers, let alone attempt to show that the appointment of a receiver is warranted based on the factors traditionally considered by the federal courts. Indeed, True North eschews federal law on preliminary relief more broadly, instead contending that its motion is governed by Wyoming law. *See* Dkt. No. 107 at 6–7. Specifically, True North points to Section 17-16-748(a)(i) of the Wyoming Code, which permits Wyoming courts to appoint a custodian "of and for a corporation in a proceeding by a shareholder where it is established that [t]he directors are deadlocked in the management of the corporate affairs, the shareholders are unable to break the deadlock, and irreparable injury to the corporation is threatened or being suffered." True North asserts that this state statute authorizes the court to appoint a custodian based solely on the supposed "irreconcilable deadlock" between Gala Games' directors, Dkt. No. 107 at 10, which it argues "inherently results in irreparable injury to the Company," or at least the "threat" of such injury, *id.* at 11 & n.3 (cleaned up).

Not so. The Tenth Circuit has clearly instructed that state receivership laws "cannot . . . add to the equitable powers" of the federal trial courts "sitting in that State." *Inland Empire Ins. Co. v. Freed*, 239 F.2d 289, 292 (10th Cir. 1956). Further, the Tenth Circuit has endorsed the consensus of other federal courts that, "[i]n light of the numerous federal provisions specifically governing federal receiverships," including Rule 66, "'[t]he appointment of a receiver in a diversity case'"—such as this one—"'is a procedural matter governed by federal law and federal equitable principles.'" *Myles v. Sapta*, 139 F.3d 912, 1998 WL 45494, at *3 (10th Cir. 1998) (unpublished table opinion) (quoting *Aviation Supply*, 999 F.2d at 316); *see also Canada Life*, 563 F.3d at 843; *National P'ship Inv. Corp. v. National Housing Dev. Corp.*, 153 F.3d 1289, 1291–92 (11th Cir. 1998).

5

Not only is the "primacy of federal law" over True North's motion indicated by the existence of Rule 66, *National P'ship*, 153 F.3d at 1291 (citing *Hanna v. Plumer*, 380 U.S. 460, 471 (1965)), but it is consistent with the more general principle that "the appointment of a receiver in equity"—like the award of preliminary relief more generally—"is not a substantive right" but "an ancillary remedy which does not affect the ultimate outcome of the action," *id.* When, as here, a federal court is "sitting in diversity," it of course must apply "federal procedural law and state substantive law." *Jones v. United Parcel Sev., Inc.*, 674 F.3d 1187, 1203 (10th Cir. 2012); *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

Because True North has failed to make the showing required by "the historical practice in federal courts" for the appointment of "a receiver or a similar court-appointed officer," its motion to appoint a custodian must be denied.

### III.

Even if Rule 66 did not govern this action, or even if the appointment of a receiver under that Rule required only satisfaction of the general federal standard for "preliminary relief," *Diné Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1282 (10th Cir. 2016), True North would still be required to meet that standard.[1]

Under the "frequently reiterated" general federal standard, *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008), "the single most important prerequisite" to any award of

---

[1] One element of the general federal standard, of course, is that a moving party "must show he is *likely* to succeed on the merits" of his underlying claims. *Diné Citizens*, 839 F.3d at 1282 (emphasis added). True North suggests in passing that it satisfies this element because it "has demonstrated a substantial likelihood of success on the merits of its substantive claim for the appointment of a custodian under Wyoming law." Dkt. No. 107 at 12. This will not do. A party cannot short-circuit the federal standard for equitable relief by asserting a claim under a more lenient state-law standard and then arguing that it meets the federal requirement of likelihood of success on the merits because it can satisfy the watered-down state-law standard for equitable relief.

preliminary equitable relief is that the moving party must demonstrate some "probable irreparable harm" that the requested relief would avoid, *First Western Capital Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1141 (10th Cir. 2017) (cleaned up). A party's harm is *irreparable* "when the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain." *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1156 (10th Cir. 2001). Further, it is not enough to show a "*possibility*" of irreparable harm—instead, parties "seeking preliminary relief [must] demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22 (first emphasis added). And a remote, future injury will not do—rather, the movant must show "that the injury complained of is of such *imminence* that there is a clear and present need for equitable relief to prevent irreparable harm." *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (cleaned up). In short, demonstrating probable irreparable harm is "not an easy burden to fulfill." *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1258 (10th Cir. 2003). True North has failed to meet this burden here.

### A.

The court certainly cannot conclude that True North faces likely, imminent, and irreparable harm merely from the facts of which it can take judicial notice: *i.e.*, that "there are two members of [Gala Games'] board, that they're on opposite sides of this lawsuit, [and] that they're both purporting to sue derivatively on behalf of the company." Dkt. No. 97 at 21 (21:2–6). After all, that two directors are on opposite sides of a lawsuit does not *necessarily* mean that they cannot make business decisions together. And a spat between directors may be of no moment so long as the company's officers are able to manage day-to-day operations. Nor do the documents attached to True North's motion—which merely provide insight into how Gala

7

Games is structured, *see* Dkt. Nos. 88-1, 88-2 & 88-3—demonstrate that any such harm is probable.

To be sure, True North asserts that this court's inquiry should not be limited to those documents alone, but that the court should also consider other evidence produced by the parties over the course of this litigation. True North, however, unmistakably waived reliance on such other evidence at the status conference held on January 9, 2024. *See* Dkt. No. 96. At that hearing, the court specifically asked counsel for True North: "So you think that just as long as I take judicial notice of the fact that there's a deadlocked board, that just based on the bylaws and other things that you've submitted, I can make the legal determination . . . to decide the motion." Dkt. No. 97 at 15–16 (15:24–16:3). True North's counsel responded: "Yes, Your Honor." *Id.* at 16 (16:4).

True North contends that the "other things that you've submitted" referenced by the court should be understood to include True North's other filings in this case and the factual assertions those filings contain. *See* Dkt. No. 107 at 5. But context makes clear that the court was referring only to the "other things" attached as exhibits to True North's motion. This discussion arose because Mr. Schiermeyer's counsel took the position that if True North relied on "the allegations in the counterclaims" in support of its motion for the appointment of a custodian, then Mr. Schiermeyer would seek "discovery and an evidentiary hearing" on those allegations before the motion was decided. Dkt. No. 97 at 8–9 (8:17–9:4). In response, True North's counsel offered to limit the scope of evidence to be considered by the court in deciding its motion. *See id.* at 15–17 (15:2–17:4).

Further, when asking Mr. Schiermeyer's counsel whether he objected to the motion being decided without further factual development so long as the evidence considered was so limited,

8

the court clarified that it would consider the "three documents" attached to True North's motion: "the bylaws, the terms and conditions, and the founders' agreement." *Id.* at 17 (17:22–24). The court later specifically noted that it "would not be taking the verified complaint as . . . evidence." *Id.* at 21 (21:23–24). And it clarified the scope of the facts of which it would take judicial notice: "that there are two members of the board, that they're on opposite sides of this lawsuit, [and] that they're both purporting to sue derivatively on behalf of the company." *Id.* at 21:3–6. When the court asked whether all parties were amenable to proceeding on these terms, no one raised an objection—and it was on this shared understanding of the strictly limited scope of the factual materials and propositions that would be considered in support of True North's motion that the court agreed to decide that motion without additional discovery or an evidentiary hearing. *See id.* at 21–22 (21:3–22:2).

## B.

Moreover, even reviewing the other evidence in this case, the court concludes that True North has not met its burden to show likely, imminent, and irreparable harm that appointing a custodian would avoid. True North admits that Gala Games "has not been frozen in inaction." Dkt. No. 88 at 18. The basis for its motion is instead that it believes Mr. Schiermeyer has taken a number of "unilateral" actions without approval of the Board, thereby exceeding his authority as President and CEO of the company. Dkt. No. 88 at 9–11. But True North has not shown how those actions—whether or not improper—threaten the health of the company. Indeed, True North appears to have provided no evidence whatsoever of the company's financial condition.

In its briefing, True North asserts that when a company's officers exceed their authority, such action necessarily causes irreparable harm to the business, "regardless of profitability." Dkt. No. 107 at 11. But True North does not explain why that must be so. One owns a business to

9

make money. And as this court has explained multiple times, it is "well settled that simple economic loss usually does not, in and of itself, constitute irreparable harm," because "such losses are" usually "compensable by money damages." *Heideman*, 348 F.3d at 1189. Absent a showing that the company's mismanagement has created a "risk of insolvency" that is "likely and imminent"—meaning that the company will "*likely* be unable to pay an award of money damages after trial"—the mismanagement alone does not justify preliminary relief. *Schiermeyer*, 697 F. Supp. 3d at 1273 (cleaned up). True North has not attempted to make such a showing in support of this motion.[2]

*     *     *

For the foregoing reasons, Plaintiff's motion for a preliminary injunction ordering the temporary appointment of a custodian is **DENIED**.

**IT IS SO ORDERED**.

Dated this 21st day of August, 2024.

BY THE COURT:

_____
Howard C. Nielson, Jr.
United States District Judge

---

[2] True North contends that a preliminary injunction is justified because (True North claims) Coinbase has delisted Gala Games' cryptocurrency tokens from its platform because of Mr. Schiermeyer's actions. *See* Dkt. No. 107 at 10–11. True North cites *APEG Energy II, LP v. Veltri* in support of this argument. *See* No. 19-cv-801, 2019 WL 2137386 (D. Colo. May 16, 2019). There, the district judge appointed a custodian to manage a company facing imminent delisting from a stock exchange. *See id* at *1. Here, by contrast, the alleged delisting already seems to have occurred. It thus does not support the award of preliminary relief, for "[t]he purpose of a preliminary injunction is not to remedy *past* harm but to protect" the moving party "from irreparable injury that *will* surely result without [its] issuance," *Schrier v. University of Colo.*, 427 F.3d 1253, 1267 (10th Cir. 2005) (emphasis added)—*i.e.*, irreparable harm that "would occur in the *future*" absent the requested interim relief, *DTC Energy Grp., Inc. v. Hirschfeld*, 912 F.3d 1263, 1271 (10th Cir. 2018) (emphasis added).